Matthew C. Wagner
mwagner@dmoc.com
Scott Harrington
sharrington@dmoc.com
DISERIO MARTIN O'CONNOR
& CASTIGLIONI, LLP
50 Main Street, Suite 1000
White Plains, NY 10606
(914) 684-0090 Tel
(914) 684-0590 Fax

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARCHIE COMIC PUBLICATIONS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KENNETH W. PENDERS, II, )<br>p/k/a/ KEN PENDERS, )<br>)<br>Defendant. )<br>X | Case No.: 10-CV-8858 (RMB)<br><br>Judge: Hon. Richard M. Berman |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE TO TRANSFER PROCEEDINGS**

## Table of Contents

**I. Introduction** ........ 1

**II. Factual and Procedural Background** ........ 2

**III. Argument** ........ 7

**a. ACP's Well Pleaded Allegations Clearly Establish a *Prima Facie* Basis For Personal Jurisdiction Over Penders and Defeat His Rule 12(b)(2) Motion** ........ 7

1. *Legal Standard* ........ 8

2. *ACP has made a prima facie showing of personal jurisdiction on the basis of a forum selection and consent-to-jurisdiction clause.* ........ 9

3. *ACP has made a prima facie showing of specific personal jurisdiction on the basis of long-arm jurisdiction under NY CPLR §302(a)(1).* ........ 11

**b. Penders' Motion for Transfer under 28 U.S.C. § 1404(a) should be denied because a transfer would merely shift the burden of inconvenience to ACP, and Penders has not shown that transfer is warranted "for the convenience of the parties and witnesses, in the interest of justice"** ........ 13

1. *Legal Standard* ........ 13

2. *The multi-factor analysis fails to support Penders' request for transfer* ........ 14

**IV. Conclusion** ........ 24

**Cases**

*A. Olinick & Sons v. Dempster Bros.*, Inc., 365 F.2d 439 (2d Cir.1966) .................................... 14

*Agence France-Presse v. Morel*, Case No. 10-CV-2730 (S.D.N.Y.) .......................................... 23

*Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341 (S.D.N.Y. 2002) .................... 13

*American Society of Media Photographers, Inc. et al. v. Google, Inc.*, Case No. 10-CV-2977 (S.D.N.Y.) ........................................................................................................................ 23

*Archie Comics Publications, Inc. v. DeCarlo*, 258 F.Supp.2d 315 (S.D.N.Y. 2003) ........ 7, 10, 24

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) .................................... 12

*Coker v. Bank of Am.*, 984 F. Supp. 757 (S.D.N.Y. 1997) ......................................................... 15

*CutCo Indus., Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) ....................................................... 8

*Deutsche Bank Sec., Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65 (2006) ........................... 11

*Don King Productions, Inc. v. Haugen*, Case No. 91-CIV-5554, 1992 WL 58875 (S.D.N.Y. Mar. 13, 1992) ............................................................................................................................... 9

*Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81 (S.D.N.Y. 1995) .................... 13

*ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542 (S.D.N.Y. 2008) ........................................ 19

*Fairey et al v. The Associated Press*, Case No. 09-CV-1123 (S.D.N.Y.) ................................... 23

*Hernandez v. Graebel Van Lines*, 761 F. Supp. 983 (E.D.N.Y. 1991) ....................................... 21

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985) .......................................... 8

*Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*, Case No. 06-CV-7672, 2007 WL 163111 (S.D.N.Y. Jan. 22, 2007) ......................................................................... 14

*In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204 (2d Cir. 2003) ....................................... 8

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 343 F. Supp. 2d 208 (S.D.N.Y. 2004) ............................................................................................................................... 8

*In re Warrick*, 70 F.3d 736 (2d Cir. 1995) ........ 14

*Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir.2001) ........ 14

*Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460 (1988) ........ 11

*M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972) ........ 8

*Marine Midland Bank N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981) ........ 8

*Martin v. Citibank, N.A.,* 64 A.D.3d 477 (N.Y. App. Div. 1st Dep't 2009) ........ 10

*Marvel Worldwide, Inc. et al v. Kirby et al*, Case No. 10-CV-00141 (S.D.N.Y.) ........ 23

*Miller v. Bombardier Inc.*, Case No. 93-CIV-0376, 1993 WL 378585 (S.D.N.Y. Sept. 23, 1993) ........ 21

*Mpower Communications Corp. v. Voipld.com, Inc.*, 304 F. Supp. 2d 473 (W.D.N.Y. 2004) .... 14

*National Hydro Systems v. Summit Constructors, Inc.*, 731 F.Supp. 264 (N.D.Ill. 1989) ........ 9

*Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) ........ 8

*Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505 (S.D.N.Y. 2004) ........ 20

*Stewart Organization, Inc. v. Ricoh Corporation,* 487 U.S. 22 (1988) ........ 14

*The Authors Guild et al., v. Google, Inc.*, Case No. 10-CV-8136 (S.D.N.Y.) ........ 23

*Viacom Int'l Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514 (S.D.N.Y. 2010) ........ 23

*Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115 (S.D.N.Y. 2005) ........ 21, 22

*Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513 (S.D.N.Y. 2008) ........ 23

*Weiss v. Columbia Pictures Television, Inc.,* 801 F.Supp. 1276 (S.D.N.Y.1992) ........ 14

**Statutes**

28 U.S.C. § 1404(a) ........ 13

CPLR §302(a)(1) ........ 11, 12

**Rules**

Fed. R. Civ. P. 12(b)(2).......................................................................................................... passim

## I. Introduction

Plaintiff Archie Comics Publications, Inc. ("ACP") hereby opposes the motion filed by Defendant Kenneth W. Penders II ("Penders") on February 8, 2011 to dismiss ACP's complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or, in the alternative, to transfer venue pursuant to 28 U.S.C. §1404(a). Penders' motion is not tenable on either ground and should be denied. Also filed in support hereof is the declaration of Mike Pellerito, President of ACP.

