Matthew C. Wagner
mwagner@dmoc.com
Scott Harrington
sharrington@dmoc.com
DISERIO MARTIN O'CONNOR
& CASTIGLIONI, LLP
50 Main Street, Suite 1000
White Plains, NY 10606
(914) 684-0090 Tel
(914) 684-0590 Fax

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARCHIE COMIC PUBLICATIONS, INC.,

Plaintiff,

v.

KENNETH W. PENDERS, II,
p/k/a/ KEN PENDERS,

Defendant.

Case No.: 10-CV-8858 (RMB)

Judge: Hon. Richard M. Berman

**DECLARATION OF MICHAEL PELLERITO IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE TO TRANSFER PROCEEDINGS**

I, MIKE PELLERITO, declare under penalty of perjury:

1. I am President of Plaintiff Archie Comics Publications, Inc. (“ACP”), located at 325 Fayette Avenue, Mamaroneck, New York. I make this declaration in support of Plaintiff’s Memorandum of Law In Opposition To Defendant’s Motion To Dismiss For Lack Of Personal Jurisdiction Or In The Alternative To Transfer Proceedings.

2. I joined ACP in 2000 as a Production Artist. I eventually was promoted to Editor, Managing Editor, Vice President and Managing Editor, and then became President in 2010.

3. I have personal knowledge of Penders’ work and relationship with ACP. I live in this District and work at ACP’s offices in this District. During my tenure since 2000, it has been ACP’s policy to always have independent contractors sign agreements which are forms similar to the ACP-Penders Agreements. I have personal knowledge and oversight of ACP’s filing systems, and the fully executed ACP-Penders Agreements were maintained by ACP in the ordinary course of business in our filing systems, and produced as they were kept by ACP. Contrary to the assertion and innuendo advanced by Penders, ACP maintains fully executed agreements with more than 250 independent contractors.

4. In order for an independent contractor to be paid, it is ACP’s policy to require that an Independent Contractor’s Agreement be executed. A review of ACP’s files reveals, literally, hundreds of executed independent contractor’s agreements, including those for contributors to ACP’s licensed properties, dating back to at least 1988. A representative sample of names and addresses of the contractors who have executed these agreements is attached hereto as Exhibit A. Each of these potential witnesses are located throughout the United States, notably concentrated in the northeast, and could testify about their experiences with ACP in this regard.

5. ACP's motives for pursuing its claims in this district are plainly legitimate: ACP is resident of, and operates its business in, this district, less than 25 miles from the Southern District of New York courthouse in Foley Square. Not only is litigating here clearly desirable and convenient for ACP, it is also highly appropriate and reasonable: this District comports with the forum selection clauses in the ACP-Penders Agreements; the gravamen of ACP's complaint is a breach of these agreements, which were performed in this District; and the Works subject to those agreements were delivered by Penders to ACP in this District over the course of many years.

6. Penders' proffered list of witnesses is disingenuous at best. Penders emphasizes the location of his identified witnesses, nearly all of whom just happen to be in California. But more than half of the 12 identified witnesses are offered to testify regarding "Archie's standard practices with regard to contracts" – yet none of them are employed by ACP.

7. Amber Greenlee is listed second by Penders in his list and proferred to testify about "Archie's standard practices with regard to contracts." Yet, in her entire history, Ms. Greenlee is responsible for submission of only *one page* of work product to ACP. One page. And, Ms. Greenlee executed an independent contractor's agreements with ACP! See Exhibit A. Yet, Penders claims this case must be transferred to California so she can testify at trial in this case.

8. Bernadette Shahin is listed next in Penders' list. On information and belief Ms. Shahin is Penders' wife.

9. Scott Shaw was an independent contractor for ACP in the early 90's. ACP ceased doing business with Mr. Shaw when he failed to deliver work product in a timely manner. That was more than 15 years ago.

10. As to Mr. Kazeleh, Mr. Ho and Mr. Mitchroney, these individuals had work product published by ACP under contract through Teenage Mutant Ninja Turtles' parent company (at the time, Mirage Studios). They did not work directly for ACP. Rather, ACP's agreement was with Mirage Studios. In addition, ACP published at most 15 pages of Mr. Kazeleh's work.

11. Elliot Maggin is a well known former writer for DC Comics, and identified as a witness to testify about "standard industry practices…" Maggin has no relation whatsoever to ACP, or Penders' association with ACP. It seems inappropriate for this Court to base a decision on whether to transfer this case on the location of Penders' possible expert witnesses, who have absolutely no factual connection to this case.

