**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------- X

ARCHIE COMIC             :
PUBLICATIONS, INC.        :
                              : Case No. 10 Civ. 08858 (RMB)
         Plaintiff,        :
                              :
         v.             : **AMENDED ANSWER, AFIRMATIVE**
                              : **DEFENSES, AND**
KENNETH W. PENDERS, II,    : **COUNTERCLAIMS WITH JURY**
p/k/a KEN PENDERS          : **DEMAND**
                              :
         Defendant.       : **Electronically Filed**
                              :

-------------------------------------------------- X

For his Amended Answer to the Complaint, defendant Kenneth W. Penders, II responds as follows:

1.      Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 1 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

2.      Defendant admits he formerly resided at 1144 Oliver Street, North Tonawanda, NY 14120. Defendant further admits he is an individual residing in California, but states that he currently resides at 12147 Woodley Avenue, Granada Hills, California 91344-2846. Except to the extent admitted, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 2 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

3.      Defendant admits that Plaintiff purports that this is a declaratory judgment action for the reasons set forth in paragraph 3 of the complaint, but otherwise denies the remaining allegations of paragraph 3, and leaves Plaintiff to its proof.

4.      Defendant admits that attached to his copy of the Complaint are photocopies of a document titled "Revised Newsstand Comic Independent Contractor's Agreement" as Exhibit A, and a document titled "ACP Licensed Comic Books Independent Contractor's Agreement" as Exhibit B. Defendant admits that the contents of paragraph 27 of the document attached as Exhibit A and portions of the contents of paragraph 11 of the document attached as Exhibit B appear to be reproduced in Paragraph 4 of the Complaint. Defendant denies the existence of any "ACP-Penders Agreements". Except to the extent admitted or denied, Defendant denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 4 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

5.      The allegations of Paragraph 5 of the Complaint are denied.

6.      The allegations of Paragraph 6 of the Complaint are denied.

7.      Defendant admits that he sent a letter addressed to Plaintiff at its place of business in New York. Except to the extent admitted, Defendant denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 7 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

8.      The allegations of Paragraph 8 of the Complaint are denied.

9.      The allegations of Paragraph 9 of the Complaint are denied.

10.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 10 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

11.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 11 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

12.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 12 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

13.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 13 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

14.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 14 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

15.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 15 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

16.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 16 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

17.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 17 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

18.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 18 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

19.     Defendant admits that he worked as an independent contractor for Plaintiff between 1993 and 2005. Defendant admits that he created stories, scripts, artwork and related original works of authorship while working as an independent contractor for Plaintiff. Except to the extent admitted, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 19 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

20.     Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint) and therefore the allegations of Paragraph 20 of the Complaint are denied.

21.     Defendant admits that attached to his copy of the Complaint are photocopies of a document titled "Revised Newsstand Comic Independent Contractor's Agreement" as Exhibit A, and a document titled "ACP Licensed Comic Books Independent Contractor's Agreement" as Exhibit B. Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint) and therefore the allegations of Paragraph 21 of the Complaint are denied.

22.     Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint). Defendant admits that the contents of paragraph 1 of the document attached as Exhibit A appears to be reproduced in Paragraph 22 of the Complaint, and therefore, except to the extent admitted, the allegations of Paragraph 22 of the Complaint are denied.

23.     Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint). Defendant admits that portions of the contents of paragraph 2 of the document attached as Exhibit A appears to be reproduced in Paragraph 23 of the Complaint, and therefore, except to the extent admitted, the allegations of Paragraph 23 of the Complaint are denied.

24.     Defendant admits that the contents of paragraph 4 of the document attached as Exhibit A appear to be reproduced in Paragraph 24 of the Complaint. Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint) and therefore except to the extent admitted, the allegations of Paragraph 24 of the Complaint are denied.

25.     Defendant admits that the contents of paragraph 5 of the document attached as Exhibit A appear to be reproduced in Paragraph 25 of the Complaint. Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint) and therefore, except to the extent admitted, the allegations of Paragraph 25 of the Complaint are denied.

26.     Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint) and therefore denies of the allegations of Paragraph 26 of the Complaint, and leaves Plaintiff to its proof.

27.     Defendant admits that portions of the contents of paragraph 18 of the document attached as Exhibit A appear to be reproduced in Paragraph 27 of the Complaint. Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the

Licensed Comic Books IC Agreement (Exhibit B of the Complaint) and therefore, except to the extent admitted, the allegations of Paragraph 27 of the Complaint are denied.

28.     Defendant admits that the contents of paragraph 19 of the document attached as Exhibit A appear to be reproduced in Paragraph 28 of the Complaint. Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint) and therefore, except to the extent admitted, the allegations of Paragraph 28 of the Complaint are denied.

29.     Defendant admits that portions of the contents of paragraphs 20 and 23 of the document attached as Exhibit A appear to be reproduced in Paragraph 29 of the Complaint. Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint) and therefore, except to the extent admitted, the allegations of Paragraph 29 of the Complaint are denied.

