UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARCHIE COMIC PUBLICATIONS, INC., Plaintiff, v. KENNETH W. PENDERS, II, p/k/a/ KEN PENDERS, Defendant. | Case No.: 10-cv-08858 (RMB)<br>**Electronically Filed**<br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF ARCHIE COMIC PUBLICATIONS' RULE 12 MOTION TO DISMISS PENDERS' COUNTERCLAIMS, AFFIRMATIVE DEFENSES AND CERTAIN DEMANDS FOR RELIEF, WITH PREJUDICE**

**Table of Contents**

FACTS AND PROCEDURAL HISTORY ....1

ARGUMENT ....4

I. THE LEGAL STANDARD UNDER RULE 12(b)(6) ....4

a. The court may consider documents attached to the motion to dismiss so long as the documents are central to the claims ....6

b. The December 2008 emails between Penders and ACP may be considered by the court because Penders had knowledge of and relied on them when crafting his claims and these are central to Penders' pleading. ....7

II. EACH OF PENDERS' COUNTERCLAIMS FAIL TO MEET THE PLAUSIBILITY STANDARDS OF RULE 8(a) AND SHOULD BE DISMISSED WITH PREJUDICE UNDER RULE 12(b)(6) ....10

III. PENDERS' SECOND COUNTERCLAIM FOR DIRECT COPYRIGHT INFRINGEMENT FAILS TO PLEAD FACTUAL ALLEGATIONS SUFFICIENT TO MEET THE MINIMUM REQUIREMENTS OF RULE 8(a) AND SHOULD BE DISMISSED WITH PREJUDICE UNDER RULE 12(b)(6) ....14

IV. PENDERS' THIRD AND FOURTH COUNTERCLAIMS FOR VICARIOUS AND CONTRIBUTORY COPYRIGHT INFRINGEMENT FAIL TO ALLEGE THIRD PARTY DIRECT COPYRIGHT INFRINGEMENT AND SHOULD BE DISMISSED WITH PREJUDICE UNDER RULE 12(b)(6) ....16

V. THE LEGAL STANDARD UNDER RULE 12(f) ....17

VI. PENDERS' FIRST COUNTERCLAIM IS MERELY A RECITATION OF ACP'S COMPLAINT AND SHOULD BE STRICKEN AS REDUNDANT UNDER RULE 12(f) ....18

VII. PENDERS' AFFIRMATIVE DEFENSES ALL FAIL TO MEET THE MINIMUM PLEADING STANDARDS AND SHOULD BE STRICKEN AS INSUFFICIENT UNDER RULE 12(f) ....19

VIII. PENDERS IS EQUITABLY ESTOPPED FROM ASSERTING HIS CLAIMS FOR COPYRIGHT INFRINGEMENT ....20

IX. PENDERS' CLAIMS ARE BARRED IN PART BY THE STATUTE OF LIMITATIONS ....21

X. PENDERS' REQUESTED RELIEF OF STATUTORY DAMAGES AND ATTORNEYS' FEES ARE BARRED IN PART ....22

CONCLUSION ....23

**FEDERAL CASES**

*Aldens, Inc. v. Packel,* 524 F.2d 38 (3d Cir.1975)....................19

*Arista Records, Inc. v. Flea World, Inc.,* 356 F. Supp. 2d 411 (D.N.J. 2005)....................16

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009)....................passim

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.,* 531 F. Supp. 2d 620 (S.D.N.Y. 2008)....................18, 19

*Bell Atlantic Corp. v.* Twombly, 127 S.Ct. 1955 (2007)....................5

*Brass v. American Film Technologies, Inc.,* 987 F.2d 142 (2d Cir. 1993)....................7

*Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285 (5th Cir. 2004)....................7

*Chambers v Time Warner, Inc.,* 282 F3d 147 (2d Cir. 2002)....................7, 9

*Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496 (5th Cir. 2000)....................7

*Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759 (2nd Cir. 1991)....................4, 14

*Gen. Elec. Capital Corp. v. Armadora, S.A.*, 37 F. 3d 41 (2d Cir. 1994)....................21

*Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159 (2d Cir. 1971)....................16

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F.Supp. 2d 625 (S.D.N.Y. Dec. 29, 2008).5

*Hayden v. Patterson*, 594 F.3d 150 (2d Cir. 2010)....................13

*IDEA v. PETA*, 2009 WL 2850230 (Aug. 28, 2009)....................22

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007)....................7

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69 (2d Cir. 1995)....................7, 11

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007)....................5

*Kregos v. Associated Press*, 3 F.3d 656 (2d Cir. 1993)....................22

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002)....................20

*Mille Lacs Band of Chippewa Indians v. State of Minn.*, 152 F.R.D. 580 (D. Minn. 1993)....................19

*Parks v. ABC, Inc.*, 341 F. App'x. 737 (2d Cir. 2009)....................22

*Pavlica v. Behr*, 397 F. Supp. 2d 519 (S.D.N.Y. 2005) ....................17

*Resolution Trust Corp. v. Ryan*, 801 F.Supp. 1545 (S.D.Miss.1992) ....................19

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988) ....................19

*Shechter v. Comptroller of New York*, 79 F.3d 265 (2d Cir. 1996) ....................18

*Taggart v. Moody's Inv. Srv., Inc.*, 2007 WL 2076980, at *1 (S.D.N.Y. July 17, 2007) (Castel, J.) ....................5, 6

*Takeda Chem. Indus., Ltd. v. Alphapharm Pty, Ltd.*, 2004 WL 1872707 (S.D.N.Y. 2004) ....................18

*Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150 (2d Cir. 2007) ....................22

