UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Archie Comic Publications, Inc., | 10 Civ. 8858 (RMB) |
| Plaintiff, | |
| v. | |
| Kenneth W. Penders, II, P/K/A/ Ken Penders, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE PURSUANT TO RULE 1002, FEDERAL RULES OF EVIDENCE TO EXCLUDE FROM TRIAL EXHIBITS A AND B TO THE COMPLAINT**

R. Christopher Harshman
Michael L. Lovitz
Lovitz IP Law PC
9701 Wilshire Blvd. Ste 1000
Beverly Hills, CA 90212
(310) 860-6136
Counsel for Defendant

September 14, 2011

**TABLE OF CONTENTS**

Page

**I. INTRODUCTION .......... 3**

**II. FACTS .......... 4**

**III. ARGUMENT .......... 6**

**A. The Copies of the Archie Agreements Should Be Excluded From Evidence Under FRE 1002 Because the Originals Have Not Been Produced .......... 6**

**1. The Contents of the Archie Agreements Are at Issue .......... 7**

**2. The Authenticity of the Archie Agreements is Suspect .......... 7**

**IV. Conclusion .......... 8**

## I. INTRODUCTION

This is a copyright suit, which plaintiff Archie Comic Publications, Inc. ("Archie") initiated in a complaint seeking a declaratory judgment for non-infringement of the Defendant's copyright registration, for judgment holding all of the Defendant's copyright registrations to be invalid, for breach of contract, and for tortuous interference in business.

As the foundation for Plaintiff's assertion of each of these claims, Archie attached to the complaint copies of two (2) agreements, entitled "Revised Newsstand Comic Independent Contractor's Agreement" and "ACP Licensed Comic Books Independent Contractor's Agreement", attached to the complaint as exhibits A and B respectively (collectively, the "Archie Agreements"), which documents were alleged by Plaintiff to have been signed by Defendant in December 1996. In fact, Plaintiff's entire claim concerning the issue of ownership of the copyrights in the works in dispute in this action rests upon the authenticity of the Archie Agreements.

However, Defendant has disputed having ever signing either of the Archie Agreements, stating he signed no agreements with Archie in 1996, and further disputes that the writing on the documents is Defendant's writing. During the discovery period, Defendant served on Plaintiff a demand for inspection of the originals for the Archie Agreements. Originals of these documents are necessary in order to have experts review the same to determine whether or not the Archie Agreements were forged, *inter alia*. Without the originals, it is impossible to make a determination as to their authenticity. Further, Plaintiff has identified no witnesses with first hand knowledge concerning the Archie Agreements, their creation, their having been sent to Defendant, their return or their retention. In addition, the Archie Agreements each contain a number of fields that are

missing information necessary to ascertain to what, exactly, such Agreements pertain. Admission of the copies attached as exhibits A and B to the complaint would be unfair under the circumstances.

## II. FACTS

As set forth in greater detail in the Complaint, Archie Comics is involved in the production, publication, distribution and sale of comic books. Archie's publications include both characters they own and those owned by and licensed from other comic and media companies. One such group of licensed comics centers on the SEGA video game character "Sonic the Hedgehog." See Complaint, at ¶ 17.

Starting in 1993, Penders began to submit story ideas for publication in the Sonic Comics. See Declaration of Kenneth Penders in Support of Defendant's Motion to Dismiss ("Decl."), ¶ 21. During the entire time he worked on the Sonic Comics, Penders was working for Archie as a freelancer with no contract. Decl. ¶ 37. When Penders first submitted stories ideas to Archie, there was no discussion with Archie concerning the issue of ownership or the concept of "work made for hire". Decl. ¶ 49. This was understandable since there was no guarantee that any story idea would be accepted by Archie and SEGA for use in the Sonic Comics; and in fact, a number of Penders' story ideas were rejected. Decl. ¶ 49.

The only Archie-generated documents signed by Penders that pertained to the works he was creating were pay vouchers and checks that he endorsed. Decl. ¶ 37. None of the Archie pay vouchers or checks contained any legal language, or made any reference to ownership or transfer of copyright rights in the materials Penders produced for the Sonic Comics. Decl. ¶¶ 38, 39.

### A. The Revised Newsstand Agreement

Archie's standard Revised Newsstand Comic Independent Contractor's Agreement states in its preamble that it is "a Work for Hire agreement" between Archie and the contractor to whom it was sent. This form of Agreement includes an optional acknowledgment in the event that the parties previously entered into a work for hire agreement. This form of Agreement also contains an election for such contractor as to whether or not the contractor wishes to participate in Archie's group health insurance policy coverage. The Agreement has signature spaces for "Archie Comic Publications, Inc." and for "Independent Contractor."

