**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARCHIE COMIC PUBLICATIONS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>KENNETH W. PENDERS, II,<br>*a/k/a* KEN PENDERS<br><br>Defendant. | Case No.: 10-CV-8858 (RMB)<br><br>Judge: Hon. Richard M. Berman |

# PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE

Matthew C. Wagner
mwagner@dmoc.com
Scott Harrington
sharrington@dmoc.com
DISERIO MARTIN O'CONNOR &
CASTIGLIONI, LLP
50 Main Street, Suite 1000
White Plains, NY 10606
(914) 684-0090 Tel
(914) 684-0590 Fax

# TABLE OF CONTENTS

ARGUMENT

I. THE DUPLICATE AGREEMENTS ARE ADMISSIBLE UNDER FRE 1003……………..……5

II. THE ORIGINAL IS NOT REQUIRED UNDER FRE 1004………………………………..…..14

III. DEFENDANT'S MOTION AND ANALYSIS ARE FUNDAMENTALLY FLAWED……….17

IV. CONCLUSION………………………………………………………………...…..……..18

# TABLE OF AUTHORITIES

## Cases

*Ernst Haas Studio, Inc. v. Palm Press, Inc.,* 164 F.3d 110, 112 (2nd Cir. 1999) ........ 12

*A.V. By Versace, Inc. v. Gianni Versace S.p.A.*, 446 F. Supp. 2d 252 (S.D.N.Y. 2006) ........ 12

*Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F. Supp. 208 (S.D.N.Y. 1985) ........ 13

*Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 805 F.2d 49 (2nd Cir. 1986) ........ 13

*Georgalis*, 631 F. 2d 1199 (5th Cir. 1980) ........ 17

*Intl. Media Films, Inc. v. Lucas Ent., Inc.*, 703 F. Supp. 2d 456, 464 (S.D.N.Y. 2010) ........ 18

*Knipe v. Skinner*, 999 F.2d 708, 711 (2nd Cir.1993) ........ 12

*Myrick v. U. S.*, 332 F.2d 279 (5th Cir. 1963) ........ 6

*Ocean Partners, LLC v. North River Ins. Co, 546 F.Supp.2d 101, 106 (S.D. N.Y. 2008)* ........ 12

*Phoenix Ins. Co. v. APF Fire Protection, Inc,* 2011 WL 2802930 (S.D. NY July 14, 2011) ........ 12

*Remington Arms Co. v. Liberty Mutual Ins. Co.*, 810 F.Supp. 1420, 1426 (D.C.Del.1992) ........ 15

*Robles v. United States,* 279 F.2d 401, 404 (9th Cir.1960) ........ 12

*Seiler v. Lucasfilm, Ltd.*, 613 F.Supp. 1253, 1260–1261 (D.C.Cal.1984) ........ 14

*Servants of the Paraclete, Inc. v. Great American Ins. Co.*, 857 F.Supp. 822, 828 (D.C.N.M.1994 ) ........ 15

