# Exhibit A

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: eCO claim over 1 year old**
**Date:** September 23, 2011 12:12:38 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Friday, March 12, 2010 4:44 PM
To: kenpenders@kenpenders.com; Madyun, Zarifa
Cc: Ashley, John
Subject: Re: eCO claim over 1 year old

Ken -

John Ashley has forwarded your claims to me. The sheer mass of this material is somewhat daunting, but I got through each of your claims today. I'll be in touch on Monday with some questions for you.

Sincrely,
William Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office

Zarifa Madyun 3/11/2010 3:07 PM >>>
Good Afternoon:

I received a call from a remitter this afternoon. He stated that he had been in contact with the office on several occasions but he still has no update on his status. He stated that someone told him that all of the work that he submitted would be gathered up and given to one person. He has a lot of works but I only had the ability to search one. The one I search doesn't have anything showing up in the "Owner" field. The last person he had been in contact with was ABRO. Here is his information:

Ken Penders
Knuckles The Dark Legion Brook One Army of Darkness
SR: 1-155432561
EDR: 1/29/2009
kenpenders@kenpenders.com
310-927-9497

Thanks,
Zarifa

# Exhibit B

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Your copyright claims**
**Date:** September 23, 2011 12:12:46 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Monday, March 15, 2010 3:51 PM
To: Ken Penders
Cc: Ashley, John
Subject: Your copyright claims

Dear Mr. Penders,

There are issues with your claims that I think would be best to put in writing so you can read and consider them before you react. You may want to discuss this email with your attorney. Once you have read and considered the information in this email, we can then discuss these issues by further email or by phone (my number is below).

The central question is: what exactly was your contribution to each of these works? It appears that in some cases, if not all, you contributed only preliminary sketches that were finalized by other artists (perhaps employees of the comic book publishers?), which leads us to question why you are claiming copyright in the finished artwork and text. For all your pending cases you deposited the finished product (either actual published copies or photocopies thereof), and in only some cases you deposited preliminary sketches (in most cases these sketches are for cover artwork only, and they are of varying degrees of similarity to the finished covers), and a few draft scripts.

For example, in one case (# 1-155777549), you deposited preliminary sketches that clearly appear to have served as the basis for the finished product. In other cases you deposited "preliminary" artwork that appears to be identical to the finished artwork, except that the artwork is in black-and-white rather than in color (did you create the black-and-white versions yourself?). Cases in this latter category include 1-155777355 and 1-1556333803, among others. In still other cases you deposited sketches of cover artwork that are highly conceptual and that in some cases are very different from the finished products (such as 1-158787980). Even though it appear that you did not create these works by yourself, all your applications name only you as the copyright claimant, except for two in which Jim Valentino is named as a co-author of artwork and as co-claimant of artwork and text (these are 1-158809154 and 1-155717751), and one in which Kent Taylor is named as a co-author of text but not as a co-claimant (1-156514406).

But, it's almost impossible for us to figure out who did what based on the credits in the comic books. Several name you as a co-author of the "script" with Ken Kanterovich. Some name other persons entirely as "artist" or "illustrator" (see 1-155432561 and 1-15622038, for example), and some simply identify you as "writer.

Please note that you are entitled to claim copyright only in artwork and text you actually created yourself (in such cases you might be the sole author), or artwork and text to which you significantly contributed (in which case you might be a co-author). You may not claim sole authorship of artwork or text to which others contributed significantly (but then, neither should any of the other contributors). In short, in cases where you did not create the final, finished artwork or text, it is incorrect to name youself as the sole author.

Anyone who contributed significantly to the finished artwork or text should be named as an author on the application, whether it's an individual person or their employer (if a "work made for hire"). Contributing only preliminary sketches or design concepts would not entitle you to be named as the sole author of artwork or text that was completed by someone else.

However, you are always free to name yourself as sole author and claimant on applications that limit your claim to your preliminary sketches and scripts, as unpublished works, if you actually created this material by yourself (for such claims you would need to send us your preliminary sketches and scripts; the published comic books would not be included).

Complicating all this is the concept of "joint authorship." If more than one author contributed to a work, and they did so with the intention that their contributions would be merged into a single work in which they would share copyright ownership, then we have a "joint work." In such cases each joint author should be named on the application, and any single author, or combination of authors, may be named as copyright claimant (but any author not named as a claimant may register a separate claim in the work as a whole). If there are multiple authors, and it is NOT a "joint work," and fewer than all the authors are named as claimants, then the application must contain a transfer statment explaining why all the authors are not named as claimants (the transfer statement must explain how the named claimant(s) acquired ownership of the copyrights belonging to the authors who have not been named as claimants). Examples of acceptable transfer statements include "by written agreement," "by contract," and "by assignment of all rights."

There is also the complicating concept of "work made for hire," which you have apparently discussed with your attorney. We cannot tell you whether your contributions, or the contributions of anyone else who contributed to the comic books, were or were not "works made for hire" as defined by the copyright law. We can only direct you to our information circular on this topic (Circular 9 under "Circulars" on our website at www.copyright.gov ). If any parts of the comic books were created by employees in the course of their employement, or by independent contractors whose contributions fall within certain specified types of authorship (see 17 USC 101) and that were created pursuant to a signed

written agreement, then the employers would be considered the authors of those parts of the comic books.

Finally, there is a procedural issue with some of your claims: 10 of your applications present claims in more than one comic book issue. However, you may not register a single claim in a group of works that were first published on different dates (at least not for $35 using our on-line registration system). For applications submitted on-line. a separate application and filing fee is required for each separately published work.

Our regulations contain an exception to what was said in the preceding paragraph: You may register a single claim in contributions to periodicals that were published within a single 12-month period (not necessarily in the same calendar year) by using our paper Form VA and adjunct application Form GR/CP. For information on and access to this form, go to our website at www.copyright.gov , click on "Forms" and scroll down to "For GR/CP w/instructions" under "Visual Arts." The filing fee for a claim using Form VA is $65.

Sincerely,
William Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office
202-707-1497

Ken Penders <kenpenders@kenpenders.com> 3/13/2010 11:16 PM >>>
William,

I very much appreciate your response and look forward to communicating further with you. Although I reside in California, despite the 3-hour time-zone difference with the east coast, I am available at any hour to discuss the matter of my claims with you. I am prepared to provide any and all information with regards to any further clarification required where my submissions are concerned. I thank you in advance for your time and consideration.

Best,
Ken Penders

4526 Coldwater Canyon Avenue #303
Studio City, CA
91604-1066

310-927-9497
818-358-2345/fax

On Mar 12, 2010, at 1:44 PM, William R Briganti wrote:

> Ken -
>
> John Ashley has forwarded your claims to me. The sheer mass of this material is somewhat daunting, but I got through each of your claims today. I'll be in touch on Monday with some questions for you.
>
> Sincrely,
> William Briganti
> Assistant Chief
> Visual Arts and Recordation Division
> U.S. Copyright Office
>
> Zarifa Madyun 3/11/2010 3:07 PM >>>
> Good Afternoon:
>
> I received a call from a remitter this afternoon. He stated that he had been in contact with the office on several occasions but he still has no update on his status. He stated that someone told him that all of the work that he submitted would be gathered up and given to one person. He has a lot of works but I only had the ability to search one. The one I search doesn't have anything showing up in the "Owner" field. The last person he had been in contact with was ABRO. Here is his information:

> Ken Penders
> Knuckles The Dark Legion Brook One Army of Darkness
> SR: 1-155432561
> EDR: 1/29/2009
> kenpenders@kenpenders.com
> 310-927-9497
>
> Thanks,
> Zarifa

# Exhibit C

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Your copyright claims**
**Date:** September 23, 2011 12:13:00 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Thursday, March 18, 2010 11:55 AM
To: Ken Penders
Subject: Re: Your copyright claims

Thank you for this very detailed information. I will respond as soon as possible, and no later than early next week.

William Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office

Ken Penders <kenpenders@kenpenders.com> 3/18/2010 4:21 AM >>>
Bill,

Before we begin, I should call attention to a very pertinent fact that needs to be addressed. In reviewing what I applied for when filling out my claims initially, I was seeking out the copyrights only to my stories and page/cover art layouts, except in the cases I actually did the complete art or pencil art alone. If you'll check the note on my claim of case 1-155777549, I clearly state "The work submitted included full text and page art layouts which were used in the preparation of the finished art. I was not credited for the art contribution, nor was I an employee of Archie Comics or SEGA at the time this work was created. I also had not signed a work-for-hire agreement in the commission of this story."

Likewise, you'll find this applies to each and every one of my claims.

I was never attempting to file for what I did not believe belonged to me, and thus limited my claims only to my contributions.

I believe the confusion began when those assigned to initially review my work compared the layout art samples I provided with the finished publication, and thus began the debate over what part of the copyright to the artwork I was entitled to. This was brought to my attention when a Ms. Adrienne Brown inquired of me via e-mail on April 14, 2009:

"We noticed on the copy another name listed for the artwork, are you the artist of the artwork? On the deposit you are only listed as the writer."

She was enquiring with regards to case 1-155432561, which lists me as a cover artist as I provided the layout and final inks. I made no claim to any of the interior story art, as I consider my cover layout the only important part of any claim to the copyright of the cover art.

With that established, here are the three representative cases as you requested.

TEMPLATE No. 1

Case 1-155777549

Title of Work: SONIC THE HEDGEHOG in THE GOOD, THE BAD AND THE HEDGEHOG!

1) Art: If you believe my script layouts form the basis of the finished art, which I believe you do, then the layouts are uncredited work rendered by me. You should have in your possession xerox copies of pencil artist Dave Manak's renderings based off of my layouts, which are essentially more polished versions of my work with minimal added detail. Again, long story short, Ken Penders supplied the layouts and Dave Manak the finished pencils.

While Art Mawhinney is credited with providing the finished ink art, I would not consider him a creator, nor would I consider any inker a creator, including myself on any listed work. Only the writer(s) and pencil artist - and in this case, the layout artist - can be said to have created something out of nothing. As an example, ask any comic collector, comic art historian or any person knowledgeable on the history of comics who created THE FANTASTIC FOUR, and you'll receive as the answer the names Stan Lee and Jack Kirby. Whom you will not hear are the following names: Sol Brodsky, Dick Ayers, Steve Ditko, Paul Reinman, Chic Stone, Frank Giacioa, Vince Colletta and Joe Sinnott, all of whom were responsible for inking Jack Kirby's pencil art during his 100+ issue run from when the series began. The same could be said of any series that has withstood the test of time. The inker, letter and colorist are craftsmen who provide the finishing look, but they are not considered creators as they are considered all interchangeable.

2) Story: Ken Penders & Mike Kanterovich- for whatever reason, Mike's name was usually listed first, even though I was the one conducting

business on behalf of the both of us with the editors of Archie Comics, which was Paul Castiglia at the time. (NOTE: Paul was the editor we dealt with for the stories involved with this claim. Scott Fulop replaced him shortly after we turned in these stories.) Mike and I would discuss the story and I would do the physical work of putting it all down on paper. While Mike has asked me to deal with protecting his interests as I have before, I am perfectly happy if the copyright for the story is awarded to the both of us. It just makes it easier for me to conduct business if I am the sole claimant. I can get Mike to sign off on a transfer of rights if that is called for. So, long story short - in the technical sense, Ken Penders supplied the finished script with verbal contributions from Mike Kanterovich. Ken Penders also supplied any outlines that were typed in and faxed for approval, with verbal contributions from Mike Kanterovich.

3) Mike Kanterovich and I never submitted work under a "work made for hire" agreement. That covers the story and layouts not covered by a "work made for hire agreement". According to Scott Fulop, former editor of SONIC THE HEDGEHOG published by Archie Comics, he highly doubts artist Dave Manak operated under a "work made for hire"
agreement, as things were rather informal back then, and no one had any idea of the longterm success the series would enjoy. Likewise, it's also highly unlikely Art Mawhinney worked under a "work made for hire" agreement, and I have yet to uncover any freelance contractor who worked on the series while I was contributing who signed such a document.

Furthermore, before I proceeded to file for the copyrights to my stories, upon the advice of my attorney, I requested in writing not once, but on three separate occasions I requested a copy of any "work made for hire" documents I may have signed for the company. Since I never signed any such document, I was not surprised when the company did not acknowledge my requests.

4) The sole variation is that I am not credited as layout artist, despite the physical evidence of the copy of the script itself. It was Archie Comics company policy not to pay for said layouts, preferring to consider it a standard script format. While I disagreed with this policy, I accepted it at the time and constantly requested to be allowed to submit my scripts in straight text format. Archie Comics would finally change their policy shortly before I wrote the script for SONIC THE HEDGEHOG #47 (case 1-156421713).

5) I am claiming the copyright for the story. I would say that Mike Kanterovich transferred his copyrights "by assignment of all rights", as he expected me to handle looking out for our interests as I have always done. While I consider Mike a co-claimant with regards to the story, having handled all of our mutual business affairs places the burden on me to represent our interests. Mike was always paid out of my pocket as a sub-contractor for tax purposes, and never had any business dealings with Archie Comics. I leave it to your discretion how this should be handled.

I am claiming copyright for the art based solely on the layouts, as Dave Manak clearly based not only his page and panel layouts from my work, but also character placement, word balloon placement and other visual cues. I would go along with Dave being named co-claimant if that is your ruling, but if he clearly hasn't deviated from the layouts I supplied, then that's where I believe the line should be drawn. Had he differentiated significantly from what I supplied, then yes, I would agree he is a full co-claimant. As I've supplied both a copy of my complete script as well as a copy of the published issue, virtually everything Dave rendered was from my layouts.

Title of Work: SONIC THE HEDGEHOG will never BEAT THE CLOCK!

This is the sole story that does not credit any of the creators, so allow me to fill in the blanks.

1) Art: Layouts by Ken Penders, pencil art by Dave Manak. Inks by Art Mawhinney.

2) Story: Ken Penders and Mike Kanterovich

3) See item #3 above, the same applies.

4) See item #4 above. Same thing, except no one is listed with a credit.

5) See item #5 above. Same thing.

Title of Work: SONIC THE HEDGEHOG in FOOD FOR THOUGHT OR "YOU ARE WHAT YOU EAT!"

1) Art: Layouts by Ken Penders, pencil art by Art Mawhinney. If anything, except for two editorial changes (panel 3 on pages 2 and 4 of the finished work), Art adhered even more closely to my layouts, if that's possible.

2) Story: Ken Penders and Mike Kanterovich

3) See item #3 above. Still the same.

4) See item #4 above. Same thing, only the letterer and colorist are uncredited as well.

5) See item #5 above. Same thing, except I'd replace Dave Manak with Art Mawhinney where this story is concerned.

NOTE: This claim could be used as a template for the following claims:

1-156502239 (everything is consistently the same, and I am still uncredited on layouts. The question here is whether or not I have to submit a group form, which I will be happy to do. The only significant difference is
that this is one of the claims where I supplied the cover designs for all three issues listed in layout format.)

1-156461413 (still uncredited on layouts, Dave Manak did the pencil art for the first half of the story, with Art Mawhinney handling the pencil art for the second half. Likewise, Harvey Mercadoocasio - credited as "Harvo" - inked the pencil art on the first half of the story while Rich Kozlowski inked the second half. I also supplied the layout for the cover design and text.)

1-156461329 (this issue is virtually the same situation as case 1-156461413, only Rich Kozlowski inked Dave Manak's pencils, Art Mawhinney inked his own pencils, and Harvo had no involvement. I also supplied the layout for the cover design and text.)

1-156461231(again, everything is the same, including my supplying the layout for the cover design and text. Dave Manak provided the pencils for "Gorilla Warfare" while Art Mawhinney provided the pencil art for "First Star I See Tonight!")

1-155633560 (Template #1 only applies to this story in the SONIC IN YO' FACE Special #1. Neither Mike or I had anything to do with the contents of the rest of the book, including the cover. It is this story alone in this issue I am applying for the copyrights.)

1-156502336 (while at first glance the credits may be confusing, it really breaks down in the same manner - cover layout and text: Ken Penders, pencil art by Patrick "Spaz" Spaziante; "The Chaos Effect - story: Ken Penders and Mike Kanterovich, art: layouts by Ken Penders (uncredited), pencils by Art Mawhinney with inks by Rich Kozlowski; "Tag! You're IT!" - story: Ken Penders, art: layouts by Ken Penders (uncredited), pencils and inks by Harvey "Harvo" Mercadoocasio; "The Hunt Is On" - story: Ken Penders, art: pencils by Ken Penders with inks by Jon D'Agostino. These last two stories were among my first solo efforts while still working with Mike. He displayed no interest in developing the Knuckles stories, and was starting to lose interest writing Sonic at this time.)

1-155633803 (this is exactly like case 1-156502336, only I provided the complete story and art for "Fire Drill", as well as the story and page layout art to "Lord of the Floating Island". Mike and I wrote " Panic in the Sky!", while I provided the layout page art. I did not provide the cover layout art for this issue.)

1-155777355 (with regards to the contents of this particular issue, SONIC #13, Mike and I wrote the story "This Island Hedgehog" as we had with all other stories falling under this specific template. I supplied the layouts and Dave Manak provided the pencil art based on my layouts. Jon D'Agostino provided the inks. While I have the complete original art to this story in my possession, again, all I made a claim for was the story itself and the page art layouts. I had nothing whatsoever to do with the cover art and other contents beyond this one story.)

1-158879961 (Template #1 still applies, only I wrote this story solo without any co-creator contributions. I was still submitting scripts in the layout page format which both artists Patrick Spaziante and Manny Galan followed faithfully throughout.)

1-156514520 (Same as Case 1-158879961, only artist Manny Galan was the only artist to work from my layouts.)

TEMPLATE No. 2

Case 1-155432561

Title of Work: KNUCKLES THE DARK LEGION Book One ARMY OF DARKNESS

1) Art: The only art I had anything to do with was the cover art and several character designs. I provided the initial cover layout, including the concept of the design layout unifying the covers of issues #1, 2 and 3. I provided designs for all the characters who had not been previously established (which was just about everyone and clarified further in the story section). Patrick "Spaz" Spaziante provided the cover pencil art based on my layouts while I provided the inks. Manny Galan provided interior pencil art while Andrew Pepoy provided the interior ink art.

This situation was consistent up through and including issue #21 of the series. Initially, KNUCKLES: THE DARK LEGION was supposed to be a stand-alone mini-series, followed by another Knuckles mini-series a couple of months after the first had run its course. The publishers decided to rename the series KNUCKLES THE ECHIDNA and commenced with issue #4 instead of starting back at square one as they did with the SONIC series.

The only deviation to the art during this run of issues was when Manny Galan provided the cover pencil art based on my layouts for issues #7, 8, 9, 17 and 18 instead of Patrick. From issue #26 until issue #32, Manny Galan provided the cover pencil art based off my layouts while I provided

the ink art.

As for the interior art, Manny pencilled while Andrew inked issues #1 through 21 and issue #25. Jim Valentino pencilled issues #22 through #24, which were inked by Harvey "Harvo" Mercadoocasio. Chris Allen pencilled the Knuckles stories in issues #26 through 28, Art Mawhinney pencilled the Knuckles story for issue #29 and I pencilled the Knuckles stories for issues #30 through 32. Manny Galan pencilled the Mighty the Armadillo stories in issues #26 through 28 while Colleen Doran pencilled the Espio the Chameleon stories in KNUCKLES #30 through 32. Andrew Pepoy provided the inks for all the stories from issues #26 through 32.

2) Story: Ken Penders - even though the credits list Ken Penders and Kent Taylor, I have an affidavit from Scott Fulop, who was writing under the name Kent Taylor after a mutual parting of the ways with Archie Comics in his capacity as editor, stating he had nothing whatsoever to do with the actual writing of the story. When I questioned him on this, he recalled even less involvement than I had remembered.

Unlike the SONIC series, the character Knuckles was a blank slate. All that was developed prior to my developing KNUCKLES as an ongoing series was the title character himself, his friends Vector, Mighty, Charmy, Espio, Heavy and Bomb, and the concept of Knuckles as the Guardian of the Chaos Emerald which could only be found on a floating island. Beyond that, there were no other characters, concepts, character background or anything else with which to construct an ongoing series. I had to figure it all out from scratch and thus was given complete control of the character during the thirteen years I contributed content to the SONIC series and its related spin-off books, such as this title.

From KNUCKLES THE ECHIDNA #4 throughout the entire run of the series I am listed as the sole credited writer on every story in each issue.

3) I never submitted work under a "work made for hire" agreement. That covers the story and layouts not covered by a "work made for hire agreement". To the best of my knowledge, neither Manny Galan or Andrew Pepoy ever worked under a "work made for hire" agreement. Patrick "Spaz" Spaziante did work as an employee in the production department of Archie Comics, and I believe he did work under a "work made for hire" agreement.

Furthermore, before I proceeded to file for the copyrights to my stories, upon the advice of my attorney, I requested in writing not once, but on three separate occasions I requested a copy of any "work made for hire" documents I may have signed for the company. Since I never signed any such document, I was not surprised when the company did not acknowledge my requests.

4) The variations are that I am not credited as layout cover or ink artist, as well as not listed as the sole writer. I can point to various issues I've worked on for a number of publishers - including Archie - in which the published credits were not correct one way or another, which can be attributed to any number of factors.

5) I am claiming the copyright for the story as the sole claimant.

I am claiming copyright for the layouts of the cover art. I will not deviate and claim more just because I did the ink artwork. While I had the authorization of then-editor Justin Gabrie to alter the pencil art to how I saw fit, I pretty much stuck to Patrick's line work as he pretty much nailed what I wanted.

