**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARCHIE COMIC PUBLICATIONS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>KENNETH W. PENDERS, II,<br>*a/k/a* KEN PENDERS<br><br>Defendant. | Case No.: 10-CV-8858 (RMB)<br><br>Judge: Hon. Richard M. Berman |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION**
**TO PLAINTIFF'S MOTIONS IN LIMINE**

Matthew C. Wagner
mwagner@dmoc.com
Scott Harrington
sharrington@dmoc.com
DISERIO MARTIN O'CONNOR
& CASTIGLIONI, LLP
50 Main Street, Suite 1000
White Plains, NY 10606
(914) 684-0090 Tel
(914) 684-0590 Fax

September 28, 2011

# Table of Contents

ARGUMENT

1. Plaintiff's Motion in Limine Seeking to Exclude Evidence that the ACP-Penders Agreements Signed by Penders are not Authentic or Genuine is Proper………...4

2. Defendant Fails to Meet the Threshold for Establishing Routine Practice Evidence under FRE 406……………………………………………………………....5

3. Defendant's Copyright Registrations are Invalid and Fraudulent, and Should Not Be Admitted at Trial…………………………………………………………………..9

4. Plaintiff Properly Seeks Judicial Notice of Penders' Bankruptcy Petition……….13

## Table of Authorities

### Cases

*Archie Comic Publ'ns, Inc. v. DeCarlo,* 258 F.Supp.2d 315 (S.D.N.Y. 2003) .................................7
*Baxter Diagnostics, Inc. v. Novatek Medical, Inc.*, 1998 WL 665138 (S.D.N.Y. Sept.25, 1998)....4
*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27 (2nd Cir. 1982) .........................10
*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2nd Cir. 1991) ..............................................................13
*Loussier v. Universal Music Group, Inc.*, 2005 WL 5644420 (S.D.N.Y. 2005) ................................6
*Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Group*, 937 F. Supp. 276 (S.D.N.Y. 1996) ..............................................................................................................................4
*S.E.C. v. Lyon*, 605 F.Supp.2d 531 (S.D.N.Y. 2009) ..........................................................................7-8
*Shady Records, Inc. v. Source Enterprises, Inc.*, 2005 WL 14920 (S.D.N.Y. 2005) .....................12
*Teevee Toons, Inc. v. MP3.com, Inc.*, 134 F.Supp 2d 546 (S.D. N.Y. 2001) ................................12
*U.S. v. Chan*, 184 F. Supp. 2d 337 (S.D.N.Y. 2002) ..........................................................................4
*Vergara Hermosilla v. Coca Cola Co.*, 2011 WL 744098 (S.D. Fla. Feb. 23, 2011)..................9-10
*Wilson v. Volkswagen of Am., Inc.,* 561 F.2d 494 (4th Cir. 1977) .....................................................8
*Zubulake v. UBS Warburg LLC*, 382 F.Supp.2d 536 (S.D.N.Y. 2005)..........................................7-8

### Statutes

17 U.S.C. § 204 .....................................................................................................................10
17 U.S.C. § 410(c)....................................................................................................................9

### Rules

Fed. R. Evid. 404.......................................................................................................................6
Fed. R. Evid. 401.......................................................................................................................6
Fed. R. Evid. 406.......................................................................................................................6
Fed. R. Evid. 801.......................................................................................................................11

Plaintiff, Archie Comic Publications, Inc. ("ACP"), by and through its attorneys, for its reply to Defendant's Opposition to Plaintiff's Motions in Limine ("Defendant's Opposition"), dated September 21[1], 2011 (D.E. 57), and in support of Plaintiff's Motions in Limine, D.E. 48, states the following:

## ARGUMENT

### 1. Plaintiff's Motion in Limine Seeking to Exclude Evidence that the ACP-Penders Agreements Signed by Penders are not Authentic or Genuine is Proper.

