```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/16/2012
```

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

ARCHIE COMIC PUBLICATIONS, INC.,       :

                Plaintiff,       :

    -against-       :

KENNETH W. PENDERS, II,       :

                Defendant.       :

-----------------------------------------------------------X

10 Civ. 8858 (RMB) (MHD)

**DECISION & ORDER**

      Having reviewed the record herein, including **(i)** the complaint of Archie Comic Publications, Inc. ("Plaintiff" or "Archie"), filed November 23, 2010, against Kenneth W. Penders ("Defendant" or "Penders") for breach of contract and tortious interference and seeking a declaratory judgment.[1] Archie alleged, among other things, that in January 2009 Penders began filing numerous applications with the U.S. Copyright Office to register various "contributions" to the Sonic Comic Book Series that Penders had provided to Archie between 1993 and 2005 ("Works") pursuant to (two) independent contractor agreements executed by Archie and Penders, dated December 12, 1996 ("Agreements"). According to Archie, Penders agreed that the Works are "owned by and for the benefit of Archie" (Compl., dated Nov. 23, 2010, ¶¶ 27, 33, 74–123); **(ii)** Penders' amended answer, filed June 7, 2011, alleging counterclaims of copyright infringement and seeking a declaration that his copyright registrations are valid and that he is not in breach of any contract with Archie because the Agreements reflect his forged signature as he "did not enter into the contracts [Archie] alleges" (Def. Am. Ans., dated June 7, 2011, ¶¶ 8, 10); **(iii)** Penders' motion in limine, filed September 15, 2011, arguing that copies of the Agreements should be excluded because "originals [of the

---

[1] On December 16, 2011, the parties stated that "the parties have settled" Archie's tortious interference claim. (See Proposed Pre-Trial Order, dated Dec. 16, 2011, at 32.)

Agreements] have not been produced," Penders "never knowingly signed" the Agreements, and "the writing on the [Agreements] is [not Penders'] writing" (Def.'s Mem. of Law in Supp. of Mot. In Limine, dated Sept. 14, 2011 ("Def. In Limine Mem."), at 3, 6); **(iv)** Archie's opposition to Penders' motion in limine, filed September 21, 2011, arguing, among other things, that "the original [A]greements have been lost or destroyed" and duplicates are admissible because "the signature on the [A]greement[s] is in fact [Penders'] signature" (Pl.'s Resp. to Def.'s Mot. In Limine, dated Sept. 21, 2011 ("Pl. In Limine Opp'n"), 12, 14); **(v)** Archie's (amended) motion in limine, filed December 19, 2011, arguing that (1) several of Penders' trial exhibits "should be excluded from trial because none were produced in discovery"; (2) eight of Penders' thirteen witnesses should be excluded "because [Penders] failed to provide address or contact information for these witnesses . . . prior to the Amended Pretrial Order"; and (3) "sanctions, including attorneys' fees, . . . may be applicable" (Pl.'s Am. Mot. In Limine, dated Dec. 19, 2011, at 3, 8, 12); **(vi)** Penders' opposition to Archie's amended motion in limine, filed December 28, 2011, arguing, among other things, that (1) "the vast majority [of Penders' trial exhibits] were timely produced in discovery" and a "small box" of exhibits "were just recently discovered by Penders"; (2) Defendant provided seven of the witnesses' address and contact information prior to the Amended Pretrial Order, and the eighth witness was "only recently added . . . as a result of Plaintiff's assertions that Defendant somehow defrauded the copyright office"; and (3) sanctions and fees are unwarranted because Plaintiff did not "certif[y] that the movant has in good faith conferred or attempted to confer" with Defendant (Def.'s Opp'n to Pl.'s Am. Mot. In Limine, dated Dec. 28, 2011, at 2–3, 6, 8); **(vii)** Archie's reply in support of its amended motion in limine, filed January 3, 2012 (Pl.'s Reply in Supp. of Its Am. Mot. In Limine, dated Jan. 3, 2012); **(viii)** Archie's motion for summary judgment, filed February 6,

