D52PARCC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ARCHIE COMIC PUBLICATIONS,
INC.,

                    Plaintiff,

              v.                          10 CV 8858 (RMB)

KENNETH W. PENDERS, II,

                    Defendant.

------------------------------x
                                          New York, N.Y.
                                          May 2, 2013
                                          10:03 a.m.

Before:

                    HON. RICHARD M. BERMAN,

                                          District Judge

                         APPEARANCES

COLLEN IP
     Attorney for Plaintiff
BY:  JOSHUA PAUL, ESQ.

DAMAN, LLC
     Attorney for Defendant
BY:  JEFFREY K. DAMAN, ESQ.

D52PARCC

1          (In open court)

2          (Case called)

3          THE COURT:  So this looks like a fine mess, and by

4    that I mean that this is a matter that I thought had settled or

5    it was on the verge of settling.  I guess there was no

6    settlement agreement finally reached, and so I'm happy to give

7    you a jury trial, which is what you're asking for, in the

8    absence of settlement.  So when are you ready to go to trial?

9          MR. PAUL:  Your Honor, I'm Joshua Paul for the Archie

10    Comics.  So let me, to address that issue, as --

11          THE COURT:  You just have to give me a date.

12          MR. PAUL:  I can't give you a date.  I'd like to

13    explain why.

14          THE COURT:  Oh.

15          MR. PAUL:  We have the -- As you know, we took this

16    case over right before the mediation, and it has become clear

17    to us that the focus of the case, as is reflected in the

18    proposed jury instructions and the joint pretrial order,

19    significantly misses a very critical legal issue.  And I'm only

20    asking for the opportunity to write to you, and I'd like to

21    explain to you what that is because we're dealing with

22    congressionally created copyrights.

23          THE COURT:  This thing has been so litigated, counsel,

24    and I'm not coming in with a new lawyer at the 11th hour and

25    going in a totally different direction.

1          MR. PAUL:  May I at least explain, to take a moment of

2     your time, or if not now, will you give me an opportunity to

3     write --

4          THE COURT:  No, there's no need to have writing.

5     You've had months.  You, yourself, how long have you been in

6     this case?

7          MR. PAUL:  We've been in the case for a while.  We

8     focused on settlement.  Our prior counsel exercised a retaining

9     lien.  We received --

10         THE COURT:  You have been in the case six months,

11    yourself?

12         MR. PAUL:  That's right.  We've received the prior

13    lawyer's exerting retaining.  So if you'll allow me, what's

14    been focused on is the rule in copyright law which governs who

15    owns the copyrighting as between a hiring party and --

16         THE COURT:  If you have any familiarity with the case,

17    you know that I know all of what you're saying.

18         MR. PAUL:  So what's been missed, your Honor, is this.

19    The question is, this is a derivative work.  The underlying

20    rights here don't come from Archie.  They come from a contract

21    between Sega of America, which owns the copyrights, which then

22    granted to Archie the right to use the copyright for a

23    particular purpose.

24         Archie, in turn, hired Mr. Penders.  The cases have

25    said that in this circumstance, the ownership of a copyright in

D52PARCC

1      the derivative work is governed by the intention of the

2      licensor and the licensee in the grant, and it's that I'd like

3      to be able to write, at least explain that authority.

4            THE COURT:  So are you saying prior counsel blew it?

5            MR. PAUL:  Absolutely, your Honor.  So I will say that

6      this -- the issue will need to be addressed in one forum or

7      another, and we're hoping -- we're hoping that you'll allow us

8      an opportunity to explain the issue and to explain our

9      proposal, our proposal for dealing with it in a way that will

10     not further inconvenience and drain resources, but will still

11     allow this Court to apply the correct law.  I can't be as --

12           THE COURT:  Well, give it to the jury.  That's the way

13     we're going to deal with it.  We're not going to have more

14     motion practice.  My God, this thing has been litigated up,

15     down.  If it's a valid issue, you and counsel will discuss it,

16     meet and confer.  If you need to revise the joint pretrial

17     order and the jury instructions, you'll do that, and the jury

18     will decide it.

19           So I get back to my original question.  When would you

20     be ready for a trial?