ACP has undeniably satisfied its burden to survive a 12(b)(2) motion by pleading facts sufficient to establish a *prima facie* basis for personal jurisdiction; and Penders has offered no basis on which the Court should not accept the well-pleaded allegations in ACP's complaint as truthful for the purposes of determining the issue of jurisdiction. The Court is constrained to do so. It is well-established that a court must construe the pleadings and allegations in the light most favorable to the non-moving party when determining personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

ACP has also properly pleaded two valid and enforceable contracts, each of which contain a forum selection and consent-to-jurisdiction clause between ACP and Penders. Penders cannot avoid jurisdiction by simply disputing these well-pleaded facts. Penders also erroneously dismisses the possibility of jurisdiction pursuant to New York's long-arm statute, under which ACP also makes a *prima facie* showing of jurisdiction.

Similarly, Penders fails to meet the high burden required – a showing of "exceptional facts" - to support a transfer of venue. Though Penders offers a number of justifications that comport with the multi-factor analysis used in this District when determining if a transfer is appropriate, it is clear that a transfer is not appropriate, and even those factors which appear to favor Penders would only result in a mere shifting of burden and inconvenience from one party to

the other. Such a transfer would also fly in the face of the contractual obligations between the parties. This Court should honor the parties' contractual choice of forum and deny transfer.

## II. Factual and Procedural Background

ACP is a corporation duly organized under the laws of the State of New York, with a business address of 325 Fayette Avenue, Mamaroneck, New York, less than 25 miles from the courthouse at 500 Pearl Street in Manhattan. (Complaint, ¶ 1).

Penders is an individual presently residing at 12147 Woodley Avenue, Granada Hills, California 91344-2846. (Declaration of Kenneth W. Penders II, ¶ 3). Penders is formerly a resident of New Hampshire from 1985 until May 1994, and North Tonawanda, New York from May 1994 through November 2001. (Decl. of Penders, ¶¶ 4-5).

Founded in 1939 by Maurice Coyne, Louis Silberkleit, and John L. Goldwater, ACP is perhaps best known for its many series featuring the fictional teenagers created by its founders, Archie Andrews, Betty Cooper, Veronica Lodge, Reggie Mantle and Jughead Jones. These characters were created by John L. Goldwater, the stories were written by Vic Bloom and the comics drawn by Bob Montana. Archie first appeared in Pep Comics #22 on December 22, 1941. (Complaint, ¶ 10).

ACP also owns various other lines of well known characters it has developed over its many decades, in other comic series, such as Sabrina the Teenage Witch, Josie and the Pussycats, Cheryl Bloom, and Katy Keene, as well as many other characters and super hero properties, such as The Mighty Crusader Superheroes and others. (Complaint, ¶¶ 11-13).

Beginning in 1992, ACP entered into a licensing relationship with Sega of America, Inc., to produce, among other things, comic books which feature Sega's popular character SONIC THE HEDGEHOG, and all related ancillary characters ("Sonic Comic Book Series"). ACP's

relationship with Sega continues to this day, and now includes digital distribution rights. (Complaint, ¶ 17).

Under its relationship with Sega, ACP has the right to enforce the intellectual property rights at issue in this action. (Complaint, ¶ 18).

From 1993 until 2005, including all 7 years that he lived in New York, Penders worked for ACP as an independent contractor, and developed stories, scripts, artwork, and other original creative expressions fixed in tangible form (individually a “Work” and collectively “Works”) as contributions to the Sega Comic Book Series. (Complaint, ¶ 19).

All Works were commissioned by ACP from Penders as works-made-for-hire, as that term is used in the Copyright Act. In the alternative, and to the extent that any Work fails to qualify as a work-made-for-hire under the U.S. Copyright Act, Penders agreed to assign, and did assign, all right, title and interest in and to each Work and all of the Works to ACP. Penders also agreed to execute any documents needed to confirm that any specific Work and all of the Works are works-made-for-hire and/or to effectuate the assignment of his rights, if any, to ACP, in order for ACP to obtain copyright, trademark or patent protection for any of the Works. (Complaint, ¶ 20).

The relationship between Penders and ACP was memorialized in written agreements, executed in 1996. Penders executed two agreements with ACP: Revised Newsstand Comic Independent Contractor’s Agreement (“Contractor’s Agreement”); and ACP Licensed Comic Books Independent Contractor’s Agreement (“Licensed Comic Books IC Agreement”) (the Contractor’s Agreement and the Licensed Comic Books IC Agreement collectively referred to as the “ACP-Penders Agreements”). (Complaint, ¶ 21). Each is attached hereto, and to the Complaint, as Exhibits A and B, respectively, and incorporated by reference as if fully stated in this paragraph. These agreements are also incorporated in the complaint and must be construed in the light most favorable to ACP.

Each of the ACP-Penders Agreements provide that New York and United States law will govern, and that the "parties consent to the exclusive jurisdiction and venue of any State or Federal court of competent jurisdiction in Manhattan, New York with respect to any proceedings arising under or relating to this Agreement." (Complaint, ¶ 4). (Licensed Comic Books IC Agreement, Exhibit B, paragraph 11). Similarly, the Contractor's Agreement provides identical terms (Exhibit A, paragraph 27):

> 27. This Agreement will be governed by the laws of the State of New York and the United States, as applicable. Both parties consent to the exclusive jurisdiction and venue of any State or Federal court of competent jurisdiction in Manhattan, New York with respect to any proceedings arising under or relating to this Agreement. Any process or papers in such proceeding may be served by mail in accordance with paragraph 26 of this Agreement.

Penders supplied Works to ACP pursuant to the ACP-Penders Agreements as contributions to the Sonic Comic Book Series, from 1993-2005. (Complaint, ¶ 33).

Sega was and remains a Licensor, as that term is defined in ACP-Penders Agreements, and all the Works supplied by Penders are included in the Works and Properties subject to those agreements. (Complaint, ¶ 34).