12. The Court should take notice that other notable and historic comic companies are located in New York and could just as easily (if not more credibly) testify about "standard industry practices" – two other storied and most notably historic comic publishers are located in New York City: DC Comics (Superman and Batman) is located at 1700 Broadway, New York, NY 10019; and Marvel Enterprises (Spider-Man, Captain America, The Incredible Hulk, Daredevil, Iron Man) is located at 135 West 50th Street, 7th Floor, New York, NY 10020.

13. Conspicuously absent from Penders' list of witnesses is his "friend" Mr. Michael Kanterovich, who first introduced Penders to ACP and collaborated with Penders on the copyrighted works in question for a period. Based on Penders' declaration, it appears that Mr. Kanterovich would be able to testify on the origin of the relationship between ACP and Penders, and under what understandings work was done for ACP. (Decl. of Penders ¶¶ 19-35). Yet he is not named as a potential witness. Upon information and belief, Mr. Kanterovich is currently residing in Hollis, New Hampshire, which is significantly closer to New York than California.

14. Another notably absent witness from Penders' list is Mr. Edward Spallone, the person who executed the ACP-Penders Agreements on behalf of ACP in 1996. Mr. Spallone, on information and belief, lives and works in New York City, in this District.

15. The location of Penders' potential experts should not dictate the location of this case. He can just as easily locate an expert in and around the New York area.

16. Transferring venue to California would only serve to shift the burden of inconvenience from Penders to ACP, and from Penders' potential witnesses to ACP's. It would be unreasonable and burdensome to ACP to have to litigate this case in California.

17. In addition to myself, another witness who would be called in this matter by ACP is Victor Gorelick, now Co-President and Editor-in-Chief of ACP. Mr. Gorelick has been employed by ACP since the 1950's. He is resident in this District, and works at ACP's offices in Mamaroneck in this District. Mr. Gorelick will testify that he recalls with specificity Penders' execution of ACP-Penders Agreements and his submission of those agreement to ACP in 1996 – one of which is the very same 1996 Revised Newsstand Comic Independent Contractor's Agreement which was enforced by Judge Kaplan in 2003 in the *DeCarlo* case. He will also testify that the ACP-Penders Agreements that are attached to the complaint in this case are true and accurate copies of the documents that Penders executed and submitted to ACP. Mr. Gorelick was also responsible for keeping the files which included these agreements, and he was personally and intimately familiar with Penders and his submissions of work product to ACP in this District, over the relevant years.

18. Jon Goldwater, CEO of ACP, will also testify. Mr. Goldwater is a resident in this District and works at ACP's offices in Mamaroneck. He has intimate knowledge of ACP's business practices and the facts alleged in the complaint. He will testify that ACP currently has

executed independent contractor agreements with more than 250 individuals who contribute work product to ACP, and that many of these individuals reside in and around the northeast.

19. The documents and records pertinent to ACP's case are located in New York.

20. If the case were transferred the burden of production would merely be shifted from Penders to ACP.

21. Litigating in New York would be convenient for ACP, since it is located in New York, while litigating in California would be inconvenient.

22. The claims in this case are for breach of contract and declaratory judgment. The locus of operative facts relevant to these claims is in New York because the ACP Penders Agreements which are central to this dispute were created in this District, executed in New York (while Penders was a resident of New York), performed in New York, are related to goods or services supplied by Penders to ACP in New York. Penders' current presence in California is irrelevant to this factor.

23. I find it puzzling that Penders has listed witnesses who have no connection to the facts of this case (more than half), which means he had a broad pool to pick from, yet is still concerned that they might not be willing to testify on his behalf.

24. By transferring venue to California, the court would only succeed in transferring the burden of unavailability of process to compel unwilling witnesses from Penders to ACP.

25. Penders waited more than a decade, and in some cases more than 14 years to assert his claimed rights. If Penders had asserted his rights in a timely fashion, while he was still a resident of New York, then cost relative to venue would not be an issue, since a timely assertion of his rights would have been while he was still living in New York. Penders should not be able to benefit from what I can only describe as dilatory conduct.

I, Michael Pellerito, declare under penalty of perjury that the foregoing is true and correct. Executed on March 1, 2011.

Michael Pellerito, President
Archie Comics Publications, Inc.