30.     Defendant admits that portions of the contents of paragraph 33 of the document attached as Exhibit A appear to be reproduced in Paragraph 30 of the Complaint. Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint) and therefore, except to the extent admitted, the allegations of Paragraph 30 of the Complaint are denied.

31.     Defendant admits that portions of the contents of paragraphs 3 and 5 of the document attached as Exhibit B appear to be reproduced in Paragraph 31 of the Complaint. Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint) and therefore, except to the extent admitted, the allegations of Paragraph 31 of the Complaint are denied.

32.     Defendant admits that portions of the contents of paragraph 7 of the document attached as Exhibit B appear to be reproduced in Paragraph 32 of the Complaint.  Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint) and therefore, except to the extent admitted, the allegations of Paragraph 32 of the Complaint are denied.

33.     The allegations of Paragraph 33 of the Complaint are denied.

34.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 34 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

35.     Defendant admits that in or around February 2009 he filed copyright applications with the U.S. Copyright Office to register certain of those works of authorship he authored. Except to the extent admitted, the allegations of Paragraph 35 of the Complaint are denied.

36.     Defendant admits that on or about July 7, 2010, he reported on his blog the fact that the U.S. Copyright Office began issuing registration certificates for the applications he filed. Except to the extent admitted, the allegations of Paragraph 36 of the Complaint are denied.

37.     Defendant admits that a letter from his attorney Michael Lovitz was sent to Plaintiff on July 2, 2010, that included with such letter were copies of fourteen (14) U.S. Copyright Registrations, and that the same are attached to the Complaint as Exhibit D. Except to the extent admitted, the allegations of Paragraph 37 of the Complaint are denied.

38.     The allegations of Paragraph 38 of the Complaint are denied.

39.     Defendant admits that portions of the contents of Exhibit D are reproduced in Paragraph 39 of the Complaint. Except to the extent admitted, the allegations of Paragraph 39 of the Complaint are denied.

40.     Defendant admits that portions of the contents of Exhibit D are reproduced in Paragraph 40 of the Complaint. Except to the extent admitted, the allegations of Paragraph 40 of the Complaint are denied.

41.     Defendant admits that portions of the contents of Exhibit D are reproduced in Paragraph 41 of the Complaint. Except to the extent admitted, the allegations of Paragraph 41 of the Complaint are denied.

42.     Defendant admits that portions of the contents of Exhibit D are reproduced in Paragraph 42 of the Complaint. Except to the extent admitted, the allegations of Paragraph 42 of the Complaint are denied.

43.     Defendant admits that portions of the contents of paragraph 5 of the document attached as Exhibit A appear to be reproduced in Paragraph 43 of the Complaint.  Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint) and therefore, except to the extent admitted, denies the allegations of Paragraph 43 of the Complaint, and leaves Plaintiff to its proof.

44.     The allegations of Paragraph 44 of the Complaint are denied.

45.     Defendant admits that portions of the contents of paragraph 7 of the document attached as Exhibit A appear to be reproduced in Paragraph 45 of the Complaint.  Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint) and therefore, except to the extent admitted, denies the allegations of Paragraph 45 of the Complaint, and leaves Plaintiff to its proof.

46.     The allegations of Paragraph 46 of the Complaint are denied.

47.     Defendant admits that the date of registration for each of the fourteen (14) registrations contained in Exhibit D are more than five (5) years after the date of first publication for each subject work.  Except to the extent admitted, the allegations of Paragraph 47 of the Complaint are denied.

48.     Defendant admits that the date of registration for each of the fourteen (14) registrations contained in Exhibit D are more than three (3) months after the date of first publication for each subject work.  Except to the extent admitted, the allegations of Paragraph 48 of the Complaint are denied.

49.     Defendant admits that none of the fourteen (14) registrations contained in Exhibit D include a statement that the subject work was made for hire.  Except to the extent admitted, the allegations of Paragraph 49 of the Complaint are denied.

50.     The allegations of Paragraph 50 of the Complaint are denied.

51.     The allegations of Paragraph 51 of the Complaint are denied.

52.     Defendant admits that Plaintiff's response to Defendant's July 2, 2010 letter is attached as Exhibit E to the Complaint.  Except to the extent admitted, the allegations of Paragraph 52 of the Complaint are denied.

53.     Defendant admits that attached to Plaintiff's July 13, 2010 letter were copies of the documents attached as Exhibits A and B to the Complaint.  Defendant denies the authenticity of the Contractor's Agreement (Exhibit A of the Complaint) and the Licensed Comic Books IC Agreement (Exhibit B of the Complaint).  Defendant admits Plaintiff's July 13, 2010 letter contained notice language and demands, including a demand that Defendant cancel the fourteen (14) registrations attached to his July 2, 2010 letter.  Defendant denies the existence of any "ACP-Penders Agreements".  Except to the extent admitted or denied, Defendant is without

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 53 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

54.     The allegations of Paragraph 54 of the Complaint are admitted.

55.     Defendant admits that his counsel informed counsel for Plaintiff by telephone that Defendant would not make any further statements at the San Diego trade show.  Defendant admits he has not retracted his statements concerning his ownership of copyright or issuance of registrations by the Copyright Office.  Except to the extent admitted, Defendant denies the allegations of Paragraph 55.