**FEDERAL STATUTES**

17 U.S.C. § 507(b) .................... 1, 24, 25, 27

17 U.S.C.A. § 410(c) ....................7, 16, 17

17 U.S.C.A. § 412 .................... 1, 25, 26, 27

**FEDERAL RULES**

Fed. R. Civ. P. 12(d) .................... 7

Fed. R. Civ. P. 12(b)(6) ....................passim

Fed. R. Civ. P. 12(f) ....................passim

**TREATISES**

5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.) ....................21

## INTRODUCTION

Plaintiff Archie Comics Publications, Inc. ("ACP"), hereby moves to dismiss all four counterclaims (for declaratory judgment, and direct, vicarious, and contributory copyright infringement) asserted by Defendant Kenneth W. Penders, II ("Penders") in his Amended Answer (D.E. 27) for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). Penders' First Counterclaim is also redundant and all of his Affirmative Defenses are insufficient, and should be stricken under Fed. R. Civ. P. 12(f). To the extent any of the infringement counterclaims (2-4) survive dismissal, each is barred, at least in part, by 17 U.S.C. § 507(b); and Penders' prayer for statutory damages and attorneys' fees is also barred, at least in part, under 17 U.S.C.A. § 412.[1]

In addition, Penders is equitably estopped from asserting any of his counterclaims because Penders made no claims of ownership of certain works for well over a decade and ACP relied on this silence and the signed agreements between parties to its detriment.

## FACTS AND PROCEDURAL HISTORY

ACP was founded in 1939 by Maurice Coyne, Louis Silberkleit, and John L. Goldwater and has grown into one of the most successful, longest running brands in the history of the comic industry. ACP is best known for its series of comics featuring the fictional characters created by its founders: Archie Andrews, Betty Cooper, Veronica Lodge, Reggie Mantle and Jughead Jones. ACP's comic enterprise has developed robustly over the years and now includes many additional characters and comics outside of the characters first created some eighty years ago. As of the

[1] Dismissal of the counterclaims, affirmative defenses and/or remedies should be "with prejudice." Transcript of Hearing, June 2, 2011, p. 3, lines 15-21, attached as **Exhibit A**.

filing of this Motion, ACP has sold over 1.5 billion (1,500,000,000) comics, which are published in a dozen foreign languages with worldwide distribution. D.E. 1, ¶¶ 10-15.

In 1992, ACP entered into a licensing relationship with Sega of America, Inc. ("Sega"), to produce, among other things, comic books which feature Sega's immensely popular character SONIC THE HEDGEHOG, and all related ancillary characters, such as KNUCKLES THE ECHIDNA ("Sonic Comic Book Series"). ACP's relationship with Sega continues to this day, and now includes digital distribution rights. D.E. 1, ¶17.

From 1993 to 2005, Penders worked for ACP as an independent contractor and developed for ACP, stories, scripts, artwork, and other original creative expressions fixed in tangible form (individually a "Work" and collectively "Works") as contributions to the Sega Comic Book Series. D.E. 1, ¶ 19. Penders was paid in full for his work. D.E. 1, ¶ 46.

The relationship between Penders and ACP was memorialized in written agreements, executed in 1996. Contrary to the allegations in his Amended Answer, as discussed below, in multiple December 2008 emails (referenced and relied on by Penders to form his counterclaims, but not attached to his filing) (D.E. 27, ¶¶ 63-64) (attached hereto as **Exhibit B**), Penders admitted he executed the "work-for-hire agreement" with ACP. In fact he executed two agreements: Revised Newsstand Comic Independent Contractor's Agreement ("Contractor's Agreement"); and ACP Licensed Comic Books Independent Contractor's Agreement ("Licensed

Comic Books IC Agreement") (the Contractor's Agreement and the Licensed Comic Books IC Agreement collectively referred to as the "ACP-Penders Agreements").[2] D.E. 1, ¶ 21.

As the ACP-Penders Agreements make clear, all Works were commissioned by ACP from Penders as works-made-for-hire (as that term is used in the Copyright Act). In the alternative, and to the extent that any Work fails to qualify as a work-made-for-hire under the U.S. Copyright Act, Penders agreed in the ACP-Penders Agreements to assign, and did assign, all right, title and interest in and to each Work and all of the Works to ACP. The ACP-Penders Agreements also obligated Penders to execute any documents needed to confirm that any specific Work and all of the Works are works-made-for-hire and/or to effectuate the assignment of his rights, if any, to ACP, in order for ACP to obtain copyright, trademark or patent protection for any of the Works. D.E. 1, ¶ 20.

Incredibly, Penders now contests the validity and "denies the existence" of the ACP-Penders Agreements in his counterclaims. D.E. 27, ¶¶ 59-60. The emails referenced in Penders' Amended Answer (D.E. 27, ¶¶ 63-64) tell a different story, however. Penders does not attach these emails to his pleading, and for good reason. Contrary to Penders' allegations, Victor Gorelick (Editor-in-Chief at ACP) was not unresponsive to Penders, and most significantly, Penders admits that he signed the ACP-Penders Agreements in late 1995 while Scott Fulop (then editor at ACP for Sonic products) was overseeing his work for ACP. Exhibit B.

Notwithstanding this unbelievable admission and sequence of events, beginning in or around January 2009, a full fifteen years after he penned his first contributions to the Sonic

---

[2] The ACP-Penders Agreements are attached to the Complaint (D.E. 1) as Exhibits A and B. For the convenience of the Court, each is attached to this filing as **Exhibits C and D**.