The document attached as Exhibit A to the complaint indicates that the contractor to whom it was sent was Defendant. Paragraph 18 of Exhibit A indicates that the parties did not previously enter into a Newsstand Comic Independent Contractor's Agreement. The document contains signatures by Edward G. Spallone, VP Finance, on behalf of Archie, and an apparent signature by Defendant.

### B. The Licensed Comic Books Agreement

Archie's standard ACP Licensed Comic Books Independent Contractor's Agreement states in its preamble that it is "a Work for Hire agreement" between Archie and the contractor to whom it was sent, and that it relates to "licensed comics".

The document attached as Exhibit B to the complaint indicates that the contractor to whom it was sent was Defendant. However, Paragraph 2 of Exhibit B does not identify a specific "Licensed Comics" or "Licensor" to which such document applied. Similarly, in paragraphs 6 and 7, there is no indication as to whether it was Archie or a Licensor who commissioned the Licensed Works or would be compensating the Contractor. The

document contains signatures by Edward G. Spallone, VP Finance, on behalf of Archie, and an apparent signature by Defendant.

Penders never knowingly signed either of the documents attached to the complaint as Exhibits A and B. Decl. ¶ 65. Penders disputes the authenticity of the documents attached to the Complaint as Exhibit A and Exhibit B for a number of reasons. Decl. ¶ 62. First, Penders believes the signatures are not authentic; Penders has no record of ever receiving documents of this kind in 1996 from Archie, nor any recollection of the same; and Penders has no copies of these signed documents in his records, which is in contrast to his normal business practices. Decl. ¶ 62. Second, Penders would never have signed a document that had blanks, such as Exhibit B. Decl. ¶ 63.

## III. ARGUMENT

### A. The Copies of the Archie Agreements Should Be Excluded From Evidence Under FRE 1002 Because the Originals Have Not Been Produced

Rule 1002 of the Federal Rules of Evidence applies to the instant case, where the both the contents of the writing and the authenticity of the document are both under question.

FRE Rule 1002 states: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." As noted above, the content of the Archie Agreements is the sole basis for Plaintiff's claims concerning ownership of the copyrights in the works in questions, as well as the other contract-based claims of the complaint.

### 1. The Contents of the Archie Agreements Are at Issue

In the instant case, the contents of the Archie Agreements, proffered by Plaintiff in support of its complaint, are clearly at issue. As provided, the documents are missing important information highly relevant to this case, including identifying the Licensor for whom the works which Archie alleges are "work for hire" were to be produced, as well as identifying comic book series to which the agreements applied. The copies produced contain none of this information, making access to the originals absolutely vital as only the originals would have the corrected and completed information that is missing from the copy provided in the exhibit to the complaint.

Because none of Plaintiff's witnesses did, or could have, first hand knowledge concerning the Archie Agreements, or any of the circumstances surrounding their creation, their having been sent to Defendant, their execution by Defendant, their receipt of signed originals, or the circumstances regarding their specific retention, the production of the original is warranted.

### 2. The Authenticity of the Archie Agreements is Suspect

In addition, the circumstances would make it unfair to admit a duplicate in lieu of the originals for either of the Archie Agreements. The authenticity of the Archie Agreements has been questioned from the start of this action, and nothing produced by Plaintiff is sufficient to dispel such suspicions. The Archie Agreements were signed by someone other than an editor, contain empty fields that are missing important information, and were filled out by someone other than Defendant. Under the circumstances, these copies should be inadmissible. See, e.g., *International Media Films V. Lucas Entertainment*

(S.D.N.Y. 3-31-2010) ( "duplicate inadmissible when genuine questions raised as to authenticity of original pursuant to Rule 1003").

## IV. CONCLUSION

For the foregoing reasons, Penders respectfully requests that the Court grant his motion in limine to exclude from evidence the Archie Agreements, Exhibits A and B to the complaint.

Dated: September 14, 2011

Beverly Hills, California

LOVITZ IP LAW, P.C.

By /s/
R. Christopher Harshman (*pro hac vice*)
9701 Wilshire Blvd. Ste 1000
Beverly Hills, CA 90212
Tel: (310) 860-6136
Fax: (310) 861-6566

*Attorneys for Defendant Kenneth W. Penders, II*