*U.S. v. Balzano*, 687 F.2d 6, 7 (1st Cir. 1982) ........ 6

*U.S. v. Balzano*, 687 F.2d 6, 8 (1st Cir. 1982) ........ 14

*U.S. v. Georgalis*, 631 F. 2d 1199 (5th Cir. 1980) ........ 6

*United States v. Crisp*, 324 F.3d 261, 271 (4th Cir.2003) ........ 12

*United States v. Jolivet*, 224 F.3d 902, 905-06 (8th Cir.2000) ........ 12

*United States v. Jones*, 107 F.3d 1147, 1161 (6th Cir.1997) ........ 12

*United States v. Mooney*, 315 F.3d 54, 61-63 (1st Cir.2002) ........ 12

*United States v. Paul*, 175 F.3d 906, 909-12 (11th Cir.1999) .......... 12

*United States v. Prime*, 431 F.3d 1147, 1151-54 (9th Cir.2005) .......... 12

*United States v. Velasquez*, 64 F.3d 844, 850-52 (3d Cir.1995) .......... 12

## Rules

*Advisory Committee Notes*, Fed. R. Evid. 1001 .......... 5

Fed. R. Evid. 1003 .......... 5

Fed. R. Evid. 1001 .......... 4

Fed. R. Evid. 1004 .......... 13

Plaintiff, Archie Comic Publications, Inc. ("ACP"), by and through its attorneys, hereby objects to the Defendant's Motion in Limine, dated September 15, 2011. D.E. 50. ACP respectfully requests that the Court deny the Defendant's request that the Revised Newsstand Comic Independent Contractor's Agreement ("Contractor's Agreement") and ACP Licensed Comic Books Independent Contractor's Agreement ("Licensed Comic Books IC Agreement") (the Contractor's Agreement and the Licensed Comic Books IC Agreement collectively referred to as the "ACP-Penders Agreements" and attached as Exhibit A and B to the Complaint) be excluded from evidence. In sum, the ACP-Penders Agreements are direct evidence of crucial factual issues in this case. The Defendant has failed to show that a genuine question is raised as to their authenticity, which is the proper consideration under a Federal Rules of Evidence ("FRE") 1003. The jury should absolutely be permitted to review this evidence. Defendant not only misrepresents the facts, but its Motion also lacks any legal support. For these reasons, which will be further discussed below, Plaintiff hereby opposes Defendants' Motion in Limine to Exclude From Trial Exhibits A and B to the Complaint.

## ARGUMENT

### I. THE DUPLICATE AGREEMENTS ARE ADMISSIBLE UNDER FRE 1003.

The duplicates of the ACP-Penders Agreements are admissible under the Federal Rules of Evidence. Generally, a duplicate is admissible in lieu of an original. A "duplicate is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original." Fed. R. Evid. 1001.

The rationale underlying this rule is that a duplicate is "produced by methods possessing an accuracy which virtually eliminates the possibility of error. Copies thus produced are given the status of originals in large measure by Rule 1003." *Advisory Committee Notes*, Fed. R. Evid. 1001. Rule 1003 of the Federal Rules of Evidence provides:

> **A duplicate is admissible to the same extent as an original** unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

Fed. R. Evid. 1003. *See U.S. v. Balzano*, 687 F.2d 6, 7 (1st Cir. 1982) (emphasis added). The Defendant bears the burden of showing that there is a "**genuine issue** as to the authenticity of the unintroduced original, or as to the trustworthiness of the duplicate, or as to the fairness of substituting the duplicate for the original." *U.S. v. Georgalis*, 631 F. 2d 1199 (5th Cir. 1980) (emphasis added); *see also Myrick v. U. S.*, 332 F.2d 279 (5th Cir. 1963) ("Admission of photostatic copies of bank checks made from original microfilms of checks was not reversible error, in absence of claim that copies offered in evidence were incorrect."). Defendant has failed to meet that burden. In support of his contention that the documents are not authentic, Defendant states that he would never have signed a document that has blanks. D.E. 50, p. 6. This directly contradicts Defendant's sworn deposition testimony. During Penders' deposition, he testified:

> Q: And upon your review of this composite exhibit, Penders 23, in each instance where there appears a signature on the signature line of the invoice, is that your signature?
>
> A: On each instance---yes. However, there are a number of vouchers that don't have my signature.

Q: Thank you. . . . Where a signature does appear on that line, that's your signature; correct?

A: It would appear so, yes.

Q: Well, is there any reason that you have to believe that any of these signatures on these invoices is not your signature.

A: I don't have any reason to speculate.

…………………………………………………………

Q: Okay, now when you were doing work for Archie, **I understand you had signed groups of invoices in blank and given them to the editor at the time** in order for them to fill out the details when they purchased a story from you; is that correct?

A: To the best of my recollection, **yes**.

……………………………………………………………

Q: At any point in time, **did you object to that procedure**?