NOTE: This claim could be used as a template for the following claims:

1-159959301 (while this would probably fall under the group form, all three issues listed - KNUCKLES THE ECHIDNA #13, 14 and 15 - were all produced in the same manner by the same people. I provided the cover art layouts for all three issues as well as the story in text form. Except for the characters and concepts listed in Template #2, I created literally everything else. Patrick provided cover pencil art which I inked, while Manny Galan provided interior story pencil art with Andrew Pepoy providing the finishing inks.)

1-158880161 (the only difference between this case and the ones listed so far is that the story was told over 2 issues, and Manny Galan was the cover artist. Beyond those variations, everything is the same.)

1-158880072 (the variations with these 3 issues is that Manny Galan provided the cover art for all 3 issues instead of Patrick, who was no longer involved with the series. Also, Chris Allen - yet another freelancer who did not sign a "work made for hire" agreement - illustrated the pencil art for the Knuckles story in all three issues with Andrew Pepoy providing the inks, while Manny pencilled the Mighty the Armadillo stories which were inked by Andrew Pepoy.)

1-158809154 (again, this is pretty much the same as the other cases in this template where my work is concerned. I listed Jim Valentino as a co-claimant on the art as he and I produced a number of stories together, and like my arrangement with Mike Kanterovich, I am looking out for Jim's interests as well with his acknowledgement. He is also willing to provide any affidavit necessary. For the record, Jim was the publisher of Image Comics, and has filed for copyrights on his other works.)

1-158809031 (KNUCKLES #30 through #32, the only three issues of the series in which I'm the sole claimant for both the stories and art. I wrote the Espio stories in these issues, which Colleen Doran pencilled and Andrew Pepoy inked.)

1-158788030 (KNUCKLES #29, which I provided the cover layout design and full story text. Manny Galan pencilled the cover art based on my

design, while Art Mawhinney created the pencil art for the story from my text script upon my request. By this point in my tenure on the series, I was acting like a defacto editor and able to specify which artists I wanted to illustrate my scripts.)

1-158787980 (KNUCKLES #25 - this was one of the two 1-issue stories published during the run of the series, but the template still applies.)

1-158787911 (KNUCKLES #19 through #21, see Template #2 for details)

1-158764771 (KNUCKLES #16 - the other 1-issue story. Again, see Template #2 for details.)

1-155432673 (KNUCKLES THE DARK LEGION #2 - see Template #2 for details)

1-155432727 (KNUCKLES THE DARK LEGION #3 - see Template #2 for details)

1-155432772 (KNUCKLES #4 - see Template #2 for details)

1-155432800 (KNUCKLES #5 - see Template #2 for details)

1-155432829 (KNUCKLES #6 - see Template #2 for details)

1-155804989 (KNUCKLES #7 - see Template #2 for details)

1-155805020 (KNUCKLES #8 - see Template #2 for details)

1-155805060 (KNUCKLES #9 - see Template #2 for details)

1-155862651 (KNUCKLES #10 - see Template #2 for details)

1-155862681 (KNUCKLES #11 - see Template #2 for details)

1-156421664 (KNUCKLES #12 - see Template #2 for details)

1-156514480 (Here's a story that was published in 4 consecutive issues of SONIC THE HEDGEHOG - #106 through 109 - yet it fits the template as I was the sole writer and provided layouts to artist Dawn Best, who was apprenticing under me at the time. I provided the finishing ink work.)

1-156422038 (As with case 1-156514480, here's a story that was published in SONIC SUPER SPECIAL #14, yet it fits the template. I was the sole writer and provided the cover layout art. Patrick Spaziante provided the pencil art, which I inked. I didn't list the interior artists as I had nothing to do with the interior story art.)

1-156421798 (Template #2 still applies. I was the sole writer on all 5 stories featured in SONIC SUPER SPECIAL #11. Jim Valentino pencilled PRINCESS SALLY: ASCENSION, I provided the complete art to HERSHEY: SOLO, Colleen Doran provided the pencil art to LUPE: FAMILY, James Fry provided the pencil art to BUNNIE RABBOT: UPGRADE and Patrick "Spaz" Spaziante provided the pencil art to JULIE-SU: SHADOWS. I provided the finishing inks on every artist's work for this book. Patrick was the sole artist who worked under a "work made for hire" agreement.)

1-155717751 (SONIC SUPER SPECIAL #7 may be stretching Template #2 to the breaking point, but I believe it falls within its boundaries. First off, the cover - I designed it, Patrick Spaziante pencilled the Sonic cast on the left side as well as well as sketched in the center illustration, Jim Valentino pencilled in the Image cast on the right, while I pencilled in the figures of Particle and Dr. Droid, upon which I inked the finished art. As for the story, I wrote it all by myself. Jim Valentino provided the pencil art, but I did a lot of redrawing, especially the figures of Particle, Dr. Droid and the take-offs of Mulder and Scully throughout the story. I also inked the entire story.)

TEMPLATE No. 3

Case 1-155717388

Title of Work: SONIC THE HEDGEHOG in BRAVE NEW WORLD

1) Art: With regards to the cover art, I provided the initial cover layout art, which Patrick "Spaz" Spaziante used as the basis for his pencil art rendering. I in turn then used his pencil art rendering as the basis of my original airbrush painting. With regards to the interior story art, I provided the complete art - both pencils and inks - for the entire story. I even lettered the complete story.

2) Story: Ken Penders - no other co-creator is involved.

3) I never submitted work under a "work made for hire" agreement. That covers the complete story and art not covered by a "work made for hire agreement".

Furthermore, before I proceeded to file for the copyrights to my stories, upon the advice of my attorney, I requested in writing not once, but on three separate occasions I requested a copy of any "work made for hire" documents I may have signed for the company. Since I never signed any such document, I was not surprised when the company did not acknowledge my requests.

Patrick, as stated before, was working under a "work made for hire"
agreement, but the only variation he added to my original cover design was the addition of Dulcy the Flying Dragon.

4) The variations are that I am not credited as layout cover artist, but Patrick Spaziante is. I can point to various issues I've worked on for a number of publishers - including Archie - in which the published credits were not correct one way or another, which can be attributed to any number of factors. My story and art credit in this issue reads "as chronicled by Ken Penders".

5) I am claiming the copyright for the story as the sole claimant.

I am claiming copyright for the layout and final image of the cover art on the basis I created a full color painting. I am claiming copyright for the complete story art.

NOTE: This claim could be used as a template for the following claims:

1-155717158 (SONIC LIVE! Special #1, which I provided both the photos and the airbrush art that create the final cover image. I even designed the LIVE! part of the logo. I wrote the complete story as well as provided
the complete art for the story "The Last Game Cartridge Hero". I make no claims on any of the rest of the contents in this issue.)

1-155633978 ("First Contact" was the only story I contributed to SONIC TRIPLE TROUBLE Special #1. I provided the complete story and pencil art. While Jon D'Agostino was listed as the inker of record, he may as
well have been called a "Tracer" because all he did was go over my line work without any embellishment whatsoever. This is the best that could be said of any of his work over any artist.)

1-155718055 (THE LOST ONES #1, in which I provided the entire story and art contents of this book, including the feature pages. Jim Valentino was the publisher of Image Comics at the time, and he will confirm there
was no "work made for hire" agreement with regards to the publication of this issue.

Case 1-156421713 - the ENDGAME saga - is a very complex situation that I'm not sure any specific template applies, which is why it is best left for discussion on its own.

Case 1-156422099 - MOBIUS: 25 YEARS LATER is another case left for later.

There are approximately ten cases I didn't assign to any specific template as I believe they need further clarification. I was trying to keep the breakdown as simple as possible for now.

If you have further questions, I can be reached anytime to continue this discussion. I look forward to your reply and learning what happens next. Thank you.

Best,
Ken Penders

310-927-9497

On Mar 16, 2010, at 9:55 AM, William R Briganti wrote:

> Following up on our telephone conversation... Please select 1-3
> representative cases that we will try to perfect and that can serve as

templates for the remainder of your claims. In each case, you need to determine and tell me the following:

(1) Tell me who contributed to the creation of the artwork as it appears in final published form (this would include anyone who created preliminary sketches and concept drawings that were used in creating the final artwork, as well as whoever put the artwork in the final finished form in which it was published).
(2) Tell me who contributed to creation of the final text as published. That would include someone who wrote a preliminary script that was used in writing the final script.
(3) Let me know if any of the artists or writers named in (1) and (2) prepared their contributions as a "work made for hire" as explained in Circular 9 on our website. I need to know the name of their employer(s). If a contribution was "made for hire", the employer should be named on the application form as the author of that contribution.
(4) If what you have told me in (1) or (2) varies with the credits appearing on the copy, please explain.
(5) Tell me who is claiming the copyright. Keep in mind that the authors named on the application, whether they be individual persons or employers, own the copyright in their contribution unless they transferred their copyrights to someone else. This means that, unless an author's copyrights were transferred, all of the authors named on the application (which you've identified in steps 1 & 2 above) should also be named on the application as claimants. On the other hand, if any author transferred his/her/it's copyright to you in writing, then those authors should not be named as claimants on the application form, but you will need to explain your entitlement to their copyrights in the "transfer" area of the form (for example, "by contract," or "by written agreement," or "by assignment of all rights").

Bill Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office
202-707-1497

# Exhibit D

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Your copyright claims**
**Date:** September 23, 2011 12:13:07 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Friday, March 26, 2010 2:59 PM
To: Ken Penders
Subject: Re: Your copyright claims

See bolded wording below...

>>> Ken Penders <kenpenders@kenpenders.com> 3/16/2010 3:50 PM >>>
Mr. Briganti,

Thank you for taking the time to clarify matters. Upon my return home tomorrow (Wednesday) I will select 3 representative cases to serve as templates. All three cases will address concerns specific to a number of similar other claims on file. There will be exceptions to the rule of these 3 cases, and I will point them out.

My primary concern has always been to obtain the copyrights for the stories I either wrote on my own or with the co-creators I listed, all of whom have transferred their rights to me. One such example is the following e-mail I received from Clayton Emery, whom I listed as co- creator in the notes of my claim:

To Whom It May Concern,

I was graciously invited by Ken Penders to contribute to Sonic 58 toward the end of the scripting. I had written a Robin Hood novel and several Robin & Marian short stories. Ken wanted some advice about a new character he was introducing, Rob O' the Hedge, a Robin Hood cognate.

I should note that Ken's Sonic stories spanned many issues with dozens of characters. Issue 58 would not be a standalone issue, but rather something like Chapter 20 of many chapters to come. The main story arc was already written or plotted well into the future.

My only real contributions were these:

1) I rewrote Rob's dialogue to sound more Robin Hoody. I had him say,
"Lackaday!" as his exclamation. Whether he is a co-author depends on how much he rewrote the dialogue. Changing one word is not enough.

2) I mentioned that Nottingham was originally named Snotingham by the
Vikings, and Ken found the name amusing, so changed it. See above.

3) Ken explained that Rob and Knuckles were poised to fight at the end of the previous issue. I explained that, traditionally, whenever Robin Hood met a new adventurer, they would fight, Robin usually
(oddly) lost or fought to a standstill, then the two became friends.
For instance, Robin Hood was beaten by Much the Miller, slashed by
Maid Marian (in disguise), and dumped in a stream by Little John.
Thus, when Rob O' the Hedge meets Knuckles, Rob gets tumbled in a stream, but they become friendly. Rob is also thumped by Maid Mary'an in disguise. Plot lines are not copyrightable. Only the words as written can be copyrighted.

4) Finally, Ken had planned the robotic army would invade Deerwood Forest. I suggested instead the army begins cutting down the trees, which to Rob is a much worse threat. See preceding comment.

And that's about all I added. Ken had already written the chapters before and plotted the chapters to come, and had largely laid out this issue. Ken just needed some details of Rob's dialogue and fight interaction to best flesh out the character in a Robin Hood way.

If you have any questions, feel free to contact me.

Submitted,
Clayton Emery
301 208-2517
claytonemery@claytonemery.com

I did not list either Clayton, Mike Kanterovich or Scott Fulop (AKA Kent Taylor) as co-claimants for the copyrights to the stories as they have all deferred their rights to me, based on how I conducted
business with all three previously. If any one of them co-wrote the text or contributed to the artwork in a significant way, then they should be

named as co-authors. And, as co-authors they would own the copyright in their contributions unless they transferred their copyrights to you in writing. I would submit vouchers to Archie
Comics for payment, and pay each of the three named individuals as sub- contractors to me. They never submitted any vouchers for payment nor did any of the three sign work-for-hire agreements. The copyright statute requires that commissioned work for hire agreements be in writing, in which case the employer is considered the author of whatever the commiessioned party created. Without this agreement in writing, the commissioned party, not the employer, is the author and is entitled to claim the copyright in what he created unless he later transferred the copyright in writing to the person who hired him. Because of the
size of my body of work as compared to the contributions of Clayton and Scott, both felt they were better off having me represent their interests. The same applies to Mike Kanterovich, but I separate his contributions from the other two as his contributions are of greater significance in comparison.

While I will detail my contributions to the art, I consider them of lesser importance to the work. The only contributions that truly matter beyond the writer are the layout artist and the penciller, as they would be considered the actual creators of the art. By claiming this, I would eliminate any claims I would have as the inker of the piece for the simple reason that all the design work has already been completed by the time the inker receives the art to work on. I would list the inker, letterer and colorist as craftsmen or technicians, but not co-creators. I say this with full knowledge I have submitted claims in which I have credits listing me as the colorist as well as
the letterer. You may claim copyright in text and artwork you created yourself, and in text and artwork created by others who transferred their copyrights to you in writing. Authorship you created yourself would include any actual pictures you drew as well as any coloring you added (adding color to a work, such as one would do in a coloring book, is usually creative enough authorship to be considered copyrightable artwork in and of itself).

Whatever confusion exists concerning my claims is due more to my caution in making certain I'm able to obtain what's rightfully mine, as well as being able to protect the interests of those I represent, as I have done for over the past 17 years. I welcome any questions in order to resolve the matter to everyone's satisfaction. Thank you.

Best,
Ken Penders

310-927-9497

4526 Coldwater Canyon Avenue #303
Studio City, CA
91604-1066

On Mar 16, 2010, at 9:55 AM, William R Briganti wrote:

> Following up on our telephone conversation... Please select 1-3 representative cases that we will try to perfect and that can serve as templates for the remainder of your claims. In each case, you need to determine and tell me the following:
>
> (1) Tell me who contributed to the creation of the artwork as it appears in final published form (this would include anyone who created preliminary sketches and concept drawings that were used in creating the final artwork, as well as whoever put the artwork in the final finished form in which it was published).
> (2) Tell me who contributed to creation of the final text as published. That would include someone who wrote a preliminary script that was used in writing the final script.
> (3) Let me know if any of the artists or writers named in (1) and (2) prepared their contributions as a "work made for hire" as explained in Circular 9 on our website. I need to know the name of their employer(s). If a contribution was "made for hire", the employer should be named on the application form as the author of that contribution.
> (4) If what you have told me in (1) or (2) varies with the credits appearing on the copy, please explain.
> (5) Tell me who is claiming the copyright. Keep in mind that the authors named on the application, whether they be individual persons or employers, own the copyright in their contribution unless they transferred their copyrights to someone else. This means that, unless an author's copyrights were transferred, all of the authors named on

the application (which you've identified in steps 1 & 2 above) should also be named on the application as claimants. On the other hand, if any author transferred his/her/it's copyright to you in writing, then those authors should not be named as claimants on the application form, but you will need to explain your entitlement to their copyrights in the "transfer" area of the form (for example, "by contract," or "by written agreement," or "by assignment of all rights").

Bill Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office
202-707-1497

# Exhibit E

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Your copyright claims**
**Date:** September 23, 2011 12:13:17 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Friday, March 26, 2010 4:43 PM
To: Ken Penders
Subject: Re: Your copyright claims

See bolded wording below...

Ken Penders <kenpenders@kenpenders.com> 3/18/2010 4:21 AM >>>
Bill,

Before we begin, I should call attention to a very pertinent fact that needs to be addressed. In reviewing what I applied for when filling out my claims initially, I was seeking out the copyrights only to my stories and page/cover art layouts, except in the cases I actually did the complete art or pencil art alone. If you'll check the note on my claim of case 1-155777549, I clearly state "The work submitted included full text and page art layouts which were used in the preparation of the finished art. I was not credited for the art contribution, nor was I an employee of Archie Comics or SEGA at the time this work was created. I also had not signed a work-for-hire agreement in the commission of this story." Contributing preliminary sketches that were used by others in creating the finished art would make you a co-author of the finished art. You would be the sole author of your preliminary sketches.

Likewise, you'll find this applies to each and every one of my claims.

I was never attempting to file for what I did not believe belonged to me, and thus limited my claims only to my contributions. But problems arise if you were not the only contributor. You may register a claim in your unpublished text or sketches and name only yourself as the author and claimant, but you may not do this for published text or artwork that you only contributed to, but did not create in its entirety (unless your contributions can be segregated from the contributions of the others). For example, if I drew a pencil sketch of a woman and gave it to Leonardo de Vinci, and he then painted the Mona Lisa based on my sketch, that would not entitle me to submit a copyright claim which names only me as author and claimant of the painting (I could do this for my sketch though).

I believe the confusion began when those assigned to initially review my work compared the layout art samples I provided with the finished publication, and thus began the debate over what part of the copyright to the artwork I was entitled to. This was brought to my attention when a Ms. Adrienne Brown inquired of me via e-mail on April 14, 2009:

"We noticed on the copy another name listed for the artwork, are you the artist of the artwork? On the deposit you are only listed as the writer."

She was enquiring with regards to case 1-155432561, which lists me as a cover artist as I provided the layout and final inks. I made no claim to any of the interior story art, as I consider my cover layout the only important part of any claim to the copyright of the cover art.

With that established, here are the three representative cases as you requested.

TEMPLATE No. 1

Case 1-155777549

Title of Work: SONIC THE HEDGEHOG in THE GOOD, THE BAD AND THE HEDGEHOG!

1) Art: If you believe my script layouts form the basis of the finished art, which I believe you do, then the layouts are uncredited work rendered by me. You should have in your possession xerox copies of pencil artist Dave Manak's renderings based off of my layouts, which are essentially more polished versions of my work with minimal added detail. Again, long story short, Ken Penders supplied the layouts and Dave Manak the finished pencils. As I write this I'm comparing the two, and I cannot agree that Dave Manak's artwork constitutes "minimal added detail"! The layout is the same but the artwok is very different.
While Art Mawhinney is credited with providing the finished ink art, I would not consider him a creator, nor would I consider any inker a creator, including myself on any listed work. What does an "inker" do exactly? Only the writer(s) and pencil artist - and in this case, the layout artist - can be said to have created something out of nothing. As an example, ask any comic collector, comic art historian or any person knowledgeable on the history of comics who created THE FANTASTIC FOUR, and you'll receive as the answer the names Stan Lee and Jack Kirby. Whom you will not hear are the following names: Sol Brodsky, Dick Ayers, Steve Ditko, Paul Reinman, Chic Stone, Frank Giacioa, Vince Colletta and Joe Sinnott, all of whom were responsible for inking Jack Kirby's pencil art during his 100+ issue run from when the series began. The same could be said of any series that has withstood the test of time. The inker, letter and colorist are craftsmen who provide the finishing look, but they are not considered creators as they are considered all

interchangeable. But does the colorist choose what colors to use, and where to put the colors? If so, then he too has created copyrightable authorship.

2) Story: Ken Penders & Mike Kanterovich- for whatever reason, Mike's name was usually listed first, even though I was the one conducting business on behalf of the both of us with the editors of Archie Comics, which was Paul Castiglia at the time. (NOTE: Paul was the editor we dealt with for the stories involved with this claim. Scott Fulop replaced him shortly after we turned in these stories.) Mike and I would discuss the story and I would do the physical work of putting
it all down on paper. You need to decide if his contributions rise to the level of "co-authorship" of the text. While Mike has asked me to deal with protecting
his interests as I have before, I am perfectly happy if the copyright for the story is awarded to the both of us. It just makes it easier for me to conduct business if I am the sole claimant. I can get Mike
to sign off on a transfer of rights if that is called for. This is up to you, if you consider him to have co-authored the text. So, long
story short - in the technical sense, Ken Penders supplied the finished script with verbal contributions from Mike Kanterovich. Ken Penders also supplied any outlines that were typed in and faxed for approval, with verbal contributions from Mike Kanterovich.

3) Mike Kanterovich and I never submitted work under a "work made for hire" agreement. That covers the story and layouts not covered by a "work made for hire agreement". According to Scott Fulop, former editor of SONIC THE HEDGEHOG published by Archie Comics, he highly doubts artist Dave Manak operated under a "work made for hire"
agreement, as things were rather informal back then, and no one had any idea of the longterm success the series would enjoy. Likewise, it's also highly unlikely Art Mawhinney worked under a "work made for hire" agreement, and I have yet to uncover any freelance contractor who worked on the series while I was contributing who signed such a
document. The copyright statute defines a "work made for hire" in two different ways: (1) works created by employees, and (2) works created by independent contractors pursuant to a written agreement that that the work is for hire. If either scenario applies, then the employer is considered the author and would be entitled to claim the copyright unless its been transferred to someone else in writing. See Circular 9 on our website for more information. This is not a determination we can make for you.

Furthermore, before I proceeded to file for the copyrights to my stories, upon the advice of my attorney, I requested in writing not once, but on three separate occasions I requested a copy of any "work made for hire" documents I may have signed for the company. Since I never signed any such document, I was not surprised when the company
did not acknowledge my requests.

4) The sole variation is that I am not credited as layout artist, despite the physical evidence of the copy of the script itself. It was Archie Comics company policy not to pay for said layouts, preferring to consider it a standard script format. While I disagreed with this policy, I accepted it at the time and constantly requested to be allowed to submit my scripts in straight text format. Archie Comics would finally change their policy shortly before I wrote the script
for SONIC THE HEDGEHOG #47 (case 1-156421713). How is this significant?