The Court should exclude any evidence or argument that the ACP-Penders Agreements signed by Penders are not authentic or genuine. This is not "beyond the bounds of a motion in limine". D.E. 57, p. 3. Plaintiff is not attempting to exclude "whole topics", rather Plaintiff's request is specific and particular. Evidence of this nature is precisely the type of evidence that a motion in limine is used to exclude. This evidence is forecasted, discrete, and is not evidence "regarding an entire claim at trial." *Compare Baxter Diagnostics, Inc. v. Novatek Medical, Inc.*, 1998 WL 665138, at * 3 (S.D.N.Y. Sept.25, 1998) (denying a motion in limine to preclude presentation of evidence regarding a potential punitive damages claim because the motion was too sweeping in scope to be considered prior to trial); *see also U.S. v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002); *Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Group*, 937 F. Supp. 276 (S.D.N.Y. 1996) ("Motion in limine that sought to exclude any extrinsic evidence as to meaning of various insurance policy provisions lacked sufficient specificity for court to rule on it . . .").

---

[1] Although Defendant's Opposition to Plaintiff's Motions in Limine is dated September 21, it was actually not filed or served until September 22, 2011. *See* D.E. 57.

Unlike in the above cited cases, Plaintiff is very specific in conveying to the Court and Defendant what it seeks to exclude from evidence, and is not attempting to strike "whole topics and sources of prospective evidence." D.E. 57, p. 1. There is no evidence in this case that the Agreements are not genuine and Defendant concedes he has no evidence ACP forged the Agreements. *See* D.E. 48, p. 3-6. Yet again, Defendant has failed in his Opposition to come forward with any evidence that the Agreements are not genuine or authentic. Defendant should be precluded from offering any evidence at trial challenging the authenticity of the Agreements. Again, as a reminder to the Court, this is not a situation where the Defendant has identified a handwriting expert or contested that the handwriting on the Agreements is not his handwriting. Without evidence that the Agreements are not genuine, it would be unfairly prejudicial for Defendant at trial to argue that the Agreements are not genuine.

Argument challenging the authenticity of the Agreements at trial, when there is no evidence of forgery or alteration, would confuse the jury. FRE 403. Plaintiff properly sought in limine to exclude this evidence and seeks an order from the Court excluding any evidence that the ACP-Penders Agreements are not genuine, authentic or have a forged signature.

**2. Defendant Fails to Meet the Threshold for Establishing Routine Practice Evidence under FRE 406.**

Defendant argues that several of his proposed witnesses will offer evidence of "Archie's routine practices." *See* D.E. 57, p. 4. As an initial matter, Defendant fails to establish the threshold relevancy requirements for the admission of this witness

testimony.[2] *Id*. Moreover, Defendant fails to articulate the appropriate standard for the admission of habit or routine evidence. Rule 406 of the Federal Rules of Evidence provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice

Fed. R. Evid. 406. “Courts have been cautious in allowing evidence that attempts to prove a pattern of conduct as habit, because of the risk that such evidence will be used to establish a party's propensity to act in conformity with his general character, which is specifically prohibited by Fed. R. Evid 404.” *Loussier v. Universal Music Group, Inc.*, 2005 WL 5644420 (S.D.N.Y. 2005). In determining whether behavior has “matured into habit”, the court should consider the “adequacy of sampling and the uniformity of the response.” *Id* at *3. Defendant fails to meet this standard and does not even argue the proper standard.

ACP has a policy of requiring independent contractors to sign agreements. *See* Declaration of Michael Pellerito, D.E. 17, p. 2, (“During my tenure since 2000, **it has been ACP’s policy to always have independent contractors sign agreements which are forms similar to the ACP-Penders Agreements**.”); *see also* Declaration of Michael Pellerito, D.E. 17, p. 2 (“In order for an independent contractor to be paid, **it is ACP’s policy to require that an Independent Contractor’s Agreement be executed.**”). *See also* Exhibit A to Pellerito’s Declaration (D.E. 17) showing hundreds of

[2] It is important to note that the Defendant makes no showing that this witness testimony is relevant. Under FRE 401, “Relevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Fed. R. Evid. 401. Defendant has not shown that the witness testimony he seeks to introduce at trial is probative to an issue in this case. In fact, testimony concerning another person’s experience or relationship with ACP is wholly irrelevant to Defendant’s relationship with ACP.

agreements. Plaintiff produced to Defendant and filed with the Court a representative sample of one hundred and fifty (150) names and addresses of the contractors who have executed these agreements. *See* Exhibit A to Declaration of Michael Pellerito, D.E.17. This was only a sample and was not an exhaustive list. *Id*. In fact, "[a] review of ACP's files reveals, literally, hundreds of executed independent contractor's agreements, including those for contributors to ACP's licensed properties, dating back to at least 1988." *See* Declaration of Michael Pellerito, D.E. 17, p.2. *See also Archie Comic Publ'ns, Inc. v. DeCarlo,* 258 F.Supp.2d 315 (S.D.N.Y. 2003), where these very same agreements have been enforced by this Court.