2

2012, arguing, among other things, that the Agreements "dictate the outcome of all claims in this action" and that "Penders' signature is obviously of his own hand" (Mem. of Law in Supp. of Archie Comic Publ'ns' Mot. for Summ. J., dated Feb. 6, 2012 ("Pl. Mem."), at 1, 11, 13); **(ix)** Penders' opposition and cross-motion for summary judgment, filed March 7, 2012, arguing, among other things, that the duplicate Agreements are inadmissible because Penders "has consistently maintained he never signed either one of the [A]greements" and, "even if [the] Agreements are found to be authentic," they would be "unenforceable for lack of consideration" (Def.'s Opp'n to Pl. Archie Comic Publ'ns' Mot. for Summ. J. and Cross-Mot. for Summ. J., dated Mar. 6, 2012 ("Def. Opp'n"), at 1, 15–16); **(x)** Plaintiff's reply, filed March 21, 2012, contending that twelve affidavits offered by Penders should be excluded as late, irrelevant, or because they contain inadmissible hearsay (Reply in Supp. of Archie Comic Publ'ns' Mot. for Summ. J., dated Mar. 21, 2012 ("Pl. Reply"), at 5–7); **(xi)** the transcript of the oral argument held before the Court on July 16, 2012 (see Hr'g Tr., dated July 16, 2012); and applicable legal authorities, **the Court hereby denies Penders' motion in limine, denies Archie's amended motion in limine, denies Archie's motion for summary judgment, and denies Penders' cross-motion for summary judgment as follows:**

    **Penders' Motion In Limine**

Penders argues that the duplicate Agreements should be excluded because Penders "never knowingly signed" the Agreements and "the writing on the [Agreements] is [not Penders'] writing."  (Def. In Limine Mem. at 3, 6.)  Archie argues that the duplicates are admissible because Penders "has failed to show that a genuine question is raised as to their authenticity" and that a "jury should absolutely be permitted to review this evidence."  (Pl. In Limine Opp'n at 5.)

3

Under Federal Rule of Evidence 1008(a), when an issue is raised regarding whether the asserted writing ever existed, the issue is for the trier of fact to determine. United States v. Hatfield, 685 F. Supp. 2d 318, 320 (E.D.N.Y. 2010).  "[W]hether or not a contract was ever executed goes to the merits of the controversy, [and] the allocation of the power to decide these facts implicates the right to trial by jury." Tinley v. Poly-Triplex Techs., No. 07 Civ. 1136, 2009 WL 812150, at *7 (D. Colo. Mar. 26, 2009).

The duplicate Agreements are admissible under Rule 1008(a) so that a jury can determine whether or not they are authentic because the parties dispute whether originals ever existed. See Hatfield, 685 F. Supp. 2d at 320; Tinley, 2009 WL 812150, at *7.  Archie's former Vice President of Finance, Edward Spallone ("Spallone"), swears on personal knowledge and under penalty of perjury that he "personally signed, dated, and otherwise prepared" the Agreements and "sent them to [Archie's] business office to be mailed" to Penders for Penders' countersignature.  (Aff. of Edward Spallone, dated Feb. 4, 2012, ¶¶ 11, 12.)  Archie's Editor-in-Chief and Co-President, Victor Gorelick ("Gorelick"), swears on personal knowledge and under penalty of perjury that he received the original Agreements from Penders via the mail in December 1996; the Agreements were "fully executed" and "counter-signed" by Penders; and the duplicate Agreements are "true and accurate copies of the original documents."  (Aff. of Victor Gorelick, dated Feb. 3, 2012, ¶¶ 10, 12.)  On the other hand, Penders declares on personal knowledge and under penalty of perjury that he has "no record of ever receiving [the partially signed Agreements] in 1996 from Archie, nor any recollection of the same"; he "never knowingly signed" the Agreements; and his signatures on the duplicate Agreements "are not

4

authentic and cannot be authentic." (Aff. of Kenneth W. Penders, II, dated March 6, 2012, ¶¶ 80, 83; see Hr'g Tr., dated July 16, 2012); see also infra pp. 5–7.[2]

Because there are fact questions as to whether signed Agreements (authentically) ever existed, Penders' motion in limine is denied. See Hatfield, 685 F. Supp. 2d at 320; Tinley, 2009 WL 812150, at *7.