21           MR. PAUL:  I did not come today prepared to answer

22     that question, but I will --

23           THE COURT:  That's really surprising to me because

24     what else would we be talking about today?

25           MR. PAUL:  I thought we were dealing with a

D52PARCC

1    premotion -- this was a premotion conference that was brought

2    on by a premotion application by Mr. Penders' lawyers, who are

3    asking for an injunction.

4              THE COURT:  So you didn't think you could talk about

5    settlement or trial or motions you came prepared to --

6              MR. PAUL:  Judge, please.  We really don't want --

7    we -- I just want -- we'll answer your questions.

8              THE COURT:  Okay.  So when are you ready for trial?

9              MR. PAUL:  I'll have to -- I have a -- I think we can

10   be ready for trial in 60 days.

11             THE COURT:  What about you?

12             MR. DAMAN:  Your Honor, I also had not checked the

13   calendar for trial dates with my client on the assumption that

14   we were here to talk about the injunction.

15             THE COURT:  Everybody has been asleep in this case or

16   not.

17             MR. DAMAN:  Well, we actually -- I know your Honor

18   mentioned that there was no settlement agreement.  We believed

19   that there was actually a settlement agreement.  So we thought

20   that we were either dealing with the schedule to that and/or

21   with the injunction to keep the status quo.

22             THE COURT:  And you feel there is no settlement; is

23   that right?

24             MR. PAUL:  Absolutely.

25             THE COURT:  And what is the -- If he thinks there is

D52PARCC

 1  and you think there isn't, that's so peculiar.  Why would that

 2  be?

 3          MR. PAUL:  You're asking for why we believe there's no

 4  settlement?

 5          THE COURT:  Yes.

 6          MR. PAUL:  Sure.  Because the half of page of points

 7  that were reached and signed at the mediation session --

 8          THE COURT:  With you?

 9          MR. PAUL:  Yes.  We came in for that, yes.  We came in

10  and then that next week is when the mediation occurred.

11          THE COURT:  Right.

12          MR. PAUL:  It provided for -- that, as it's first

13  item, that Mr. Penders asserted ownership of certain rights,

14  and that indicated that he intended to exploit those rights.

15  We said, and this is the term sheet, that the Archie company

16  did not agree with that assertion, but that Archie would agree

17  that it would not pursue a claim against Penders for exploiting

18  those rights, provided that those claimed rights would not have

19  a look or feel as though they were part of a sonic universe.

20          And then also said the metes and bounds of the claimed

21  rights, which is a term of art, must, must be described in

22  Schedule A.  And so after we had the negotiation -- excuse me,

23  may I just take a brief drink; thank you -- we saw you, I

24  believe it was January 7th, and we had a very short conference.

25  I recall explaining, I think there's a transcript that says,

D52PARCC

1    that the devil was in the details.  We needed to work out this

2    schedule.

3            And we then exchanged many drafts and e-mail

4    correspondence, which I attached to a letter that is part of

5    the record, trying to come up with the claimed -- you know,

6    this metes and bounds of the claimed rights.  The reason that

7    was material -- so it never occurred.  And the reason that's

8    material --

9            THE COURT:  Yes, I get all that.  Do you want to

10   settle?

11           MR. PAUL:  Desperately.

12           THE COURT:  Does your client want to settle?

13           MR. PAUL:  Desperately, your Honor.

14           THE COURT:  Do you want to settle?

15           MR. DAMAN:  Yes, your Honor.  And we take issue with

16   their --

17           THE COURT:  Yes, of course you do.  Otherwise, we'd

18   have a settlement.

19           MR. DAMAN:  I don't take issue with the facets as he's

20   reciting them.  I take issue with their willingness to engage

21   in a discussion over that possible schedule.

22           THE COURT:  Well, I'm just trying to figure out.  He

23   says he desperately wants to settle.

24           MR. PAUL:  I can explain to you --

25           THE COURT:  No.  You've explained plenty.  Do you

D52PARCC

1    desperately want to settle also?

2              MR. DAMAN:  Yes, your Honor, and, in fact, we'd love

3    to adhere to the terms of the settlement from November.

4              THE COURT:  Okay.  Here's what is escaping me.  You

5    have two, obviously, qualified, experienced, professional

6    attorneys, both of whom desperately want to settle.  I never

7    have -- I've probably done thousands of settlements.  I never

8    had -- so most of them people don't -- somebody doesn't

9    desperately want to settle.