Beginning on or around January 2009, without authorization from ACP, contrary to ACP-Penders Agreements and unbeknownst to ACP, Penders began filing numerous applications with the U.S. Copyright Office to register each of the Works in his own name personally and claimed ownership of each of each of the Works, listing himself as the "Author" and "Copyright Claimant" for each of the Works. (Complaint, ¶ 35).

Unbeknownst to ACP, commencing on or about July 7, 2010, Penders began to assert his purported ownership in each of the Works publicly. (See blog post dated Wednesday July 7, 2010, 10:37 am, at Penders' website, http://www.kenpenders.com, (attached to Complaint as

Exhibit C, page 2), in which Penders claims he is "the owner of every single SONIC and KNUCKLES story I ever created…"). (Complaint, ¶ 36).

On July 2, 2010 Penders, through his attorney Michael L. Lovitz of Beverly Hills, California, transmitted to ACP in New York a "demand letter" (attached to Complaint as Exhibit D) asserting fourteen (14) attached U.S. Copyright Registrations, accusing ACP of copyright infringement and (improperly) invoking the spectre of statutory damages. (Complaint, ¶ 37).

ACP's July 13, 2010, response letter, among other things, provided Penders with a copy of ACP-Penders Agreements, placed him on notice of his unfounded allegations, his breach of ACP-Penders Agreements, and demanded that he cancel the Asserted Registrations, consistent with ACP-Penders Agreements. (Complaint, ¶ 53).

On July 21, 2010, ACP followed up with Penders via letter and demanded that he refrain from making any further public statements regarding ownership or use of the Works, and issue a retraction of his prior public statements, in light of the upcoming Comic-Con trade show which was to commence the following day in San Diego (attached to the Complaint as Exhibit F). (Complaint, ¶ 54).

Penders, through his attorney, by telephone, confirmed to ACP's counsel that Penders would not make any further public statements at the trade show, but to date, Penders has not retracted his prior public statements claiming ownership in the Works. (Complaint, ¶ 55).

Instead, more than three months later on October 14, 2010, Penders (through counsel) finally replied to ACP's July 13, 2010 letter (attached to the Complaint as Exhibit G). Penders stated he had no recollection of signing ACP-Penders Agreements, and asked for inspection of originals. (Complaint, ¶ 56).

On October 19, 2010, Penders posted another relevant entry on his blog, in which he stated: "Contrary to the claims made recently at the NYC Comic Con by Archie's Mike Pellerito, I

continue to maintain copyright ownership of the characters I created and this issue has not been resolved. My claim has merit and I continue to use every legal means at my disposal to protect and preserve my rights. It's bizarre that Archie would make a public statement that indicates otherwise." See Complaint, ¶ 57, and attached Exhibit C, page 1, entry dated October 19, 2010.

It is not bizarre for anyone at Archie to have asserted that the claims were resolved, given that Penders was provided with copies of ACP-Penders Agreements, and he acquiesced to ACP's demand that he refrain from making further public statements, and ACP did not hear from Penders for more than 3 months. (Complaint, ¶ 58).

ACP replied via letter on October 27, 2010, (attached to Complaint as Exhibit H), repeating its previously stated positions, and again requesting that Penders cancel the Asserted Registrations, among other things. ACP informed Penders it would undertake to locate originals of ACP-Penders Agreements, but noted that 13 years had passed since execution and that the copies were sufficient and did not affect the validity or enforceability of the agreements. ACP noted Penders' then-current statements and position in the context of these letters and his public statements were in conflict with his legal obligations under ACP-Penders Agreements. (Complaint, ¶ 59).

Penders and his counsel responded to ACP on November 4, 2010, (attached to Complaint as Exhibit I), and, incredibly, questioned the authenticity of ACP-Penders Agreements: "we find their authenticity to be highly questionable;" Penders argued: "even if authentic, [the agreements] would not be valid, legally binding and enforceable work-for-hire contracts or assignments." In this letter, Penders stated that the Asserted Registrations are valid, refused to cancel them, and refused to publicly retract his comments. The letter concludes with another accusation against ACP for copyright infringement. See Complaint, ¶ 56, and attached Exhibit I, page 2.

Contrary to Penders' suggestion that the ACP-Penders Agreements are not enforceable, this Court (Kaplan, J.) has already held ACP's Contractor's Agreement (the very same form) valid and enforced the works-made-for-hire provisions against the estate of another independent contractor who – years after creation and delivery to ACP - attempted to assert ownership in the copyrights for works he produced under contract for ACP, just like Penders in this matter. *Archie Comics Publications, Inc. v. DeCarlo*, 258 F.Supp.2d 315, 325-335 (S.D.N.Y. 2003) (granting summary judgment in favor of ACP and holding the works at issue were made for hire, governed by the provisions of 1996 Revised Newsstand Comic Independent Contractor's Agreement, and owned by ACP).

One of the witnesses who would be called in this matter by ACP is Victor Gorelick, now Co-President and Editor-in-Chief of ACP. Mr. Gorelick has been employed by ACP since the 1950's. He is resident in this District, and works at ACP's offices in Mamaroneck in this District. Mr. Gorelick will testify that he recalls with specificity Penders' execution of ACP-Penders Agreements and his submission of those agreement to ACP in 1996 – one of which is the very same 1996 Revised Newsstand Comic Independent Contractor's Agreement which was enforced by Judge Kaplan in 2003 in the *DeCarlo* case. (Declaration of Michael Pellerito, ¶ 17).