56.     The allegations of Paragraph 56 of the Complaint are admitted.

57.     Defendant admits that Exhibit C, page 1, contains his blog post of October 19, 2010, but otherwise denies the allegations of Paragraph 57 of the Complaint.

58.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 58 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

59.     Defendant admits that Plaintiff 's October 27, 2010 letter is attached as Exhibit H, and that such letter contains statements and demands of Plaintiff concerning the originals of the alleged agreements between the parties, Defendant's legal position, public statements and registrations.  Defendant denies the existence of any "ACP-Penders Agreements".  Except to the extent admitted or denied, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 59 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

60.     Defendant admits that his November 4, 2010 letter is attached as Exhibit I, and that portions of such letter are reproduced in Paragraph 60 of the Complaint. Defendant denies

the existence of any "ACP-Penders Agreements". Except to the extent admitted or denied, the allegations of Paragraph 31 of the Complaint are denied.

61.    Defendant admits that Exhibit J contains information on numerous copyright registrations identifying "Ken Penders" as copyright claimant. Except to the extent admitted, Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 61 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

62.    The allegations of Paragraph 62 of the Complaint are denied.

63.    The allegations of Paragraph 63 of the Complaint are denied.

64.    The allegations of Paragraph 64 of the Complaint are denied.

65.    The allegations of Paragraph 65 of the Complaint are denied.

66.    The allegations of Paragraph 66 of the Complaint are denied.

67.    The allegations of Paragraph 67 of the Complaint are denied.

68.    The allegations of Paragraph 68 of the Complaint are denied.

69.    Plaintiff's infringing activities are ongoing, and therefore Defendant denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 69 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

70.    Defendant admits that none of the registrations contained in Exhibit J include a statement that the subject work was made for hire. Except to the extent admitted, the allegations of Paragraph 70 of the Complaint are denied.

71.    The allegations of Paragraph 71 of the Complaint are denied.

72.    The allegations of Paragraph 72 of the Complaint are denied.

73.     The allegations of Paragraph 73 of the Complaint are denied.

74.     Defendant restates his responses to Paragraphs 1-73 of the Complaint as if fully stated in this paragraph.

75.     The allegations of Paragraph 75 of the Complaint are denied.

76.     The allegations of Paragraph 76 of the Complaint are denied.

77.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 77 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

78.     The allegations of Paragraph 78 of the Complaint are denied.

79.     The allegations of Paragraph 79 of the Complaint are denied.

80.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 80 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

81.     Defendant restates his responses to Paragraphs 1-80 of the Complaint as if fully stated in this paragraph.

82.     The allegations of Paragraph 82 of the Complaint are denied.

83.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 83 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

84.     The allegations of Paragraph 84 of the Complaint are denied.

85.     The allegations of Paragraph 85 of the Complaint are denied.

84(a).  The allegations of Paragraph 84(a) of the Complaint are denied.

85(a).   Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 85(a) of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

86.   Defendant restates his responses to Paragraphs 1-85(a) of the Complaint as if fully stated in this paragraph.

87.   The allegations of Paragraph 87 of the Complaint are denied.

88.   Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 88 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

89.   The allegations of Paragraph 89 of the Complaint are denied.

90.   The allegations of Paragraph 90 of the Complaint are denied.

91.   The allegations of Paragraph 91 of the Complaint are denied.

92.   The allegations of Paragraph 92 of the Complaint are denied.

93.   The allegations of Paragraph 93 of the Complaint are denied.

94.   The allegations of Paragraph 94 of the Complaint are denied.

95.   The allegations of Paragraph 95 of the Complaint are denied.

96.   The allegations of Paragraph 96 of the Complaint are denied.

97.   The allegations of Paragraph 97 of the Complaint are denied.

98.   Defendant admits Plaintiff sent the letters attached as Exhibits E, F and H to the Complaint. Except to the extent admitted, Defendant denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 98 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

99.     Defendant admits he was generally aware that Plaintiff had a business relationship of an unknown nature with Sega, but denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 99 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

100.    The allegations of Paragraph 100 of the Complaint are denied.

101.    The allegations of Paragraph 101 of the Complaint are denied.

102.    Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 102 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

103.    The allegations of Paragraph 103 of the Complaint are denied.

104.    The allegations of Paragraph 104 of the Complaint are denied.

105.    Defendant restates his responses to Paragraphs 1-104 of the Complaint as if fully stated in this paragraph.

106.    The allegations of Paragraph 106 of the Complaint are denied.

107.    The allegations of Paragraph 107 of the Complaint are denied.

108.    The allegations of Paragraph 108 of the Complaint are denied.

109.    The allegations of Paragraph 109 of the Complaint are denied.

110.    The allegations of Paragraph 110 of the Complaint are denied.

111.    The allegations of Paragraph 111 of the Complaint are denied.

112.    The allegations of Paragraph 112 of the Complaint are denied.

113.    The allegations of Paragraph 113 of the Complaint are denied.

114.    The allegations of Paragraph 114 of the Complaint are denied.

115.    The allegations of Paragraph 115 of the Complaint are denied.

116.   The allegations of Paragraph 116 of the Complaint are denied.

117.   Defendant admits Plaintiff sent the letters attached as Exhibits E, F and H to the Complaint. Except to the extent admitted, Defendant denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 117 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