Comic Book Series and contrary to the ACP-Penders Agreements, which he admits he signed, Penders began filing numerous applications with the U.S. Copyright Office to register each of the Works in his own name personally and claimed ownership of each of the Works, listing himself as the "Author" and "Copyright Claimant" for each of the Works. Penders filed at least one-hundred-seventy-one (171) copyright registrations with the U.S. Copyright Office between 2009 and 2010. D.E. 1, ¶ 35; *See also*, D.E. 27, Exhibit 1.

After Penders' breach of the ACP-Penders Agreements became known to ACP and significant pre-suit letters between counsel were exchanged, ACP filed this action on November 25, 2010, seeking cancellation of the registrations, declaratory judgment and remedies for breach of contract and tortious interference. D.E. 1. On April 19, 2011, Penders filed his Answer, Affirmative Defenses, and Counterclaims. D.E. 24. Penders' Amended Answer ("Amended Answer") was filed on June 7, 2011 in which he admits to working as an independent contractor for ACP, and affirmatively alleges having sent the emails to Victor Gorelick at ACP about the agreements ("which I [Penders] signed back in 1995 under Scott") but incredibly denied the authenticity of the ACP-Penders Agreements. D.E. 27, ¶¶ 19-32.

## ARGUMENT

### I. <u>THE LEGAL STANDARD UNDER RULE 12(b)(6)</u>

A properly pled counterclaim must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to satisfy Rule 8(a), a copyright infringement plaintiff must show both ownership of a copyright and unauthorized copying by the defendant. Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 762 (2nd Cir. 1991) (internal citations omitted). Though Rule 8 does not require detailed factual allegations, the grounds for claimant's entitlement to relief "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Taggart v. Moody's Inv. Srv., Inc., 2007 WL 2076980, at *1 (S.D.N.Y. July 17, 2007) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1959 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965 (internal citation omitted).

In order to survive a motion to dismiss under Rule 12(b)(6), a counterclaim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal citation omitted). According to the Second Circuit, the "plausibility standard", first recognized in *Bell Atlantic Corp. v. Twombly*, compels a claimant "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), *cert. granted*, 128 S. Ct. 2931 (2008); *see also*, *Twombly*, 127 S. Ct. 1955. The *Twombly* "plausibility standard" applies to copyright infringement cases. *See, e.g.,* Gottlieb Dev. LLC v. Paramount Pictures Corp., 590 F.Supp. 2d 625, 630 (S.D.N.Y. 2008).

Courts may look to "more likely explanations" to explain a defendant's alleged behavior beyond the claims submitted by plaintiff. *Iqbal*, 129 S. Ct., at 1951. The existence of such explanations may be a factor used by the Court during its analysis of the plausibility of plaintiff's claim. *Id.*

In *Iqbal,* the Supreme Court articulated the two-step approach to be used by district courts when considering a motion to dismiss. First, the district court must accept as true all well-pled factual allegations in the complaint; however the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949-50. A mere

recitation of the elements of a cause of action, supported only by conclusory statements, is insufficient. *Id.* at 1949. Second, the district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. A claim is considered facially plausible when the complaint alleges facts, not merely conclusory statements, that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949. Where a complaint does not permit the court to infer anything more than the mere *possibility* of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). Hence, where a plaintiff's factual allegations are insufficient to "nudge its claims across the line from conceivable to plausible, its complaint must be dismissed." *Taggart*, 2007 WL 2076980, at *1.

Importantly, Penders' purported copyright registrations are not prima facie evidence of ownership and validity of the copyrights. The Copyright Act provides that, in judicial proceedings, a certificate of registration granted by the U.S. Copyright Office before or within five years after *first* publication of the work constitutes prima facie evidence of the validity of the copyright and of the facts stated within the registration certificate. 17 U.S.C.A. § 410(c). However, works receiving a certificate of registration after five years from the date of first publication are only afforded evidentiary weight at the discretion of the court. *Id*. None of the asserted registrations in this case were filed within five years of *first* publication of any of the works, and, accordingly, the registrations should not be afforded any evidentiary weight by the court.

**a. <u>The court may consider documents attached to the motion to dismiss so long as the documents are central to the claims</u>**

Generally, when deciding a motion to dismiss for failure to state a claim, if matters outside the pleading are presented to and are not excluded by the court, the motion to dismiss will be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, on a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Chambers v Time Warner, Inc., 282 F3d 147, 153 (2d Cir. 2002) *citing* Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993); *see also* In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (*citing* Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") (*citing* Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)) (internal quotes omitted).

For the court to consider such a document on a motion to dismiss, it is necessary that the plaintiff relied on the terms and effect of the document in drafting its complaint. *Chambers*, 282 F.3d at 153; *see also* Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.").

**b. <u>The December 2008 emails between Penders and ACP may be considered by the court because Penders had knowledge of and relied on them when crafting his claims and these are central to Penders' pleading.</u>**

Penders states in his Second Counterclaim that he "reached out to [Victor] Gorelick," editor-in-chief of ACP in December 2008, and, through Mr. Gorelick's silence as to Penders' records request, received "Gorelick's confirmation that there were no agreements between Penders and ACP regarding [Penders'] ownership of all copyrights in the works" (D.E. 27, Counterclaims ¶¶ 63-64). This illogical leap notwithstanding, Penders' own words belie his protestations. In fact, in the December 2008 email exchange referred to by Penders in the Second Counterclaim ("December 2008 emails"),[3] Penders himself states:

> As I didn't want to take up too much of your time during the phone conversation, **besides requesting the Work-for-hire agreement I signed under Scott**, the original art in question is from the later SONIC issues I worked on which I wrote, penciled and inked from #152, 159 and pages I inked from #169. Thanks.
>
> Best,
>
> Ken Penders
>
> (*See* Exhibit B, emphasis added)