A: The way it was explained to me, **I didn't see any reason to object.**

(Deposition of Kenneth W. Penders II, p. 148, In 1-6, 10-18; p. 149, In. 5-10, 25; p. 150 In. 1-3)(emphasis added)[1]. As shown above and directly contrary to Defendant's assertions, Penders would sign a document provided by ACP with blanks on it, and in fact, he frequently did so. These contradictory statements bear directly on Defendant's credibility, and do not create a genuine issue as to the authenticity of the documents. This is just another example of discrepancies between Penders' testimony and claims in his motions.[2]

Defendant argues that that the agreements "contain a number of fields that are missing information necessary to ascertain to what, exactly, such agreements pertain."

[1] Cited excerpts from Penders' deposition are attached as Exhibit A.

[2] *See* D.E. 48, pp. 13-14 for another example of discrepancies between Penders' deposition testimony and pleadings.

D.E. 50, p. 4. This assertion is blatantly incorrect. Both agreements very clearly state the subject matter of the agreement. For example, the Revised Newsstand Comic Independent Contractor's Agreement ("Contractor's Agreement") states in all capital letters that it is an "INDEPENDENT CONTRACTOR'S AGREEMENT". Moreover, the next paragraph further states that it is a "work for hire agreement." *See* Exhibit A to the Complaint. In fact, Defendant's own motion contains a detailed description of each Agreement, shedding doubt on his assertion that Penders' was unable to comprehend the subject matter of the agreements when they are clearly outlined in a short three page document. D.E. 50, p. 5-6. The Contractor's Agreement contains no blanks, were signed and executed by Penders, and is filled out in its entirety. The ACP Licensed Comic Books Independent Contractor's Agreement ("Licensed Comic Books IC Agreement"), signed and executed by Penders on December 12, 1996, contains only two blanks. The reason for these two blanks is clearly explained by Michael Pellerito's ("Pellerito"), deposition testimony.

> Q: On page one of that contract [referring to the Licensed Comic Books IC Agreement], section two can you show me where it makes reference to either Sega or Sonic?
>
> A: I do not see Sega or Sonic on here.
> ......................................
> Q: Does paragraph 25 list any licensor . . .
>
> A: It was left blank and that is done that way because as I am told, for the opportunity for other licensed work. At the time were publishing other licensed titles.

(Deposition of Michael Pellerito-CONFIDENTIAL, p. 105 ln. 23-25; p. 106, ln. 1-3, 8-14).[3] ACP's practice was to send out two signed copies of the contract to sign, and return one to ACP and keep one for their own personal use. (Deposition of Victor Gorelick, NON-CONFIDENTIAL p. 54 ln. 18-22).[4] ACP sent two contracts to Penders' which he testified he received. He testified, in pertinent part:

> A: I asked him if he recalled sending me a contract in 1995, **as I had a recollection that he may have done so**. He recalled sending it to me.

(Deposition of Kenneth W. Penders II, pp. 170 ln. 12-14 (emphasis added)). *See also* (Deposition of Kenneth W. Penders II, p. 189 ln. 13-15) ("**I acknowledged receiving documents from Scott Fulop**. I don't remember what happened to those documents.")(emphasis added). Penders' signed both agreements and returned a copy of each to ACP, in conformance with ACP's policies and procedures, the authentic photocopies of which Plaintiff produced to Defendant as Exhibit A and B to the Complaint. Penders' testified:

> Q: In your email to Victor Gorelick from December of 2008, you state that you are requesting "A copy of the **work for hire agreement I signed**."
>
> A: I inartfully worded those emails. I did not wish to engage the time, expense or effort on a fool's errand. I felt it would be productive if I pointed Archie in a direction where such documents, if they did exist, were to be found.

(Deposition of Kenneth W. Penders II, p. 189 ln. 3-10 (emphasis added)). It is nonsensical for Penders' to argue that he did not sign the agreements when he

[3] Cited excerpts from Pellerito's deposition are attached as Exhibit B. Although the cited portions of Mr. Pellerito's testimony was initially designated "Attorneys Eyes Only" under the Protective Order, redacted copies of the cited testimony are attached and upon review, ACP hereby redesignates this specific testimony "non-confidential".