5) I am claiming the copyright for the story. I would say that Mike Kanterovich transferred his copyrights "by assignment of all rights", as he expected me to handle looking out for our interests as I have
always done. Copyright transfers must be in writing. Oral agreements are not acceptable under the copyright statute. While I consider Mike a co-claimant with regards to the
story, having handled all of our mutual business affairs places the burden on me to represent our interests. Mike was always paid out of my pocket as a sub-contractor for tax purposes, and never had any
business dealings with Archie Comics. Was there a written agreement between the two of you that would qualify you as his employer? I leave it to your discretion
how this should be handled. We have no discretion to make this determination.

I am claiming copyright for the art based solely on the layouts, as Dave Manak clearly based not only his page and panel layouts from my work, but also character placement, word balloon placement and other
visual cues. Agreed. I would go along with Dave being named co-claimant if
that is your ruling, but if he clearly hasn't deviated from the layouts I supplied, then that's where I believe the line should be drawn. Had he differentiated significantly from what I supplied, then
yes, I would agree he is a full co-claimant. It is difficult to see how can his contributions could NOT be considered significant. As I've supplied both a
copy of my complete script as well as a copy of the published issue,
virtually everything Dave rendered was from my layouts. Agreed. There is no question you may claim copyright in your unpublished sketches, as sole author and claimant, but not so with the finished artwork. You may name yourself as the sole copyright claimant if Dave Manak transfers his copyright to you in writing. Or, if you consider this to be a "joint work", then you share copyright ownership in the work as a whole and you may register your claims jointly or individually (both of you would have to be named as authors).

I'm skipping down to Template #2...

Title of Work: SONIC THE HEDGEHOG will never BEAT THE CLOCK!

This is the sole story that does not credit any of the creators, so allow me to fill in the blanks.

1) Art: Layouts by Ken Penders, pencil art by Dave Manak. Inks by Art Mawhinney.

2) Story: Ken Penders and Mike Kanterovich

3) See item #3 above, the same applies.

4) See item #4 above. Same thing, except no one is listed with a credit.

5) See item #5 above. Same thing.

Title of Work: SONIC THE HEDGEHOG in FOOD FOR THOUGHT OR "YOU ARE WHAT YOU EAT!"

1) Art: Layouts by Ken Penders, pencil art by Art Mawhinney. If anything, except for two editorial changes (panel 3 on pages 2 and 4 of the finished work), Art adhered even more closely to my layouts, if that's possible.

2) Story: Ken Penders and Mike Kanterovich

3) See item #3 above. Still the same.

4) See item #4 above. Same thing, only the letterer and colorist are uncredited as well.

5) See item #5 above. Same thing, except I'd replace Dave Manak with Art Mawhinney where this story is concerned.

NOTE: This claim could be used as a template for the following claims:

1-156502239 (everything is consistently the same, and I am still uncredited on layouts. The question here is whether or not I have to submit a group form, which I will be happy to do. The only significant difference is that this is one of the claims where I supplied the cover designs for all three issues listed in layout format.)

1-156461413 (still uncredited on layouts, Dave Manak did the pencil art for the first half of the story, with Art Mawhinney handling the pencil art for the second half. Likewise, Harvey Mercadoocasio - credited as "Harvo" - inked the pencil art on the first half of the story while Rich Kozlowski inked the second half. I also supplied the layout for the cover design and text.)

1-156461329 (this issue is virtually the same situation as case 1-156461413, only Rich Kozlowski inked Dave Manak's pencils, Art Mawhinney inked his own pencils, and Harvo had no involvement. I also supplied the layout for the cover design and text.)

1-156461231(again, everything is the same, including my supplying the layout for the cover design and text. Dave Manak provided the pencils for "Gorilla Warfare" while Art Mawhinney provided the pencil art for "First Star I See Tonight!")

1-155633560 (Template #1 only applies to this story in the SONIC IN YO' FACE Special #1. Neither Mike or I had anything to do with the contents of the rest of the book, including the cover. It is this story alone in this issue I am applying for the copyrights.)

1-156502336 (while at first glance the credits may be confusing, it really breaks down in the same manner - cover layout and text: Ken Penders, pencil art by Patrick "Spaz" Spaziante; "The Chaos Effect - story: Ken Penders and Mike Kanterovich, art: layouts by Ken Penders (uncredited), pencils by Art Mawhinney with inks by Rich Kozlowski; "Tag! You're IT!" - story: Ken Penders, art: layouts by Ken Penders (uncredited), pencils and inks by Harvey "Harvo" Mercadoocasio; "The Hunt Is On" - story: Ken Penders, art: pencils by Ken Penders with inks by Jon D'Agostino. These last two stories were among my first solo efforts while still working with Mike. He displayed no interest in developing the Knuckles stories, and was starting to lose interest writing Sonic at this time.)

1-155633803 (this is exactly like case 1-156502336, only I provided the complete story and art for "Fire Drill", as well as the story and page layout art to "Lord of the Floating Island". Mike and I wrote " Panic in the Sky!", while I provided the layout page art. I did not provide the cover layout art for this issue.)

1-155777355 (with regards to the contents of this particular issue, SONIC #13, Mike and I wrote the story "This Island Hedgehog" as we had with all other stories falling under this specific template. I supplied the layouts and Dave Manak provided the pencil art based on my layouts. Jon D'Agostino provided the inks. While I have the complete original art to this story in my possession, again, all I made a claim for was the story itself and the page art layouts. I had nothing whatsoever to do with the cover art and other contents beyond this one story.)

1-158879961 (Template #1 still applies, only I wrote this story solo without any co-creator contributions. I was still submitting scripts in the layout page format which both artists Patrick Spaziante and Manny Galan followed faithfully throughout.)

1-156514520 (Same as Case 1-158879961, only artist Manny Galan was the only artist to work from my layouts.)

TEMPLATE No. 2

Case 1-155432561

Title of Work: KNUCKLES THE DARK LEGION Book One ARMY OF DARKNESS

1) Art: The only art I had anything to do with was the cover art and several character designs. You may not register a copyright claim in ideas for a character. Copyright protects drawings that depict the character. I provided the initial cover layout, including the concept of the design layout unifying the covers of issues #1, 2 and 3. All that I've written above applies here as well. I provided designs for all the characters who had not been previously established (which was just about everyone and clarified further in the story section). Patrick "Spaz" Spaziante provided the cover pencil art based on my layouts while I provided the inks. Manny Galan provided interior pencil art while Andrew Pepoy provided the interior ink art.

This situation was consistent up through and including issue #21 of the series. Initially, KNUCKLES: THE DARK LEGION was supposed to be a stand-alone mini-series, followed by another Knuckles mini-series a couple of months after the first had run its course. The publishers decided to rename the series KNUCKLES THE ECHIDNA and commenced with issue #4 instead of starting back at square one as they did with the SONIC series.

The only deviation to the art during this run of issues was when Manny Galan provided the cover pencil art based on my layouts for issues #7, 8, 9, 17 and 18 instead of Patrick. From issue #26 until issue #32, Manny Galan provided the cover pencil art based off my layouts while I provided the ink art. All that I've written above applies here as well.

As for the interior art, Manny pencilled while Andrew inked issues #1 through 21 and issue #25. Jim Valentino pencilled issues #22 through #24, which were inked by Harvey "Harvo" Mercadoocasio. Chris Allen pencilled the Knuckles stories in issues #26 through 28, Art Mawhinney pencilled the Knuckles story for issue #29 and I pencilled the Knuckles stories for issues #30 through 32. Manny Galan pencilled the Mighty the Armadillo stories in issues #26 through 28 while Colleen Doran pencilled the Espio the Chameleon stories in KNUCKLES #30 through 32. Andrew Pepoy provided the inks for all the stories from issues #26 through 32.

2) Story: Ken Penders - even though the credits list Ken Penders and Kent Taylor, I have an affidavit from Scott Fulop, who was writing under the name Kent Taylor after a mutual parting of the ways with Archie Comics in his capacity as editor, stating he had nothing whatsoever to do with the actual writing of the story. If that is the case, then he should not be considered a co-author of the text. When I questioned him on this, he recalled even less involvement than I had remembered.

Unlike the SONIC series, the character Knuckles was a blank slate. All that was developed prior to my developing KNUCKLES as an ongoing series was the title character himself, his friends Vector, Mighty, Charmy, Espio, Heavy and Bomb, and the concept of Knuckles as the Guardian of the Chaos Emerald which could only be found on a floating island. Beyond that, there were no other characters, concepts, character background or anything else with which to construct an ongoing series. I had to figure it all out from scratch and thus was given complete control of the character during the thirteen years I contributed content to the SONIC series and its related spin-off books, such as this title. Remember, you can claim copyright in your original text and artwork, not in your ideas for plot lines or characters.

From KNUCKLES THE ECHIDNA #4 throughout the entire run of the series I am listed as the sole credited writer on every story in each issue. If you are indeed the sole writer, or virtually so, then you may register a claim in the text that gives only your name as author and claimant.

3) I never submitted work under a "work made for hire" agreement. That covers the story and layouts not covered by a "work made for hire agreement". To the best of my knowledge, neither Manny Galan or Andrew Pepoy ever worked under a "work made for hire" agreement. Patrick "Spaz" Spaziante did work as an employee in the production department of Archie Comics, and I believe he did work under a "work made for hire" agreement. If so, then Archie Comics would be the "author" of his contributions.

Furthermore, before I proceeded to file for the copyrights to my stories, upon the advice of my attorney, I requested in writing not once, but on three separate occasions I requested a copy of any "work made for hire" documents I may have signed for the company. Since I never signed any such document, I was not surprised when the company did not acknowledge my requests.

4) The variations are that I am not credited as layout cover or ink artist, as well as not listed as the sole writer. I can point to various issues I've worked on for a number of publishers - including Archie - in which the published credits were not correct one way or

another, which can be attributed to any number of factors. Understood. You just need to tell us who actually did what.

5) I am claiming the copyright for the story as the sole claimant. Fine, if you wrote the text yourself. Or, fine if there were co-writers, but they transferred their copyrights to you.

I am claiming copyright for the layouts of the cover art. No question with regard to your unpublished sketches, if you can supply them to us. Otherwise, you need to tell us if anyone else contributed to the finshed cover artwork. I will not deviate and claim more just because I did the ink artwork. While I had the authorization of then-editor Justin Gabrie to alter the pencil art to how I saw fit, I pretty much stuck to Patrick's line work as he pretty much nailed what I wanted.

Skipping down to Template #3....

NOTE: This claim could be used as a template for the following claims:

1-159959301 (while this would probably fall under the group form, all three issues listed - KNUCKLES THE ECHIDNA #13, 14 and 15 - were all produced in the same manner by the same people. I provided the cover art layouts for all three issues as well as the story in text form. Except for the characters and concepts listed in Template #2, I created literally everything else. Patrick provided cover pencil art which I inked, while Manny Galan provided interior story pencil art with Andrew Pepoy providing the finishing inks.)

1-158880161 (the only difference between this case and the ones listed so far is that the story was told over 2 issues, and Manny Galan was the cover artist. Beyond those variations, everything is the same.)

1-158880072 (the variations with these 3 issues is that Manny Galan provided the cover art for all 3 issues instead of Patrick, who was no longer involved with the series. Also, Chris Allen - yet another freelancer who did not sign a "work made for hire" agreement - illustrated the pencil art for the Knuckles story in all three issues with Andrew Pepoy providing the inks, while Manny pencilled the Mighty the Armadillo stories which were inked by Andrew Pepoy.)

1-158809154 (again, this is pretty much the same as the other cases in this template where my work is concerned. I listed Jim Valentino as a co-claimant on the art as he and I produced a number of stories together, and like my arrangement with Mike Kanterovich, I am looking out for Jim's interests as well with his acknowledgement. He is also willing to provide any affidavit necessary. For the record, Jim was the publisher of Image Comics, and has filed for copyrights on his other works.)

1-158809031 (KNUCKLES #30 through #32, the only three issues of the series in which I'm the sole claimant for both the stories and art. I wrote the Espio stories in these issues, which Colleen Doran pencilled and Andrew Pepoy inked.)

1-158788030 (KNUCKLES #29, which I provided the cover layout design and full story text. Manny Galan pencilled the cover art based on my design, while Art Mawhinney created the pencil art for the story from my text script upon my request. By this point in my tenure on the series, I was acting like a defacto editor and able to specify which artists I wanted to illustrate my scripts.)

1-158787980 (KNUCKLES #25 - this was one of the two 1-issue stories published during the run of the series, but the template still applies.)

1-158787911 (KNUCKLES #19 through #21, see Template #2 for details)

1-158764771 (KNUCKLES #16 - the other 1-issue story. Again, see Template #2 for details.)

1-155432673 (KNUCKLES THE DARK LEGION #2 - see Template #2 for details)

1-155432727 (KNUCKLES THE DARK LEGION #3 - see Template #2 for details)

1-155432772 (KNUCKLES #4 - see Template #2 for details)

1-155432800 (KNUCKLES #5 - see Template #2 for details)

1-155432829 (KNUCKLES #6 - see Template #2 for details)

1-155804989 (KNUCKLES #7 - see Template #2 for details)

1-155805020 (KNUCKLES #8 - see Template #2 for details)

1-155805060 (KNUCKLES #9 - see Template #2 for details)

1-155862651 (KNUCKLES #10 - see Template #2 for details)

1-155862681 (KNUCKLES #11 - see Template #2 for details)

1-156421664 (KNUCKLES #12 - see Template #2 for details)

1-156514480 (Here's a story that was published in 4 consecutive issues of SONIC THE HEDGEHOG - #106 through 109 - yet it fits the template as I was the sole writer and provided layouts to artist Dawn Best, who was apprenticing under me at the time. I provided the finishing ink work.)

1-156422038 (As with case 1-156514480, here's a story that was published in SONIC SUPER SPECIAL #14, yet it fits the template. I was the sole writer and provided the cover layout art. Patrick Spaziante provided the pencil art, which I inked. I didn't list the interior artists as I had nothing to do with the interior story art.)

1-156421798 (Template #2 still applies. I was the sole writer on all 5 stories featured in SONIC SUPER SPECIAL #11. Jim Valentino pencilled PRINCESS SALLY: ASCENSION, I provided the complete art to HERSHEY: SOLO, Colleen Doran provided the pencil art to LUPE: FAMILY, James Fry provided the pencil art to BUNNIE RABBOT: UPGRADE and Patrick "Spaz" Spaziante provided the pencil art to JULIE-SU: SHADOWS. I provided the finishing inks on every artist's work for this book. Patrick was the sole artist who worked under a "work made for hire" agreement.)

1-155717751 (SONIC SUPER SPECIAL #7 may be stretching Template #2 to the breaking point, but I believe it falls within its boundaries. First off, the cover - I designed it, Patrick Spaziante pencilled the Sonic cast on the left side as well as well as sketched in the center illustration, Jim Valentino pencilled in the Image cast on the right, while I pencilled in the figures of Particle and Dr. Droid, upon which I inked the finished art. As for the story, I wrote it all by myself. Jim Valentino provided the pencil art, but I did a lot of redrawing, especially the figures of Particle, Dr. Droid and the take-offs of Mulder and Scully throughout the story. I also inked the entire story.)

TEMPLATE No. 3

Case 1-155717388

Title of Work: SONIC THE HEDGEHOG in BRAVE NEW WORLD

1) Art: With regards to the cover art, I provided the initial cover layout art, which Patrick "Spaz" Spaziante used as the basis for his pencil art rendering. I in turn then used his pencil art rendering as the basis of my original airbrush painting. With regards to the interior story art, I provided the complete art - both pencils and inks - for the entire story. I even lettered the complete story.
Sounds like there are two authors of the cover artwork, and one author (you) of the interior artwork. This might require two separate applications, if Spaziante (or his employer) is a co-claimant of the cover artwork.

2) Story: Ken Penders - no other co-creator is involved. Then you may be named a sole author and claimant.

3) I never submitted work under a "work made for hire" agreement. That covers the complete story and art not covered by a "work made for hire agreement".

Furthermore, before I proceeded to file for the copyrights to my stories, upon the advice of my attorney, I requested in writing not once, but on three separate occasions I requested a copy of any "work made for hire" documents I may have signed for the company. Since I never signed any such document, I was not surprised when the company did not acknowledge my requests.

Patrick, as stated before, was working under a "work made for hire" agreement, but the only variation he added to my original cover design was the addition of Dulcy the Flying Dragon. His contribution is signif.

4) The variations are that I am not credited as layout cover artist, but Patrick Spaziante is. I can point to various issues I've worked on for a number of publishers - including Archie - in which the published credits were not correct one way or another, which can be attributed to any number of factors. My story and art credit in this issue reads "as chronicled by Ken Penders".

5) I am claiming the copyright for the story as the sole claimant.

I am claiming copyright for the layout and final image of the cover art on the basis I created a full color painting. I am claiming copyright for the complete story art.

NOTE: This claim could be used as a template for the following claims:

1-155717158 (SONIC LIVE! Special #1, which I provided both the photos and the airbrush art that create the final cover image. I even designed

the LIVE! part of the logo. I wrote the complete story as well as provided the complete art for the story "The Last Game Cartridge Hero". I make no claims on any of the rest of the contents in this issue.)

1-155633978 ("First Contact" was the only story I contributed to SONIC TRIPLE TROUBLE Special #1. I provided the complete story and pencil art. While Jon D'Agostino was listed as the inker of record, he may as well have been called a "Tracer" because all he did was go over my line work without any embellishment whatsoever. This is the best that could be said of any of his work over any artist.)

1-155718055 (THE LOST ONES #1, in which I provided the entire story and art contents of this book, including the feature pages. Jim Valentino was the publisher of Image Comics at the time, and he will confirm there was no "work made for hire" agreement with regards to the publication of this issue.

Case 1-156421713 - the ENDGAME saga - is a very complex situation that I'm not sure any specific template applies, which is why it is best left for discussion on its own.

Case 1-156422099 - MOBIUS: 25 YEARS LATER is another case left for later.

There are approximately ten cases I didn't assign to any specific template as I believe they need further clarification. I was trying to keep the breakdown as simple as possible for now.

If you have further questions, I can be reached anytime to continue this discussion. I look forward to your reply and learning what happens next. Thank you.

Best,
Ken Penders

310-927-9497

On Mar 16, 2010, at 9:55 AM, William R Briganti wrote:

> Following up on our telephone conversation... Please select 1-3 representative cases that we will try to perfect and that can serve as templates for the remainder of your claims. In each case, you need to determine and tell me the following:
>
> (1) Tell me who contributed to the creation of the artwork as it appears in final published form (this would include anyone who created preliminary sketches and concept drawings that were used in creating the final artwork, as well as whoever put the artwork in the final finished form in which it was published).
> (2) Tell me who contributed to creation of the final text as published. That would include someone who wrote a preliminary script that was used in writing the final script.
> (3) Let me know if any of the artists or writers named in (1) and (2) prepared their contributions as a "work made for hire" as explained in Circular 9 on our website. I need to know the name of their employer(s). If a contribution was "made for hire", the employer should be named on the application form as the author of that contribution.
> (4) If what you have told me in (1) or (2) varies with the credits appearing on the copy, please explain.
> (5) Tell me who is claiming the copyright. Keep in mind that the authors named on the application, whether they be individual persons or employers, own the copyright in their contribution unless they transferred their copyrights to someone else. This means that, unless an author's copyrights were transferred, all of the authors named on

the application (which you've identified in steps 1 & 2 above) should also be named on the application as claimants. On the other hand, if any author transferred his/her/it's copyright to you in writing, then those authors should not be named as claimants on the application form, but you will need to explain your entitlement to their copyrights in the "transfer" area of the form (for example, "by contract," or "by written agreement," or "by assignment of all rights").

Bill Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office
202-707-1497

# Exhibit F

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Upon Further Review**
**Date:** September 23, 2011 12:13:44 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Tuesday, April 06, 2010 1:38 PM
To: Ken Penders
Subject: Re: Upon Further Review

||| Ken Penders <kenpenders@kenpenders.com> 3/26/2010 10:15 PM >>>
Mr. Briganti,

I've addressed your comments in a different format so as to be clear what's being addressed.

On Mar 26, 2010, at 11:58 AM, William R Briganti wrote:

> See bolded wording below...
>
> ||| Ken Penders < kenpenders@kenpenders.com > 3/16/2010 3:50 PM >>>
> Mr. Briganti,
>
> Thank you for taking the time to clarify matters. Upon my return home tomorrow (Wednesday) I will select 3 representative cases to serve as templates. All three cases will address concerns specific to a number of similar other claims on file. There will be exceptions to the rule of these 3 cases, and I will point them out.
>
> My primary concern has always been to obtain the copyrights for the stories I either wrote on my own or with the co-creators I listed, all of whom have transferred their rights to me. One such example is the following e-mail I received from Clayton Emery, whom I listed as co-creator in the notes of my claim:
>
> To Whom It May Concern,
>
> I was graciously invited by Ken Penders to contribute to Sonic 58 toward the end of the scripting. I had written a Robin Hood novel and several Robin & Marian short stories. Ken wanted some advice about a new character he was introducing, Rob O' the Hedge, a Robin Hood cognate.
>
> I should note that Ken's Sonic stories spanned many issues with dozens of characters. Issue 58 would not be a standalone issue, but rather something like Chapter 20 of many chapters to come. The main story arc was already written or plotted well into the future.
>
> My only real contributions were these:
>
> 1) I rewrote Rob's dialogue to sound more Robin Hoody. I had him say, "Lackaday!" as his exclamation. Whether he is a co-author depends on how much he rewrote the dialogue. Changing one word is not enough.