Defendant seeks to introduce testimony from a handful of witnesses who allegedly did not have an agreement with ACP, despite it being ACP's policy to have agreements with independent contractors and showing hundreds of sample agreements. The proposed testimony does not rise to the level of "regularity over substantially all occasions or with substantially all other parties" and should be excluded. *S.E.C. v. Lyon*, 605 F.Supp.2d 531, 543 (S.D.N.Y. 2009). Defendant's proposed testimony does not constitute a "regular response to a repeated specific situation" required for admission under Rule 406. On the contrary, it establishes that Plaintiff had a practice of entering into agreements with independent contractors. *Zubulake v. UBS Warburg LLC*, 382 F.Supp.2d 536 (S.D.N.Y. 2005).

Defendant cites to this Court's decision in *S.E.C. v. Lyon*, 605 F.Supp.2d 531 (S.D.N.Y. 2009), as support for his argument that this witness testimony is admissible under FRE 406. Defendant fails to include in his Opposition that *S.E.C* importantly dealt with a Motion for Summary Judgment. As this Court stated in its opinion, "the threshold

for admissibility is considerably lower" for consideration of habit evidence in a Motion for Summary Judgment. *Id*. at 543.

Unlike in *S.E.C*, Plaintiff is seeking to exclude this evidence *at trial*, without establishing that a routine practice even exists. In fact, evidence proves just the opposite: ACP's routine practice was to obtain a signed Agreement from each independent contractor. Six (6) or even ten (10) witnesses who allegedly did not have a contract, assuming this is true, out of more than one hundred and fifty (150) who did have a contract does not establish "regularity over substantially all occasions." *S.E.C.*, 605 F.Supp.2d at 543. Defendant's proposed witness testimony is improper under FRE 406 and highly prejudicial to the Plaintiff. As the Fourth Circuit court stated in *Wilson v. Volkswagen of Am., Inc.*:

> The reason for such an attitude toward evidence of habit is **the obvious danger of abuse in such evidence resulting from "the confusion of issues, collateral inquiry, prejudice and the like,**" or, as one court has phrased it, "the collateral nature of (such) proof, the danger that it may afford a basis for improper inferences, the likelihood that it may cause confusion or operate to unfairly prejudice the party against whom it is directed * * *."

561 F.2d 494, 511 (4th Cir. 1977). Even if Defendant proffers a handful of people over the last twenty years who allege they performed some work for ACP without an agreement, under FRE 406, this does not even come close to meeting the "adequacy of sampling and uniformity" requirements. *See Zubulake,* 382 F.Supp 2d at 542.

Defendant falls far short of establishing any evidence of routine practice, and should be barred from introducing this testimony under the guise of "routine practice" when it is nothing more than irrelevant and improper character evidence.

**3. Defendant's Copyright Registrations are Invalid and Fraudulent, and Should Not Be Admitted at Trial.**

As an initial matter, Plaintiff did not request that the Court not exercise its discretion in weighing the registrations, but asked only that in accordance with 17 U.S.C. § 410(c), the registrations are not considered prima facie evidence of a valid copyright. The presumption of validity of the Copyright Office's registrations only applies when the registration "was made before or within five years after first publication." *Id*. All of Penders copyright registrations were filed more than five years after the first publication of the work, and therefore, are not entitled to a presumption of validity.

Defendant boldly argues that the transfer assignments are valid, and that Plaintiff "misstated the record when it claims that Penders did not have a valid written transfer agreement." D.E. 57. p. 6.[3] As support for Defendant's position that Penders "email assignment" constitutes a "signed written agreement" he cites to *Vergara Hermosilla v. Coca Cola Co.*, 2011 WL 744098 (S.D. Fla. Feb. 23, 2011). In so doing, Defendant skims over the most crucial part of the court's decision in *Vergara*: the court had the email to review. In this case, **there is no email** assigning any rights to Penders, nor was there a signed writing. Defendant's reliance on *Vergara* is misplaced. Defendant has no email assignment nor has he ever produced one to Plaintiff during discovery, or after discovery, despite several requests. As the court stated in *Vergara*:

> **The chief purpose of section 204(a),** (like the Statute of Frauds) **is** to resolve disputes between copyright owners and transferees and **to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership.**

[3] Interestingly, Defendant never disputes that Plaintiff did not have the transfer agreements, or that he never produced the agreements.