**Archie's Amended Motion In Limine**

Archie's amended motion in limine is denied. See Ridgeview Partners, LLC v. Entwistle, 354 F. Supp. 2d 395, 403–04 (S.D.N.Y. 2005). Even assuming, arguendo, that Penders produced exhibits or witness information late, no prejudice to Archie has resulted because the Court vacated the January 30, 2012 trial date by Administrative Order, dated January 17, 2012. (See Admin. Order, dated Jan. 17, 2012, at 1 ("The trial date of January 30, 2012 is vacated until further notice.")); Fed R. Civ. P. 37(c)(1); Frometa v. Diaz-Diaz, No. 07 Civ. 6372, 2008 WL 4192501, at *4–5 (S.D.N.Y. Sept. 11, 2008) (where "the parties have had more than three additional months to prepare for trial—since the trial date was postponed").

**Summary Judgment**

Preliminarily, Archie argues that the affidavits of Michael Lovitz, Karl Bollers, Justin Gabrie, Scott Shaw, Joshua Ray, Scott D. Fulop, Elliot S. Maggin, Mike Kanterovich, Larry Houston, and Fred Mausser should be excluded from consideration on summary judgment because, among other reasons, several of the affiants were not "listed on Penders' pretrial witness list" and "[n]one of these affiants claim to have any personal knowledge" of the Works or the Agreements. (Pl. Reply at 4, 5, 7.) Archie also argues that certain paragraphs of the

---

[2] The Court has previously warned the parties that "if, as I suggested to both of you, someone is lying about [this] fundamental issue on the witness stand under oath, then the case won't stop here, the civil case. I will refer it to the appropriate authorities to investigate whether perjury has been committed." (Hr'g Tr., dated Jan. 17, 2012, at 2:24–3:5.)

affidavits of Michael Lovitz, Kenneth W. Penders, Bernadette Shahin, Justin Gabrie, Elliot S. Maggin, and Fred Mausser should be excluded because they "contain inadmissible hearsay evidence." (Pl. Reply at 6.) Penders did not submit, or request to submit, a surreply. (See Hr'g Tr., dated July 16, 2012.)

As discussed supra p. 5, Archie's timeliness arguments are unpersuasive. Even assuming, arguendo, that Penders disclosed any witnesses late, no prejudice to Archie has resulted because the Court vacated the January 30, 2012 trial date by Administrative Order, dated January 17, 2012, leaving Archie ample time to prepare any rebuttal. See EMI Music Mktg. v. Avatar Records, Inc., 334 F. Supp. 2d 442, 445 (S.D.N.Y. 2004).

The affidavits of Karl Bollers, Scott Shaw, Joshua Ray, Scott D. Fulop, Elliot S. Maggin, and Mike Kanterovich are relevant and admissible, even though they do not have personal knowledge of whether Penders signed the Agreements, because those affiants are freelance artists who previously worked for Archie and claim that Archie never required them to sign any work-for-hire contracts. See Fed R. Evid. 402; Arista Records LLC v. Lime Grp. LLC, 784 F. Supp. 2d 398, 419 (S.D.N.Y. 2011) ("The standard for determining relevance is a liberal one."). The affidavits of Fred Mausser and Justin Gabrie are relevant and admissible because those affiants are former Archie employees who claim that "[f]reelance creators, including Ken Penders, were not required to sign contracts . . . before they could do work for [Archie]." (Aff. of Fred Mausser, dated Mar. 6, 2012 ("Mausser Aff."), ¶ 12; see Aff. of Justin Gabrie, dated Mar. 6, 2012, ¶¶ 12, 13.) However, the portions of Mausser's affidavit which state that Spallone was "terminated from [Archie] for embezzlement" (Mausser Aff. ¶ 7) are inadmissible. See Fed. R. Evid. 608(b) ("[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."); United States v.