10             MR. PAUL:  I can explain why, what's missing.

11             THE COURT:  No, no.  I know you have an explanation

12   for everything, and I appreciate that.  But when we do have two

13   lawyers that desperately want to settle, I think I have a one

14   hundred percent batting average of having settled cases.  So

15   either somebody really doesn't desperately want to settle -- I

16   mean, that's always a possibility -- or, there are lots of

17   ors --

18             MR. PAUL:  Sure.

19             THE COURT:  -- personalities or you know overreaching

20   or just can't see eye to eye, all of these possibilities.  But

21   if you have really two lawyers and two parties who desperately

22   want to settle, no problem.  Usually ten out of ten settle.  So

23   that's what is alluding me, really, today.  Not this new

24   theory --

25             MR. PAUL:  Sure.

D52PARCC

1          THE COURT:  -- and not what happened to the term sheet

2     and not the metes and bounds, et cetera, none of that is

3     alluding me.  What is alluding me is why --

4          MR. PAUL:  May I offer the reason because --

5          THE COURT:  If you just let me finish.

6          MR. PAUL:  All right.

7          THE COURT:  You know, if we have a jury trial, you

8     know, you've got to --

9          MR. PAUL:  Yes, sir, I understand.

10          THE COURT:  -- you've got to let everybody speak.

11          MR. PAUL:  Yes.  Yes, I understand.

12          THE COURT:  So that's the part that's really piqued my

13     curiosity, is why there can't or isn't a settlement where

14     people desperately want to settle.

15          MR. PAUL:  Thank you.  And I apologize for

16     interrupting.

17          THE COURT:  It's all right.

18          MR. PAUL:  The reason is, that there's a third party

19     who's very important to the settlement but is not in court, and

20     that is Archie's licensor, Sega.  Mr. Penders has sued Sega.

21     That action has been stayed pending the resolution of this

22     case, and we have an obligation, we -- I will say a practical

23     obligation because the last thing we want there to be is a

24     dispute with our good licensor.

25          But our licensor expects Archie to take care of this

D52PARCC

```
 1    problem, as any licensor would.  And so while we have, I think,
 2    as between Mr. Penders and Archie, we really could -- if those
 3    were the only parties, we could do a deal.  The problem is that
 4    we are paying or are responsible for that part of the overall
 5    equation, and the value that Mr. Penders has assigned to that
 6    second part of the equation does not take into account this
 7    legal issue that I brought to you just now.
 8            THE COURT:  Yes, I get it.  I get it.
 9            MR. PAUL:  Okay?  So that's the problem.
10            THE COURT:  So you're saying the missing link is the
11    third party?
12            MR. PAUL:  The missing link is the premise, the legal
13    premise that Mr. Penders brings to his valuation and, in fact,
14    the fact of whether he has a claim or not against Sega.  And
15    while it would be very inefficient, we could deal with one
16    thing -- we could -- I understand, if we could resolve issues
17    between these two parties, but if you're asking -- your
18    question was what's the impediment to settlement.
19            THE COURT:  You can't --
20            MR. PAUL:  We're going to end up having to pay for
21    Sega's defense.
22            THE COURT:  It's pretty obvious, though, isn't it?
23    Why don't you just bring in Sega to your settlement
24    conversations?  I mean, if there's some other missing aspect --
25            MR. PAUL:  Right.  We have -- Until we can interject
```

D52PARCC

```
 1   into the discussion the rule, what the courts have said about
 2   the ownership of the derivative of the rights, then there's no
 3   point.
 4            THE COURT:  You're talking -- forgive me.
 5            MR. PAUL:  Please, please.
 6            THE COURT:  You're talking about angels on a pin.  So
 7   practical lawyers --
 8            MR. PAUL:  Practical lawyers, they want a lot of
 9   money.
10            THE COURT:  Can I finish?
11            MR. PAUL:  Of course.
12            THE COURT:  So practical lawyers say if there's a
13   missing person, so to speak, who's already been sued and that's
14   indispensable to the resolution of your, meaning the two of
15   you, controversy, so bring in the third person and three
16   lawyers sit down and settle the case.  Right?  You have a claim
17   against the third party, separate claim, right?
18            MR. DAMAN:  Yes, your Honor.  We would agree with
19   everything you've just said.  We've been asked not to contact
20   Sega, and we've adhered to their wishes.
21            THE COURT:  That makes no sense.
22            MR. PAUL:  Judge, the case won't go away though,
23   because Sega won't offer a dime.
24            THE COURT:  I don't know who asked you not to.  I
25   don't think I did.
```