## III. Argument

### a. ACP's Well Pleaded Allegations Clearly Establish a *Prima Facie* Basis For Personal Jurisdiction Over Penders and Defeat His Rule 12(b)(2) Motion

ACP's good faith allegation of the existence of the ACP-Penders Agreements, each of which contain a forum selection and consent-to-jurisdiction clause, establish a prima facie basis for personal jurisdiction over Penders, which is sufficient to defeat his Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

1. *Legal Standard*

On a Rule12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant, through well-pleaded allegations. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). A *prima facie* showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion. *Marine Midland Bank N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981) (reversing order granting motion to dismiss and remanding). The Court may determine the motion on the basis of pleadings and affidavits, in which case the plaintiff need only make a *prima facie* showing of personal jurisdiction over defendant in order to meet this burden. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986) (citing *Marine Midland,* 664 F.2d at 904.)

The court must credit the plaintiff's averments of jurisdictional facts as true. *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 343 F. Supp. 2d 208, 213 (S.D.N.Y. 2004). In the absence of an evidentiary hearing on the jurisdictional allegations, or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

Finally, a forum selection clause is presumptively enforceable if the forum clause was reasonably communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). The presumption of enforceability may only be defeated by a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.*, at 384 (quoting *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972)).

2. *ACP has made a prima facie showing of personal jurisdiction on the basis of a forum selection and consent-to-jurisdiction clause.*

ACP has alleged in its complaint the existence of two valid, fully executed, and enforceable contracts between the parties to this suit, copies of which are attached to this memo and the complaint as Exhibits A and B. (Complaint ¶ 21, and Exhibits A and B). Both contracts contain forum selection and consent-to-jurisdiction clauses, which ACP pleaded as bases for personal jurisdiction. (Complaint ¶ 4). The clause was communicated to Penders in both of the ACP-Penders Agreements, which are, as ACP alleges, fully executed by Penders, and the clause in both Agreements states that courts in Manhattan, New York (including this Court) will have "exclusive jurisdiction… with respect to any proceedings arising under or relating to this Agreement." As the ownership of the copyrights is both at the heart of this dispute and a core term of the ACP-Penders Agreements, the clause necessarily covers the claims in this case. Therefore, as alleged by ACP, the clause is presumptively enforceable. Penders has not rebutted this presumption.

The ACP-Penders Agreements, as pleaded and incorporated by reference, indisputably form a *prima facie* basis for personal jurisdiction, and the court must treat ACP's allegations of their existence as true for purposes of determining this motion. Penders' "right to deny the contract does not defeat [ACP's] right to assert the contract's existence, at least for purposes of a motion under Rule 12(b)(2)." *Don King Productions, Inc. v. Haugen*, Case No. 91-CIV-5554, 1992 WL 58875, at *3 n.2 (S.D.N.Y. Mar. 13, 1992) (quoting *National Hydro Systems v. Summit Constructors, Inc.*, 731 F.Supp. 264, 266 (N.D.Ill. 1989)).

Penders offers the proposition that where the existence of the underlying contract is disputed, the terms of the contract should not be enforced without opportunity for further discovery as grounds for sustaining further inquiry into personal jurisdiction by this Court.

However, Penders offers no authority that suggests this proposition is applicable in the context of a 12(b)(2) motion to dismiss, citing only to a state court opinion that not only fails support his position, but instead achieves the opposite end of reinforcing ACP's position. In *Martin v. Citibank, N.A.,* 64 A.D.3d 477 (N.Y. App. Div. 1st Dep't 2009), the appellate division affirmed the trial court's denial of summary judgment for the defendant. The defendant sought to invoke a liability limitation clause in a contract between the parties, while the plaintiff argued that the contract he signed did not contain such a clause. The court, in construing the facts in the light most favorable to the non-moving party, accepted the plaintiff's assertion and affirmed the denial of summary judgment on the issue of liability limitation. *Martin* utterly fails to help Penders for two main reasons. First, *Martin* offers no guidance on determining personal jurisdiction in response to a 12(b)(2) motion, let alone on how to treat the enforcement of a well-plead forum selection clause on such a motion. Second, the *Martin* court accepted all of the non-moving party's allegations as true, and on this basis denied the motion for summary judgement. If anything, *Martin* supports ACP – not Penders.

Finally, it is curious that Penders insists that not only did he never sign the ACP-Penders Agreements, but goes so far as to suggest that it was never ACP's practice to execute such agreements with the contributors who worked on its licensed properties. (Decl. of Penders, ¶¶ 54, 66). In fact, the majority of the potential witnesses identified by Penders are being offered to testify on ACP's standards and industry practices with regards to contracts, (Decl. of Penders, ¶ 67), suggesting that this will be a key angle of Penders' case. However, as more fully addressed below, none of the witnesses identified by Penders are ACP executives. It is further curious because there is already case law in this very District enforcing the exact works-made-for-hire contract that Penders claims ACP never had any of its freelancers sign. *See DeCarlo*, 258 F.Supp.2d at 325-335 (S.D.N.Y. 2003) (enforcing works-made-for-hire provisions of 1996

Revised Newsstand Comic Independent Contractor's Agreement against defendant in declaratory judgment action). As Mr. Pellerito recites in his declaration, it is ACP's policy to require that an Independent Contractor's Agreement be executed in order for him or her to be paid. A review of ACP's files reveals, literally, hundreds of executed independent contractor's agreements, including those for contributors to ACP's licensed properties, dating back to at least 1988. (Decl. of Pellerito, ¶ 4). A representative sample of names and addresses of the contractors who have executed these agreements is attached to the declaration of Mike Pellerito as Exhibit A, and filed in support hereof. Penders' claim that ACP never had its contributors sign works-made-for-hire contract clearly holds no water.

3. *ACP has made a prima facie showing of specific personal jurisdiction on the basis of long-arm jurisdiction under NY CPLR §302(a)(1).*

Contrary to Penders' assertions, ACP has also made a *prima facie* showing of specific jurisdiction under New York's long-arm statute by alleging that Penders contracted to supply – and did in fact supply - goods or services in New York, in this District – and that he did so for many years. This is undisputed by Penders.