118.   Defendant denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 118 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

119.   Defendant denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 119 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

120.   The allegations of Paragraph 120 of the Complaint are denied.

121.   Defendant denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 121 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

122.   The allegations of Paragraph 122 of the Complaint are denied.

123.   The allegations of Paragraph 123 of the Complaint are denied.

124.   Defendant restates his responses to Paragraphs 1-123 of the Complaint as if fully stated in this paragraph.

125.   Defendant admits he was generally aware that Plaintiff had a business relationship of an unknown nature with Sega, but denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 125 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

126.    Defendant denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 126 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

127.    The allegations of Paragraph 127 of the Complaint are denied.

128.    Defendant admits he was generally aware that Plaintiff had a business relationship of an unknown nature with Sega, but denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 128 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

129.    The allegations of Paragraph 129 of the Complaint are denied.

130.    The allegations of Paragraph 130 of the Complaint are denied.

131.    Defendant denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 131 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

132.    Defendant denies or is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 132 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

133.    Defendant denies that Plaintiff is entitled to punitive damages, and is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 133 of the Complaint, and so denies the same, and leaves Plaintiff to its proof.

134.    Paragraph 134 requires no admission or denial.

## AFFIRMATIVE DEFENSES

1.      The complaint fails to state a claim upon which relief can be granted.

2.      Defendant is not infringing and has not infringed any valid copyright right of Plaintiff.

3.      Plaintiff's claims are barred by the doctrine of unclean hands.

4.      Plaintiff's claims for declaratory judgment are barred because neither Defendant's acts nor its conduct reasonably could have placed Plaintiff in fear that it would be sued by Defendant.

5.      Plaintiff's claims are barred because Defendant has not engaged in any unlawful or unfair business practices, and Defendant's conduct was performed in the exercise of an absolute right, and was therefore proper and/or justified.

6.      Plaintiff is not the owner of the asserted rights and, accordingly, lacks standing to assert claims regarding the same.

7.      Plaintiff's claims are improperly venued in this District.

8.      Plaintiff's claims for breach of contract are barred because Defendant never signed any contract with Plaintiff.

9.      Plaintiff's claims for breach of contract are barred because there was no agreement between the parties that any works of authorship created by Defendant for Plaintiff would be "works made for hire" prior to their creation.

10.     Plaintiff's claims for breach of contract are barred because Defendant has not entered into a valid contract with Plaintiff.

11.     Plaintiff's claims for breach of contract are barred because the contracts alleged by Plaintiffs are invalid.

12.     Plaintiff's claims for breach of contract are barred because the documents attached to the Complaint as Exhibits A and B are not authentic.

13.     Plaintiff's claim for breach of contract is barred based on agreements between Plaintiff and its contractors.

14.     Plaintiff's claims for tortious interference with business/economic advantage are barred because Defendant's actions were privileged because they were taken in a good faith effort to compete with Plaintiff and/or Defendant had an equal or superior interest in the subject matter of the prospective economic advantage.

15.     Plaintiff's claims for tortious interference with business/economic advantage are barred because Defendant's actions were reasonable steps to protect Defendant's own legal rights, including Defendant's own contractual rights and other intangible business interests.

16.     Plaintiff's claim for tortious interference with business/economic advantage is barred based on agreements between Plaintiff and its licensees and/or contractors.

17.     Defendant reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Copyright Laws of the United States, and any other defenses, at law or equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS

Defendant/Counterclaimant Kenneth W. Penders, II ("Penders") hereby sets forth the following Counterclaims against Plaintiff/Counterclaim-Defendant Archie Comic Publications, Inc., ("ACP") and demands a trial by jury for all issues so triable.

## PARTIES

1.      Penders is an individual residing at 12147 Woodley Avenue, Granada Hills, California.

2.      On information and belief, ACP is a New York corporation with a place of business at 325 Fayette Avenue, Mamaroneck, New York.

## JURISDICTION AND VENUE

3.      Jurisdiction in this Court is proper pursuant to Fed. R. Civ. Proc. 13, and under the Copyright Act pursuant to 17 U.S.C. § 501 *et seq.* and 28 U.S.C. § 1338. Venue in this Court is proper under 28 U.S.C. § 1391.

4.      By initiating this suit in this Court, ACP has consented to personal jurisdiction.

## FIRST COUNTERCLAIM

### (Declaratory Judgment)

5.      Penders repeats and incorporates herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1-4 above.

6.      This counterclaim is for declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and arises from an actual and justiciable controversy between ACP and Penders regarding alleged legal relationships between the parties, and alleged property rights including copyright rights.