Penders again references a work-for-hire agreement from 1995 in subsequent emails he sent to Mr. Gorelick. In the emails, Penders requests "**A copy of the work-for-hire form that Scott Fulop [ACP's then-editor] originally sent to me. This was back in late '95.**" *See* Exhibit B, emphasis added. At no time in the email exchange did Mr. Gorelick "confirm" that no agreement existed between Penders and ACP. D.E. 27, ¶¶ 59-60. Instead, Penders himself admits the existence and his execution of a work-for-hire agreement with ACP. *See* Exhibit B. Despite this significant admission, not only that he had been provided with the agreement, but that he signed the agreement "under Scott", Penders now denies the very existence of any agreement in his Amended Answer and Counterclaims. D.E. 27, ¶¶ 59-60. As the court can see,

---

[3] December 2008 Penders and Gorelick email exchange attached as **Exhibit B**.

Penders' denial of "the existence of any 'ACP-Penders Agreements'" is an unabashed lie and quite possibly an attempt to perpetuate a fraud upon this court. *Id.* In light of this, it is proper for the court to dismiss Penders' counterclaims entirely. At minimum, the Court can and should consider the ACP-Penders Agreements and the December 2008 emails in deciding this motion.

The December 2008 emails were cited and relied on by Penders -- yet curiously did not attach them as an exhibit to his pleading. *See* D.E. 27, ¶¶ 63-64. The court may consider "documents … of which plaintiffs had knowledge and relied on in bringing suit." *Chambers*, 282 F3d at 153. It also bears noting that Penders' allegations are contradictory. In paragraph 63, Penders alleges that "Gorelick never provided Penders with the requested written confirmation" (D.E. 27, ¶ 63), yet in paragraph 64 he alleges "Gorelick's confirmation that there were no written agreements…" D.E. 27, ¶ 64. Furthermore, the manner in which the emails are referred to in the pleadings is disingenuous; Penders' allegations makes the December 2008 email exchange seem to be a request for written confirmation of a phone call; yet the email chain itself shows something very different. The email confirms there was a brief call (which was Penders' preference), in which Penders asked for a copy of the agreement he acknowledges having signed under Scott Fulop, the prior editor at ACP, and that he requested the return of certain art (a practice ACP indulges for the benefit of most artists who work for ACP). Penders also makes it appear that Gorelick was not responsive to Penders, yet the email chain, which occurred after they spoke on the phone does not, as Penders alleges, indicate any discussion or confirmation that work-for-hire agreements did not exist. To the contrary – the email makes clear (in Penders own words) that they confirmed the opposite! The email makes clear that Penders was *not* confirming that no agreement existed, but that he wanted a copy of "**the Work-for-hire agreement I [Penders] signed under Scott.**" That Gorelick never sent Penders a copy of "the

Work-for-hire agreement [he] signed under Scott" (the ACP-Penders Agreements) is of no moment; ACP was not legally required to do so; and, Penders acknowledged that he had in fact signed a work-for-hire agreement with ACP.

Furthermore, Penders alleges in paragraph 44 of his amended counterclaims that he signed an election to forego participation in the health care plan offered by ACP. D.E. 27, ¶ 44. This election appears just above Penders' signature on the Independent Contractor's Agreement. Exhibit A, at 6. Penders may not recall the balance of the agreement, but that does not make it disappear.

Penders makes plain reference to the ACP-Penders Agreements and December 2008 emails in his counterclaims and relies upon the email exchange in crafting his claim of ownership of the works. D.E. 27, ¶¶ 63-64. Penders' reliance on the December 2008 emails establish them as central to Penders' counterclaims. The court should consider the ACP-Penders Agreements and the December 2008 emails included as Exhibit B in determining this Motion to Dismiss and, for the reasons that follow, Penders' counterclaims should be dismissed entirely.

## II. EACH OF PENDERS' COUNTERCLAIMS FAIL TO MEET THE PLAUSIBILITY STANDARDS OF RULE 8(a) AND SHOULD BE DISMISSED WITH PREJUDICE UNDER RULE 12(b)(6)

Penders amended counterclaims all fail to meet the Rule 8(a) plausibility standard established in *Iqbal*. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. 1949. Penders' lack of factual allegations fails to demonstrate anything more than the "sheer possibility" that ACP acted unlawfully and thus do not meet the plausibility standard and should be dismissed for failure to state a claim. *Id.*

First, Penders fails to allege which characters and art he claims to own were infringed in materials numbered 1-42 of exhibit 4 of his Amended Answer. D.E. 27, Exhibit 4. He states

that each of the 42 materials include "stories, art, and characters" infringed by ACP. *Id.* Penders has provided the names of the stories; however, the vast majority of the works include Sonic, for example, and he does not claim tights in this character. Without proper identification of the allegedly infringed characters and art, Penders' Amended Counterclaims fail to contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted). To establish a plausible claim for relief for purposes of a Motion to Dismiss, *Iqbal* established a two-step approach to be used by district courts. The Court must first accept as true all well-pled factual allegations in the complaint and, second, consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. Where a complaint does not permit the court to infer anything more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* at 1949 (internal quote omitted). Penders' failure to identify the allegedly infringed characters and art in materials 1-42 listed in exhibit 4 do not allow the Court to do anything more than infer the possibility of ACP's misconduct. Penders' counterclaims therefore fail to state any claim that is *plausible* on its face and should be dismissed with prejudice under Rule 12(b)(6).