[4] Cited excerpts from Gorelick's deposition are attached as Exhibit C.

specifically requested a copy of the agreements he signed from Victor Gorelick. This is yet another inconsistent statement from the Defendant.

Furthermore, Defendant incorrectly states that Plaintiff has identified no witnesses with firsthand knowledge of ACP's document retention. ACP's President gave detailed testimony regarding ACP's document retention system. Pellerito testified:

> Q: Can you tell me now about Archie's document retention policies. Do you know if Archie has a set policy with respect to retaining documents?
>
> ……………………………..
>
> A: Each set of documents are treated differently based on their importance or lack of importance.
>
> ………………………………………
>
> Q: Legal documents can you talk to me about the retention policy for legal documents?
>
> A: Yes.
>
> Q: What is the policy?
>
> A: We keep them.
>
> Q: Where do you keep them?
>
> A: Similar situation, a variety of places.
>
> …………………………………………
>
> Q: And where, you say with respect to the physical documents that may be kept in a variety of different places. What are those places?
>
> A: Within the building, off site warehouse.

(Deposition of Michael Pellerito- CONFIDENTIAL, p.26 ln. 12-15, p. 27 ln 7-9 ; p. 30 ln. 20-25; p. 31 ln. 1-4, 14-19). Similarly, Victor Gorelick testified:

> Q: Do you have any understanding as to the document retention policy at Archie Comics with respect to contracts with artists?
>
> A: Yes.

> Q: And what is that policy?
>
> A: We keep them.
>
> Q: Do you know how they are kept or where they are kept?
>
> A: They are kept in files. Some are in files in my office, some are in files in the other writer's office, some are in accounting and some are in storage.

(Deposition of Victor Gorelick-NON CONFIDENTIAL, p.50 ln. 25, p. 51 ln. 1-13). Victor Gorelick will also testify that he recalls with specificity Penders' execution of the ACP-Penders Agreements and his submissions of those Agreements to ACP in 1996. He will testify that the ACP-Penders Agreements that are attached to the complaint as Exhibits A and B, the same agreements Defendant seeks to exclude, are true and accurate copies of the documents that Penders executed and submitted to ACP. ACP identified this subject matter early in the litigation and Gorelick as a witness. *See* D.E. 17, pp. 5. As shown above and contrary to Defendant's claims, there are at least two witnesses with firsthand knowledge concerning the agreements, including witness testimony concerning Penders' execution and receipt of the agreements.

Defendant further makes the unsupportable claim that originals of the ACP-Penders Agreements are necessary in order to have an expert determine whether the agreements were forged. Interestingly, Defendant has never identified an expert witness to examine the copies of the Agreements, despite having ample time to do so. If anything, it was incumbent upon Defendant to come forward with an expert witness that states to the court that an original is necessary. Defendant has not cited to *any* case law, or other evidentiary materials that holds that the original document is necessary for

an expert to determine whether the signature is a forgery.[5] A handwriting expert may offer an opinion on the authorship of a handwriting sample as long as the Daubert test is satisfied. *A.V. By Versace, Inc. v. Gianni Versace S.p.A.*, 446 F. Supp. 2d 252 (S.D.N.Y. 2006) (A handwriting expert, who satisfied requirements for expert testimony articulated in *Daubert*, could give opinion that signature appearing on letter of intent was not same as signature of person allegedly signing letter.) *See also United States v. Prime*, 431 F.3d 1147, 1151-54 (9th Cir.2005); *United States v. Crisp*, 324 F.3d 261, 271 (4th Cir.2003); *United States v. Mooney*, 315 F.3d 54, 61-63 (1st Cir.2002); *United States v. Jolivet*, 224 F.3d 902, 905-06 (8th Cir.2000); *United States v. Paul*, 175 F.3d 906, 909-12 (11th Cir.1999); *United States v. Jones*, 107 F.3d 1147, 1161 (6th Cir.1997); *United States v. Velasquez*, 64 F.3d 844, 850-52 (3d Cir.1995). *Robles v. United States,* 279 F.2d 401, 404 (9th Cir.1960). Defendant has never identified any expert witness, let alone one who has proffered that an original is necessary for such an analysis.