Clayton did not substantially contribute to the dialogue beyond supplying certain terminology such as names that are generally associated the folklore of Robin Hood. OK, then you might not consider him to be a co-author of the text.

> 2) I mentioned that Nottingham was originally named Snotingham by the Vikings, and Ken found the name amusing, so changed it. See above.

> 3) Ken explained that Rob and Knuckles were poised to fight at the end of the previous issue. I explained that, traditionally, whenever Robin Hood met a new adventurer, they would fight, Robin usually (oddly) lost or fought to a standstill, then the two became friends. For instance, Robin Hood was beaten by Much the Miller, slashed by Maid Marian (in disguise), and dumped in a stream by Little John. Thus, when Rob O' the Hedge meets Knuckles, Rob gets tumbled in a stream, but they become friendly. Rob is also thumped by Maid Mary'an in disguise. Plot lines are not copyrightable. Only the words as written can be copyrighted.

I initially wrote the script in a rough format in one of my notebooks, which I then showed Clayton for his input. I then wrote the entire finished script on my computer. Afterwards, I printed and faxed a copy of the manuscript to Archie Comics editor Justin Gabrie, which he turned over to artist Art Mawhinney at my request. I provided Clayton equal billing as a gesture of thanks due to our many years of friendship. Unclear if he could be considered a co-author in the situation you've described. Ultimately, that is for you to decide.

> 4) Finally, Ken had planned the robotic army would invade Deerwood Forest. I suggested instead the army begins cutting down the trees, which to Rob is a much worse threat. See preceding comment.
>
> And that's about all I added. Ken had already written the chapters before and plotted the chapters to come, and had largely laid out this issue. Ken just needed some details of Rob's dialogue and fight interaction to best flesh out the character in a Robin Hood way.
>
> If you have any questions, feel free to contact me.
>
> Submitted,
> Clayton Emery
> 301 208-2517
> claytonemery@claytonemery.com
>
> I did not list either Clayton, Mike Kanterovich or Scott Fulop (AKA Kent Taylor) as co-claimants for the copyrights to the stories as they have all deferred their rights to me, based on how I conducted business with all three previously. If any one of them co-wrote the text or contributed to the artwork in a significant way, then they should be named as co-authors. And, as co-authors they would own the copyright in their contributions unless they transferred their copyrights to you in writing.

When you say "in writing", is e-mail acceptable or do you wish an actual signed document. I have e-mail from Mike Kanterovich transferring his rights over to me as well as Scott Fulop, who wrote under the name Kent Taylor, transferring his rights with regards to KNUCKLES: THE DARK LEGION (Case 1-155432561). I can have both supply actual signed documents if necessary.

17 USC 204(a) states: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the trasnfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." We don't need to see a copy of the document, but it does need to exist, and you need to refer to it in the "transfer" area of the application form in cases where you are claiming copyrgiht in someone else's authorship.

Unless I have provided either the layouts, layouts and finished inked artwork or the complete art - pencils & inks - to any particular cover or story, I have not filed any claim on any artwork I had nothing whatsoever to do with. That's good!

With regards to SONIC #58 (Case 1-155432561), I can see where the confusion lies as I don't receive any credit for providing the cover layout as well as the interior credits being printed out of place. Okay .

While Patrick may have changed the angle and placement of characters, he did essentially follow my design, utilizing the characters and concept I provided to create his version. Sounds like you might be co-authors.

With regards to the actual story credits in this case, upon immediately opening book you will see credits listed on the bottom of page 1. These credits are actually for the story "The Living Crown", which I wrote solo and colored. Then you may register a claim in "text" and "2-D artwork", but if all you did was the coloring, and not the drawing being colored, then the drawings whould be disclaimed as preexisting material in space 6a ofthe application form. Beyond that, I make no further claim of authorship of the art. Both Manny Galan and Jim Amash are freelancers who as far as I'm aware did not sign any work-for-hire agreements,

according to editor Justin Gabrie. The credits the story "Friendly Rogues and Foul Villains can be found on page 18 of that story, listing me (with Clayton) as providing the script, along with
me listed as the inker and colorist of the tale. We're not as concerned about the credits as we are about what should be stated on the copyright application.
But, variances between the credits and the application should be explained (i.e. why they are different, who really did what).

> I would submit vouchers to Archie
> Comics for payment, and pay each of the three named individuals as sub-
> contractors to me. They never submitted any vouchers for payment nor did any of the three sign work-for-hire agreements. The copyright statute requires that commissioned work for hire agreements be in writing, in which case the employer is considered the author of whatever the commiessioned party created. Without this agreement in writing, the commissioned party, not the employer, is the author and is entitled to claim the copyright in what he created unless he later transferred the copyright in writing to the person who hired him.

As I have stated before, I never signed any work-for-hire agreement with Archie Comics. At the advice of my attorney, I contacted senior personnel at Archie Comics requesting a copy of any agreement I may have signed. I made this request in writing three times to verify to my lawyer that I had not signed such a document. I would have been shocked had anyone at Archie Comics produced such a document, as it would been an outright forgery. I can provide affidavits from many contractors who never signed such a document with regards to their work on this particular series of books, and am prepared to do so in a
court of law. There are two parts to the statutory definition of "work made for hire," which appears in 17 USC 101 and is descuseed in Circualr 9 on our website. The first part involves those who can be considered "employees" and part 2 involves those who can be considered independent contractors. Part 2 is the part that requires a written agreemenet that has been signed by the parties.

Mike Kanterovich, Clayton Emery and Scott Fulop (in particular to case
1-155432561) have all signed such statements, thus making it possible for me to be the sole claimant with regards to the texts of any story I am not listed as the sole writer of. Good, that may take care of that particular case #. A transfer statement will be required in space 4 of the application. For example, "By written assignments."

> Because of the
> size of my body of work as compared to the contributions of Clayton and Scott, both felt they were better off having me represent their interests. The same applies to Mike Kanterovich, but I separate his contributions from the other two as his contributions are of greater significance in comparison.
>
> While I will detail my contributions to the art, I consider them of lesser importance to the work. The only contributions that truly matter beyond the writer are the layout artist and the penciller, as they would be considered the actual creators of the art. By claiming this, I would eliminate any claims I would have as the inker of the piece for the simple reason that all the design work has already been completed by the time the inker receives the art to work on. I would list the inker, letterer and colorist as craftsmen or technicians, but not co-creators. I say this with full knowledge I have submitted claims in which I have credits listing me as the colorist as well as the letterer. You may claim copyright in text and artwork you created yourself, and in text and artwork created by others who transferred their copyrights to you in writing. Authorship you created yourself would include any actual pictures you drew as well as any coloring you added (adding color to a work, such as one would do in a coloring book, is usually creative enough authorship to be considered copyrightable artwork in and of itself).

I believe I've been pretty clear about what I've made claims to, but will provide further breakdown if necessary as well as for your convenience. Good, it is necessary to be clear about what you created yourself and what was created by others.
I never made any claims for any work I colored simply because that aspect of production, while important to the finished work you hold before you, is easily replaceable if the work is printed
in a different format or issued by a different publisher. That is your choice, although the complex colorization of these works would be considered copyrightable authorship. Indeed, much of the art itself is replaceable as it is the stories themselves - the text, that is - that creates the cohesiveness of the overall story arc with which the readers are drawn to.

> Whatever confusion exists concerning my claims is due more to my caution in making certain I'm able to obtain what's rightfully mine, as well as being able to protect the interests of those I represent, as I have done for over the past 17 years. I welcome any questions in order to resolve the matter to everyone's satisfaction. Thank you.
>
> Best,
> Ken Penders
>
> 310-927-9497
>
> 4526 Coldwater Canyon Avenue #303
> Studio City, CA
> 91604-1066
>
> On Mar 16, 2010, at 9:55 AM, William R Briganti wrote:
>
>> Following up on our telephone conversation... Please select 1-3 representative cases that we will try to perfect and that can serve as templates for the remainder of your claims. In each case, you need to determine and tell me the following:
>>
>> (1) Tell me who contributed to the creation of the artwork as it appears in final published form (this would include anyone who created preliminary sketches and concept drawings that were used in creating the final artwork, as well as whoever put the artwork in the final finished form in which it was published).
>> (2) Tell me who contributed to creation of the final text as published. That would include someone who wrote a preliminary script that was used in writing the final script.
>> (3) Let me know if any of the artists or writers named in (1) and (2) prepared their contributions as a "work made for hire" as explained in Circular 9 on our website. I need to know the name of their employer(s). If a contribution was "made for hire", the employer should be named on the application form as the author of that contribution.
>> (4) If what you have told me in (1) or (2) varies with the credits appearing on the copy, please explain.
>> (5) Tell me who is claiming the copyright. Keep in mind that the authors named on the application, whether they be individual persons or employers, own the copyright in their contribution unless they transferred their copyrights to someone else. This means that, unless an author's copyrights were transferred, all of the authors named on the application (which you've identified in steps 1 & 2 above) should also be named on the application as claimants. On the other hand, if any author transferred his/her/it's copyright to you in writing, then those authors should not be named as claimants on the application form, but you will need to explain your entitlement to their copyrights in the "transfer" area of the form (for example, "by contract," or "by written agreement," or "by assignment of all rights").
>>
>> Bill Briganti
>> Assistant Chief
>> Visual Arts and Recordation Division
>> U.S. Copyright Office
>> 202-707-1497

# Exhibit G

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Upon Further Review Part 2**
**Date:** September 23, 2011 12:13:51 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Tuesday, April 06, 2010 3:20 PM
To: kenpenders@kenpenders.com
Subject: Upon Further Review Part 2

Mr. Penders - This email has gotten so long my email system won't let me add to it, so I'm copying your comments and adding my own, underlined. You'll need to cross-reference your previous email for context.

You said: I can very happily live with seeing me listed as the sole author of my preliminary sketches and co-authorship of the finished art. My primary concern was always with the stories first, which is why I made certain everything was spelled out to Mike Kanterovich, Clayton Emery and Scott Fulop in order for me to secure the rights to the texts of all the stories I filed claims for. I regard the rights to the art as the icing on the cake, and am confident I can secure further rights to much of the art in which there is a co-claimant.

I say: If you are the sole author of the story (i.e. the "text"), and the text was not a "work made for hire," then there is no question you may register a claim limited to the text, with you named as both author and claimant. Let me know if you want to register any Case #'s in this manner. If you were also the sole author of the artwork, then you could claim both the text and the artwork on the same application form, as the sole author and cliamant. Let me know if you can register any Case #'s in this manner. But, if you were the sole author of the text but just a co-author of the artwork, the situation is more complicated with regard to how you would complete an application form. Let me know which Case #'s fall in this category and I'll advise you further in a followup email.

You wrote: In this case, the published text can be separated from the actual physical art for several reasons, most importantly because the publisher in this case, Archie Comics, does not own the rights to the characters I did not create.

Were I to secure the rights to the texts of my stories alone, I could approach the owner of SONIC and KNUCKLES, which in this case is SEGA, and strike a deal to repackage my stories in a new format with new art with another publisher. This is possible as Archie Comics does not own the rights to Sega's characters, nor would any new interpretation be dependent upon anything published by Archie Comics which I did not write, design or illustrate.

That reason alone is why the claims for the texts are vastly more important than the claims for the art. BOTTOM LINE: The stories cannot be replaced, but the artwork can be.

I say: Again, if you are the sole author of the text and it was not made for hire, then you can register the text as sole author and claimant. As you know, the situation gets much more complicated when artwork is included in the claim, but only you can decide how you want to proceed.

You wrote: As I stated earlier, I can live with myself receiving sole authorship of the layouts and co-authorship of the finished art.

However, let's use page 1 of this story as an example. In the first panel, the largest one on the page, not only is every character positioned in the order I placed them, but in roughly the same proportions . The word balloons and other text are placed and rendered pretty much as I lay out. The factory in the background is more a silhouette than the detailed version I provide, and the placement of Dr. Robotnik in the smaller panel features the character with the sole difference he's facing forward instead of rendered in profile. But the panel even features the extended arrow to the smaller figure of Robotnik in the larger panel. just as I have depicted. The rest of the page is similarly rendered.

In other words, the difference we're discussing here is one of style versus creativity. All Dave essentially had to do is blow up my image to 152% on 11 x17 paper using a xerox copier, place Archie-supplied illustration paper over the copy on a light table and trace my initial design. With the major portion of creativity and work supplied, the leap from sketch to finished drawing in this case is an alleyway, not a chasm. The same applies to every page layout I supplied during this time.

The sole exception was when I supplied layouts which I knew would be rendered by artist Patrick Spaziante for the KNUCKLES series, in which case I was more comfortable supplying layouts that didn't provide every nut and bolt to the finished drawing.

I say: I appreciate your contributions to the artwork, but the other artists' contributions are not insignificant. You can always register a claim in your preliminary rough sketches, as the sole author and claimant. If you choose to register a claim in the published artwork to which others made significant contributions, then the situation is obviously more complicated.

Your wrote: With regards to the colorist, this is a tricky question for two reasons. One, certain characters come with a pre-established color palette which cannot be deviated from, so there is no creativity on the colorist's part with these situations. Two, because of printing methods used at the time, the color palette was strongly limited as compared to the selection of colors available utilizing modern printing methods.

I say: There is a lot of coloring here that goes beyond the coloring of the characters, so you may claim it as "2-D artwork" if it is original (created by you) and was not made for hire.

You wrote: In all honesty, I would say Mike was a co-author in the fullest sense of the word with our earliest stories together, but not in the later stories. However, since Mike prefers I represent our interests and has signed off any claims of copyright to me, this is a moot point. For the purposes of my claims with Mike sharing the billing with me, I am the sole claimant.

I say: That's fine. We just need to make sure that the application correctly reflects that situation.

You wrote: Since neither of the two scenarios apply - I was never an employee nor did I ever sign an agreement stating I was creating "work made for hire" - to ANY of my claims with regards to the story text, layouts and any finished art I provided, none of the works can be claimed as "work made for hire".

I say: Okay, thank you for reviewing the definition of "work made for hire" and we accept your determination on this question.

You wrote: The significance lies in the fact that by the time I was allowed to submit my scripts solely in text format, I had already made a major contribution to the design of the series and the characters I created. The series as it is published today uses most of the the work I created as a basis for many of its current storylines. The primary storylines that Archie uses as basis beyond SONIC #46, the last issue I supplied layouts to, are the ENDGAME saga as published in SONIC issues #47 through #50 and SONIC SUPER SPECIAL #6, BRAVE NEW WORLD which was published in SONIC SUPER SPECIAL #2, the KNUCKLES series and the MOBIUS: 25 YEARS LATER storyline.

I say: We don't need to know why you want to register copyrgiht claims, or what significance registration might have with regard to works created after the ones presently at issue, our only concern is that the facts stated on your applications are as correct as we can make them.

You wrote: I have an agreement with Mike in writing. I just want to make sure that you are provided with anything you may need in making final adjudication of my claims. Thus my request for clarification what I need to provide you, if anything.

I say: We need to know IF there is an agreement in writing (which, by the way, must be signed by the transferor of the copyright), but we do not need a copy of the document itself. Trasnfers should be briefly noted in the "transfer" area of space 4 of the application. For example, "By written agreement" and "By assignment" are acceptable statements.

You wrote: At this time, I am filing individually for sole authorship of the unpublished sketches and co-authorship of the finished art. Should I be in contact with Dave or his estate, I will seek to establish whether he wishes to file a claim for his rights or transfer them to me.

This would be the template I would use for any similar situation in any of my other claims.

I say: You have 50+ Case #'s that you have already paid for, and we can adapt any of them to accomodate whatever type of claim you decide you can and want to pursue. Or, if you want, you can start the process anew and submit a new application, copy and filing fee. Just let us know how you want to proceed and we will try to accomodate you.

You wrote: I provided the designs of the characters for the stories I wrote. I'm not sure what you mean by ideas, as any character I created was always to suit a specific purpose for a particular storyline. There was never such a thing as creating a character and then not using them.

I say: See the attached Circular 44.

Your wrote: Neither Scott (AKA Kent Taylor) or I consider him (Scott, that is) a co-author of the text for this particular case. However, since he was listed, I had to address the matter. For all intents and purposes, it's widely acknowledged throughout SONIC fandom that I am the sole principal creator responsible for the KNUCKLES storylines as published by Archie Comics.

I say: You needed to explain the credit variance, and we accept your explanation that you are the sole author of the text.

Your wrote: In the case of KNUCKLES, the copyrights for the original text and artwork are sufficient, as everything I ever created for the series is featured in the published work.

I say: Okay .

Your wrote: I am the sole writer and have filed all of my KNUCKLES stories listing me as the author and claimant. As you can see from the published texts, with the exception of Mike Kanterovich on some of the earlier stories published primarily in the SONIC series and the listing of Kent Taylor as a co-writer on KNUCKLES: THE DARK LEGION, there is no other writer associated with the series.

I say: Okay. Let us know if you want to pursue claims in "text" only for the KNUCKLES stories, or if you will also be pursuing claims in the artwork .

You wrote: Fortunately, Patrick's contributions in no way jeopardize any future use of my stories. He worked at most on a handful of stories and several of the covers. It would be a simple matter to commission new artwork to replace his original contributions should another publisher seek a license from SEGA to publish the work.

I say: Okay .

You wrote: I believe I pretty much spelled out exactly who did what under Template 2. I designed the layouts and the finished ink work for every cover of the KNUCKLES series. The pencil work for the covers was provided by either Patrick "Spaz" Spaziante or Manny Galan. Josh Ray provided the colors. On the interiors, I wrote all the original text for every issue. Manny Galan pencilled issues 1 through 21 and 25, with inks by Andrew Pepoy. The colors were by whoever was listed in any given issue unless I state otherwise. Jim Valentino pencilled issues #22 through 24, with inks by Harvey Mercadoocasio. Chris Allen pencilled the Knuckles stories in issues #26 through #28, with inks by Andrew Pepoy. Manny Galan illustrated the Mighty the Armadillo stories that were the back-up feature in KNUCKLES #26 through 28, inked by Andrew Pepoy. Art Mawhinney pencilled KNUCKLES #29, with inks by Andrew Pepoy.

Beyond the KNUCKLES cover layouts and finished art, the only other art I lay claim to on the 32-issue KNUCKLES series are the pencils for issues #30 through 32, which I provided, and were inked by Harvey Mecadoocasio. (Colleen Doran illustrated the Espio stories that appear in these issues, and I make no claim to any of her art.)

I say: Okay, I've explained what you need to consider when completing the applications. So now you need to make sure that the applications are correct. If changes to an applciation are necessary, then please email or fax a new application and we will make the necessary changes to our records. No adidtional fees are required unless you intend to make more than the 50+ registrations already submitted. Additional deposit material is not required unless you decide to register your unpublished sketches rather than the published material. Our fax number is 202-707-3698.

Your wrote: At this point, I can't supply whatever unpublished sketches I don't have. What I can supply are written affidavits by the editors who commissioned the work from me in the format I've provided with certain claims. Scott Fulop can testify in writing and in court that I supplied him with material exactly as I have made my claim to you. Likewise, Justin Gabrie can file a similar affidavit.

I say: We need your unpublished sketches only if that is what you have decided to register. If you decide to register the unpublished material and you can't send it to us, then such registrations will not be possible. We cannot base a registration on an affidavit, we must have a copy of what is being registered. If you are claiming copyrgiht in the published matrerial, we have what we need in terms of deposit material (but revised applications may be required).

You wrote: The question I have here, going by the examples you yourself provided earlier, would I not be able to claim sole right to the cover painting while Patrick lays claim to the pencils? I never used his original pencil work when rendering the final finished piece, and actually have both the pencil version and the original painting in my possession, and can supply you with a pic of each.

I do lay sole claim to the interior text and artwork.

I say: Again, decide what you created and what others created, and whether any copyrights were transferred form other to you, and then complete an application that limits your claim to what you own the copyright in. Material that you are not entitled to claim copyright in, at least not in its entirety, should be disclaimed in space 6a of the application form.

Bottom line: Our job in the Copyright Office is to establish the correct facts, as best we can, and we are relying on you to tell us the correct facts to the best of your ability.

Sincerely,
William Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office
202-707-1497

# Exhibit H

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Your copyright claims**
**Date:** September 23, 2011 12:13:29 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

---

-----Original Message-----
From: Briganti, Bill
Sent: Tuesday, April 06, 2010 12:37 PM
To: kenpenders@kenpenders.com
Subject: Your copyright claims

See underlined wording below... I will respond to your subsequent emails today.

Ken Penders < kenpenders@kenpenders.com > 3/16/2010 3:50 PM >>>
Mr. Briganti,

Thank you for taking the time to clarify matters. Upon my return home tomorrow (Wednesday) I will select 3 representative cases to serve as templates. All three cases will address concerns specific to a number of similar other claims on file. There will be exceptions to the rule of these 3 cases, and I will point them out.

My primary concern has always been to obtain the copyrights for the stories I either wrote on my own or with the co-creators I listed, all of whom have transferred their rights to me. One such example is the following e-mail I received from Clayton Emery, whom I listed as co- creator in the notes of my claim:

To Whom It May Concern,

I was graciously invited by Ken Penders to contribute to Sonic 58 toward the end of the scripting. I had written a Robin Hood novel and several Robin & Marian short stories. Ken wanted some advice about a new character he was introducing, Rob O' the Hedge, a Robin Hood cognate.

I should note that Ken's Sonic stories spanned many issues with dozens of characters. Issue 58 would not be a standalone issue, but rather something like Chapter 20 of many chapters to come. The main story arc was already written or plotted well into the future.

My only real contributions were these:

1) I rewrote Rob's dialogue to sound more Robin Hoody. I had him say,
"Lackaday!" as his exclamation. Whether he is a co-author depends on how much he rewrote the dialogue. Changing one word is not enough.