*Vergara*, 2011 WL 744098 at *3 (emphasis added). Penders has nothing more than an alleged oral promise and without a signed writing or email, a copyright interest cannot be conveyed. *Id*. In fact, Defendant has not even provided the material terms of the alleged email, i.e. the consideration.[4] Defendant's alleged transfer agreement does not conform to the Statute of Frauds, or the requirements for a valid copyright assignment under 17 U.S.C. § 204.

Defendant expects the court to trust that at some point in time he had an email conveying all copyright ownership to him "prior to applying for his copyright registrations" in 2009 and 2010; however, this argument and proffer is not credible. In an email dated **June 17, 2011** (Penders' Declaration, Ex A, D.E. 58, p. 14), Penders states that "his lawyers have the transfer agreement in their possession."[5] Interestingly, all of the Transfer Agreements signed by Kanterovich are dated one month later on **July 14, 2011** and **do not purport to confirm a prior transfer by email**. *See e.g.,* Exhibits B,C, D, E, F, G, H to D.E. 58, p. 20-73. As Defendant cites in his Opposition, the copyright transfer "**requirement is satisfied by the copyright owner's later execution of a writing which confirms the agreement**." *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2nd Cir. 1982) (emphasis added). This requirement was not satisfied by Kanterovich's subsequent writing because the writing did not confirm a prior transfer.

---

[4] In *Vergara,* in addition to the court having the email in its possession to review, the email also included the consideration, the date and both parties. *Vergara*, 2011 WL 744098 at *3.

[5] Penders produced 63 pages of emails and agreements for the first time in Exhibit A to Defendant's Opposition to Plaintiff's Motions in Limine. These emails are all in the date range of emails that were previously produced to Plaintiff. Defendant failed to produce them to Plaintiff in compliance with the discovery requests. Instead, Defendant waited to produce these emails until a month before trial, as an Exhibit to a Declaration in opposition to a Motion. These emails contain information that has never been seen by or reviewed by Plaintiff's counsel. These emails will also be the subject of a Motion to Strike that Plaintiff is preparing: the emails and agreements were never produced to counsel, contradict Penders sworn testimony, and Plaintiff was unable to examine him regarding these documents.

Indeed, as the dates prove, Penders' sworn statement, under oath to the Copyright Office at the time he filed these applications in 2009 and 2010 was false and fraudulent-he did not have a written transfer agreement. To make matters worse, his email states that "his lawyer" has the agreements-yet they were never produced to Plaintiff. Penders was even asked about the location of the written transfer agreements at his deposition on August 25, 2011, and he promised that he would produce them "on a timely basis;" *but he never did.* (Deposition of Kenneth W. Penders II, pp. 190, ln.1-3, 8-14).[6] Plaintiff is obviously prejudiced by this.

Penders stated in his Declaration that he "made the applications without the assistance of counsel," but he stated to the Copyright Office that his lawyers have the agreements, and other communication to the Copyright Office relay advice he was getting from counsel. This clearly suggests that Penders was working with his attorney on the copyright registrations – so there should be no excuse. D.E. 58, p. 1 and Exhibit A to D.E. 58, p. 14.

Penders states that Mike Kanterovich is "unavailable" to testify and cannot be questioned regarding these inconsistencies in the transfer agreements and the terms of the alleged email. D.E. 58, p. 2.[7] Clearly, Penders never had the written transfer agreements from Kanterovich when he applied for his copyright registrations and represented to the copyright office that he had them in order for his registrations to be approved. In fact, William Briganti from the U.S. Copyright Office, in an email dated June 17, 2011, told Penders that he needed to "explain how [he] acquired ownership of

[6] Cited excerpts of Penders' deposition testimony are attached as Exhibit A.

[7] Not to mention the email as well as the transfer agreements are hearsay. Under FRE 801, "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801.

the copyright in Mr. Kanterovich's contributions" and if he did not "receive a response to this message within 20 days, [they] will close this case without processing [his] registration." *See* Exhibit A to D.E.58, p. 13.