6

Shoreline Motors, 413 F. App'x 322, 329 (2d Cir. 2011).  The portions of the declaration of Michael Lovitz, who is counsel to Penders, which assert that Spallone stated he "did not recall sending Mr. Penders a contract in 1996," is inadmissible hearsay.  (Decl. of Michael Lovitz, dated Mar. 6, 2012, ¶ 19); see Fed R. Evid. 802; Hollander v. Am. Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999); United States v. Bin Laden, 91 F. Supp. 2d 600, 622 (S.D.N.Y. 2000) ("[L]awyers representing litigants should not be called as witnesses in trials involving those litigants if such testimony can be avoided consonant with the end of obtaining justice.").[3]  The affidavit of Larry Houston is excluded as irrelevant because that affiant does not claim to have had any relationship with Archie or knowledge of the Agreements.  See Fed. R. Evid. 402; Cole Sys. Assocs., Inc. v. Mun. Emergency Servs., Inc., No. 08 Civ. 6417, 2010 WL 4942229, at *1–2 (S.D.N.Y. Dec. 3, 2010).

Portions of paragraphs 68, 78, and 84 of Penders' affidavit, and paragraphs 12, 13, 20, 23, 25, 28, and 32 of Bernadette Shahin's affidavit, and paragraphs 6, 7, 11, and 17 of Justin Gabrie's affidavit contain inadmissible hearsay.  (See, e.g., Aff. of Kenneth W. Penders, dated Mar. 6, 2012 ("Penders Aff."), ¶ 68 ("I have also conversed with numerous creators involved in the first few years of publication of the Sonic Comics and I have been advised by each of these creators that they had never been asked to execute any 'work made for hire' agreements.")); see also Rhea v. Uhry, 354 F. App'x 469, 472 (2d Cir. 2009); Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999).  Paragraph 73 of Penders' affidavit; paragraph 30 of Shahin's affidavit; paragraphs 5 and 13 of Gabrie's affidavit; paragraph 9 of Maggin's affidavit; and paragraphs 16 and 27 of Mausser's affidavit, which discuss conversations with Archie officers, editors, or employees, are admissible as alleged party admissions.  (See, e.g., Penders

---

[3]  Penders has new counsel, but Mr. Lovitz is still counsel of record for purposes of a motion for sanctions against him. (See Memo Endorsement, dated Oct. 25, 2011 [#88].)

Aff. ¶ 73 ("I requested that Archie . . . provide me with copies of any agreement I may have signed with Archie . . . . Gorelick told me that no such documents existed.")); see also Fed. R. Evid. 801(d)(2)(D) ("A statement that meets the following conditions is not hearsay . . . [t]he statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."); A Slice of Pie Prods., LLC v. Wayans Bros. Entm't, 487 F. Supp. 2d 33, 37 (D. Conn. 2007).

As to the merits of the parties' cross-motions for summary judgment, Archie argues that Penders' signatures on the Agreements are "true and genuine signatures" and that the Agreements "dictate the outcome of all claims in this action" because they provide that the Works are "owned by and for the benefit of Archie." (Pl. Mem. at 1, 4–5, 12.) Penders argues that he "has consistently maintained he never signed either one of the [A]greements" and, "even if [the] Agreements are found to be authentic," they would be "unenforceable for lack of consideration." (Def. Opp'n at 1, 15–16.)

As noted supra pp. 3–5, copies of the Agreements are admissible under Rule 1008(a) of the Federal Rules of Evidence so that a jury can determine their authenticity. See Hatfield, 685 F. Supp. 2d at 320; Tinley, 2009 WL 812150, at *7. Archie's contention that "a series of emails written by Penders to Victor Gorelick . . . admit that Penders did, in fact, sign [the] [A]greements" is unpersuasive on summary judgment. (Pl. Mem. at 16.) The emails, dated December 4, 2008, December 15, 2008, and January 5, 2009, reference a "work-for-hire form" from "back in late '95" and do not resolve the genuine issues of material fact regarding the authenticity of the Agreements which are dated December 12, 1996. (Gorelick Aff., Ex. A.) And, Archie's citations to Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 622 F. Supp. 208, 211 (S.D.N.Y. 1985), and Baroor v. New York City Dept. of