D52PARCC

1            MR. DAMAN:  We were asked by ACP, the other party in

2    this case --

3            THE COURT:  Right.

4            MR. DAMAN:  -- not to.

5            THE COURT:  So but that makes no sense.  Forgive me.

6    If he's saying that they're the missing link and, you know,

7    you're two smart business lawyers, so get the missing link.

8    Bring the missing link in and solve all the issues.

9            MR. DAMAN:  As an alternative, your Honor, and what

10   happened in November was ACP and Mr. Penders settled their

11   disputes as between themselves.

12           THE COURT:  Right.

13           MR. DAMAN:  What happened after, in the guise of

14   issuance in the schedule, is they brought up issues on releases

15   for Sega that were not -- that were specifically excluded in

16   November.  So we agree, if you're going to bring in Sega, that

17   brings in a whole set of different circumstances in evaluations

18   and that's where we've been bogged down.

19           THE COURT:  I would think so.

20           MR. PAUL:  The reason Sega is essential, as a

21   practical matter, because Archie needs to continue living with

22   them.

23           THE COURT:  You both agree he is, so why don't you --

24           MR. PAUL:  I understand.

25           THE COURT:  -- bring him in?

D52PARCC

1          MR. PAUL:  But Sega is not -- What needs to be

2     resolved or addressed are the more fundamental question of

3     whether this plaintiff has any rights whatsoever.

4          THE COURT:  What we're talking about is settlement.

5     That's what we're talking about.  So I don't know if you want

6     to write a law review article on this subject --

7          MR. PAUL:  No, I don't.

8          THE COURT:  -- or you want to give a lecture or

9     whatever.  You know, you could do that on the outside.  But

10    we're talking now about the real world and settling a case.

11    And if Sega's got, you know, a horse in the race, as it were,

12    that's sort of indispensable to you settling, then why don't

13    you bring in Sega?  Who represents Sega?

14         MR. PAUL:  They're represented by counsel on the West

15    Coast.

16         THE COURT:  It would be the thing to do, no?

17         MR. DAMAN:  Again, your Honor, we are certainly

18    amenable to that.  We've asked for it several times.

19         THE COURT:  Are you amenable to that.

20         MR. PAUL:  In light of the discussion, I'm certainly

21    amenable to it.

22         THE COURT:  So then the question is the how, you know,

23    the mechanics.  You can either do it on yourselves.  I'm sure I

24    could find a magistrate judge that would help, if you'd think

25    that would be useful, or I could be helpful, if you think that

D52PARCC

```
 1   would be useful, or parties sometimes go out to JAMS or

 2   wherever and find a -- and you've had a mediator.

 3           MR. PAUL:  We have, and he's indicated he's willing to

 4   stay with us.

 5           THE COURT:  So maybe that mediator, maybe that's the

 6   obvious thing to do just to get the Sega lawyer, or I don't

 7   know if you go there with principles.  Seems to me it would be

 8   the obvious thing to do.  It's never been tried, I take it.

 9           MR. PAUL:  No.

10           MR. DAMAN:  No, your Honor.  We've been explicitly

11   told not to do that.  It has not been tried.

12           THE COURT:  All right.  So don't you think that would

13   be a more fruitful way to go?

14           MR. PAUL:  I do.  I'm hoping that when we do that,

15   that we'll have an opportunity to reframe the expectations of

16   Mr. Penders in terms of what his rights are worth.

17           THE COURT:  Well, you know what, you usually go

18   into -- the most successful way to go into arbitration or

19   mediation or settlement is without setting any parameters about

20   whether -- what Mr. Penders is or isn't willing to do.  It's

21   just to go, in good faith, and present to the mediator what you

22   feel are your strongest points vis-a-vis each other and Sega

23   and vice versa.  And I take it the mediator is a skillful

24   person?

25           MR. PAUL:  Yes, I think he is.
```