NY CPLR §302(a)(1) states that "[a]s to a cause of action arising from any of the facts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent… transacts any business within the state or contracts anywhere to supply goods or services in the state." "CPLR §302(a)(1) is a "single act statute" and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Deutsche Bank Sec., Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 71 (2006) (quoting *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467 (1988)). Furthermore, asserting personal

jurisdiction under CPLR §302(a)(1) where a party has shipped goods or services which are the subject of the asserted claims into New York satisfies a constitutional due process inquiry even where there is no continuing relationship with the state. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171-72 (2d Cir. 2010).

ACP has alleged that Penders contracted to supply ACP with stories, scripts, artwork, and other original creative expressions fixed in tangible form. (Complaint ¶ 19). ACP is located and operates in New York, and all of Penderss work, wherever he completed it, was supplied to ACP in New York. (Complaint ¶ 9). These allegations must be taken as true for the purposes of determining jurisdiction. As the alleged contract and purposeful supply of goods or services thereunder are not only substantially related to, but are the very subjects of the asserted claims, these allegations and facts state a *prima facie* basis for specific personal jurisdiction under the New York long-arm statute independent of the forum selection and consent-to-jurisdiction clause in the contract. Therefore the Court should deny Penders' motion to dismiss for lack of personal jurisdiction regardless of the forum selection clause.

In fact, this court has personal jurisdiction over Penders under CPLR §302(a)(1) irrespective of the existence of the written contracts. By Penders' own admission, he produced story ideas, scripts, full panel page layouts, illustrations, and cover and interior artwork as a freelancer in return for monetary compensation from ACP. (Decl. of Penders, ¶¶ 22-38). Despite Penders' insistence that he worked "with no contract" (Decl. of Penders ¶ 37), it is clear that he was offering his services as an author and illustrator to ACP in consideration of monetary compensation. Each time ACP remunerated Penders, a contract by which Penders supplied goods or services into New York was fulfilled. At the very least each of these exchanges constitutes a transaction. Therefore, for the purposes of determining jurisdiction, notwithstanding the existence of the ACP-Penders Agreements, the Court has personal jurisdiction over Penders. The court need

not even engage in further inquiry, as Penders himself has articulated facts sufficient to establish a *prima facie* basis for personal jurisdiction in this District. Therefore ACP's burden is satisfied, and the Court should deny Penders' motion to dismiss.

**b. Penders' Motion for Transfer under 28 U.S.C. § 1404(a) should be denied because a transfer would merely shift the burden of inconvenience to ACP, and Penders has not shown that transfer is warranted "for the convenience of the parties and witnesses, in the interest of justice"**

Penders' motion to transfer should be denied. At best, Penders can only show that a transfer of venue would merely shift the burden of inconvenience from one party to the other, and this is insufficient for the Court to reject ACP's choice of forum, which is the forum chosen by the parties in their written agreements, and transfer the case to California.

1. *Legal Standard*

Where venue is otherwise appropriate, 28 U.S.C. § 1404(a) allows a party to nevertheless transfer a suit to any other district where it may have properly been brought "for the convenience of the parties and witnesses, in the interest of justice." In exercising its broad discretion under §1404, this Court commonly consider such factors as (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002). The burden of demonstrating the desirability of transfer by a clear-cut showing lies with the moving party, here Penders. *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 95 (S.D.N.Y. 1995). Here, Penders has failed to meet this burden and the motion to transfer should be denied.

2. *The multi-factor analysis fails to support Penders' request for transfer*

*1) ACP's Choice of Forum*

The plaintiff's choice of forum is "entitled to substantial consideration." *In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995) (quoting *A. Olinick & Sons v. Dempster Bros.*, Inc., 365 F.2d 439, 444 (2d Cir.1966)). The Second Circuit considers deference on a "sliding scale" basis, giving "greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons," such as convenience. *Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*, Case No. 06-CV-7672, 2007 WL 163111, at *4 (S.D.N.Y. Jan. 22, 2007) (quoting *Iragorri v. United Technologies Corp.,* 274 F.3d 65, 73 (2d Cir.2001)). In addition, the presence of a forum selection clause will also typically be "a significant factor that figures centrally in the district court's calculus" on whether to transfer venue. *Mpower Communications Corp. v. Voipld.com, Inc.*, 304 F. Supp. 2d 473, 475 (W.D.N.Y. 2004) (quoting *Stewart Organization, Inc. v. Ricoh Corporation,* 487 U.S. 22, 29 (1988)). It is clear that such clauses are not lightly disregarded; a party opposing enforcement of a forum selection clause must "demonstrate exceptional facts explaining why he should be relieved from his contractual duty." *Id.* (quoting *Weiss v. Columbia Pictures Television, Inc.,* 801 F.Supp. 1276, 1278 (S.D.N.Y.1992)). Penders fails to meet this burden.

ACP's choice of this forum and the designation of this forum for resolving disputes in the forum selection clauses, in combination, raise an extraordinary bar for Penders, and there is no demonstration of exceptional facts in his papers to support a transfer. Here, the court should give great weight to ACP's decision to bring suit in this District. ACP's motives are plainly legitimate: ACP is a resident and operates its business in this District, less than 25 miles from the Southern District of New York courthouse in Foley Square; litigating here is clearly desirable and convenient for ACP; this District comports with the forum selection clauses in the ACP-Penders

Agreements; the gravamen of ACP's complaint is a breach of these agreements, which were performed in this District; and the Works subject to those agreements were delivered by Penders to ACP in this District over the course of many years. (Decl. of Pellerito, ¶ 5). All of these clearly weigh in favor of denying transfer to the other side of the country. Penders' convenience cannot trump ACP's legitimate exercise of choice of forum, especially where Penders can only show that a transfer will only shift the burden under each of the rest of the factors from one party to the other. Therefore this factor favors a denial of Penders' motion to transfer.

2) *Convenience of Witnesses*

The convenience of both party and non-party witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted. *Coker v. Bank of Am.*, 984 F. Supp. 757, 765 (S.D.N.Y. 1997) (citations omitted).