7.      ACP filed its Complaint against Penders for, among other things, breaches of contract, tortious interference with business/economic opportunity, non-infringement of copyright, and for cancellation of copyright registrations.

8.     Penders did not enter into the contracts ACP alleges, and thus cannot be in breach. As part of this allegation, Penders repeats and realleges, and incorporates herein by reference, each of the allegations set forth in paragraphs 86-104 above in his Answer.

9.     Penders' activities do not constitute tortious interference with business/economic opportunity. As part of this allegation, Penders repeats and realleges, and incorporates herein by reference, each of the allegations set forth in paragraphs 124-133 above in his Answer.

10.    Penders' copyright registrations are valid. As part of this allegation, Penders repeats and realleges, and incorporates herein by reference, each of the allegations set forth in paragraphs 74-85 above in his Answer.

11.    A justiciable controversy exists between Penders and ACP concerning the alleged: breaches of contract; tortious interference with business/economic opportunity; copyrights; and other alleged rights of ACP.

12.    Penders seeks a judicial determination of his rights and liabilities by a declaration that Penders' activities do not constitute tortious interference, breach of contract, or any other violation of ACP's rights.

13.    Penders further seeks a judicial determination of the validity of his copyrights, and of ACP's infringement(s) thereof.

## SECOND COUNTERCLAIM

### (Copyright Infringement)

14.    Penders repeats and incorporates herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1-13 above.

15.    Penders has been a professional commercial and technical illustrator since 1974.

16.     From March 6, 1976 through December 14, 1979, Penders served as a technical illustrator in the United States Air Force, during which period Penders produced charts, graphics and text slides used in briefings to the Joint Chiefs of Staff, members of both Houses of Congress, Foreign Heads of State, and the President of the United States.

17.     Since September 1986, Penders has been a freelance writer and illustrator in a variety of mediums, including in the comic book industry.  During that time, Penders has worked as a freelance writer and artist for a number of different publishers in the comic book industry, including DC Comics, Marvel Comics, Image Comics, Archie Comic Publications, Hero Comics, Entertainment Publishing, Now Comics, Eclipse Comics, Malibu Comics and Disney.

18.     Penders is responsible for the creation, development, and production of numerous comic book stories and related especially distinctive and extremely well delineated characters, first appearing in comic books authored by Penders. In most, if not all, cases, these characters constitute the story being told.

19.     During Penders' career in the comic book industry, Penders has worked on many different titles and properties, including stories involving characters owned by the comic book companies themselves, and stories involving licensed properties such as "Star Trek," "Star Trek: The Next Generation," "Star Trek: Deep Space Nine," "The Man From U.N.C.L.E.," "Advanced Dungeons and Dragons," "Green Hornet" and "Sonic the Hedgehog".

20.     On information and belief, at some point in time during 1992, ACP obtained a license to publish comic books based on the SEGA video game character "Sonic the Hedgehog."

21.     The first Sonic comic book series produced by ACP was a mini-series that was published monthly from November 1992 until February 1993.

22.     Starting in May 1993, ACP began publication of an ongoing Sonic comic book series, and later published the Knuckles the Echidna spin-off series, as well as a number of related mini-series, one-shots and specials (collectively, the "Sonic Comics").

23.     In October 1993, Mike Kanterovich came to Penders, telling Penders he was approached by Paul Castiglia, the editor at that time of the Sonic Comics, who advised that the current writer for the Sonic Comics might be leaving and ACP was looking for some inventory stories to have on hand as a back-up precaution.  Kanterovich told Penders that Castiglia offered him the opportunity to submit story ideas for potential assignments.

24.     Because Kanterovich knew little or nothing about the character or the comic books, he reached out to Penders because he was aware that Penders knew a great deal about the character since the "Sonic the Hedgehog" video games, Sonic Comics and "Sonic the Hedgehog" television shows were favorites at that time of Penders' young son Stephen.

25.     Kanterovich and Penders spoke about the Sonic Comics opportunity, and Penders provided Kanterovich with information on the characters.  As their discussions continued, Kanterovich suggested that they work together on story ideas to pitch to ACP for publication in the Sonic Comics.

26.     Initially, Kanterovich and Penders prepared and submitted three story ideas to Castiglia for approval during the second half of October 1993.  ACP submitted all three stories to SEGA for approval, and SEGA and ACP eventually approved two of the three stories.

27.     This method of working on a comic book was different than Penders was used to doing with other publishers.  Specifically, rather than receiving a specific assignment, Archie invited the writers to pitch story ideas, which ACP would either accept or reject.

28.     Unlike Penders' experience of submitting scripts at any other comic book publisher, Castiglia insisted scripts be submitted in full panel page layout form, clearly depicting everything in a rough visual format rather than in normal text format.  Penders was paid no additional money for producing these story layouts, despite the additional time and effort it required, and received no credit or acknowledgement for them in the published works.

29.     Once SEGA and ACP approved the two story ideas, Kanterovich and Penders worked together on full story scripts for those ideas.  The first two stories authored by Penders and Kanterovich appeared in issue #11, cover dated June 1994, released in March 1994.