In determining whether Penders' claims are plausible on their face the Court may consider the well-pled allegations contained in the pleadings as well as all documents attached and integral to those allegations. *Iqbal*, 129 S. Ct. at 1950; *see* <u>*supra*</u> I(a); *see also Am. Tel. & Tel*, 62 F.3d at 72. ACP has provided the Court with evidence of two work-for-hire agreements and emails which may be considered by the Court in deciding this motion. In these emails, Penders acknowledges that he signed Work-for-hire agreements with ACP back when he first began working with ACP. A cursory review of the executions on the ACP-Penders Agreements and the declaration signed by Penders and filed with this Court in support of his own motion to

transfer this case (D.E. 15) shows that this is his signature (as do so many other documents containing his signature):

Compare the Independent Contractors Agreement (Exhibit A, at 6) and the IC Agreement (Exhibit B, at 3) signed more than 15 years ago in 1996:



INDEPENDENT CONTRACTOR
BY:
Name: KENNETH W PENDERS II
Date: 12 DECEMBER 1996



INDEPENDENT CONTRACTOR
BY:
Name: KENNETH W PENDERS II
Date: 12 DEC 1996

With the declaration file by Penders in this action in 2011 (D.E. 15):



Kenneth W. Penders, II

Penders puts the Agreements squarely at issue in his first counterclaim for declaratory judgment. (D.E. 27, Counterclaims ¶ 5-13). The Court may consider the ACP-Penders Agreements despite the fact that he did not include the documents in his pleading. The Agreements are integral to Penders' counterclaims. Therefore, these documents should be considered in deciding ACP's Motion to Dismiss. The Court may also consider the December 2008 emails because Penders not only relies on the email exchange, but these emails, and ACP's

purported silence in response thereto, forms the very basis of his claims in this action. Quite pointedly, even Penders has drafted his claims knowing that he must refute the ACP-Penders Agreements, or his claims are doomed. The emails are central to his claims denying the existence of the agreements in order to claim his purported rights in the works he alleges are infringed by ACP and for declaratory judgment.

The signed ACP-Penders Agreements state that "To the extent that … the Works or Properties do not qualify as a Work for Hire, Contractor will and hereby does assign to Archie any right, title and interest that he/she has or may obtain therein, including all copyrights … and other proprietary rights." (Exhibits C and D; *also* D.E. 1 Exhibits A and B). These Agreements, when combined with the December 2008 emails and Penders' threadbare assertions, demonstrate Penders' failure to nudge his claims of copyright infringement "across the line from conceivable to plausible." *Iqbal*, 127 S. Ct. at 1950-51.

These Agreements, with or without and December 2008 emails, also establish the "more likely" lawful explanation, as noted by *Iqbal* and followed by its Second Circuit progeny Hayden v. Patterson, that Penders has no rightful claim of ownership to the copyrights in the works he supplied to ACP (or the copyright registrations). *Iqbal* at 1950-51; Hayden v. Patterson, 594 F.3d 150 (2d Cir. 2010).

Penders would have the court believe that ACP has forged multiple documents as well as Penders' own signature. In support of this theory Penders has denied the existence of such documents and provided a list of copyright registrations which carry no weight in this litigation. As the court can see, it is a more likely explanation that Penders signed the ACP-Penders

Agreements and admitted their existence in his December 2008 emails than it is plausible that ACP conspired against Penders.

Under these circumstances, all of Penders' four counterclaims should be dismissed with prejudice. His first counterclaim for declaratory judgment seeks a court determination that he "did not enter the contracts ACP alleges" – yet in December 2008 Penders acknowledged "**the Work-for-hire agreement [he] signed under Scott"** – the ACP-Penders Agreements. Exhibit B. The remaining second, third and fourth counterclaims for direct, vicarious and contributory infringement obviously fail as a matter of law in light of the written agreements.

## III. PENDERS' SECOND COUNTERCLAIM FOR DIRECT COPYRIGHT INFRINGEMENT FAILS TO PLEAD FACTUAL ALLEGATIONS SUFFICIENT TO MEET THE MINIMUM REQUIREMENTS OF RULE 8(a) AND SHOULD BE DISMISSED WITH PREJUDICE UNDER RULE 12(b)(6)

Alternatively, Penders' second counterclaim for direct copyright infringement fails to satisfy even the most basic pleading standards and rules. A valid copyright infringement claim must plead facts sufficient to support only two elements: (1) claimant must show ownership of the copyright, and (2) claimant must demonstrate unauthorized copying by the defendant. *Folio*, 937 F.2d at 762. Penders fails to allege sufficient facts in support of the first element of copyright ownership. A claimant fails to allege a viable claim of copyright infringement when either element of the claim is absent.

As to the first element of ownership, Penders is not entitled to rely on the copyright registrations provided in Exhibit 1 of his Amended Answer to satisfy this pleading requirement because Penders failed to make any attempt to register his purported copyrights within five years of first publication of the works. 17 U.S.C.A. § 410. The Copyright Act provides that, in judicial proceedings, a certificate of registration granted by the U.S. Copyright Office before or

within five years after first publication of the work constitutes prima facie evidence of the validity of the copyright and of the facts stated within the registration certificate. However, works receiving a certificate of registration after five years from the date of first publication are only afforded evidentiary weight at the discretion of the court. 17 U.S.C.A. § 410(c).

In fact, Penders made no effort to obtain registration in any of the Works until nearly sixteen (16) years after the Sonic Comic Book Series was first published -- more than ten years after the statutory deadline of 17 U.S.C.A. § 410(c). Penders has failed to delineate any reasonable excuse for his failure to obtain registrations within the five year timeframe required by § 410(c) and the Court, in its discretion, should afford no evidentiary weight to Penders' registrations. *See* 17 U.S.C.A. § 410(c).