Plaintiff further incorporates its' Motion in Limine, D.E. 48 pp. 3-6 as support that the ACP-Penders Agreements are genuine. There is ample evidence that Penders signed the agreements, and the signature on the agreement is in fact his signature. Penders' discovery responses and deposition testimony show that Penders cannot support his claim that the agreements showing his signature are not genuine. It is

[5] And he cannot do so on reply. In *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, "[a]n attempt is made in the Reply Brief to supply what was conspicuously omitted in the main Brief." 164 F.3d 110, 112 (2nd Cir. 1999). The court noted that "[t]he Reply Brief is almost three times as long as the main Brief and contains some citations to pertinent legal authority." The court firmly held "new arguments may not be made in a reply brief". *Id*; *see also Knipe v. Skinner*, 999 F.2d 708, 711 (2nd Cir.1993). This Court recently agreed in its slip copy opinion of *Phoenix Ins. Co. v. APF Fire Protection, Inc,* 2011 WL 2802930 (S.D. NY July 14, 2011). This Court reaffirmed its opinion in *Ocean Partners, LLC v. North River Ins. Co.*, and stated "[t]he general rule set forth in the case law holds that it is improper practice to raise arguments in the first instance in a reply brief." See *Ocean Partners, LLC v. North River Ins. Co,* 546 F.Supp.2d 101, 106 (S.D. N.Y. 2008).

incumbent upon a party claiming the nongenuineness of a signature to produce firsthand proof of the forgery. *Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F. Supp. 208 (S.D.N.Y. 1985) *aff'd sub nom. Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 805 F.2d 49 (2nd Cir. 1986). Penders has failed to produce any evidence that the agreements have been forged and failed to meet his burden that the agreements are not genuine. In fact, Penders admits he has no evidence that ACP forged the agreements:

> Q: You have no evidence that Archie forged your signature, do you?
>
> A: I have no evidence. That doesn't mean they're not capable.
>
> Q: Do you have any evidence to support such a claim?
>
> A: I don't have any evidence that a business that's been in the graphic reproduction for 70 years committed forgery no.

(Deposition of Kenneth W. Penders II, pp. 188 ln. 19-25; pp. 189 ln. 1-2). Defendant has not enlisted a handwriting expert to examine the duplicate agreements, nor has he offered any evidence that the agreements are not genuine. Plaintiff has reviewed countless documents bearing Penders' signature, including his ACP invoices and bankruptcy filings.[6] All of the signatures and dates match the signature and date in the manner they appear on the agreements. As such, Defendant has failed to meet his burden that a genuine issue exists as to the authenticity of the duplicate. He does not dispute this is his signature in his own papers.

[6] For multiple examples of Penders' handwriting, please see Exhibit F and Exhibit to D.E. 48.

## II. THE ORIGINAL IS NOT REQUIRED UNDER FRE 1004.

The copies of the ACP-Penders Agreements provided to Defendant are evidence of the contents of the original documents and, under the Federal Rules of Evidence, are admissible in lieu of the lost original documents. Rule 1004 provides that "[t]he original is not required, **and other evidence of the contents of a writing … is admissible** if … [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith …." Fed. R. Evid. 1004 (emphasis added).*See also U.S. v. Balzano*, 687 F.2d 6, 8 (1st Cir. 1982). Like in *Balzano*, the Defendant made no allegation of bad faith, nor is there any basis for a bad faith allegation. In fact, Defendant testified that he has no reason to believe that ACP would forge his signature or act in bad faith:

> Q: You have no evidence that Archie forged your signature, do you?
>
> A: I have no evidence. That doesn't mean they're not capable.
>
> Q: Do you have any evidence to support such a claim?
>
> A: **I don't have any evidence that a business that's been in the graphic reproduction for 70 years committed forgery no**.