2) I mentioned that Nottingham was originally named Snotingham by the
Vikings, and Ken found the name amusing, so changed it. See above.

3) Ken explained that Rob and Knuckles were poised to fight at the end of the previous issue. I explained that, traditionally, whenever Robin Hood met a new adventurer, they would fight, Robin usually
(oddly) lost or fought to a standstill, then the two became friends.
For instance, Robin Hood was beaten by Much the Miller, slashed by
Maid Marian (in disguise), and dumped in a stream by Little John.
Thus, when Rob O' the Hedge meets Knuckles, Rob gets tumbled in a stream, but they become friendly. Rob is also thumped by Maid Mary'an in disguise. Plot lines are not copyrightable. Only the words as written can be copyrighted.

4) Finally, Ken had planned the robotic army would invade Deerwood Forest. I suggested instead the army begins cutting down the trees, which to Rob is a much worse threat. See preceding comment.

And that's about all I added. Ken had already written the chapters before and plotted the chapters to come, and had largely laid out this issue. Ken just needed some details of Rob's dialogue and fight interaction to best flesh out the character in a Robin Hood way.

If you have any questions, feel free to contact me.

Submitted,
Clayton Emery
301 208-2517
claytonemery@claytonemery.com

I did not list either Clayton, Mike Kanterovich or Scott Fulop (AKA Kent Taylor) as co-claimants for the copyrights to the stories as they have all deferred their rights to me, based on how I conducted
business with all three previously. If any one of them co-wrote the text or contributed to the artwork in a significant way, then they should be

named as co-authors. And, as co-authors they would own the copyright in their contributions unless they transferred their copyrights to you in writing. I would submit vouchers to Archie
Comics for payment, and pay each of the three named individuals as sub- contractors to me. They never submitted any vouchers for payment nor did any of the three sign work-for-hire agreements. The copyright statute requires that commissioned work for hire agreements be in writing, in which case the employer is considered the author of whatever the commiessioned party created. Without this agreement in writing, the commissioned party, not the employer, is the author and is entitled to claim the copyright in what he created unless he later transferred the copyright in writing to the person who hired him. Because of the
size of my body of work as compared to the contributions of Clayton and Scott, both felt they were better off having me represent their interests. The same applies to Mike Kanterovich, but I separate his contributions from the other two as his contributions are of greater significance in comparison.

While I will detail my contributions to the art, I consider them of lesser importance to the work. The only contributions that truly matter beyond the writer are the layout artist and the penciller, as they would be considered the actual creators of the art. By claiming this, I would eliminate any claims I would have as the inker of the piece for the simple reason that all the design work has already been completed by the time the inker receives the art to work on. I would list the inker, letterer and colorist as craftsmen or technicians, but not co-creators. I say this with full knowledge I have submitted claims in which I have credits listing me as the colorist as well as
the letterer. You may claim copyright in text and artwork you created yourself, and in text and artwork created by others who transferred their copyrights to you in writing. Authorship you created yourself would include any actual pictures you drew as well as any coloring you added (adding color to a work, such as one would do in a coloring book, is usually creative enough authorship to be considered copyrightable artwork in and of itself).

Whatever confusion exists concerning my claims is due more to my caution in making certain I'm able to obtain what's rightfully mine, as well as being able to protect the interests of those I represent, as I have done for over the past 17 years. I welcome any questions in order to resolve the matter to everyone's satisfaction. Thank you.

Best,
Ken Penders

310-927-9497

4526 Coldwater Canyon Avenue #303
Studio City, CA
91604-1066

On Mar 16, 2010, at 9:55 AM, William R Briganti wrote:

> Following up on our telephone conversation... Please select 1-3 representative cases that we will try to perfect and that can serve as templates for the remainder of your claims. In each case, you need to determine and tell me the following:
>
> (1) Tell me who contributed to the creation of the artwork as it appears in final published form (this would include anyone who created preliminary sketches and concept drawings that were used in creating the final artwork, as well as whoever put the artwork in the final finished form in which it was published).
> (2) Tell me who contributed to creation of the final text as published. That would include someone who wrote a preliminary script that was used in writing the final script.
> (3) Let me know if any of the artists or writers named in (1) and (2) prepared their contributions as a "work made for hire" as explained in Circular 9 on our website. I need to know the name of their employer(s). If a contribution was "made for hire", the employer should be named on the application form as the author of that contribution.
> (4) If what you have told me in (1) or (2) varies with the credits appearing on the copy, please explain.
> (5) Tell me who is claiming the copyright. Keep in mind that the authors named on the application, whether they be individual persons or employers, own the copyright in their contribution unless they transferred their copyrights to someone else. This means that, unless an author's copyrights were transferred, all of the authors named on

> the application (which you've identified in steps 1 & 2 above) should also be named on the application as claimants. On the other hand, if any author transferred his/her/it's copyright to you in writing, then those authors should not be named as claimants on the application form, but you will need to explain your entitlement to their copyrights in the "transfer" area of the form (for example, "by contract," or "by written agreement," or "by assignment of all rights").
>
> Bill Briganti
> Assistant Chief
> Visual Arts and Recordation Division
> U.S. Copyright Office
> 202-707-1497

# Exhibit I

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Your copyright claims**
**Date:** September 23, 2011 12:13:37 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Tuesday, April 06, 2010 12:48 PM
To: kenpenders@kenpenders.com
Subject: Your copyright claims

See underlined wording below... Will respond to your subsequent emails today.

Ken Penders < kenpenders@kenpenders.com > 3/18/2010 4:21 AM >>>
Bill,

Before we begin, I should call attention to a very pertinent fact that needs to be addressed. In reviewing what I applied for when filling out my claims initially, I was seeking out the copyrights only to my stories and page/cover art layouts, except in the cases I actually did the complete art or pencil art alone. If you'll check the note on my claim of case 1-155777549, I clearly state "The work submitted included full text and page art layouts which were used in the preparation of the finished art. I was not credited for the art contribution, nor was I an employee of Archie Comics or SEGA at the time this work was created. I also had not signed a work-for-hire
agreement in the commission of this story." Contributing preliminary sketches that were used by others in creating the finished art would make you a co-author of the finished art. You would be the sole author of your preliminary sketches.

Likewise, you'll find this applies to each and every one of my claims.

I was never attempting to file for what I did not believe belonged to
me, and thus limited my claims only to my contributions. But problems arise if you were not the only contributor. You may register a claim in your unpublished text or sketches and name only yourself as the author and claimant, but you may not do this for published text or artwork that you only contributed to, but did not create in its entirety (unless your contributions can be segregated from the contributions of the others). For example, if I drew a pencil sketch of a woman and gave it to Leonardo de Vinci, and he then painted the Mona Lisa based on my sketch, that would not entitle me to submit a copyright claim which names only me as author and claimant of the painting (I could do this for my sketch though).

I believe the confusion began when those assigned to initially review my work compared the layout art samples I provided with the finished publication, and thus began the debate over what part of the copyright to the artwork I was entitled to. This was brought to my attention when a Ms. Adrienne Brown inquired of me via e-mail on April 14, 2009:

"We noticed on the copy another name listed for the artwork, are you the artist of the artwork? On the deposit you are only listed as the writer."

She was enquiring with regards to case 1-155432561, which lists me as a cover artist as I provided the layout and final inks. I made no claim to any of the interior story art, as I consider my cover layout the only important part of any claim to the copyright of the cover art.

With that established, here are the three representative cases as you requested.

TEMPLATE No. 1

Case 1-155777549

Title of Work: SONIC THE HEDGEHOG in THE GOOD, THE BAD AND THE HEDGEHOG!

1) Art: If you believe my script layouts form the basis of the finished art, which I believe you do, then the layouts are uncredited work rendered by me. You should have in your possession xerox copies of pencil artist Dave Manak's renderings based off of my layouts, which are essentially more polished versions of my work with minimal added detail. Again, long story short, Ken Penders supplied the
layouts and Dave Manak the finished pencils. As I write this I'm comparing the two, and I cannot agree that Dave Manak's artwork constitutes "minimal added detail"! The layout is the same but the artwok is very different.
While Art Mawhinney is credited with providing the finished ink art, I would not consider him a creator, nor would I consider any inker a creator, including myself on any listed work. What does an "inker" do exactly? Only the writer(s) and
pencil artist - and in this case, the layout artist - can be said to have created something out of nothing. As an example, ask any comic collector, comic art historian or any person knowledgeable on the history of comics who created THE FANTASTIC FOUR, and you'll receive as the answer the names Stan Lee and Jack Kirby. Whom you will not hear are the following names: Sol Brodsky, Dick Ayers, Steve Ditko, Paul Reinman, Chic Stone, Frank Giacioa, Vince Colletta and Joe Sinnott, all of whom were responsible for inking Jack Kirby's pencil art during his 100+ issue run from when the series began. The same could be said of any series that has withstood the test of time. The inker, letter and colorist are craftsmen who provide the finishing look, but they are not considered creators as they are considered all

interchangeable. But does the colorist choose what colors to use, and where to put the colors? If so, then he too has created copyrightable authorship.

2) Story: Ken Penders & Mike Kanterovich- for whatever reason, Mike's name was usually listed first, even though I was the one conducting business on behalf of the both of us with the editors of Archie Comics, which was Paul Castiglia at the time. (NOTE: Paul was the editor we dealt with for the stories involved with this claim. Scott Fulop replaced him shortly after we turned in these stories.) Mike and I would discuss the story and I would do the physical work of putting
it all down on paper. You need to decide if his contributions rise to the level of "co-authorship" of the text. While Mike has asked me to deal with protecting
his interests as I have before, I am perfectly happy if the copyright for the story is awarded to the both of us. It just makes it easier for me to conduct business if I am the sole claimant. I can get Mike
to sign off on a transfer of rights if that is called for. This is up to you, if you consider him to have co-authored the text. So, long
story short - in the technical sense, Ken Penders supplied the finished script with verbal contributions from Mike Kanterovich. Ken Penders also supplied any outlines that were typed in and faxed for approval, with verbal contributions from Mike Kanterovich.

3) Mike Kanterovich and I never submitted work under a "work made for hire" agreement. That covers the story and layouts not covered by a "work made for hire agreement". According to Scott Fulop, former editor of SONIC THE HEDGEHOG published by Archie Comics, he highly doubts artist Dave Manak operated under a "work made for hire"
agreement, as things were rather informal back then, and no one had any idea of the longterm success the series would enjoy. Likewise, it's also highly unlikely Art Mawhinney worked under a "work made for hire" agreement, and I have yet to uncover any freelance contractor who worked on the series while I was contributing who signed such a
document. The copyright statute defines a "work made for hire" in two different ways: (1) works created by employees, and (2) works created by independent contractors pursuant to a written agreement that that the work is for hire. If either scenario applies, then the employer is considered the author and would be entitled to claim the copyright unless its been transferred to someone else in writing. See Circular 9 on our website for more information. This is not a determination we can make for you.

Furthermore, before I proceeded to file for the copyrights to my stories, upon the advice of my attorney, I requested in writing not once, but on three separate occasions I requested a copy of any "work made for hire" documents I may have signed for the company. Since I never signed any such document, I was not surprised when the company did not acknowledge my requests.

4) The sole variation is that I am not credited as layout artist, despite the physical evidence of the copy of the script itself. It was Archie Comics company policy not to pay for said layouts, preferring to consider it a standard script format. While I disagreed with this policy, I accepted it at the time and constantly requested to be allowed to submit my scripts in straight text format. Archie Comics would finally change their policy shortly before I wrote the script
for SONIC THE HEDGEHOG #47 (case 1-156421713). How is this significant?

5) I am claiming the copyright for the story. I would say that Mike Kanterovich transferred his copyrights "by assignment of all rights", as he expected me to handle looking out for our interests as I have
always done. Copyright transfers must be in writing. Oral agreements are not acceptable under the copyright statute. While I consider Mike a co-claimant with regards to the
story, having handled all of our mutual business affairs places the burden on me to represent our interests. Mike was always paid out of my pocket as a sub-contractor for tax purposes, and never had any
business dealings with Archie Comics. Was there a written agreement between the two of you that would qualify you as his employer? I leave it to your discretion
how this should be handled. We have no discretion to make this determination.

I am claiming copyright for the art based solely on the layouts, as Dave Manak clearly based not only his page and panel layouts from my work, but also character placement, word balloon placement and other
visual cues. Agreed . I would go along with Dave being named co-claimant if
that is your ruling, but if he clearly hasn't deviated from the layouts I supplied, then that's where I believe the line should be drawn. Had he differentiated significantly from what I supplied, then
yes, I would agree he is a full co-claimant. It is difficult to see how can his contributions could NOT be considered significant. As I've supplied both a
copy of my complete script as well as a copy of the published issue,
virtually everything Dave rendered was from my layouts. Agreed. There is no question you may claim copyright in your unpublished sketches, as sole author and claimant, but not so with the finished artwork. You may name yourself as the sole copyright claimant if Dave Manak transfers his copyright to you in writing. Or, if you consider this to be a "joint work", then you share copyright ownership in the work as a whole and you may register your claims jointly or individually (both of you would have to be named as authors).

I'm skipping down to Template #2...

Title of Work: SONIC THE HEDGEHOG will never BEAT THE CLOCK!

This is the sole story that does not credit any of the creators, so allow me to fill in the blanks.

1) Art: Layouts by Ken Penders, pencil art by Dave Manak. Inks by Art Mawhinney.

2) Story: Ken Penders and Mike Kanterovich

3) See item #3 above, the same applies.

4) See item #4 above. Same thing, except no one is listed with a credit.

5) See item #5 above. Same thing.

Title of Work: SONIC THE HEDGEHOG in FOOD FOR THOUGHT OR "YOU ARE WHAT YOU EAT!"

1) Art: Layouts by Ken Penders, pencil art by Art Mawhinney. If anything, except for two editorial changes (panel 3 on pages 2 and 4 of the finished work), Art adhered even more closely to my layouts, if that's possible.

2) Story: Ken Penders and Mike Kanterovich

3) See item #3 above. Still the same.

4) See item #4 above. Same thing, only the letterer and colorist are uncredited as well.

5) See item #5 above. Same thing, except I'd replace Dave Manak with Art Mawhinney where this story is concerned.

NOTE: This claim could be used as a template for the following claims:

1-156502239 (everything is consistently the same, and I am still uncredited on layouts. The question here is whether or not I have to submit a group form, which I will be happy to do. The only significant difference is that this is one of the claims where I supplied the cover designs for all three issues listed in layout format.)

1-156461413 (still uncredited on layouts, Dave Manak did the pencil art for the first half of the story, with Art Mawhinney handling the pencil art for the second half. Likewise, Harvey Mercadoocasio - credited as "Harvo" - inked the pencil art on the first half of the story while Rich Kozlowski inked the second half. I also supplied the layout for the cover design and text.)

1-156461329 (this issue is virtually the same situation as case 1-156461413, only Rich Kozlowski inked Dave Manak's pencils, Art Mawhinney inked his own pencils, and Harvo had no involvement. I also supplied the layout for the cover design and text.)

1-156461231(again, everything is the same, including my supplying the layout for the cover design and text. Dave Manak provided the pencils for "Gorilla Warfare" while Art Mawhinney provided the pencil art for "First Star I See Tonight!")

1-155633560 (Template #1 only applies to this story in the SONIC IN YO' FACE Special #1. Neither Mike or I had anything to do with the contents of the rest of the book, including the cover. It is this story alone in this issue I am applying for the copyrights.)

1-156502336 (while at first glance the credits may be confusing, it really breaks down in the same manner - cover layout and text: Ken Penders, pencil art by Patrick "Spaz" Spaziante; "The Chaos Effect - story: Ken Penders and Mike Kanterovich, art: layouts by Ken Penders (uncredited), pencils by Art Mawhinney with inks by Rich Kozlowski; "Tag! You're IT!" - story: Ken Penders, art: layouts by Ken Penders (uncredited), pencils and inks by Harvey "Harvo" Mercadoocasio; "The Hunt Is On" - story: Ken Penders, art: pencils by Ken Penders with inks by Jon D'Agostino. These last two stories were among my first solo efforts while still working with Mike. He displayed no interest in developing the Knuckles stories, and was starting to lose interest writing Sonic at this time.)

1-155633803 (this is exactly like case 1-156502336, only I provided the complete story and art for "Fire Drill", as well as the story and page layout art to "Lord of the Floating Island". Mike and I wrote " Panic in the Sky!", while I provided the layout page art. I did not provide the cover layout art for this issue.)

1-155777355 (with regards to the contents of this particular issue, SONIC #13, Mike and I wrote the story "This Island Hedgehog" as we had with all other stories falling under this specific template. I supplied the layouts and Dave Manak provided the pencil art based on my layouts. Jon D'Agostino provided the inks. While I have the complete original art to this story in my possession, again, all I made a claim for was the story itself and the page art layouts. I had nothing whatsoever to do with the cover art and other contents beyond this one story.)

1-158879961 (Template #1 still applies, only I wrote this story solo without any co-creator contributions. I was still submitting scripts in the layout page format which both artists Patrick Spaziante and Manny Galan followed faithfully throughout.)

1-156514520 (Same as Case 1-158879961, only artist Manny Galan was the only artist to work from my layouts.)

TEMPLATE No. 2

Case 1-155432561

Title of Work: KNUCKLES THE DARK LEGION Book One ARMY OF DARKNESS

1) Art: The only art I had anything to do with was the cover art and several character designs. You may not register a copyright claim in ideas for a character. Copyright protects drawings that depict the character. I provided the initial cover layout, including the concept of the design layout unifying the covers of issues #1, 2 and 3. All that I've written above applies here as well. I provided designs for all the characters who had not been previously established (which was just about everyone and clarified further in the story section). Patrick "Spaz" Spaziante provided the cover pencil art based on my layouts while I provided the inks. Manny Galan provided interior pencil art while Andrew Pepoy provided the interior ink art.

This situation was consistent up through and including issue #21 of the series. Initially, KNUCKLES: THE DARK LEGION was supposed to be a stand-alone mini-series, followed by another Knuckles mini-series a couple of months after the first had run its course. The publishers decided to rename the series KNUCKLES THE ECHIDNA and commenced with issue #4 instead of starting back at square one as they did with the SONIC series.

The only deviation to the art during this run of issues was when Manny Galan provided the cover pencil art based on my layouts for issues #7, 8, 9, 17 and 18 instead of Patrick. From issue #26 until issue #32, Manny Galan provided the cover pencil art based off my layouts while I provided the ink art. All that I've written above applies here as wel l.

As for the interior art, Manny pencilled while Andrew inked issues #1 through 21 and issue #25. Jim Valentino pencilled issues #22 through #24, which were inked by Harvey "Harvo" Mercadoocasio. Chris Allen pencilled the Knuckles stories in issues #26 through 28, Art Mawhinney pencilled the Knuckles story for issue #29 and I pencilled the Knuckles stories for issues #30 through 32. Manny Galan pencilled the Mighty the Armadillo stories in issues #26 through 28 while Colleen Doran pencilled the Espio the Chameleon stories in KNUCKLES #30 through 32. Andrew Pepoy provided the inks for all the stories from issues #26 through 32.

2) Story: Ken Penders - even though the credits list Ken Penders and Kent Taylor, I have an affidavit from Scott Fulop, who was writing under the name Kent Taylor after a mutual parting of the ways with Archie Comics in his capacity as editor, stating he had nothing whatsoever to do with the actual writing of the story. If that is the case, then he should not be considered a co-author of the text . When I questioned him on this, he recalled even less involvement than I had remembered.

Unlike the SONIC series, the character Knuckles was a blank slate. All that was developed prior to my developing KNUCKLES as an ongoing series was the title character himself, his friends Vector, Mighty, Charmy, Espio, Heavy and Bomb, and the concept of Knuckles as the Guardian of the Chaos Emerald which could only be found on a floating island. Beyond that, there were no other characters, concepts, character background or anything else with which to construct an ongoing series. I had to figure it all out from scratch and thus was given complete control of the character during the thirteen years I contributed content to the SONIC series and its related spin-off books, such as this title. Remember, you can claim copyright in your original text and artwork, not in your ideas for plot lines or characters .

From KNUCKLES THE ECHIDNA #4 throughout the entire run of the series I am listed as the sole credited writer on every story in each issue. If you are indeed the sole writer, or virtually so, then you may register a claim in the text that gives only your name as author and claimant.

3) I never submitted work under a "work made for hire" agreement. That covers the story and layouts not covered by a "work made for hire agreement". To the best of my knowledge, neither Manny Galan or Andrew Pepoy ever worked under a "work made for hire" agreement. Patrick "Spaz" Spaziante did work as an employee in the production department of Archie Comics, and I believe he did work under a "work made for hire" agreement. If so, then Archie Comics would be the "author" of his contributions .

Furthermore, before I proceeded to file for the copyrights to my stories, upon the advice of my attorney, I requested in writing not once, but on three separate occasions I requested a copy of any "work made for hire" documents I may have signed for the company. Since I never signed any such document, I was not surprised when the company did not acknowledge my requests.

4) The variations are that I am not credited as layout cover or ink artist, as well as not listed as the sole writer. I can point to various issues I've worked on for a number of publishers - including Archie - in which the published credits were not correct one way or another, which can be attributed to any number of factors. Understood. You just need to tell us who actually did what.

5) I am claiming the copyright for the story as the sole claimant. Fine, if you wrote the text yourself. Or, fine if there were co-writers, but they transferred their copyrights to you.

I am claiming copyright for the layouts of the cover art. No question with regard to your unpublished sketches, if you can supply them to us. Otherwise, you need to tell us if anyone else contributed to the finshed cover artwork. I will not deviate and claim more just because I did the ink artwork. While I had the authorization of then-editor Justin Gabrie to alter the pencil art to how I saw fit, I pretty much stuck to Patrick's line work as he pretty much nailed what I wanted.