Despite representing to the Copyright Office that his lawyers have the transfer agreements, none were ever produced to Plaintiff in discovery. Defendant states in his self serving declaration he had an email from Kanterovich but is unable to produce it "due to the loss of the hard drive containing the original email." D.E. 58 p.2. It makes no intuitive sense that he could procure new transfer agreements from Kanterovich, but could not obtain a copy of the relevant email. The only reason these registrations were approved by the Copyright Office is because Penders fraudulently claimed his lawyers had written transfer agreements from co-authors. *See* Exhibit A to D.E 58, p. 13-14. This is not an "inadvertent error or omission" made by a "novice layperson". D.E. 57, p. 7. These were material and false statements to the Copyright Office. *Teevee Toons, Inc. v. MP3.com, Inc.*, 134 F.Supp 2d 546, 549 (S.D. N.Y. 2001).

"Courts have held that if the misstatement goes toward true authorship affecting ownership, or **true ownership due to faulty assignments between author and copyright claimant, the registration is invalid, where coupled with evidence of an intent to defraud**." *Shady Records, Inc. v. Source Enterprises, Inc.*, 2005 WL 14920 (S.D.N.Y. 2005) (emphasis added). Penders deliberately, and with the intent to defraud, told the Copyright Office he had a written assignment from a co-author when he did not. Penders' credibility is low at best. Penders had the wherewithal to purportedly get an executed transfer agreement from Kanterovich but failed to produce to Plaintiff or the Court the alleged email that Kanterovich sent to him conveying all of his rights. He has

withheld documents that he is just now producing to Plaintiff, after discovery and one month before trial, and fraudulently misrepresented the co-author assignment to the Copyright Office. Plaintiff would be unfairly prejudiced by the admission of these transfer agreements dated July 14, 2011 (well after the date of the registrations) or the registrations on which they are based; not only were the agreements never produced in discovery (despite Penders' June 2011 statement to the Copyright Office that his lawyers had the agreements), the applications were filed beyond the five year cut off and were obtained by fraud.

**4. Plaintiff Properly Seeks Judicial Notice of Penders' Bankruptcy Petition.**

Defendant, once again, makes the tired argument that Plaintiff's motion in limine does not concern a discrete item of evidence. Plaintiff is not attempting to "try substantive portions of the case"; rather, Plaintiff attempts to specifically exclude the copyright registrations for works created prior to the bankruptcy discharge. D.E. 57, p. 9. Penders stated, under oath and penalty of perjury that he had **no rights** to "patents, copyrights, and other intellectual property." *See* Complete File Stamped Copy of Penders' Bankruptcy Petition Schedules attached as Exhibit E to D.E. 48. It would be improper for Penders to now benefit from intellectual property rights that he stated he did not have in order to discharge his debts.

Penders' bankruptcy file is a discrete item of evidence of which the Court should take judicial notice of this is a public filing "to establish the fact of such litigation and related filings." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2nd Cir. 1991). Plaintiff is not requesting that the court assess the truth of the proceedings; rather, Plaintiff respectfully requests that the Court take judicial notice of the Bankruptcy Petition, supporting papers and discharge.

Respectfully submitted,

DISERIO MARTIN O'CONNOR &
CASTIGLIONI LLP

By: /s/ ______________________________

Matthew C. Wagner (MW9432)
mwagner@dmoc.com

Scott Harrington (SH0588)
sharrington@dmoc.com

Diserio Martin O'Connor & Castiglioni LLP
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: 914-684-0090

Date: September 28, 2011

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARCHIE COMIC PUBLICATIONS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>KENNETH W. PENDERS, II,<br>*a/k/a* KEN PENDERS<br><br>Defendant. | Case No.: 10-CV-8858 (RMB)<br><br>Judge: Hon. Richard M. Berman<br><br>**CERTIFICATE OF SERVICE** |

I, Matthew C. Wagner, hereby certify that on the 28th day of September, 2011, pursuant to the requirements of the Federal Rules of Civil Procedure, the foregoing was filed electronically (ECF) and is available for viewing and downloading from the ECF system and will be served on all counsel of record via ECF notification.

Respectfully submitted,
DISERIO MARTIN O'CONNOR &
CASTIGLIONI LLP

By:_/s/___________________________
Matthew C. Wagner (MW9432)
mwagner@dmoc.com

Scott Harrington (SH0588)
sharrington@dmoc.com

Diserio Martin O'Connor & Castiglioni LLP
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: 914-684-0090

Date: September 28, 2011