Educ., 362 F. App'x 157, 161 (2d Cir. 2010), for the proposition that a "presumption of authenticity" attaches to Penders' signatures (Pl. Mem. at 14, 16) are unpersuasive at summary judgment because those cases involved, respectively, a contract under the Uniform Commercial Code and a notarized signature, neither of which exists here.  See, e.g., N.Y. U.C.C. § 3-307; Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc., No. 01 Civ. 4788, 2006 WL 587483, at *20 (S.D.N.Y. Mar. 8, 2006).  Because the existence or nonexistence of authentic Agreements is a question of fact for the jury, Archie's motion for summary judgment is denied.  See Tinley, 2009 WL 812150, at *7; Dietrich v. Bauer, 126 F. Supp. 2d 759, 764 (S.D.N.Y. 2001); Brass Constr. v. Muller, No. 98 Civ. 5452, 2000 WL 791814, at *2 (S.D.N.Y. June 20, 2000) ("There are clearly disputed factual issues . . . [Plaintiff] denies that he ever signed the agreement and maintains that his signature was forged.").  The parties are directed to submit an appropriate joint limiting instruction in a revised joint jury charge as indicated infra p. 10.

Penders' cross-motion for summary judgment is also denied.  Penders' argument that, "even if [the] Agreements are found to be authentic," they would be unenforceable for lack of consideration (presumably because they "are indefinite as to the amount of compensation payable to Mr. Penders") is unpersuasive at summary judgment.  (Def. Opp'n at 15–16.)  The Agreements provide that Archie will pay Penders "a fixed sum based on a rate to be mutually agreed upon" (Compl. Ex. A, ¶ 5; see Compl. Ex. B, ¶ 6), and the record appears to show that Penders submitted invoices to Archie for payment without expressing "any issue or concern with receiving payment from [Archie] in this method or form."  (Def.'s Counterstatement to Pl.'s R. 56.1 Statement, filed March 7, 2012, ¶ 50.)  A reasonable jury could conclude that the price term, supported by invoices submitted by Penders to Archie to which Penders presumably never objected, is definite and forms a valid and binding contract.  See Barry v. Liddle, O'Connor,

Finkelstein & Robinson, 98 F.3d 36, 40 (2d Cir. 1996) ("[A] price term is not necessarily indefinite because the agreement fails to specify a dollar figure, or leaves fixing the amount for the future, or contains no computational formula."); Prot. Indus. Corp. v. Kaskel, 262 A.D.2d 61, 61 (N.Y. App. Div. 1999) ("[M]onths of invoices to which defendant . . . never objected form an adequate basis from which to infer the price term."). And, Penders' argument that, "even if [the] Agreements are found to be authentic, valid and enforceable[,] all Works submitted before December 12, 1996 cannot qualify as work for hire" is unpersuasive. (Def. Opp'n at 15.) The Agreements provide that if any Works "do not qualify as a work for hire, [Penders] will and hereby does assign to Archie any right, title and interest that he/she has or may obtain therein, including all copyrights." (Compl. Ex. A ¶ 19.)

**Conclusion & Order**

For the foregoing reasons, Penders' motion in limine [#49], Archie's amended motion in limine [#104], Archie's motion for summary judgment [#119], and Penders' cross-motion for summary judgment [#128] are denied.

The parties are directed to submit a revised joint pre-trial order, joint jury instructions, and joint verdict sheet reflecting and consistent with this Order and the Court's Individual Practices by August 10, 2012. (If the submissions are not joint, they will be rejected.) Any motions in limine (one per side) are also due by August 10, 2012. Any motion in limine responses are due by August 17, 2012.

A final pre-trial/settlement conference is scheduled for September 10, 2012 at 10:30 a.m. The parties are directed to engage in good faith settlement discussions prior to the conference.

Dated: New York, New York
       July 16, 2012

_RMB_
**RICHARD M. BERMAN, U.S.D.J.**