D52PARCC

```
1              THE COURT:  Do you feel that way, too?

2              MR. DAMAN:  Yes, he was very --

3              THE COURT:  He's helpful so far.  He helped you get to

4    a term sheet, right?  And if he's willing to help some more, I

5    would say you should schedule a mediation with the three of you

6    before the same mediator.

7              MR. DAMAN:  And, your Honor, I would also say that

8    Mr. Paul brought up this new theory to me just outside.  We're

9    willing to read the law on it.

10             THE COURT:  Absolutely, everybody would be.  Me too.

11   Me too, although I'd rather you read it first --

12             MR. PAUL:  Of course.

13             THE COURT:  -- and see where it takes you, but if and

14   when I have to, I'm happy to read it as well.

15             So how long would it -- Let's change the dynamic then.

16   How long would it take you to put that mediation together?  Of

17   course, it depends on the mediator, his schedule and your

18   schedules.  And who is the attorney from California?  Is it a

19   big firm or a small firm?

20             MR. PAUL:  It's a big firm.  It's Fenwick and West,

21   and I think their Palo Alto office.

22             THE COURT:  So I leave that -- What do you think is a

23   reasonable time?  What I'd like to do is to set another status

24   conference here, which would be post any such mediation.  So

25   you two, if you want to go off the record and talk among,
```

D52PARCC

1    between yourselves as to what is likely, or if you even want to

2    make a phone call or two, to the mediator and/or Sega's

3    counsel, and then we'll reconvene here in an hour or so.

4           MR. PAUL:  I think that probably would be best since

5    we're dealing with --

6           THE COURT:  West Coast and --

7           MR. PAUL:  Yes, West Coast.  Is that fair?  I'm here.

8           MR. DAMAN:  I think the scheduling is something that

9    is very worthwhile.  I don't know that I have confidence that

10   in an hour we'll have gotten the relevant people on the phone

11   to make a date.  So I would say we should probably set a

12   reasonable time, as we've been doing, either a month or six

13   weeks to come back, by which time it should have happened.

14          THE COURT:  Okay.  I'm game for either one.

15          MR. PAUL:  I have a -- my suggestion would be give us

16   24 hours and we'll tell you, you know -- we can then -- we'll

17   know -- or 48 hours, and we'll know when the mediation will be,

18   and then we can schedule the next conference for whatever time

19   you think is reasonable after that.

20          THE COURT:  All right.  Let's say Monday.  Do you want

21   to come back here or call me on the phone?

22          MR. PAUL:  The phone is fine.  Whatever you like.

23          THE COURT:  Phone?

24          MR. DAMAN:  We prefer the phone.

25          THE COURT:  Okay.  We'll have a phone conference on

D52PARCC

1  Monday at 10:00 a.m.  So that is, what, May 6th at 10:00 a.m.

2  Okay.  Anything else you want to add for today?

3            MR. PAUL:  No.  Just, so we're not going to deal with

4  a date for a trial?  We'll just deal with that if we need to?

5            THE COURT:  I wouldn't think it makes any sense.

6  Maybe we can obviate the need for all that.

7            MR. DAMAN:  I agree.  It wouldn't make sense to deal

8  with the trial.  I guess because of Mr. Penders' experience,

9  while this has been going on, you know, the motion for -- will

10  we be allowed to file a motion for the injunction against

11  publication of the works, which is a letter, your Honor.  I'm

12  just asking to be allowed to file a motion.

13            THE COURT:  Okay.  Why don't we talk about that on

14  Monday on the phone conference, and if need be, we can set a

15  schedule for such a motion.  Okay?

16            MR. PAUL:  Okay.

17            MR. DAMAN:  Fine.  Thank you, your Honor.

18            THE COURT:  If we don't need to, if you're more

19  successful between now and Monday, you may put that aside, too.

20  But you'll let me know.  Okay?

21            MR. DAMAN:  Thank you very much, your Honor.

22            MR. PAUL:  Thank you.

23            THE COURT:  Great to see you both.

24            MR. DAMAN:  Thank you, your Honor.

25            THE COURT:  Thanks, so much.
             (Adjourned)