Penders proffered list of witnesses is disingenuous at best. Penders emphasizes the location of his identified witnesses, nearly all of whom just happen to be in California. But more than half of the 12 identified witnesses are offered to testify regarding "Archie's standard practices with regard to contracts" – yet none of them are employed by ACP. (Decl. of Penders ¶ 67) (Decl. of Pellerito, ¶ 6). Penders would have this Court believe that individuals who have never been employed by ACP are necessary, and the best choice, to testify about that company's internal policies and practices, and that only witnesses located on the West Coast are available to testify about "standard industry practices" (leaving aside for the moment whether this sort of expert testimony would even be admissible in this case). The Court should take notice that other notable and historic comic companies are also located in New York and could just as easily (if not more credibly) testify about "standard industry practices" – two other storied and most notably historic comic publishers are located in New York City: DC Comics (Superman and Batman) is located at 1700 Broadway, New York, NY 10019; and Marvel Enterprises (Spider-Man, Captain America,

The Incredible Hulk, Daredevil, Iron Man) is located at 135 West 50th Street, 7th Floor, New York, NY 10020. (Decl. of Pellerito, ¶ 12).

Penders' attempt to identify as many witnesses as possible who happen to reside in another forum, when witnesses are readily available within this District (if not substantially closer than California) to testify about these subject matters, is a transparent bid to disingenuously stack this factor in his favor.

In fact, conspicuously absent from the list of witnesses is Penders' "friend" Mr. Michael Kanterovich, who first introduced Penders to ACP and collaborated with Penders on the copyrighted works in question for a period. Based on Penders' declaration, it appears that Mr. Kanterovich would be able to testify on the origin of the relationship between ACP and Penders, and under what understandings work was done for ACP. (Decl. of Penders ¶¶ 19-35). Yet he is not named as a potential witness. Upon information and belief, Mr. Kanterovich is currently residing in Hollis, New Hampshire, which is significantly closer to this District than California. (Decl. of Pellerito, ¶ 13).

Another notably absent witness from Penders' list is Mr. Spallone, the person who executed the ACP-Penders Agreements on behalf of ACP in 1996. Mr. Spallone, on information and belief, lives and works in New York City, in this District. (Decl. of Pellerito, ¶ 14).

Amber Greenlee is listed second by Penders in his list and proferred to testify about "Archie's standard practices with regard to contracts." Yet, in her entire history, Ms. Greenlee is responsible for submission of only *one page* of work product to ACP. One page. And, Ms. Greenlee executed Independent Contractor's Agreements with ACP. (Decl. of Pellerito, ¶ 7, Exhibit A). Yet, Penders claims this case must be transferred to California so she can testify at trial in this case.

Bernadette Shahin is listed next in Penders' list. On information and belief Ms. Shahin is Penders' wife. (Decl. of Pellerito, ¶ 8).

Scott Shaw was an independent contractor for ACP in the early 90's. ACP ceased doing business with Mr. Shaw when he failed to deliver work product in a timely manner. That was more than 15 years ago. (Decl. of Pellerito, ¶ 9).

As to Mr. Kazeleh, Mr. Ho and Mr. Mitchroney, these individuals had work product published by ACP under contract through Teenage Mutant Ninja Turtles' parent company (at the time, Mirage Studios). They did not work directly for ACP. Rather, ACP's agreement was with Mirage Studios. In addition, ACP published at most 15 pages of Mr. Kazeleh's work. (Decl. of Pellerito, ¶ 10).

Elliot Maggin is a well known former writer for DC Comics, and identified as a witness to testify about "standard industry practices…" Maggin has no relation whatsoever to ACP, or Penders' association with ACP. Again, leaving aside for the moment whether expert testimony would be appoprirate in this case, this Court should not base a decision on whether to transfer this case on the location of Penders' possible expert witnesses, who have absolutely no factual connection to this case. (Decl. of Pellerito, ¶ 11). Penders can just as easily find an industry expert in the New York area if he is concerned about proximity to the courthouse. As noted above, Marvel and DC are both located here and would surely have experienced people in this field who could opine on industry practices, if such testimony is allowed by the Court in this matter.

Penders conveniently omits as witnesses from his list, the following who would testify for ACP (and are known by Penders and his counsel):

Mike Pellerito, President of ACP, who has personal knowledge of Penders work and relationship with ACP, will testify in this case. Mr. Pellerito lives in this District and works at ACP's offices in this District. Mr. Pellerito will testify that, during his tenure since 2000, it has

been ACP's policy to always have independent contractors sign agreements which are forms similar to the ACP-Penders Agreements, that he has personal knowledge and oversight of ACP's filing systems, and that the fully executed ACP-Penders Agreements were maintained by ACP in the ordinary course of business in their filing systems, and produced as they were kept by ACP. Mr. Pellerito will also testify that ACP maintains fully executed agreements with more than 250 independent contractors. (Decl. of Pellerito, ¶¶ 1-3).

Victor Gorelick, co-President of ACP, also lives in this District and works at ACP's offices in this District. Mr. Gorelick also has personal knowledge of Penders work history with ACP. Mr. Gorelick has been employed by ACP since the 1950's and will testify that he specifically remembers the execution and submission by Penders of the ACP-Penders Agreements, and that the ACP-Penders Agreements that are attached to the complaint in this case are true and accurate copies of the documents that Penders executed and submitted to ACP. Mr. Gorelick was also responsible for keeping the files which included these agreements, and he was personally and intimately familiar with Penders and his submissions of work product to ACP in this District, over the relevant years. (Decl. of Pellerito, ¶ 17).

Jon Goldwater, CEO of ACP, will also testify. Mr. Goldwater is a resident in this District and works at ACP's offices in Mamaroneck. He has intimate knowledge of ACP's business practices and the facts alleged in the complaint. He will testify that ACP currently has executed independent contractor agreements with more than 250 individuals who contribute work product to ACP, and that many of these individuals reside in and around the northeast. (Decl. of Pellerito, ¶ 18).