30.     Following acceptance of the first group of story ideas, Kanterovich and Penders began to work on additional story synopses for submission to Castiglia, which additional stories similarly were approved by ACP and SEGA.

31.     Shortly thereafter, Kanterovich and Penders met with Castiglia in person for the first time at the ACP offices.  During the visit, they bumped into ACP publishers Michael Silberkleit and Richard Goldwater.  When Castiglia introduced them, Silberkleit and Goldwater joked that Kanterovich and Penders would be the new regular writers for the Sonic Comics.

32.     Despite any statements made during that visit, there was at no time any official undertaking by ACP to formalize Penders' working arrangements, and no guarantee of future work for the Sonic Comics.

33.     Further, there was no written understanding between ACP and either Penders or Kanterovich concerning their freelance work on the Sonic Comics.

34.     In early 1994, Castiglia was promoted at ACP and thus replaced as editor on the Sonic Comics by Scott Fulop.

35.     One of the first assignments offered to Penders and Kanterovich by Fulop was to write a story introducing the "Knuckles the Echidna" video game character into the Sonic Comics continuity, intended to be a try-out for such character.

36.     The Knuckles story appeared in issue #13, cover dated August 1994, released in May 1994.  Although SEGA was initially skeptical of the idea, the story proved popular.  In the ensuing years, Penders would be given the chance to script and illustrate many more stories featuring the Knuckles character, eventually leading to a Knuckles mini-series and then a full monthly Knuckles comic book series that continued for nearly 3 years.

37.     In or around March, 1994, Penders convinced Fulop to allow the Sonic Comics to more closely align with the "Sonic the Hedgehog: The Animated Series" Saturday morning cartoon series, which series aired on ABC from September 1993 until May 1995.

38.     As a result of this change, the stories in the Sonic Comics took a new direction, introducing new characters and new worlds.  Additionally, the stories were structured to establish and build an ongoing logic and continuity.  The series also began to use a new format, namely book-length stories and eventually multi-issue storylines.

39.     In late 1994, Kanterovich advised Penders he was no longer interested in working on every one of the Sonic Comics stories, and so Penders began to work on solo scripts for the Sonic Comics.  Although they continued to collaborate on stories, Penders began to write solo stories with increasing frequency.

40.     In addition, in mid-1995, Penders began to provide full pencil artwork for the Sonic Comics, at first for covers and then interior artwork.

41.     At all times through this period, Penders was working for ACP as a freelancer with no contract.  The only ACP-generated documents that were being provided to and signed by

Penders and that pertained to the work Penders created were pay vouchers and checks that Penders endorsed.

42.     None of the ACP pay vouchers contained any legal language, or made any reference to ownership or transfer of copyright rights in the materials that Penders was producing for the Sonic Comics.

43.     Additionally, none of the checks that Penders received from ACP in payment for his work contained any legal language concerning copyright rights or a transfer of his rights to ACP.

44.     The only other ACP-generated document that Penders was asked to sign in 1996 was a group health care election document, whereby Penders elected to waive group health care coverage.  The health care election document was a single page document that did not include any other legal language.  The document Penders received had not yet been signed on behalf of ACP.

45.     Because the manner in which ACP treated the submission of creative works was entirely different than any other comic book publisher for whom Penders had worked, Penders understood that there was no transfer of his rights in the stories Penders pitched, whether or not they were accepted by ACP for publication.  As a result, his enthusiasm for working on the Sonic Comics continued to grow as Penders introduced new concepts, story ideas and characters, all of which Penders believed Penders owned as their creator.

46.     In the summer of 1995, Fulop advised Penders that both the Saturday morning animated series and the syndicated weekday Sonic animated television series were being cancelled.

47.     Because comic books licensed from another media (such as television) historically were cancelled within 8-12 months once the original media was no longer in the public spotlight, Fulop told Penders that ACP expected the Sonic Comics comic book series would be cancelled within the next year.

48.     Undeterred, Penders continued to innovate with his work on the Sonic Comics, creating additional new characters and storylines, including perhaps the most renowned storyline for the entire series titled "Endgame", which appeared in issues 47-50.   This storyline was initially conceived as the last story in the series, featuring the character's final battle against his greatest enemy.

49.     Despite ACP's fears, however, the Sonic Comics proved to be the exception to the licensed comic book rule, and actually saw sales increase after the animated shows were taken off the air.  As a result, Penders rewrote the original conclusion of the "Endgame" story thereby allowing the series to move forward rather than terminating.

50.     Penders continued to work on the Sonic the Hedgehog comic book series and related titles until late 2005.  Penders' last story for the Sonic Comics appeared in issue 159, published in early 2006.

51.     During his many years of working for comic book companies such as Marvel Comics and DC Comics, Penders came to understand the industry-standard method undertaken by publishers working with freelancers on company-owned and licensed titles.