Penders' makes only a bare assertion as to his ownership of the works in paragraph 65 of the Second Amended Counterclaim: "Penders is the creator, author and owner of the copyright in and to those certain copyrighted characters and stories … listed on Exhibit 1." (D.E. 27, Counterclaims ¶ 65). A "naked assertion devoid of further factual enhancement" cannot survive a motion to dismiss. *Iqbal,* 129 S. Ct. at 1949 (internal citation omitted). This assertion is not supported by any facts. Presumably, Penders is attempting to use the registrations submitted as Exhibit 1 of his Amended Answer to support his assertion as "creator, author, and owner" of certain copyrights, however these registrations should carry no evidentiary weight in these proceedings (particularly given his admitted execution of the ACP-Penders Agreements). Penders fails to allege any facts to support what he allegedly created, what rights he transferred to ACP (since he does not allege that ACP's first publication of the Sonic books was an infringement), what rights he purportedly retained, and how ACP allegedly infringed. Absent any factual support for his bare allegation of ownership of the copyrights, Penders has failed to

present sufficient factual matter to demonstrate the first element of copyright infringement and thus fails to allege a viable claim of direct copyright infringement.

## IV. PENDERS' THIRD AND FOURTH COUNTERCLAIMS FOR VICARIOUS AND CONTRIBUTORY COPYRIGHT INFRINGEMENT FAIL TO ALLEGE THIRD PARTY DIRECT COPYRIGHT INFRINGEMENT AND SHOULD BE DISMISSED WITH PREJUDICE UNDER RULE 12(b)(6)

Penders' Third and Fourth Counterclaims for vicarious and contributory copyright infringement both fail to allege the key element of third party direct liability which is necessary for finding ACP secondarily liable for copyright infringement and therefore should be dismissed for failure to state a claim. "[O]ne may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971). Contributory copyright infringement includes the elements of vicarious copyright infringement plus the additional element of actual knowledge of direct infringement. *Id.* In both instances, third party direct liability must be alleged in order to state a plausible claim to relief. "Third party direct liability is one of the elements of an allegation of secondary liability. Thus, every case of contributory or vicarious liability necessarily involves the defendant being held to answer for the direct conduct of another." Arista Records, Inc. v. Flea World, Inc., 356 F. Supp. 2d 411, 416 (D.N.J. 2005). Of course, in order to prove the liability of a third party, a plaintiff must identify that third party. Penders fails to allege the existence of any such party, let alone identify who that third party is.

Instead, Penders merely incorporates the allegations of Amended Counterclaims 1 and 2 which accuse ACP of direct copyright infringement. That ACP may be held secondarily liable for its own alleged direct liability is an argument that collapses into itself. "To be found liable

for contributory infringement, there must be a primary infringer." Pavlica v. Behr, 397 F. Supp. 2d 519, 528 (S.D.N.Y. 2005).

Penders only makes allegations about a distribution channel purportedly used by ACP to infringe; namely distribution of electronic media versions of the works. In his Second Counterclaim for direct infringement, Penders alleges that ACP distributes copies of the allegedly infringing material "via iTunes for iPhone, iPod, and iPad devices, as Sony PlayStation Digital Comics, etc." D.E. 27, Counterclaims ¶ 70. However, this reference to a *method* of distribution (which is the purported directly infringing conduct by ACP) does not include any reference at all to any third party, or even any allegation that any third party is also infringing Penders' purported rights. The only party Penders claims to be a primary infringer is ACP (again, in his second counterclaim, which is incorporated by reference in his third and fourth counterclaims).

Essentially, Penders claims that ACP is secondarily liable for its own alleged direct infringement. Obviously, ACP cannot simultaneously be liable for both direct infringement and secondarily liable for the same direct infringement. Penders' Third and Fourth Amended Counterclaims fail to state a claim upon which relief may be granted because the claims fail to allege direct infringement by a *third party* for which ACP is in turn secondarily liable, a necessary element to each of the third and fourth counterclaims. These counterclaims should therefore be dismissed with prejudice under Rule 12(b)(6).

## V. <u>THE LEGAL STANDARD UNDER RULE 12(f)</u>

Any defense, including affirmative defenses, may by stricken by the court on motion made by responding party if the defense itself is "insufficient." Fed. R. Civ. P. 12(f). Any claim

presented to the court may also be stricken if the court finds it to be of a "redundant, immaterial, impertinent, or scandalous matter." *Id.* Affirmative defenses are subject to the pleading standards of Rule 8(a) and must be pled with particularity per the requirements of *Iqbal.* Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 531 F. Supp. 2d 620, 622 (S.D.N.Y. 2008) ("The standard on a motion to dismiss also applies to a motion to dismiss a counterclaim pursuant to Rule 12(b)(6) and a motion to strike an affirmative defense pursuant to Rule 12(f)."); Supra I. The Legal Standard Under Rule 12(b)(6). As held by Judge Chin in *Aspex Eyewear*, an affirmative defense is subject to the requirements of Rule 8(a) and must satisfy the "plausibility standard" of *Iqbal* and "mere conclusory assertions are not sufficient to give plaintiffs notice of the counterclaims and defenses and, thus, do not meet Rule 8(a)'s pleading standards." *Aspex Eyewear*, 531 F. Supp. 2d at 623 *citing* Takeda Chem. Indus., Ltd. v. Alphapharm Pty, Ltd., 2004 WL 1872707 (S.D.N.Y. 2004); *see also* Shechter v. Comptroller of New York, 79 F.3d 265, 270 (2d Cir. 1996) ("Affirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy."). A matter is said to be "redundant" when it "consists of allegations that constitute a needless repetition of other averments in the pleading." 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.).