(Deposition of Kenneth W. Penders II, pp. 188 ln. 19-25; pp. 189 ln. 1-2)(emphasis added). Plaintiff has shown by a preponderance of evidence that the original agreements have been lost or destroyed. *See, e.g., Seiler v. Lucasfilm, Ltd.*, 613 F.Supp. 1253, 1260–1261 (D.C.Cal.1984) ("burden of proving loss or destruction of evidence under Rule 1004(1) is on proponent of secondary evidence"); *see also McCormick on Evidence* § 201 (Loss or destruction of original, unless due to bad faith of the proponent, is a satisfactory explanation of nonproduction.).

Upon conducting a diligent search of Plaintiff's regular business records and files, as they are kept and maintained in the ordinary course of business, Plaintiff located copies of the ACP-Penders' Agreements, and not the originals. Testimony will show that Victor Gorelick was responsible for keeping the files which included these agreements. *See* D.E. 17, pp. 5. A search of these files was conducted and the original agreements were not found. These originals are lost with no evidence of bad faith, and therefore, other evidence of the contents is admissible. These are the same forms used hundreds of times by ACP.

The United States District Court of Delaware held that although "[l]oss or destruction may sometimes be provable by direct evidence but **more often the only available evidence will be circumstantial, usually taking the form that appropriate search for the document has been made without discovering it**."). *Remington Arms Co. v. Liberty Mutual Ins. Co.*, 810 F.Supp. 1420, 1426 (D.C.Del.1992) (emphasis added); *see also* 2 McCormick on Evidence, § 237 (3rd ed. 1984); *see also Servants of the Paraclete, Inc. v. Great American Ins. Co.*, 857 F.Supp. 822, 828 (D.C.N.M.1994 )("**Loss or destruction of the original is most commonly shown through circumstantial evidence of a 'diligent but unsuccessful search** and inquiry for the missing document.")(emphasis added). These copies were found in the place where the originals would have been located, at that place in Plaintiff's regular and ordinary business location, as they have kept such records in the ordinary course of business for many years. *See* D.E. 17, pp. 2 ("I have personal knowledge and oversight of ACP's filing systems, and the fully executed ACP-Penders Agreements were maintained by

ACP in the ordinary course of business in our filing systems, and produced as they were kept by ACP.").

Moreover, the ACP Penders' Agreements were co-located alongside a multitude of other similar business records and agreements. Thus, Plaintiff conducted a diligent, bona fide and thorough search for the original documents, without success. The originals are lost. Plaintiff did not lose the originals in bad faith; to the contrary, it would have been in Plaintiff's interest to preserve the originals. Plaintiff has committed no acts of bad faith or other conduct which would tend to show any foul play or fraud and the copies of the ACP-Penders' Agreements are forms used by Plaintiffs for many years and which were executed by the parties over fifteen years ago. There is no evidence that any of the contents have been tampered with or altered; to the contrary, the copies of the ACP-Penders' Agreements contain certain indicia which show that they are indeed faithful copies of the original documents, like the particular style Penders' dates each document with the day, month spelled out, and the year. *See e.g.*, D.E 48, Exhibits A, B, E, and F. Moreover, the parties operated faithfully and enjoyed a regular course of conduct under the terms of the ACP-Penders' Agreements for many years. Defendant's own testimony shows he has no reason to believe the documents were forged by ACP, nor did he have any cause for concern when he signed documents from ACP containing blanks. Defendant simply does not remember signing the documents, which is not uncommon considering the documents were signed over fifteen years ago and during a time in which Penders' testified he had a lot of personal issues going on at the time. (Deposition of Kenneth W. Penders II, pp. 187).

## III. DEFENDANT'S MOTION AND ANALYSIS ARE FUNDAMENTALLY FLAWED.

Defendants' motion contains dispositive analytical flaws and factual inaccuracies. The Defendant misstates that the Plaintiff has identified no witnesses with firsthand knowledge concerning the ACP-Penders Agreement when in fact; Defendant's own sworn statements are evidence that he recalls being sent the documents. Penders' testified:

> Q: I think you just mentioned that you recall receiving agreements, not that you recall with any specificity what they were, from Scott Fulop in 1995; right?
>
> A: I acknowledge that, yes.