Skipping down to Template #3....

NOTE: This claim could be used as a template for the following claims:

1-159959301 (while this would probably fall under the group form, all three issues listed - KNUCKLES THE ECHIDNA #13, 14 and 15 - were all produced in the same manner by the same people. I provided the cover art layouts for all three issues as well as the story in text form. Except for the characters and concepts listed in Template #2, I created literally everything else. Patrick provided cover pencil art which I inked, while Manny Galan provided interior story pencil art with Andrew Pepoy providing the finishing inks.)

1-158880161 (the only difference between this case and the ones listed so far is that the story was told over 2 issues, and Manny Galan was the cover artist. Beyond those variations, everything is the same.)

1-158880072 (the variations with these 3 issues is that Manny Galan provided the cover art for all 3 issues instead of Patrick, who was no longer involved with the series. Also, Chris Allen - yet another freelancer who did not sign a "work made for hire" agreement - illustrated the pencil art for the Knuckles story in all three issues with Andrew Pepoy providing the inks, while Manny pencilled the Mighty the Armadillo stories which were inked by Andrew Pepoy.)

1-158809154 (again, this is pretty much the same as the other cases in this template where my work is concerned. I listed Jim Valentino as a co-claimant on the art as he and I produced a number of stories together, and like my arrangement with Mike Kanterovich, I am looking out for Jim's interests as well with his acknowledgement. He is also willing to provide any affidavit necessary. For the record, Jim was the publisher of Image Comics, and has filed for copyrights on his other works.)

1-158809031 (KNUCKLES #30 through #32, the only three issues of the series in which I'm the sole claimant for both the stories and art. I wrote the Espio stories in these issues, which Colleen Doran pencilled and Andrew Pepoy inked.)

1-158788030 (KNUCKLES #29, which I provided the cover layout design and full story text. Manny Galan pencilled the cover art based on my design, while Art Mawhinney created the pencil art for the story from my text script upon my request. By this point in my tenure on the series, I was acting like a defacto editor and able to specify which artists I wanted to illustrate my scripts.)

1-158787980 (KNUCKLES #25 - this was one of the two 1-issue stories published during the run of the series, but the template still applies.)

1-158787911 (KNUCKLES #19 through #21, see Template #2 for details)

1-158764771 (KNUCKLES #16 - the other 1-issue story. Again, see Template #2 for details.)

1-155432673 (KNUCKLES THE DARK LEGION #2 - see Template #2 for details)

1-155432727 (KNUCKLES THE DARK LEGION #3 - see Template #2 for details)

1-155432772 (KNUCKLES #4 - see Template #2 for details)

1-155432800 (KNUCKLES #5 - see Template #2 for details)

1-155432829 (KNUCKLES #6 - see Template #2 for details)

1-155804989 (KNUCKLES #7 - see Template #2 for details)

1-155805020 (KNUCKLES #8 - see Template #2 for details)

1-155805060 (KNUCKLES #9 - see Template #2 for details)

1-155862651 (KNUCKLES #10 - see Template #2 for details)

1-155862681 (KNUCKLES #11 - see Template #2 for details)

1-156421664 (KNUCKLES #12 - see Template #2 for details)

1-156514480 (Here's a story that was published in 4 consecutive issues of SONIC THE HEDGEHOG - #106 through 109 - yet it fits the template as I was the sole writer and provided layouts to artist Dawn Best, who
was apprenticing under me at the time. I provided the finishing ink work.)

1-156422038 (As with case 1-156514480, here's a story that was published in SONIC SUPER SPECIAL #14, yet it fits the template. I was the sole writer and provided the cover layout art. Patrick Spaziante provided
the pencil art, which I inked. I didn't list the interior artists as I had nothing to do with the interior story art.)

1-156421798 (Template #2 still applies. I was the sole writer on all 5 stories featured in SONIC SUPER SPECIAL #11. Jim Valentino pencilled PRINCESS SALLY: ASCENSION, I provided the complete art to
HERSHEY: SOLO, Colleen Doran provided the pencil art to LUPE:
FAMILY, James Fry provided the pencil art to BUNNIE RABBOT: UPGRADE and Patrick "Spaz" Spaziante provided the pencil
art to JULIE-SU: SHADOWS. I provided the finishing inks on every artist's work for this book. Patrick was the sole artist who worked under a "work made for hire" agreement.)

1-155717751 (SONIC SUPER SPECIAL #7 may be stretching Template #2 to the breaking point, but I believe it falls within its boundaries. First off, the cover - I designed it, Patrick Spaziante pencilled the Sonic cast on
the left side as well as well as sketched in the center illustration, Jim Valentino pencilled in the Image cast on the right, while I pencilled in the figures of Particle and Dr. Droid, upon which I inked the
finished art. As for the story, I wrote it all by myself. Jim Valentino provided the pencil art, but I did a lot of redrawing, especially the figures of Particle, Dr. Droid and the take-offs of Mulder and Scully
throughout the story. I also inked the entire story.)

TEMPLATE No. 3

Case 1-155717388

Title of Work: SONIC THE HEDGEHOG in BRAVE NEW WORLD

1) Art: With regards to the cover art, I provided the initial cover layout art, which Patrick "Spaz" Spaziante used as the basis for his pencil art rendering. I in turn then used his pencil art rendering as the basis of my original airbrush painting. With regards to the interior story art, I provided the complete art - both pencils and inks - for the entire story. I even lettered the complete story.
Sounds like there are two authors of the cover artwork, and one author (you) of the interior artwork. This might require two separate applications, if Spaziante (or his employer) is a co-claimant of the cover artwork.

2) Story: Ken Penders - no other co-creator is involved. Then you may be named a sole author and claimant.

3) I never submitted work under a "work made for hire" agreement. That covers the complete story and art not covered by a "work made for hire agreement".

Furthermore, before I proceeded to file for the copyrights to my stories, upon the advice of my attorney, I requested in writing not once, but on three separate occasions I requested a copy of any "work made for hire" documents I may have signed for the company. Since I never signed any such document, I was not surprised when the company did not acknowledge my requests.

Patrick, as stated before, was working under a "work made for hire"
agreement, but the only variation he added to my original cover design
was the addition of Dulcy the Flying Dragon. His contribution is signif.

4) The variations are that I am not credited as layout cover artist, but Patrick Spaziante is. I can point to various issues I've worked on for a number of publishers - including Archie - in which the published credits were not correct one way or another, which can be attributed to any number of factors. My story and art credit in this issue reads "as chronicled by Ken Penders".

5) I am claiming the copyright for the story as the sole claimant.

I am claiming copyright for the layout and final image of the cover art on the basis I created a full color painting. I am claiming copyright for the complete story art.

NOTE: This claim could be used as a template for the following claims:

1-155717158 (SONIC LIVE! Special #1, which I provided both the photos and the airbrush art that create the final cover image. I even designed the LIVE! part of the logo. I wrote the complete story as well as provided the complete art for the story "The Last Game Cartridge Hero". I make no

claims on any of the rest of the contents in this issue.)

1-155633978 ("First Contact" was the only story I contributed to SONIC TRIPLE TROUBLE Special #1. I provided the complete story and pencil art. While Jon D'Agostino was listed as the inker of record, he may as well have been called a "Tracer" because all he did was go over my line work without any embellishment whatsoever. This is the best that could be said of any of his work over any artist.)

1-155718055 (THE LOST ONES #1, in which I provided the entire story and art contents of this book, including the feature pages. Jim Valentino was the publisher of Image Comics at the time, and he will confirm there was no "work made for hire" agreement with regards to the publication of this issue.

Case 1-156421713 - the ENDGAME saga - is a very complex situation that I'm not sure any specific template applies, which is why it is best left for discussion on its own.

Case 1-156422099 - MOBIUS: 25 YEARS LATER is another case left for later.

There are approximately ten cases I didn't assign to any specific template as I believe they need further clarification. I was trying to keep the breakdown as simple as possible for now.

If you have further questions, I can be reached anytime to continue this discussion. I look forward to your reply and learning what happens next. Thank you.

Best,
Ken Penders

310-927-9497

# Exhibit J

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Your copyright applications**
**Date:** September 23, 2011 12:14:06 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

---

-----Original Message-----
From: Briganti, Bill
Sent: Tuesday, April 13, 2010 5:22 PM
To: Ken Penders
Subject: Re: Your copyright applications

If there are no problems, within two weeks of registration, which I will try to do upon receipt.

Ken Penders <kenpenders@kenpenders.com> 4/13/2010 5:05 PM >>>
Mr Briganti,

Thank you very much.

I will be resubmitting the forms of the case listed below with the necessary corrections. I will also be resubmitting every one of my claims until I achieve a final result.

At this time, do you have any idea of the timetable for this point when I will receive the certificates in the mail?

Thank you.

Best,
Ken Penders

On Apr 13, 2010, at 1:27 PM, William R Briganti wrote:

> Case 1-155777355
>
> In space 2h, under your name as author, the information that you have given in the "other" space should be deleted. That this is not a work made for hire is covered by the fact that you did not check the "Made for hire" box in space 2g. The "other" space in 2h is for describing authorship other than what is covered by the checkboxes in 2h.
>
> In space 2h, under Mike Kanterovich's name as author, the information that you have given in the "other" space should be deleted. That he transferred his copyrights to you should be noted in space 3e by checking the appropriate box (presumably "Written agreement"). The "other" space in 2h is for describing authorship other than what is covered by the checkboxes in 2h.
>
> Otherwise, this application looks fine.
>
> Case 1-155633978
>
> In space 2h, under your name as author, the information that you have given in the "other" space should be deleted. That this is not a work made for hire is covered by the fact that you did not check the "Made for hire" box in space 2g. The "other" space in 2h is for describing authorship other than what is covered by the checkboxes in 2h.
>
> Otherwise, this application looks fine.
>
> Case 1-156514331

In space 2h, under your name as author, the information that you have given in the "other" space should be deleted. That this is not a work made for hire is covered by the fact that you did not check the "Made for hire" box in space 2g. The "other" space in 2h is for describing authorship other than what is covered by the checkboxes in 2h.

If Mike Kanterovich "did not contribute in any significant way to the work" then he should not be named as a co-author on the application form. This application should be completed the same way as 1-155633978 above. The application should name as an author those who actually made copyrightable (i.e. significant) contributions to the work, which may or may not agree with who has been credited on the copy.

Otherhwise, this application looks fine.

Case 1-158880001

Same comments as for 1-155777355 above apply to this case as well.

William Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office
202-707-1497

# Exhibit K

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Claim Refiling Confirmation**
**Date:** September 23, 2011 12:14:00 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Tuesday, April 13, 2010 8:09 AM
To: Ken Penders
Subject: Re: Claim Refiling Confirmation

Yews, I've received all your emails.  Response will be coming later today.

Ken Penders <kenpenders@kenpenders.com> 4/12/2010 6:10 PM >>>
Mr Briganti,

I've faxed over four of the cases I've refiled with all the information re-entered according to the guidelines you've made clear to me. Please confirm at your earliest convenience that you have received the paperwork I've submitted. Once you determine whether or not I've correctly resubmitted these four cases, I will then resubmit every case you believe requires amending the original claim. Thank you for your time and consideration as always.

Best,
Ken Penders

310-927-9497

4526 Coldwater Canyon Avenue  #303
Studio City, CA
91604-1066

# Exhibit L

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Claim Refiling Confirmation #2**
**Date:** September 23, 2011 12:14:39 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Wednesday, April 14, 2010 3:27 PM
To: Ken Penders
Subject: Re: Claim Refiling Confirmation #2

Registration of a claim limited to your unpublished text and layouts makes sense for 1-155777549, as well as for any other claim where the published artwork was completed by someone else, and you are able to send us (or have already sent) a copy of the unpublished material.

Ken Penders <KenPenders@kenpenders.com> 4/14/2010 3:14 PM >>>
Mr Briganti,

Mike Kanterovich did not contribute to the actual unpublished text, and I will be resubmitting a claim for the unpublished layouts regarding Case 1-155777549 listing me as the sole author of the work.

This is why I submitted a claim for unpublished layouts on certain works, as I clearly made a similar contribution on those works. During the years, when I thought some of the original material had no value to anyone but fans of the series, I auctioned off several of my page layout scripts during lean economic times.

Among those page layout scripts are the following:

# Exhibit M

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Claim Refiling Confirmation #2**
**Date:** September 23, 2011 12:14:45 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

---

-----Original Message-----
From: Briganti, Bill
Sent: Wednesday, April 14, 2010 4:02 PM
To: Ken Penders
Subject: Re: Claim Refiling Confirmation #2

If you send copies of your unpublished material as email attachments, I can print them out.

Please know that when we encounter potential "adverse claim" situations it is our policy to notify all parties of the potential conflict so that, if possible, any conflicts can be worked out among themselves before we make possibly erroneous registrations. However, unless we receive very compelling reasons to refuse registration, we will ultimately register any and all conflicting claims that have not been withdrawn within 30 days after notification.

Ken Penders <KenPenders@kenpenders.com> 4/14/2010 3:31 PM >>>
Thank you for your direction.

I am supplying copies of whatever material I have. In the case of certain works, all I have as evidence of my contributions beyond the credited work are the JPGS I scanned before I sold the work. Would copies of the images suffice as proof in certain cases?

Ken Penders

On Apr 14, 2010, at 12:26 PM, William R Briganti wrote:

> Registration of a claim limited to your unpublished text and layouts makes sense for 1-155777549, as well as for any other claim where the published artwork was completed by someone else, and you are able to send us (or have already sent) a copy of the unpublished material.
>
> Ken Penders < KenPenders@kenpenders.com > 4/14/2010 3:14 PM >>>
> Mr Briganti,
>
> Mike Kanterovich did not contribute to the actual unpublished text, and I will be resubmitting a claim for the unpublished layouts regarding Case 1-155777549 listing me as the sole author of the work.
>
> This is why I submitted a claim for unpublished layouts on certain works, as I clearly made a similar contribution on those works. During the years, when I thought some of the original material had no value to anyone but fans of the series, I auctioned off several of my page layout scripts during lean economic times.
>
> Among those page layout scripts are the following:

# Exhibit N

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Claim Refiling Confirmation #2**
**Date:** September 23, 2011 12:14:52 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Wednesday, April 14, 2010 5:44 PM
To: Ken Penders
Subject: Re: Claim Refiling Confirmation #2

All of these applications appear to be acceptable, exept for 1-155777549.

I had forgotten that these are eService claims. I can enable you to upload deposit copy material to any of your cases electronically. Let me know which Case's, if any, you want me to enable.

Ken Penders <KenPenders@kenpenders.com> 4/14/2010 8:56 AM >>>
Mr Briganti,

I've faxed over ten of the cases I've refiled with all the information re-entered according to the guidelines you've made clear to me. Please confirm at your earliest convenience that you have received the paperwork I've submitted. Thank you for your time and consideration as always.

Best,
Ken Penders

310-927-9497

4526 Coldwater Canyon Avenue #303
Studio City, CA
91604-1066

The cases I've resubmitted are as follows:

Case 1-155777549 Text and unpublished layouts

Case 1-155777355 Text

Case 1-155633560 Text

Case 1-156461329 Text

Case 1-156461413 Text

Case 1-155633803 Text for 3 stories, art for only 1

Case 1-155633978 Text and art for 1 story only

Case 1-156502336 Text for 3 stories, art for only 1

Case 1-156514331 Text and art for 1 story

Case 1-158880001 Text and art for 2 stories

I will be refiling more cases shortly.

# Exhibit O

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Claim Refiling Confirmation #2**
**Date:** September 23, 2011 12:14:52 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

---

-----Original Message-----
From: Briganti, Bill
Sent: Wednesday, April 14, 2010 5:44 PM
To: Ken Penders
Subject: Re: Claim Refiling Confirmation #2

All of these applications appear to be acceptable, exept for 1-155777549.

I had forgotten that these are eService claims. I can enable you to upload deposit copy material to any of your cases electronically. Let me know which Case's, if any, you want me to enable.

Ken Penders <KenPenders@kenpenders.com> 4/14/2010 8:56 AM >>>
Mr Briganti,

I've faxed over ten of the cases I've refiled with all the information re-entered according to the guidelines you've made clear to me. Please confirm at your earliest convenience that you have received the paperwork I've submitted. Thank you for your time and consideration as always.

Best,
Ken Penders

310-927-9497

4526 Coldwater Canyon Avenue #303
Studio City, CA
91604-1066

The cases I've resubmitted are as follows:

Case 1-155777549 Text and unpublished layouts

Case 1-155777355 Text

Case 1-155633560 Text

Case 1-156461329 Text

Case 1-156461413 Text

Case 1-155633803 Text for 3 stories, art for only 1

Case 1-155633978 Text and art for 1 story only

Case 1-156502336 Text for 3 stories, art for only 1

Case 1-156514331 Text and art for 1 story

Case 1-158880001 Text and art for 2 stories

I will be refiling more cases shortly.

# Exhibit P

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Claim Refiling Confirmation #2**
**Date:** September 23, 2011 12:15:05 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Wednesday, April 14, 2010 6:06 PM
To: Ken Penders
Subject: Re: Claim Refiling Confirmation #2

Ken Penders <KenPenders@kenpenders.com> 4/14/2010 5:07 PM >>>
Mr. Briganti,

Allow me to rephrase my questions to supersede those of the previous e- mail.

WIth regards to co-author claims, as I stated, I addressed those, so let's move on to my concerns.

As Archie Comics licenses the SONIC and KNUCKLES properties from SEGA, can they claim ownership to any of the material where they don't own the properties of the characters or the works created? THEY MAY REGISTER COPYRIGHT CLAIMS IN AUTHORSHIP TO WHICH THEY FEEL THEY ARE ENTITLED. WE DO NOT SETTLE COPYRIGHT DISPUTES OR CHOOSE BETWEEN APPLICANTS.

Given that they issued me Form 1099s for each and every year I supplied them with material, I did not qualify as an employee on every tax form I've filed diligently with the IRS. Neither did I receive any financial renumeration from SEGA as either an employee or a contractor.

As I've never signed a work-for-hire document with them and/or SEGA, likewise, while acknowledging the ownership of certain principal characters and concepts belong to SEGA, that still wouldn't entitle them to ownership of my stories free to do with as they will, does it?
THESE ARE LEGAL QUESTIONS WE CANNOT ANSWER.

Any clarification on this matter is appreciated. Thank you.

THE COPYRIGHT OFFICE IS AN OFFICE OF RECORD. WE REGISTER CLAIMS TO COPYRIGHT WHEN THE APPLICATION AND SUPPORTING MATERIALS ARE COMPLETE AND APPEAR TO BE ACCURATE. WE DO NOT SETTLE DISPUTES BETWEEN ADVERSE PARTIES OR TAKE SIDES IN DISPUTES. WHEN WE RECEIVE CONFLICTING CLAIMS OR ENCOUNTER SITUATIONS THAT APPEAR TO BE ADVERSE, OUR POLICY IS SIMPLY TO INFORM ALL PARTIES CONCERNED AND GIVE THEM AN OPPORTUNITY TO RESPOND WITHIN A LIMITED PERIOD OF TIME. MOST SUCH CLAIMS ARE REGISTERED, UNLESS A PARTY CHOOSES TO WITHDRAWN THE CLAIM OR IF THERE IS VERY COMPELLING EVIDENCE THAT WOULD PURSUADE US NOT TO REGISTER, WHICH IS HIGHLY UNLIKELY.

Best,
Ken Penders

On Apr 14, 2010, at 1:01 PM, William R Briganti wrote:

> If you send copies of your unpublished material as email attachments,
> I can print them out.
>
> Please know that when we encounter potential "adverse claim"
> situations it is our policy to notify all parties of the potential
> conflict so that, if possible, any conflicts can be worked out among
> themselves before we make possibly erroneous registrations.
> However, unless we receive very compelling reasons to refuse
> registration, we will ultimately register any and all conflicting
> claims that have not been withdrawn within 30 days after notification.
>
> Ken Penders < KenPenders@kenpenders.com > 4/14/2010 3:31 PM >>>
> Thank you for your direction.
>
> I am supplying copies of whatever material I have. In the case of

> certain works, all I have as evidence of my contributions beyond the
> credited work are the JPGS I scanned before I sold the work. Would
> copies of the images suffice as proof in certain cases?
>
> Ken Penders
>
> On Apr 14, 2010, at 12:26 PM, William R Briganti wrote:
>
>> Registration of a claim limited to your unpublished text and layouts
>> makes sense for 1-155777549, as well as for any other claim where the
>> published artwork was completed by someone else, and you are able to
>> send us (or have already sent) a copy of the unpublished material.
>>
>> ||| Ken Penders < KenPenders@kenpenders.com > 4/14/2010 3:14 PM >>>
>> Mr Briganti,
>>
>> Mike Kanterovich did not contribute to the actual unpublished text,
>> and I will be resubmitting a claim for the unpublished layouts
>> regarding Case 1-155777549 listing me as the sole author of the work.
>>
>> This is why I submitted a claim for unpublished layouts on certain
>> works, as I clearly made a similar contribution on those works.
>> During
>> the years, when I thought some of the original material had no value
>> to anyone but fans of the series, I auctioned off several of my page
>> layout scripts during lean economic times.
>>
>> Among those page layout scripts are the following:

# Exhibit Q

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Claim Refiling Confirmation #2**
**Date:** September 23, 2011 12:14:14 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Wednesday, April 14, 2010 10:08 AM
To: Ken Penders
Subject: Re: Claim Refiling Confirmation #2

Yes, I received your 49-page fax this morning.