Thus, Penders erroneously claims that "most of the key witnesses necessary for this litigation reside in the Central District of California." (Penders' Motion to Dismiss, Pg. 19). This bold conclusion conveniently disregards ACP's witnesses, and its executives, who of course are

located in this District. And, this significantly overstates the types of witnesses identified by Penders in his moving papers. Most of the witnesses he identifies are not percipient fact witnesses relevant to the claims in this case, but rather to testify about "standard practices." And, in some instances these witnesses have very limited experience working with ACP in any event. The location of Penders' potential experts should not dictate the location of this case. He can just as easily locate an expert in and around the New York area. (Decl. of Pellerito, ¶ 15).

Penders' suggestion that no key witnesses reside anywhere other than in or near the Central District of California is not credible. At most, transferring venue to California would only serve to shift the burden of inconvenience from one party's witnesses to the other. (Decl. of Pellerito, ¶ 16).Therefore this factor does not support Penders' motion to transfer.

*3) Location of relevant documents and relative ease of access to sources of proof*

In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly. *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008)

Penders argues that "All of my documents, materials, and things pertinent to this case… are located in Granada Hills, CA." (Decl. of Penders ¶ 69) Of course, by the same token, documents and records pertinent to ACP's case are located in New York. (Decl. of Pellerito, ¶ 19). Furthermore, the materials that Penders recites (e.g. contracts, payment vouchers, correspondence, copyright applications, copyright registrations and deposit materials, original works of authorship, scripts, outlines, story layouts, sketches, receipts, shipping records, phone records, physical artwork, models, and related documents (Decl. of Penders ¶ 69) are all easily transportable (likely for nominal cost, once digitized for production in this case), a fact underscored by the court in *ESPN*. And, in any event, if the transfer were to occur based upon a burden of production, then this burden would merely be shifted from one party to the other. (Decl. of Pellerito, ¶ 20). Because

this District has recognized that there is little burden transporting these materials, and even if there is a burden, transfer would only shift the burden from one party to the other, this factor does not support Penders' motion to transfer.

*4) Convenience of Parties*

The convenience of the parties is a neutral factor if it merely shifts the burden of inconvenience to the other party. *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 516 (S.D.N.Y. 2004). Penders argues that he is in California, and therefore litigating in New York is inconvenient, while litigating in California would be convenient. However, this merely shifts the burden of inconvenience to ACP, which is in New York and therefore would find litigating in California inconvenient. (Decl. of Pellerito, ¶ 21). Therefore this factor also does not support Penders' motion to transfer.

*5) Locus of Operative Facts*

Penders argues that the locus operative facts is in California because the harm from copyright violation occurs where the rights are held, and that because ACP has merely alleged an exclusive license, the rights are held by the licensor, which resides in California. (Penders' Motion to Dismiss, Pgs. 20-21). However, this is a smokescreen. The claims in this case are for breach of contract and declaratory judgment. The locus of operative facts relevant to these claims is in New York because the ACP Penders Agreements which are central to this dispute were created in this District, executed in New York (while Penders was a resident of New York), performed in New York, are related to goods or services supplied by Penders to ACP in New York. Penders' current presence in California is irrelevant to this factor. (Decl. of Pellerito, ¶ 22). Because the locus of operative facts is in New York, this factor does not support Penders' motion to transfer.

*6) Availability of process to compel the attendance of unwilling witnesses*

Penders argues that because he has identified witnesses in California, the availability of process to compel the attendance of unwilling witnesses in the Central District of California weighs in his favor. The fact that Penders has listed witnesses who have no connection to the facts of this case (more than half) and also might not be willing to testify on his behalf is quite puzzling. (Decl. of Pellerito, ¶ 23). It would seem that he would want the availability of subpoena power to compel attendance at a trial of ACP's executives and former employees that live and work in this District are connected to the facts of this case. Thus, it would seem Penders should want venue in this District to be certain that he will be able to compel ACP's employees to testify at trial, not the other way around, given the theories espoused in his moving papers. But, once again, Penders overlooks the fact that ACP will be calling witnesses located in New York, too. Furthermore, Penders may avail himself of the subpoena powers of the Central District of California for the purposes of obtaining testimony from uncooperative witnesses and preserving this for trial through deposition. By transferring venue to California, the court would only succeed in transferring the burden of unavailability of process to compel unwilling witnesses from Penders to ACP, and that alone is insufficient to satisfy the burden necessary to win a transfer of venue. (Decl. of Pellerito, ¶ 24).

*7) Relative means of the parties*

"Where a disparity between the parties exists… the Court may also consider the relative means of the parties in determining whether to transfer." *Miller v. Bombardier Inc.*, Case No. 93-CIV-0376, 1993 WL 378585, at *5 (S.D.N.Y. Sept. 23, 1993) (quoting *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 989 (E.D.N.Y. 1991)). However, a "mere shifting of inconveniences" is not sufficient to transfer a case. *Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115, 118 (S.D.N.Y. 2005).

Penders relies heavily on *Walker* in his brief. In *Walker,* the court granted the defendant's motion to transfer to California because Walker, as a foreign plaintiff, was entitled to less deference as to its choice of forum than a United States plaintiff would be, and because Walker, a resident of the United Kingdom, would have to travel thousands of miles anyway whether or not the court transferred, while the defendant, a resident of California, could be spared a similar burden by granting a transfer. *Walker* is distinguishable on both these points. As a resident of the United States, and this District, ACP is entitled to greater deference to its choice of forum than Walker. Furthermore, ACP is a resident of this District, unlike Walker who was not, and a transfer of venue would merely shift the burden of travel from Penders to ACP, where such a transfer was immaterial to Walker who resided in London. Therefore, this factor does not weigh as heavily in favor of Penders as he suggests.