52.     Specifically, freelancers are advised in advance by those companies that they are being hired to produce creative works on a "work made for hire" basis, and that any work created and submitted to the publisher (each a "Work") is understood to be "work made for hire".  Once each Work (or portion thereof) is completed and submitted to the publisher that had

commissioned the work, a creator is required to sign a voucher for payment, and that voucher (or at one time the backs of the paychecks) contained agreement language whereby the creator confirmed that (i) the Work which had been created was a "work made for hire" and (ii) in the event such Work did not qualify as a "work made for hire," the creator was thereby assigning all copyright rights in such Work to that publisher.

53.     At no time while Penders worked on the various Sonic Comics titles did ACP follow this manner of doing business.

54.     When Penders first submitted stories ideas to Castiglia in 1993, there was no discussion with him or anyone else at ACP concerning the issue of ownership or the concept of "work made for hire". This was understandable since there was no guarantee that any of the story ideas would be accepted by ACP and SEGA for use in the Sonic Comics. In fact, a number of Penders' story ideas were rejected.

55.     Additionally, the pay vouchers used by ACP and which Penders signed and submitted for payment for each of the Sonic Comic stories Penders worked on contained no legal language whatsoever.

56.     Neither the payment vouchers nor the checks issued by ACP contained any language pertaining to copyright, ownership, assignment, transfer or "work made for hire". Nor did any correspondence concerning any of Penders' story ideas or the approvals for the same refer to such terms or language.

57.     Further, none of the artwork returned to Penders between 1995 and 2004 contained any copyright notice or copyright language stamped on them to indicate ownership by any entity other than the creator(s) of such artwork, namely, Penders. It was only after Penders ceased

working on the Sonic Comics that artwork was returned to Penders containing any copyright notice or copyright language stamped on the back.

58.      During the time that he was primarily associated as a freelancer for ACP, Penders completed several assignments for other publishers including Malibu and Disney, all of whom gave Penders written contracts prior to his commencing any work.  These multi-page contracts required Penders to initial each page in addition to his full signature on the final page, and each such contract was then initialed and counter-signed by the publisher or editor.

59.      Penders has conversed with a number of other creators who participated in the creation of Sonic Comics during the first few years of publication and has been advised by each of these creators that they had never been asked to execute any "work made for hire" agreements nor asked to sign any assignment documents.

60.      Justin Gabrie, who was editor on the Sonic Comics from 1996 until 2004, has advised Penders that when he had approached the publishers of ACP with the suggestion that "work-for-hire" language be included in both the pay vouchers and checks, Gabrie was told by the publishers such action was not necessary.

61.      Before undertaking the filing of registrations with the Copyright Office filings, Penders telephoned Victor Gorelick, editor-in-chief of ACP, in December 2008.  During that conversation, Penders requested that Archie return original artwork still in ACP's possession

62.      In addition, during the same conversation, Penders requested that Gorlick provide him with copies of any agreement Penders may have signed with ACP relating to any of the freelance work Penders did for them. Gorelick told Penders that no such documents existed.

63.      Following the December 2008 telephone conversation, Penders reached out to Gorelick several more times by e-mail and telephone seeking written confirmation that no

documents existed, but Gorelick never provided Penders with the requested written confirmation, nor returned the original art.

64.     Nonetheless, with Gorelick's confirmation that there were no agreements between Penders and ACP regarding his ownership of all copyrights in the works Penders created for the Sonic Comics, Penders proceeded with the copyright application filings.

65.     Penders is the creator, author and owner of the copyright in and to those certain copyrighted characters and stories, including but not limited to those characters and stories listed on Exhibit 1 to this Answer (collectively, the "Copyrighted Works"). Each of the Copyrighted Works is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights as specified on Exhibit 1.

66.     The aforementioned Copyrighted Works are all of copyrightable subject matter, as demonstrated by the fact that the Copyright Office has granted a registration for the each of them.

67.     At all relevant times, Penders has been the holder of the pertinent exclusive rights in the Copyright Works, which Copyright Works have been infringed by ACP, as alleged hereunder.

68.     Additionally, Penders created numerous works of authorship for which Penders received no credit or compensation, as detailed in Exhibit 2.

69.     Penders is informed and believes that ACP, without the permission or consent of Penders, has made unauthorized reproduction and distribution of, and prepared, reproduced and distributed derivative works containing, the Copyrighted Works. The aforementioned derivative works include stories created for and published by ACP, which stories include or incorporate one or more of the characters or concepts developed by Penders, as specified on Exhibit 3.

70.     ACP's unauthorized activities include, without limitation, the compilation and
reprinting of Copyrighted Works within various issues of Sonic Archives, the use of Penders-
created storylines and/or characters in other Sonic comic books, and the creation of derivative
works in the form of electronic media versions of the Penders Copyrighted Works for
distribution via electronic channels, e.g., via iTunes for iPhone, iPod, and iPad devices, as Sony
PlayStation Digital Comics, etc. A list of those specific acts of infringement identified so far
Penders is attached as Exhibit 4.

71.     The aforementioned activities of ACP have violated Penders' exclusive rights of
reproduction, distribution, and the preparation of derivative works. These actions constitute
infringement of Penders' exclusive rights protected under the Copyright Act of 1976 (17 U.S.C.
§ 101 *et seq.*).