## VI. PENDERS' FIRST COUNTERCLAIM IS MERELY A RECITATION OF ACP'S COMPLAINT AND SHOULD BE STRICKEN AS REDUNDANT UNDER RULE 12(f)

Penders' First Amended Counterclaim seeks a declaratory judgment that Penders' activities do not constitute tortious interference, breach of contract, or any other violation of ACP's rights as well as declaratory judgment of the validity of Penders' alleged copyrights and of ACP's alleged infringement thereof. These, of course, are the very claims ACP advances in its complaint. The first counterclaim is simply a mirror image of ACP's claims (D.E. 1) and

should be stricken by the court as redundant pursuant to Rule 12(f). Penders first denies all relevant allegations of ACP's complaint in his Amended Answer and then merely restates the inverse of ACP's claims as his first counterclaim. This is the definition of redundant matter. Restating ACP's claims is a blatant and "needless repetition of other averments in the pleading." 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.).

The first counterclaim asserts no new allegations against ACP nor does it allege any independent case or controversy that would survive dismissal of ACP's claims, and the counterclaim does not request different relief than ACP and serves no useful purpose. The first counterclaim should therefore be stricken as redundant under Rule 12(f). *See* Mille Lacs Band of Chippewa Indians v. State of Minn., 152 F.R.D. 580, 582 (D. Minn. 1993), *citing*, Aldens, Inc. v. Packel, 524 F.2d 38, 51-52 (3d Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); Resolution Trust Corp. v. Ryan, 801 F.Supp. 1545, 1556 (S.D.Miss.1992); *see also* Salahuddin v. Cuomo, 861 F.2d 40 (2d Cir. 1988).

## VII. PENDERS' AFFIRMATIVE DEFENSES ALL FAIL TO MEET THE MINIMUM PLEADING STANDARDS AND SHOULD BE STRICKEN AS INSUFFICIENT UNDER RULE 12(f)

Penders' affirmative defenses are insufficient, immaterial, impertinent and fail to meet the minimum pleading standards of Rule 8(a) and should therefore be stricken. Penders asserts sixteen (16) enumerated affirmative defenses and "reserves all defenses under Rule 8(c) … and any other defenses …" in his Amended Answer but fails to assert *any facts whatsoever* in support of any of these defenses; he does not even refer to the elements for any of the asserted defenses. Affirmative defenses are subject to the pleading standards of Rule 8(a) and must be pled with particularity per the requirements of *Iqbal*. *Aspex Eyewear*, 531 F. Supp. 2d at 622. "A pleading that offers labels and conclusions or a formulaic recitation of the elements … will

not do." *Iqbal*, 129 S. Ct. at 1949. Little discussion is required here because Penders does not make *any* effort to support *any* of the affirmative defenses at all. Each is purely formulaic and boilerplate.

A pleading, including an affirmative defense, is insufficient "if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* Penders provides no factual enhancement for any of his defenses. For example, Penders states: "Defendant is not infringing and has not infringed any valid copyright rights of Plaintiff." (D.E. 27, Affirmative Defenses ¶ 2). Penders claims he is not infringing any valid copyright rights however he provides no facts to support this bare assertion. Similar unsupported naked assertions continue throughout. The threadbare statements in Penders' affirmative defenses are insufficient, immaterial, impertinent, do not satisfy the necessary pleading standards of Rule 8(a), and should be stricken under Rule 12(f).

## VIII. PENDERS IS EQUITABLY ESTOPPED FROM ASSERTING HIS CLAIMS FOR COPYRIGHT INFRINGEMENT

"Under federal law … a party can be estopped from pursuing a claim where: (1) the party makes a misrepresentation of fact to another party with reason to believe that the other party will rely on it; (2) the other party relies on the misrepresentation to his detriment." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 292 (2d Cir. 2002). Here, Penders knew that ACP was in the business of publishing comic books yet Penders took no action to investigate or assert his rights or obtain copyright registrations for the alleged works until more than fifteen years after first publication. Penders even admits to signing a work-for-hire agreement with ACP. *See* Exhibit B. Penders went so far as to request a copy of this agreement, and now makes incredible claims in his pleadings. ACP was unaware that Penders fashioned himself the owner of any

rights in any works he supplied to ACP. ACP relied on Penders' silence; ACP relied on "**the Work-for-hire agreement [Penders] signed under Scott"** (Exhibit B) when it began reprinting materials in which Penders now claims some rights (we can only speculate as to what right rights, exactly he claims to own, since these are not alleged in the counterclaims with any degree of clarity). "Silence in the face of an explicit contrary assumption by an innocent party may constitute a concealment of facts or a false misrepresentation for estoppel purposes." Gen. Elec. Capital Corp. v. Armadora, S.A., 37 F. 3d 41, 46-47 (2d Cir. 1994). The well pled facts show that Penders' claims and requested relief should be barred by equitable estoppel, and should be dismissed with prejudice accordingly.

## IX. PENDERS' CLAIMS ARE BARRED IN PART BY THE STATUTE OF LIMITATIONS

Assuming *arguendo* that any of the claims for infringement survive the above arguments, at least five of the fifteen allegedly infringing reprint materials found in exhibit 4 of his Amended Answer clearly exceed the three (3) year statute of limitations. 17 U.S.C. § 507(b); D.E. 27, Exhibit 4. Reprint materials 1-4 and 13 were all published more than three years prior to the filing of Penders' counterclaims in this action. D.E. 27, Exhibit 4. Penders should be barred from recovery of any damages for reprint materials 1-4 and 13 because the claims accrued more than three years prior to the commencement of this action.