(Deposition of Kenneth W. Penders II, pp. 186, ln. 5-9). As previously discussed above, Victor Gorelick also has firsthand knowledge of receiving the documents from Penders and filing them.

Moreover, the Defendant has failed to meet his burden that there is a genuine issue as to the authenticity of the original. *U.S. v. Georgalis*, 631 F. 2d 1199 (5th Cir. 1980). The Defendant has presented no evidence which raises any question as to the authenticity of the original. In fact, the record is replete with evidence establishing that the agreements are genuine, and Penders admits he has no evidence ACP forged them and Penders in his own papers does not even dispute that this is his signature. The ACP-Penders Agreements are direct evidence of the relationship between Penders and ACP and the facts underlying this action.

The most glaring flaw concerns Defendant's failure to properly cite and apply the applicable Federal Rules of Evidence. The Defendant does not even acknowledge the existence of the relevant and applicable rule concerning the admissibility of a duplicate,

the type of writing involved here. Rather, the only rule the Defendant cites to is FRE 1002.[7] The sole case Defendant cites to pertain to a document that was maintained in a public register and database. ACP did not maintain electronic copies of their contracts in a public database, rather they only maintained physical copies and in 1996, email and scanned documents was uncommon. (Deposition of Michael Pellerito, pp. 44 ln. 10-20.) Defendant states it would be "unfair" to admit the duplicates of the ACP-Penders Agreements. It is not unfair: the evidence consists of Defendant's own sworn statements. Exclusion of this evidence would actually be unfairly prejudicial to Plaintiff.

## IV. CONCLUSION

The Defendant has failed to meet his burden a genuine question is raised as to the authenticity of the ACP-Penders Agreements, and therefore Defendant's motion should be DENIED.

Respectfully submitted,
DISERIO MARTIN O'CONNOR &
CASTIGLIONI LLP

By: /s/
Matthew C. Wagner (MW9432)
mwagner@dmoc.com

Scott Harrington (SH0588)
sharrington@dmoc.com

Diserio Martin O'Connor & Castiglioni LLP
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: 914-684-0090

Date: September 21, 2011

[7] Not surprisingly, Defendant cites to only one case to support his contention that the Agreements should not be admitted into evidence. D.E. 50 at p. 7. *Int'l Media Films v. Lucas Entertainment* is easily distinguishable from the facts here. In *Int'l Media Films*, there is no witness testimony pertaining to the Agreement, the Agreement has an improper signature, and contains a "small fee recital". Moreover, the document at issue in *International Media Films* was supposed to be maintained in a Public Register and database, where certified copies are readily available. *Intl. Media Films, Inc. v. Lucas Ent., Inc.*, 703 F. Supp. 2d 456, 464 (S.D.N.Y. 2010).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARCHIE COMIC PUBLICATIONS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>KENNETH W. PENDERS, II,<br>*a/k/a* KEN PENDERS<br><br>Defendant. | Case No.: 10-CV-8858 (RMB)<br><br>Judge: Hon. Richard M. Berman<br><br>**CERTIFICATE OF SERVICE** |

I, Matthew C. Wagner, hereby certify that on the 21st day of September, 2011, pursuant to the requirements of the Federal Rules of Civil Procedure, the foregoing was filed electronically (ECF) and is available for viewing and downloading from the ECF system and will be served on all counsel of record via ECF notification.

Respectfully submitted,
DISERIO MARTIN O'CONNOR &
CASTIGLIONI LLP

By: /s/
Matthew C. Wagner (MW9432)
mwagner@dmoc.com

Scott Harrington (SH0588)
sharrington@dmoc.com

Diserio Martin O'Connor & Castiglioni LLP
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: 914-684-0090

Date: September 21, 2011