Ken Penders <KenPenders@kenpenders.com> 4/14/2010 8:56 AM >>>
Mr Briganti,

I've faxed over ten of the cases I've refiled with all the information re-entered according to the guidelines you've made clear to me. Please confirm at your earliest convenience that you have received the paperwork I've submitted. Thank you for your time and consideration as always.

Best,
Ken Penders

310-927-9497

4526 Coldwater Canyon Avenue #303
Studio City, CA
91604-1066

The cases I've resubmitted are as follows:

Case 1-155777549 Text and unpublished layouts

Case 1-155777355 Text

Case 1-155633560 Text

Case 1-156461329 Text

Case 1-156461413 Text

Case 1-155633803 Text for 3 stories, art for only 1

Case 1-155633978 Text and art for 1 story only

Case 1-156502336 Text for 3 stories, art for only 1

Case 1-156514331 Text and art for 1 story

Case 1-158880001 Text and art for 2 stories

I will be refiling more cases shortly.

# Exhibit R

**From:** "Briganti, Bill" <wbri@loc.gov>
**Date:** September 23, 2011 12:15:17 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>
**Subject:** **FW: Re-filing Claims**

-----Original Message-----
From: Briganti, Bill
Sent: Tuesday, April 20, 2010 4:01 PM
To: Ken Penders
Subject: Re: Re-filing Claims

Ken Penders <KenPenders@kenpenders.com> 4/20/2010 12:01 PM >>>
Thank you.

For clarification's sake, the ones I sent passed, correct? The only reason I ask is I want to make certain I submitted them correctly.

I HAVE NOT REVIEWED ALL THE MATERIAL YOU'VE FAXED YET, BUT WILL GET BACK TO YOU ON THIS TOMORROW.

Also, again, for clarification's sake, let's take Case 1-156422099, which was essentially 1 story published over 14 issues. There are some questions I have concerning the re-filing of this case:

1) Since I already submitted 2 copies each of the published material, I believe I don't have to resubmit this material again with the re- filings. Is this correct?

YES

2) Would I re-file the first issue alone with the initial case number and fax that to you, then file for the additional 13 separate claims online?

YES

3) If I am correct with regards to Question 1, when filing online, how do I account for the material I've already submitted? Do I simply send the case forms along with the materials from any additional new cases and note that the material has already been submitted and accepted?

IF YOU NEED TO SEND ADDITIONAL DEPOSIT COPIES, THEN YOU CAN EITHER SEND THEM BY MAIL OR YOU CAN UPLOAD the COPIES IN THE CASE OF UNPUBLISHED MATERIAL.

IF YOU'RE SUBMITTING A NEW CLAIM AND WE ALREADY HAVE THE COPIES, PLEASE TELL US THE ORIGINAL CASE# SO WE CAN BE SURE TO USE THE

CORRECT COPIES FOR THE NEW CLAIM.

4) Is there a specific form to handle 1 story over multiple issues, and if so, which ones?

NO

Lastly, as I will be submitting additional new cases, do I address the material directly to you? And how long will this prolong my receipt of the certificates? I'm working under a specific timeframe and I need to have some idea how this process works. If I know I will be receiving any certificates, that allows me to make informed decisions on my end. Any information provided is appreciated as always. Thank you.

IF USING E-SERVICE, EMAIL ME THE CASE #'S AND I WILL HANDLE THEM.

Best,
Ken Penders

On Apr 20, 2010, at 4:30 AM, William R Briganti wrote:

Yes, you can start refiling. Each separately published work requires its own application form, so a single story continued in several issues would require an application for each issue.

If you are sending in any entirely new (rather than resubmitted) claims, you should consider using our on-line registration system which costs only $35. This is especially a good idea if you are registering claims in your unpublished materials because you can upload the unpublished copies electronically (unlike published comic books, where we require the deposit of two copies of the comic book).

We will need to hold off on mailing the registration certificates until all have been submitted and reviewed.

Ken Penders < KenPenders@kenpenders.com > 4/20/2010 3:31 AM >>>
Mr. Briganti,

I'm inquiring to see if I should resume re-filing my claims, and if so, how to go about re-filing the claims where I list one story published over the course of several issues.

Also, once the claims are approved, would the certificates be sent all at once or in groups as they're approved? Thank you.

Best,

Ken Penders

# Exhibit S

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Re-filing Claims**
**Date:** September 23, 2011 12:15:11 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Tuesday, April 20, 2010 7:31 AM
To: Ken Penders
Subject: Re: Re-filing Claims

Yes, you can start refiling. Each separately published work requires its own application form, so a single story continued in several issues would require an application for each issue.

If you are sending in any entirely new (rather than resubmitted) claims, you should consider using our on-line registration system which costs only $35. This is especially a good idea if you are registering claims in your unpublished materials because you can upload the unpublished copies electronically (unlike published comic books, where we require the deposit of two copies of the comic book).

We will need to hold off on mailing the registration certificates until all have been submitted and reviewed.

Ken Penders <KenPenders@kenpenders.com> 4/20/2010 3:31 AM >>>
Mr. Briganti,

I'm inquiring to see if I should resume re-filing my claims, and if so, how to go about re-filing the claims where I list one story published over the course of several issues.

Also, once the claims are approved, would the certificates be sent all at once or in groups as they're approved? Thank you.

Best,
Ken Penders

# Exhibit T

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Re: Claim Refiling Confirmation #2**
**Date:** September 23, 2011 12:15:44 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Wednesday, April 21, 2010 2:37 PM
To: KenPenders@kenpenders.com
Subject: Fwd: Re: Claim Refiling Confirmation #2

FYI, the revised application you submitted on 4/15/2010 for 1-155777549 is acceptable.

Is it okay to send a fax to 818-358-2345?

William R Briganti 4/14/2010 12:32 PM >>>
Case 1-155777549 Text and unpublished layouts

We have a problem here. The application you faxed contains publication information including a date of first publication and information about the published serial issue. Published and unpublished material cannot be claimed on the same application form. If you want to register the text and artwork of your unpublished layouts, this information must be deleted from the application, and only the unpublished material can serve as the deposit copies for this claim. It would also be unnecessary to complete the "limitation of claim" part of the application, since you presumably created all the text and artwork appearing in the unpublished material. Plus, did Mike Kanterovich contribute to the unpublished text? If not, then he should not be named as a co-author.

Because the published version of this work is clearly derived from your unpublished text and layouts, it is likely in your best interest to register a claim in your unpublished text and layouts at this time, since there appears to be little question that you created this material in it's entirety, and that you presumably own the copyright in it. Registering a claim in the published version raises a host of complicated issues that can be dealt with in a second registration, if you and your attorney deem it necessary to register a claim in the published version.

I have made an initial review of the applications you faxed for 1-155777355 and 1-158880001 , and they appear to be acceptable.

I recommend that you not complete and submit any more application until I've had a chance to review the ones already submitted.

William Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office
202-707-1497

Ken Penders < KenPenders@kenpenders.com > 4/14/2010 8:56 AM >>>
Mr Briganti,

I've faxed over ten of the cases I've refiled with all the information re-entered according to the guidelines you've made clear to me. Please confirm at your earliest convenience that you have received the paperwork I've submitted. Thank you for your time and consideration as always.

Best,
Ken Penders

310-927-9497

4526 Coldwater Canyon Avenue #303
Studio City, CA
91604-1066

The cases I've resubmitted are as follows:

Case 1-155777549 Text and unpublished layouts

Case 1-155777355 Text

Case 1-155633560 Text

Case 1-156461329 Text

Case 1-156461413 Text

Case 1-155633803 Text for 3 stories, art for only 1

Case 1-155633978 Text and art for 1 story only

Case 1-156502336 Text for 3 stories, art for only 1

Case 1-156514331 Text and art for 1 story

Case 1-158880001 Text and art for 2 stories

I will be refiling more cases shortly.

# Exhibit U

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Emailing: 615048230**
**Date:** September 23, 2011 12:15:38 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Wednesday, April 21, 2010 11:49 AM
To: Butts, Rashelle
Subject: Re: Emailing: 615048230

Can you just delete the re line?

Rashelle Butts 4/21/2010 11:47 AM >>>
Hey Bill - what's the title of the work (I need it for the RE: line)?

William R Briganti 04/21/10 11:27 AM >>>
Shelly:

Please type two letters. One should be addressed to

Archie Comics Publications, Inc.
Attn: Legal Dept.
325 Fayette Ave.
Mamaroneck, NY 10543-2306

And the other should be addressed to

SEGA of America, Inc.
Attn: Legal Dept.
350 Rhode Island Ave.
Suite 400
San Francisco, CA 94103

On the first letter, under the enclosure, cc the second address. On the second letter, cc the first address.

On both letters, also cc

Ken Penders
4526 Coldwater Canyon Avenue #303
Studio City, CA 91604-1066

Thanks!

# Exhibit V

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Emailing: 615048230**
**Date:** September 23, 2011 12:15:25 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>
1 Attachment, 4.6 KB

-----Original Message-----
From: Briganti, Bill
Sent: Wednesday, April 21, 2010 11:27 AM
To: Butts, Rashelle
Subject: Emailing: 615048230

Shelly:

Please type two letters. One should be addressed to

Archie Comics Publications, Inc.
Attn: Legal Dept.
325 Fayette Ave.
Mamaroneck, NY 10543-2306

And the other should be addressed to

SEGA of America, Inc.
Attn: Legal Dept.
350 Rhode Island Ave.
Suite 400
San Francisco, CA 94103

On the first letter, under the enclosure, cc the second address. On the second letter, cc the first address.

On both letters, also cc

Ken Penders
4526 Coldwater Canyon Avenue #303
Studio City, CA 91604-1066

Thanks!

615048230.wpd (4.6 KB)

To Whom it May Concern:

This letter is to inform you that the Copyright Office has received, and continues to receive, a number of copyright applications from comic book artist and writer Ken Penders. He is claiming copyright in the contributions he made to comic books published by Archie Comic Publications, Inc., many or perhaps all of which involve SEGA comic book characters.

We do not know if there is an adverse situation between your companies and Mr. Penders, but please note that the Copyright Office is an office of record and does not have the authority to adjudicate adverse or conflicting claims submitted for registration. Each claim is examined to determine whether it complies with statutory and regulatory requirements; if it does, it is registered. Where conflicting claims are received, the Office may put both claims on record if each is acceptable on its own merits. It is the responsibility of the parties involved in a dispute to pursue their rights in their works.

This letter is for your information only; no reply is necessary. However, if you believe that your company has made any copyright registrations that should not have been made, please inform us. If the claim was not authorized or does not comport with the requirements for registration, we will cancel your registration if the request to cancel is made by, or on behalf of, the copyright claimant named in the registration. Or, if the registration contains an error which does not require cancellation under the regulation, please send a corrective Form CA and fee to correct it (see Circular 8 on our website at www.copyright.gov).

Should you reply, please return the enclosed Reply Sheet referring ro our Control Number 61-504-8230.

Sincerely,

William Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office

Enclosure:
Reply Sheet

# Exhibit W

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Your appls. faxed on 4/21/10 at 2:37**
**Date:** September 23, 2011 12:15:56 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

---

-----Original Message-----
From: Briganti, Bill
Sent: Thursday, April 22, 2010 12:53 PM
To: Ken Penders
Subject: Re: Your appls. faxed on 4/21/10 at 2:37

For the published work you can name yourself as "Co-author of cover artwork" in the "Other" line of section 2h. In section 4a you can describe the "material excluded" on the "Other" line as "Cover artwork contributed by other artist(s)" or "Cover artwork contributed by [enter name of artist(s) here]."

Ken Penders <KenPenders@kenpenders.com> 4/22/2010 12:32 PM >>>
I will remove the unpublished cover design from the claim. I submitted those as proof of co-authorship of the cover art and characters I created depicted within. Should I have claimed co-authorship of the actual cover art instead and simply submitted those pieces as evidence of why I'm entitled to claim co-authorship?

Ken

On Apr 22, 2010, at 6:17 AM, William R Briganti wrote:

> 1-155432561
>
> We have a problem here. The application gives a publication date but you indicate that "I am submitting an unpublished character design." If you want to register your published text, then the claim in "artwork" and character design" must be removed. The published comic book would serve as the deposit copy.
>
> If you want to register your unpublished character drawing, then the claim in text, the issue volume etc., and the publication date and country must be removed. AND, the wording "character design" is unacceptable. For characters you can register your drawings and nothing more. Please read the attached circular. The unpublished drawing would serve as the deposit copy.
>
> 1-155432673and 1-155432727
>
> Same problem, except this time the applications refer to an "unpublished cover design." If you want to register your published text, then the claim in "artwork" and "unpublished cover design" must be removed. The published comic book would serve as the deposit copy.
>
> If you want to register your unpublished cover design, then the claim in text, the issue volume etc. info, and the publication date and country must be removed. The unpublished drawing would serve as the deposit copy.
>
> <circ44.pdf>

# Exhibit X

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: New Claim Filing Error**
**Date:** September 23, 2011 12:16:05 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Monday, April 26, 2010 5:07 PM
To: Ken Penders
Subject: Re: New Claim Filing Error

Yes, use one of the other case number for another claim.  Just make sure everything is clearly explained.

Ken Penders <KenPenders@kenpenders.com> 4/26/2010 4:32 PM >>>
Mr. Briganti,

On April 23, I filed Case #1-384535371. On April 26, I filed Case 1-385744233. Both claims concern the same material I'm filing a copyright for that was published in KNUCKLES THE ECHIDNA #18, November
1998 issue.

This material was initially filed as part of Case # 1-158880161, wherein I filed two issues within the same claim.

This is a mistake on my part that I'd like to correct. Is it possible to file material from another issue that I'm seeking to copyright under the second case number? Any help in this matter is appreciated.
Thank you.

Best,
Ken Penders

310-927-9497

# Exhibit Y

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Checklist**
**Date:** September 23, 2011 12:16:13 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Wednesday, April 28, 2010 5:34 PM
To: Ken Penders
Subject: Re: Checklist

These cases are all fine, except for 1-155718055. There are incomplete statements on lines 1j and 2h of the application for that work.

Case # 1-155633560

Case # 1-156461329

Case # 1-156461413

Case # 1-155633803

Case # 1-156502336

Case # 1-155805060

Case # 1-155718055

Case # 1-155717158

Case # 1-156514406

Case # 1-156421571

Case # 1-155777355

Case # 1-155633978

Case # 1-156514331

Case # 1-158880001

# Exhibit Z

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Clarification of Filing Dates**
**Date:** September 23, 2011 12:16:24 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Thursday, April 29, 2010 4:12 PM
To: Ken Penders
Subject: Re: Clarification of Filing Dates

The effective date of registration (EDR) is the date we have three things: (1) a completed application form, (2) a physical copy of the work being claimed, or an uploaded copy, and (3) a filing fee. Subsequent changes or amendments to the application do not change the EDR. Changes to the deposit copies will change the EDR to the date the changed or additional material is received.

For a claim that needs to be split into more than one claim, which is the case for some of your claims, only one claim will receive the original EDR (whichever claim you specifiy). The EDRs for the additional claims (the split-offs) will be determined when we receive an additional application and filing fee (and deposit copy if we don't already have it).

Ken Penders <KenPenders@kenpenders.com> 4/28/2010 7:08 PM >>>
Mr Briganti,

My lawyer has asked the following question, which I am passing along to you:

Was there confirmation from Mr. Briganti that the applications (as
revised) retained the original filing dates (since the registration date assigned is the date on which the applications were received by the Copyright Office)?

Thanks.

Best,
Ken Penders

# Exhibit AA

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Checklist**
**Date:** September 23, 2011 12:16:29 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Thursday, April 29, 2010 5:26 PM
To: Ken Penders
Subject: Re: Checklist

For the following, I have deposit copies for all but 1-384535371. All the appls. are fine.

The following are claims recently filed in which the deposit copies are already in your possession:

Case 1-385892793 Text and uncredited art SONIC'S FRIENDLY NEMESIS KNUCKLES #3 Copies originally submitted with case 1-156514363

Case 1-385892712 Text and uncredited art SONIC'S FRIENDLY NEMESIS KNUCKLES #2 Copies originally submitted with case 1-156514363

Case 1-385892681 Text and art KNUCKLES THE ECHIDNA #32 Copies originally submitted with case 1-158809031

Case 1-385892441 Text and art KNUCKLES THE ECHIDNA #31 Copies originally submitted with case 1-158809031

Case 1-385750682 Text and art KNUCKLES THE ECHIDNA #28 Copies originally submitted with case 1-158880072

Case 1-385750651 Text and art KNUCKLES THE ECHIDNA #27 Copies originally submitted with case 1-158880072

Case 1-385750621 Text and art KNUCKLES THE ECHIDNA #24 Copies originally submitted with case 1-158809154

Case 1-385750591 Text and art KNUCKLES THE ECHIDNA #23 Copies originally submitted with case 1-158809154

Case 1-385750401 Text and art KNUCKLES THE ECHIDNA #21 Copies originally submitted with case 1-158787911

Case 1-385750311 Text and art KNUCKLES THE ECHIDNA #20 Copies originally submitted with case 1-158787911

Case 1-385744233 Text and art KNUCKLES THE ECHIDNA #18 Copies originally submitted with case 1-158880161

Case 1-385744201 Text and art KNUCKLES THE ECHIDNA #15 Copies originally submitted with case 1-159959301

Case 1-384734881 Text and art KNUCKLES THE ECHIDNA #14 Copies originally submitted with case 1-159959301

Case 1-384535371 Text / co-authorship of cover art KNUCKLES THE ECHIDNA #18 Copies originally submitted with case 1-158880161

Case 1-383727311 Text and art MOBIUS: 25 YEARS LATER - Father's Day Copies originally submitted with case 1-156422099 (SONIC #143)

The remaining cases filed so far require deposit copies, which will be in the mail by Monday, May 3. In the meantime, I will continue to file further claims on my work.

Once the original 52 cases have been completed and accepted, will certificates be forthcoming soon after that? Thanks.

Best,
Ken Penders

# Exhibit BB

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Fwd: Copyright claim info for you**
**Date:** September 23, 2011 12:16:46 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Wednesday, May 05, 2010 3:42 PM
To: Ken Penders
Subject: Re: Fwd: Copyright claim info for you

You would need to file a separate claim in the artwork. Since you are the only author of the artwork, Scott Fulop could not be named as a co-claimant unless you transferred co-ownership of your copyright to him.

As for the text, since you transferred your copyright in the text to Fulop, you both would be named as authors on the application form, and only Fulop would be named as the claimant, with a transfer statement.

Ken Penders <KenPenders@kenpenders.com> 5/5/2010 1:41 PM >>>
Mr Briganti,

I'm forwarding this e-mail from my colleague Scott Fulop, as he has also filed claims of a related nature to mine.

The only question we had regarding the filing of his claim for the KNUCKLES' QUEST story in SONIC THE HEDGEHOG #45 was the listing of my claim for the artwork of that story, as I created it. I wasn't sure if I should file a separate claim or if he could list me as the creator of just the art. The reason for the uncertainty is that I'm listed as a co-writer on the story. Since Scott played the major driving creative driving force on most of the KNUCKLES' QUEST storyline, I transferred my rights to him for the segments published in SONIC THE HEDGEHOG #42 and 45.

If I need to file a separate claim for the art in question, please let me know. Thank you.

Best,
Ken Penders

310-927-9497

Begin forwarded message:

> From: YashaDog@aol.com
> Date: April 30, 2010 4:34:40 PM PDT
> To: KenPenders@kenpenders.com
> Subject: Copyright claim info for you
>
> Hi Ken,
>
> Below my signature, please find all the case numbers for my submitted claims.
>
> Please note: I only use this email address for friends and family. For business purposes, including the US Copyright office, I use SFulop@aol.com .
>
> Please let me know if you need anything else.
>
> Thanks!
>
> Best,
>
> Scott
>
> Case #: 1-385699483

Case #: 1-384754849

Case #: 1-384734928

Case #: 1-384015309

Case #: 1-384015139

Case #: 1-384014971

Case #: 1-383843661

Case #: 1-383667381

# Exhibit CC

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Copyright claim info for you**
**Date:** September 23, 2011 12:16:52 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Wednesday, May 05, 2010 3:55 PM
To: Ken Penders
Subject: Re: Copyright claim info for you

We can't have deposit copies from different applicants sharing deposit copies. However, if he sends actual copies and you send in photocopies, that would be acceptable so long as somebody sends us the originals.

Ken Penders <KenPenders@kenpenders.com> 5/5/2010 3:50 PM >>>
Thank you. That will be my next course of action. The only remaining question is if Scott has filed deposit copies of the published work, would I need to do so as well, or simply note that you have the deposit copies on hand when his arrives. Thanks.

Ken Penders

On May 5, 2010, at 12:41 PM, William R Briganti wrote:

> You would need to file a separate claim in the artwork. Since you are the only author of the artwork, Scott Fulop could not be named as a co-claimant unless you transferred co-ownership of your copyright to him.
>
> As for the text, since you transferred your copyright in the text to Fulop, you both would be named as authors on the application form, and only Fulop would be named as the claimant, with a transfer statement.
>
> Ken Penders < KenPenders@kenpenders.com > 5/5/2010 1:41 PM >>>
> Mr Briganti,
>
> I'm forwarding this e-mail from my colleague Scott Fulop, as he has also filed claims of a related nature to mine.
>
> The only question we had regarding the filing of his claim for the KNUCKLES' QUEST story in SONIC THE HEDGEHOG #45 was the listing of my claim for the artwork of that story, as I created it. I wasn't sure if I should file a separate claim or if he could list me as the creator of just the art. The reason for the uncertainty is that I'm listed as a co-writer on the story. Since Scott played the major driving creative driving force on most of the KNUCKLES' QUEST storyline, I transferred my rights to him for the segments published in SONIC THE HEDGEHOG #42 and 45.
>
> If I need to file a separate claim for the art in question, please let me know. Thank you.
>
> Best,
> Ken Penders
>
> 310-927-9497

Begin forwarded message:

From: YashaDog@aol.com
Date: April 30, 2010 4:34:40 PM PDT
To: KenPenders@kenpenders.com
Subject: Copyright claim info for you

Hi Ken,

Below my signature, please find all the case numbers for my submitted claims.