In addition, this Court should consider Penders' pleas of poverty in context – Penders now has three law firms working on this case. Michael Roman Ertel, of Lysaght, Lysaght & Ertel LLP, New York, has appeared as "local counsel" (Penders' Mem. at 23), to assist lead counsel Michael L. Lovitz, of Lovitz IP Law PC, Beverly Hills, California (who has not as of yet moved to appear *pro hac vice,* but who is controlling Penders' defense and preparing all substantive filings for Mr. Ertel), and at the Rule 16 conference another New York intellectual property lawyer appeared at counsel table and announced to your undersigned that he would be involved in the case as co-counsel for Penders. Engaging three law firms belies Penders' claims of hardship.

This factor should also be discounted considerably due to Penders acts and conduct. First, as explained in the complaint, Penders waited more than a decade, and in some cases more than 14 years to assert his claimed rights. If Penders had asserted his rights in a timely fashion, while he was still a resident of New York, then cost relative to venue would not be an issue, since a timely

assertion of his rights would have been while he was still living in New York. Penders should not be able to benefit from what can only be described as dilatory conduct. (Decl. of Pellerito, ¶ 25).

*8) Forum's familiarity with the governing law*

Penders argues that the "Central District of California is particularly experienced in copyright law, and possesses a familiarity that is as wide as it is deep." Penders Brief at 23. Be that as it may, it is no less true of the Southern District of New York. Penders mentions that Los Angeles is home to major motion picture studios. The Southern District of New York is home to Time Warner, owner of DC Comics, resident in New York, and Marvel Comics, two major comic book publishers who are more relevant to this controversy than movie studios.

Penders insinuation that the Central District of California is somehow more experienced in copyright law than the Southern District of New York is also a bit hollow. A very brief selection of recent "headline" copyright cases includes *Viacom Int'l Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514 (S.D.N.Y. 2010), *Fairey et al v. The Associated Press*, Case No. 09-CV-1123 (S.D.N.Y.) (the Obama "Hope" photo/poster case), *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513 (S.D.N.Y. 2008) (the *Harry Potter Lexicon* case), the ongoing Google Books class action suits (*The Authors Guild et al., v. Google, Inc.*, Case No. 10-CV-8136 (S.D.N.Y.) and *American Society of Media Photographers, Inc. et al. v. Google, Inc.*, Case No. 10-CV-2977 (S.D.N.Y.)), *Agence France-Presse v. Morel*, Case No. 10-CV-2730 (S.D.N.Y.) (litigation over copyright in pictures shared via Twitter) and ongoing litigation between Marvel Comics and the heirs of Jack Kirby. (*Marvel Worldwide, Inc. et al v. Kirby et al*, Case No. 10-CV-00141 (S.D.N.Y.)). Furthermore, this District is especially competent to hear this case because it has already heard and ruled on an agreement identical to one of ACP-Penders Agreements, enforcing ACP's rights against another contractor-turned-copyright-claimant. *Archie Comics Publications, Inc. v. DeCarlo*, 258

F.Supp.2d 315 (S.D.N.Y. 2003). Because this District is at least as, if not more, competent than the proposed transfer venue, this factor does not support Penders' motion to transfer.

*9) Trial efficiency and the interests of justice, based on the totality of the circumstances*

It is clear that, upon scrutiny, nearly all of the factors do not favor transfer, and to the extent any can be argued as favoring Penders, a transfer would merely shift the burden from one party to the other. These showings are insufficient to meet the heavy burden Penders must sustain, to make a "clear and convincing" case that transfer of venue is warranted. In fact, this Court need only enforce the choice of venue provisions in the executed written agreements between the parties in order to dispose of this motion. However, to the extent the Court entertains the multi-factor analysis, it should give considerable weight to ACP's decision to bring suit in this District, the forum selection clause, the location of witnesses for ACP, the easily transportable nature of the evidence in this case (documents), the Court's familiarity with the subject matter of the litigation (*DeCarlo* case, among others), and the other factors analyzed above. The Court should also give consideration to Penders belated claims of ownership and assertion of rights in these works, and the relative inconvenience this alone has caused ACP. Penders should not be allowed to gain advantage from his dilatory conduct. Based on a totality of the circumstances and the interests of justice, it is apparent that the court should deny Penders' motion to transfer.

## IV. Conclusion

Penders has failed to carry his burden on either his motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or, in the alternative, to transfer to the Central District of California pursuant to 28 U.S.C. §1404(a). For the purposes of finding personal jurisdiction the Court must accept ACP's pleadings and allegations as true. On that basis, the Court may either find jurisdiction by the forum selection and consent-to-jurisdiction terms of the written contracts themselves, or by long-arm jurisdiction over the written contracts. In fact, the

Court may disregard the contracts altogether and still find jurisdiction under the long-arm statute on the basis of Penders' 12 years of supplying his services to New York in consideration of fixed fee compensation. There is no reason that the 12(b)(2) motion should not be dismissed outright at this stage.

In addition, the Court should dismiss Penders' motion to transfer. A transfer of venue to the Central District of California achieves nothing other than shifting the burden of inconvenience from one party to the other. There is no gamesmanship here by ACP – ACP has chosen this forum for plainly legitimate reasons, namely that it resides here and pursuing this action in this District is desirable for it. §1404(a) is not intended to allow Penders to have veto power over ACP's decision to pursue its claims in its home district.

For the foregoing reasons, and in the interest of justice, the court should deny Penders' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and Motion to Transfer pursuant to 28 U.S. C. §1404(a).

Respectfully submitted,
DISERIO MARTIN O'CONNOR & CASTIGLIONI LLP

By: _/s/________________________________
Matthew C. Wagner (MW9432)
mwagner@dmoc.com

Scott Harrington (SH0588)
sharrington@dmoc.com

Diserio Martin O'Connor & Castiglioni LLP
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: 914-684-0090