72.     The foregoing acts of infringement have been willful, intentional, and in disregard
of and with indifference to the rights of Penders.

73.     As identified in Exhibit 4, a large number of ACP's infringements occurred
subsequent to the date of registration for the Copyrighted Works.

74.     As a result of ACP's infringement of Penders' exclusive rights under copyright,
Penders is entitled to relief pursuant to 17 U.S.C. § 504, and to his attorneys' fees and costs
pursuant to 17 U.S.C. § 505.

75.     The conduct of ACP is causing and, unless enjoined and restrained by this Court
will continue to cause, Penders great and irreparable injury that cannot fully be compensated or
measured monetarily. Penders has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502-503,
Penders is entitled to injunctive relief prohibiting ACP from further infringing Penders'
copyrights.

## THIRD COUNTERCLAIM

### (Vicarious Copyright Infringement)

76.     Penders repeats and incorporates herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1-75 above.

77.     The electronic reproduction of, distribution of, and creation of derivative works from, Penders Copyrighted Works as set forth in ¶¶ 69-71, *infra*, constitutes the direct infringement of those works (the "Electronic Infringement").

78.     Upon information and belief, ACP derives a direct financial benefit from this Electronic Infringement, including without limitation revenue sharing and/or royalty payments for each electronic version sold.

79.     Upon information and belief, ACP has the right and ability to supervise the activities of those engaged in Electronic Infringement, including without limitation contractual rights, license agreement(s), and/or approval rights.

80.     ACP's acts of infringement were willful, in disregard of, and with indifference to, the rights of Penders.

81.     As a result of ACP's acts as set forth herein, Penders has suffered and continues to suffer substantial damage to his business including, without limitation, diversion of trade, loss of profits, injury to goodwill and reputation, and the dilution of the value of his rights, none of which may be fully ascertained at this time. The Defendants have also unlawfully profited from their infringement, constituting actual damages not yet fully ascertainable but expected to be sufficiently established through discovery.

## FOURTH COUNTERCLAIM

### (Contributory Infringement)

82.     Penders repeats and incorporates herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1-81 above.

83.     The Electronic Infringement, including without limitation the electronic reproduction of, distribution of, and creation of derivative works from, Penders Copyrighted Works as set forth in ¶¶ 69-71, infra, constitutes the direct infringement of those works.

84.     ACP had actual knowledge that the Electronic Infringement violated Penders' rights, as evidenced by the written communication between Penders and ACP that ACP cites in its Complaint.

85.     Upon information and belief, ACP induced, caused, and/or materially contributed to the direct infringement of Penders' work that occurs in the Electronic Infringement by, among other things, commissioning and/or licensing the electronic versions of the Copyrighted Works, and providing galley proofs or similar high-quality source material for rendition into electronic format.

86.     ACP's acts of infringement were willful, in disregard of, and with indifference to, the rights of Penders.

87.     As a result of ACP's acts as set forth herein, Penders has suffered and continues to suffer substantial damage to his business including, without limitation, diversion of trade, loss of profits, injury to goodwill and reputation, and the dilution of the value of his rights, none of which may be fully ascertained at this time. The Defendants have also unlawfully profited from their infringement, constituting actual damages not yet fully ascertainable but expected to be sufficiently established through discovery.

## PRAYER FOR RELIEF

WHEREFORE, Penders prays that the Court enter judgment against ACP as follows:

a.      For entry of preliminary and permanent injunctions providing that ACP shall be enjoined from directly or indirectly infringing Penders' rights in the Copyrighted Works, except pursuant to a lawful license or with the express authority of Penders;

b.      For actual damages and ACP's profits, pursuant to 17 U.S.C. § 504;

c.      For Penders' expenses and costs incurred in this action;

d.      For Penders' reasonable attorneys' fees incurred in this action;

e.      That all claims in the Complaint be dismissed with prejudice, and judgment be entered for Penders as to all of the claims in the Complaint;

f.      That no contract(s) exist between ACP and Penders;

g.      That Penders is not in breach of any contract(s) that may exist between ACP and Penders;

h.      That Penders activities do not constitute tortious interference with business/economic advantage or breach of contract;

i.      That Penders' activities do not constitute any violation of ACP's intellectual property rights;

j.      That Penders' copyrights are valid; and

k.      That Penders be granted such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Penders hereby demands a jury trial for all issues so triable in this action

Dated: June 7, 2011                     Respectfully submitted,

                                        Michael R. Ertel (ME 7146)
                                        Lysaght, Lysaght & Ertel LLP
                                        230 Park Avenue, Tenth Floor
                                        New York, NY 10169
                                        Tel. 212-808-3004
                                        Facs. 212-808-3020
                                        mertel@lysaghtlaw.com

                                        *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of June, 2011, a copy of the foregoing **AMENDED ANSWER, AFIRMATIVE DEFENSES, AND COUNTERCLAIMS WITH JURY DEMAND**, was electronically filed with the Clerk of Court using the ECF system which will send notification of such filing to the attorneys of record.

Counsel for Plaintiff