Again assuming *arguendo* that any of counterclaims survive the above arguments, the Court should limit Penders' recovery and damages solely to the acts, if any, occurring within three years of this suit. Penders essentially claims ACP is liable for continuing "digital media infringement" beginning on or after December 31, 2009. The claim alleges the start date, but no end date of the alleged infringement. Such a claim is disfavored in the Second Circuit: "*Stone v.*

*Williams*, 970 F.2d 1043 (2d Cir. 1992), pointed out the disfavor that the continuing-infringement doctrine has received in the copyright-infringement context. We held in *Stone* that when infringements occur during the limitations period, recovery may not be had for the earlier infringements; rather, recovery is allowed only for those acts occurring within three years of suit." Kregos v. Associated Press, 3 F.3d 656, 662 (2d Cir. 1993) (internal quotes omitted). Each alleged act of infringement claimed by Penders is "a distinct harm that gives rise to an independent claim for relief." Parks v. ABC, Inc., 341 F. App'x. 737, 739 (2d Cir. 2009) (internal citation omitted). Each alleged harm and claim for relief is limited to the three (3) year statute of limitations of 17 U.S.C. § 507(b). Any recovery the Court may find Penders entitled to should be limited to only those acts occurring within three (3) years of this suit.

## X. PENDERS' REQUESTED RELIEF OF STATUTORY DAMAGES AND ATTORNEYS' FEES ARE BARRED IN PART

Assuming *arguendo* that Penders' claims of copyright infringement survive dismissal, Sec. 412(2) of the Copyright Act bars Penders, in part, from recovery of statutory damages and attorneys' fees under Sections 504 and 505. Under Sec. 412(2), statutory damages and attorneys' fees are precluded from recovery where an action for infringement is commenced after *first* publication of the work and before the effective date of its registration unless the registration is made within three (3) months after the *first* publication of the work. 17 U.S.C.A. § 412(2). "The Second Circuit has explained that, under this provision, a plaintiff may not recover statutory damages and attorney's fees for infringement occurring after registration if that infringement is part of an *ongoing series of infringing acts* and the first act occurred before registration." IDEA v. PETA, 2009 WL 2850230 (Aug. 28, 2009) (*citing* Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 158 (2d Cir. 2007)) (applying judicial interpretations of section 412 to construe Congressional use of the "continuing infringement doctrine") (emphasis added).

Only eleven (11) of thirty-eight (38) registrations that Penders alleges were infringed by ACP's reprints were obtained within three months of first publication. In order to state a claim for statutory damages and attorneys' fees, Penders must allege new, post-registration acts of infringement by ACP unrelated to any purported continuing infringement that Penders claims (which he does not). Penders' demand for statutory damages and attorneys' fees should be dismissed as to twenty-seven (27) of the alleged infringing reprints as barred under Section 412(2) of the Copyright Act.

## CONCLUSION

In December 2008 Penders acknowledged that he signed a work-for-hire agreement with ACP and he requested a copy from ACP: "**the Work-for-hire agreement I signed under Scott."** This Court should consider the December 2008 emails in deciding this motion, and Penders admission. In light of the December 2008 emails and to save this Court and ACP the unnecessary time and expense of trial, the Court should dismiss Penders counterclaims with prejudice as simply not plausible under Rule 12(b)(6) and *Iqbal.* Alternatively, the first counterclaim for Declaratory Judgment should be stricken as redundant under Rule 12(f), and the third and fourth counterclaims should be dismissed because they do not allege any third party direct liability, an essential element of secondary liability. Notwithstanding, all of Penders' counterclaims should be dismissed with prejudice on the basis of equitable estoppel.

In the event any of the counterclaims survive dismissal, they are barred, at least in part, by the three year statute of limitations in 17 U.S.C. § 507(b); and, Penders' requested relief of statutory damages and attorneys' fees are barred, at least in part, under 17 U.S.C.A. § 412(2). Finally, Penders' Affirmative Defenses should be stricken entirely as insufficient under Rule 12(f).

Respectfully submitted,
DISERIO MARTIN
O'CONNOR & CASTIGLIONI LLP

By: ___/s/________________________

Matthew C. Wagner
mwagner@dmoc.com

Scott Harrington
sharrington@dmoc.com

DISERIO MARTIN
O'CONNOR & CASTIGLIONI, LLP
50 Main Street, Suite 1000
White Plains, NY 10606
(914) 684-0090 Tel

Dated: August 3, 2011

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARCHIE COMIC PUBLICATIONS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>KENNETH W. PENDERS, II,<br>*a/k/a* KEN PENDERS<br><br>Defendant. | Case No.: 10-CV-8858 (RMB)<br><br>Judge: Hon. Richard M. Berman<br><br>**CERTIFICATE OF SERVICE** |

I, Matthew C. Wagner, hereby certify that on the 3rd day of August, 2011, pursuant to the requirements of the Federal Rules of Civil Procedure, the foregoing was filed electronically and is available for viewing and downloading from the ECF system and will be served on all counsel of record via ECF notification.

Respectfully submitted,
DISERIO MARTIN O'CONNOR &
CASTIGLIONI LLP

By: ___/s/______________________
Matthew C. Wagner (MW9432)
mwagner@dmoc.com

Scott Harrington (SH0588)
sharrington@dmoc.com

Diserio Martin O'Connor & Castiglioni LLP
50 Main Street, Suite 1000
White Plains, NY 1060
Tel: 914-684-0090

Date: August 3, 2011