Please note: I only use this email address for friends and family.
For business purposes, including the US Copyright office, I use SFulop@aol.com .

Please let me know if you need anything else.

Thanks!

Best,

Scott

Case #: 1-385699483

Case #: 1-384754849

Case #: 1-384734928

Case #: 1-384015309

Case #: 1-384015139

Case #: 1-384014971

Case #: 1-383843661

Case #: 1-383667381

# Exhibit DD

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Inquiry**
**Date:** September 23, 2011 12:16:38 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Wednesday, May 05, 2010 8:47 AM
To: Ken Penders
Subject: Re: Inquiry

I've not received any of these hardcopies yet. Did you indicate clearly that they should be delivered to me? If they went into the regular workflow, I can still locate them but it will take a little longer.

Ken Penders <KenPenders@kenpenders.com> 5/4/2010 3:59 PM >>>
Mr. Briganti,

At this time, I now count 85 claims you've deemed acceptable. Have you had a chance to review the following claims recently filed:

Case 1-383321511 Text and art KNUCKLES THE ECHIDNA "WHAT COMES
New case, copies have been mailed

Case 1-383321541 Text and art KNUCKLES THE ECHIDNA "WELCOME TO
New case, copies have been mailed

1-382455311 TALES OF THE FREEDOM FIGHTERS ... SONIC THE HEDGEHOG
#59 New case, copies have been mailed

1-381890671 SONIC THE HEDGEHOG "UNFIN.. SONIC THE HEDGEHOG
#53 New case, copies have been mailed

1-381275424 "...AND ONE SHALL SAVE HIM!" SONIC THE HEDGEHOG #41
New case, copies have been mailed

1-381275291 SONIC THE HEDGEHOG "BEDTI... SONIC THE HEDGEHOG
#38 New case, copies have been mailed

1-379814763 SONIC THE HEDGEHOG #28 Cover T... SONIC THE HEDGEHOG
#28 New case, copies have been mailed

1-379814731 SONIC THE HEDGEHOG #27 Cover T... SONIC THE HEDGEHOG
#27 New case, copies have been mailed

1-379590700 SONIC THE HEDGEHOG THE RETURN ... SONIC THE HEDGEHOG
#22 New case, copies have been mailed

1-379590668 SONIC THE HEDGEHOG 3 PHASES OF... SONIC THE HEDGEHOG
#21 New case, copies have been mailed

1-379590565 A PRINCESS SALLY ADVENTURE &qu... SONIC THE HEDGEHOG
#20 New case, copies have been mailed

1-379590531 SONIC THE HEDGEHOG #16 Cover T... SONIC THE HEDGEHOG
#16 New case, copies have been mailed

1-379590500 SONIC THE HEDGEHOG "WHAT&... SONIC THE HEDGEHOG
#15 New case, copies have been mailed

1-379590468 SONIC THE HEDGEHOG in "DO... SONIC THE HEDGEHOG
#14 New case, copies have been mailed

I've also mailed an additional 2 copies of KNUCKLES THE ECHIDNA #18 to file with the claim I faxed to you.

At this time, what happens next in the process and when is a realistic timetable to expect the certificates for my claims? Thank you.

Best,
Ken Penders

310-927-9497

# Exhibit EE

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Update**
**Date:** September 23, 2011 12:16:59 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

---

**From:** Briganti, Bill
**Sent:** Monday, June 07, 2010 11:58 AM
**To:** 'Ken Penders'
**Subject:** RE: Update

A large number of your claims have already been registered, and the certificates should begin to arrive within a week or two. I am still working on the more recently-submitted claims.

---

**From:** Ken Penders [mailto:kenpenders@kenpenders.com]
**Sent:** Monday, June 07, 2010 11:35 AM
**To:** Briganti, Bill
**Subject:** Re: Update

Mr Briganti,

After waiting all this time - since January of 2009 - I have to know: have my claims been filed and when should I expect to receive them?

My main concern is that my significant other and I bought a house and expect to close on June 24 and begin moving in the following day. I'm hoping to receive the certificates here at my current address 4526 Coldwater Canyon Avenue, #303, Studio City, CA, 91604-1066 before that happens.

So I'm hoping you can make my day. Thank you.

Best,
Ken Penders

On May 21, 2010, at 11:14 AM, Briganti, Bill wrote:

Ken,

I apologize for not getting back to you sooner. All of your filings appear to be in order. We expect to register all of your claims at once, on or about June 1. The regsitration certificates should be mailed that same week. We have not heard anything back from Sega of America, Inc. or Archie Comics Publication, Inc. regarding the letter we placed in the mail on April 21 (copies were faxed to you that same day). We generally wait about 30 days for a response to such letters before proceeding with registration.

Scinerely,
William Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office

202-707-1497

# Exhibit FF

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Thank You**
**Date:** September 23, 2011 12:17:05 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Monday, June 14, 2010 10:11 AM
To: Ashley, John
Subject: FW: Thank You

fyi...

-----Original Message-----
From: Ken Penders [mailto:kenpenders@kenpenders.com]
Sent: Monday, June 14, 2010 3:52 AM
To: Briganti, Bill
Subject: Thank You

Mr Briganti,

This has been a long, hard road for me to travel, but after seeing my listings on the Copyright website and receiving the first of my certificates, I can't express my gratitude enough for all your efforts. I could never have gotten through this without your guidance and expertise.

On the advice of my attorney, I will be filing for the remainder of my copyright claims, which number about 30. I am perfectly content to wait for these to be processed based on the facts of my already established claims and the filing date of the new claims. However, I will still direct them to your attention.

Like the previous 136 claims, they were all worked on under the same conditions. I am quite certain at least 3 cases will raise eyebrows, but I can assure you that I never worked on any of these works on a work-for-hire basis.

Again, I can't thank you enough and I wish you all the best. Thanks and take care.

Ken Penders

# Exhibit GG

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Update - Possible Missing Certificate**
**Date:** September 23, 2011 12:17:19 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Tuesday, June 22, 2010 8:36 AM
To: Pearson, Dennis
Subject: FW: Update - Possible Missing Certificate

Dennis - Can you mail another certificate for the following... Thanks! - Bill

-----Original Message-----
From: Ken Penders [mailto:KenPenders@kenpenders.com]
Sent: Tuesday, June 22, 2010 2:45 AM
To: Briganti, Bill
Subject: Update - Possible Missing Certificate

Mr Briganti,

While I know I have 55 claims awaiting final processing, I wanted to call your attention to a certificate I had not yet received but I believe has been processed, as the claim clearly shows on the Copyright Office website.

Here is the reference no:

Registration Number / Date: VA0001716940 / 2009-02-18

As I have received all the certificates to everything else currently on display on the website, this was one I want to make certain doesn't fall through the cracks. Any information you may have regarding the matter is appreciated. Thank you.

Best,
Ken Penders

# Exhibit HH

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Update - Possible Missing Certificate**
**Date:** September 23, 2011 12:17:12 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

-----Original Message-----
From: Briganti, Bill
Sent: Tuesday, June 22, 2010 8:36 AM
To: 'Ken Penders'
Subject: RE: Update - Possible Missing Certificate

I'll check into it.

-----Original Message-----
From: Ken Penders [mailto:KenPenders@kenpenders.com]
Sent: Tuesday, June 22, 2010 2:45 AM
To: Briganti, Bill
Subject: Update - Possible Missing Certificate

Mr Briganti,

While I know I have 55 claims awaiting final processing, I wanted to call your attention to a certificate I had not yet received but I believe has been processed, as the claim clearly shows on the Copyright Office website.

Here is the reference no:

Registration Number / Date: VA0001716940 / 2009-02-18

As I have received all the certificates to everything else currently on display on the website, this was one I want to make certain doesn't fall through the cracks. Any information you may have regarding the matter is appreciated. Thank you.

Best,
Ken Penders

# Exhibit II

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Scott Fulop/Ken Penders/Sonic Hedgehog Applications**
**Date:** September 23, 2011 12:17:32 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

---

**From:** Briganti, Bill
**Sent:** Friday, July 02, 2010 9:18 AM
**To:** 'SFulop@aol.com'
**Cc:** Thompson, Shawn
**Subject:** RE: Scott Fulop/Ken Penders/Sonic Hedgehog Applications
**Importance:** High

Mr. Fulop:

I am forwarding your e-mail to Shawn Thompson, who will respond.

Soincerely,
William Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office

---

**From:** SFulop@aol.com [mailto:SFulop@aol.com]
**Sent:** Monday, June 28, 2010 4:28 PM
**To:** Briganti, Bill
**Subject:** Scott Fulop/Ken Penders/Sonic Hedgehog Applications

Dear Mr. Briganti:

Re: Case #s 1-385699483; 1-384754849; 1-384734928; 1-384015309; 1-384015139;
1-384014971; 1-383843661; 1-383667381

Although I have yet to have the pleasure of communicating with you, I know you have been in contact with my colleague, Ken Penders, in relation to his applications for claims regarding various Sonic The Hedgehog comic book stories and art.

I am contacting you today in relation to my own claims, after receipt of a letter from one of your registration specialists, Shawn Thompson. It is my hope that you may provide some direction before I respond to his letter and submit additional materials.

Mister Thompson states:

"On your applications you have listed yourself and in some case Ken Penders as author of the "text" and/or artwork. On the applications where you name yourself as the author of the text, your name does not appear in the credits nor is there a copyright notice in your name. Please explain in detail how you are the author of these works. Second, the deposit that accompanied these applications are photocopies rather than copies of the work. We require the deposit of actual copies of works of this kind."

On every application filed for stories published in Sonic The Hedgehog and related comic books, I indicated that my legal name is Scott Drew Fulop, but that I wrote under the pseudonym of "Kent Taylor." The story "Monsters are the

Rage" published in Teenage Mutant Ninja Turtles Special is an exception, and clearly lists my legal name in the credits.

I am already in your system listed as Scott Fulop using the pseudonym of "Kent Taylor" (registration #s VA0001720516; VA0001719845; VA0001720518; VA0001716908). Is it necessary for me to also submit a notarized letter or other from Ken Penders stating I worked for him as a subcontractor using that pseudonym?

Taking into account that I only possess my own file copies and the printed comic books are collectors/investors items, difficult to obtain in today's market, as did Ken Penders and accepted by your office, I submitted photocopies of my file copies. Is it necessary to submit "two copies" of the "best edition" as Mister Thompson requests, or would at least one copy and the photocopies you have suffice?

Lastly, in terms of my two modified claims for 2D artwork, I have my original artwork in "pencil art" format, but do not find it, of course, in good conscience to deliver originals. In this instance, would not my submitted photocopies suffice in addition to copies of the printed work?

Thank you in advance for your time, courtesy and attention to this matter. I look forward to your response.

Very truly yours,

**Scott D. Fulop**

**Mobile: 914-584-4357**
**Studio: 914-315-6757**
**E-mail:** SFulop@aol.com
http://www.linkedin.com/in/scottfulop
WEBSITE UNDER CONSTRUCTION

# Exhibit JJ

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Scott Fulop/Ken Penders/Sonic Hedgehog Applications**
**Date:** September 23, 2011 12:17:32 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

---

**From:** Briganti, Bill
**Sent:** Friday, July 02, 2010 9:18 AM
**To:** 'SFulop@aol.com'
**Cc:** Thompson, Shawn
**Subject:** RE: Scott Fulop/Ken Penders/Sonic Hedgehog Applications
**Importance:** High

Mr. Fulop:

I am forwarding your e-mail to Shawn Thompson, who will respond.

Soincerely,
William Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office

---

**From:** SFulop@aol.com [mailto:SFulop@aol.com]
**Sent:** Monday, June 28, 2010 4:28 PM
**To:** Briganti, Bill
**Subject:** Scott Fulop/Ken Penders/Sonic Hedgehog Applications

Dear Mr. Briganti:

Re: Case #s 1-385699483; 1-384754849; 1-384734928; 1-384015309; 1-384015139;
1-384014971; 1-383843661; 1-383667381

Although I have yet to have the pleasure of communicating with you, I know you have been in contact with my colleague, Ken Penders, in relation to his applications for claims regarding various Sonic The Hedgehog comic book stories and art.

I am contacting you today in relation to my own claims, after receipt of a letter from one of your registration specialists, Shawn Thompson. It is my hope that you may provide some direction before I respond to his letter and submit additional materials.

Mister Thompson states:

"On your applications you have listed yourself and in some case Ken Penders as author of the "text" and/or artwork. On the applications where you name yourself as the author of the text, your name does not appear in the credits nor is there a copyright notice in your name. Please explain in detail how you are the author of these works. Second, the deposit that accompanied these applications are photocopies rather than copies of the work. We require the deposit of actual copies of works of this kind."

On every application filed for stories published in Sonic The Hedgehog and related comic books, I indicated that my legal name is Scott Drew Fulop, but that I wrote under the pseudonym of "Kent Taylor." The story "Monsters are the

Rage" published in Teenage Mutant Ninja Turtles Special is an exception, and clearly lists my legal name in the credits.

I am already in your system listed as Scott Fulop using the pseudonym of "Kent Taylor" (registration #s VA0001720516; VA0001719845; VA0001720518; VA0001716908). Is it necessary for me to also submit a notarized letter or other from Ken Penders stating I worked for him as a subcontractor using that pseudonym?

Taking into account that I only possess my own file copies and the printed comic books are collectors/investors items, difficult to obtain in today's market, as did Ken Penders and accepted by your office, I submitted photocopies of my file copies. Is it necessary to submit "two copies" of the "best edition" as Mister Thompson requests, or would at least one copy and the photocopies you have suffice?

Lastly, in terms of my two modified claims for 2D artwork, I have my original artwork in "pencil art" format, but do not find it, of course, in good conscience to deliver originals. In this instance, would not my submitted photocopies suffice in addition to copies of the printed work?

Thank you in advance for your time, courtesy and attention to this matter. I look forward to your response.

Very truly yours,

**Scott D. Fulop**

**Mobile: 914-584-4357**
**Studio: 914-315-6757**
**E-mail:** SFulop@aol.com
http://www.linkedin.com/in/scottfulop
WEBSITE UNDER CONSTRUCTION

# Exhibit KK

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Scott Fulop/Ken Penders/Sonic Hedgehog Applications**
**Date:** September 23, 2011 12:17:38 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

---

**From:** Briganti, Bill
**Sent:** Friday, July 02, 2010 9:23 AM
**To:** Thompson, Shawn
**Subject:** FW: Scott Fulop/Ken Penders/Sonic Hedgehog Applications

Shawn: Let Mr. Fulop know that we can accept a single photocopied deposit if all he has are archival/collector copies, and that we don't mneed a notarized letter from him. Thanks - Bill

---

**From:** SFulop@aol.com [mailto:SFulop@aol.com]
**Sent:** Monday, June 28, 2010 4:28 PM
**To:** Briganti, Bill
**Subject:** Scott Fulop/Ken Penders/Sonic Hedgehog Applications

Dear Mr. Briganti:

Re: Case #s 1-385699483; 1-384754849; 1-384734928; 1-384015309; 1-384015139;
1-384014971; 1-383843661; 1-383667381

Although I have yet to have the pleasure of communicating with you, I know you have been in contact with my colleague, Ken Penders, in relation to his applications for claims regarding various Sonic The Hedgehog comic book stories and art.

I am contacting you today in relation to my own claims, after receipt of a letter from one of your registration specialists, Shawn Thompson. It is my hope that you may provide some direction before I respond to his letter and submit additional materials.

Mister Thompson states:

"On your applications you have listed yourself and in some case Ken Penders as author of the "text" and/or artwork. On the applications where you name yourself as the author of the text, your name does not appear in the credits nor is there a copyright notice in your name. Please explain in detail how you are the author of these works. Second, the deposit that accompanied these applications are photocopies rather than copies of the work. We require the deposit of actual copies of works of this kind."

On every application filed for stories published in Sonic The Hedgehog and related comic books, I indicated that my legal name is Scott Drew Fulop, but that I wrote under the pseudonym of "Kent Taylor." The story "Monsters are the Rage" published in Teenage Mutant Ninja Turtles Special is an exception, and clearly lists my legal name in the credits.

I am already in your system listed as Scott Fulop using the pseudonym of "Kent Taylor" (registration #s VA0001720516; VA0001719845; VA0001720518; VA0001716908). Is it necessary for me to also submit a notarized letter or other from Ken Penders stating I worked for him as a subcontractor using that pseudonym?

Taking into account that I only possess my own file copies and the printed comic books are collectors/investors items, difficult to obtain in today's market, as did Ken Penders and accepted by your office, I submitted photocopies of my file copies. Is it necessary to submit "two copies" of the "best edition" as Mister Thompson requests, or would at least one copy and the photocopies you have suffice?

Lastly, in terms of my two modified claims for 2D artwork, I have my original artwork in "pencil art" format, but do not find it, of course, in good conscience to deliver originals. In this instance, would not my submitted photocopies suffice in addition to copies of the printed work?

Thank you in advance for your time, courtesy and attention to this matter. I look forward to your response.

Very truly yours,

**Scott D. Fulop**

**Mobile: 914-584-4357**
**Studio: 914-315-6757**
**E-mail:** SFulop@aol.com
http://www.linkedin.com/in/scottfulop
WEBSITE UNDER CONSTRUCTION

# Exhibit LL

**From:** "Briganti, Bill" <wbri@loc.gov>
**Subject:** **FW: Scott Fulop/Ken Penders/Sonic Hedgehog Applications**
**Date:** September 23, 2011 12:17:45 PM PDT
**To:** "'kenpenders@kenpenders.com'" <kenpenders@kenpenders.com>

---

**From:** Briganti, Bill
**Sent:** Friday, July 02, 2010 12:14 PM
**To:** Thompson, Shawn
**Subject:** FW: Scott Fulop/Ken Penders/Sonic Hedgehog Applications

fyi...

---

**From:** SFulop@aol.com [mailto:SFulop@aol.com]
**Sent:** Friday, July 02, 2010 12:01 PM
**To:** Briganti, Bill
**Subject:** Re: Scott Fulop/Ken Penders/Sonic Hedgehog Applications

Dear Mr. Briganti:

Thank you for getting back to me and your cooperation in forwarding my comments below to Mr. Thompson. I look forward to his response and resolving his inquiries.

Thank you again for your time and consideration.

Very truly yours,

**Scott D. Fulop**

**Studio: 914-315-6757**
**Mobile: 914-584-4357**
**E-mail:** SFulop@aol.com
http://www.linkedin.com/in/scottfulop
WEBSITE UNDER CONSTRUCTION

In a message dated 7/2/10 9:17:56 AM, wbri@loc.gov writes:

Mr. Fulop:

I am forwarding your e-mail to Shawn Thompson, who will respond.

Soincerely,
William Briganti
Assistant Chief
Visual Arts and Recordation Division
U.S. Copyright Office

**From:** SFulop@aol.com [mailto:SFulop@aol.com]
**Sent:** Monday, June 28, 2010 4:28 PM
**To:** Briganti, Bill
**Subject:** Scott Fulop/Ken Penders/Sonic Hedgehog Applications

Dear Mr. Briganti:

Re: Case #s 1-385699483; 1-384754849; 1-384734928; 1-384015309; 1-384015139; 1-384014971; 1-383843661; 1-383667381

Although I have yet to have the pleasure of communicating with you, I know you have been in contact with my colleague, Ken Penders, in relation to his applications for claims regarding various Sonic The Hedgehog comic book stories and art.

I am contacting you today in relation to my own claims, after receipt of a letter from one of your registration specialists, Shawn Thompson. It is my hope that you may provide some direction before I respond to his letter and submit additional materials.

Mister Thompson states:

"On your applications you have listed yourself and in some case Ken Penders as author of the "text" and/or artwork. On the applications where you name yourself as the author of the text, your name does not appear in the credits nor is there a copyright notice in your name. Please explain in detail how you are the author of these works. Second, the deposit that accompanied these applications are photocopies rather than copies of the work. We require the deposit of actual copies of works of this kind."

On every application filed for stories published in Sonic The Hedgehog and related comic books, I indicated that my legal name is Scott Drew Fulop, but that I wrote under the pseudonym of "Kent Taylor." The story "Monsters are the Rage" published in Teenage Mutant Ninja Turtles Special is an exception, and clearly lists my legal name in the credits.

I am already in your system listed as Scott Fulop using the pseudonym of "Kent Taylor" (registration #s VA0001720516; VA0001719845; VA0001720518; VA0001716908). Is it necessary for me to also submit a notarized letter or other from Ken Penders stating I worked for him as a subcontractor using that pseudonym?

Taking into account that I only possess my own file copies and the printed comic books are collectors/investors items, difficult to obtain in today's market, as did Ken Penders and accepted by your office, I submitted photocopies of my file copies. Is it necessary to submit "two copies" of the "best edition" as Mister Thompson requests, or would at least one copy and the photocopies you have suffice?

Lastly, in terms of my two modified claims for 2D artwork, I have my original artwork in "pencil art" format, but do not find it, of course, in good conscience to deliver originals. In this instance, would not my submitted photocopies suffice in addition to copies of the printed work?

Thank you in advance for your time, courtesy and attention to this matter. I look forward to your response.

Very truly yours,

**Scott D. Fulop**

**Mobile: 914-584-4357**
**Studio: 914-315-6757**

**E-mail:** SFulop@aol.com
http://www.linkedin.com/in/scottfulop
WEBSITE UNDER CONSTRUCTION