D56PARCC                        TELEPHONE CONFERENCE

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ARCHIE COMIC PUBLICATIONS,
    INC.,
4
                    Plaintiff,
5
            v.                              10 CV 8858 (RMB)
6
    KENNETH W. PENDERS, II,
7
                    Defendant.
8
    ------------------------------x
9                                           New York, N.Y.
                                            May 6, 2013
10                                          10:10 a.m.

11  Before:

12                    HON. RICHARD M. BERMAN,

13                                          District Judge

14                  APPEARANCES (VIA TELEPHONE)

15  COLLEN IP
        Attorney for Plaintiff
16  BY:  JOSHUA PAUL, ESQ.

17  DAMAN, LLC
        Attorney for Defendant
18  BY:  JEFFREY K. DAMAN, ESQ.

19

20

21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

1        (Telephone conference; in chambers)

2        THE COURT:  Counsel, are you there?

3        MR. PAUL:  Yes, your Honor.

4        THE COURT:  So we have a court reporter.  It would be

5   helpful for everybody to state their name before they speak, if

6   that's okay.

7        So who wants to take the lead here and bring me up to

8   date on the status of the mediation?

9        MR. PAUL:  Your Honor, this is Joshua Paul, P-a-u-l,

10  for Archie Comics.  I'd be happy to do that.  When we met last

11  week, you had suggested that I contact the outside counsel for

12  Sega at Fenwick and West to see if Sega would agree to

13  participate in a mediation session in this case, and I've done

14  that and received an e-mail from her yesterday afternoon.

15        Bottom line is that Sega will agree to participate.

16  There are a few wrinkles and conditions.  The principal one is

17  that the principals will not attend the mediation session, but

18  they ask that both Mr. Penders and an Archie representative

19  with full settlement authority be available throughout

20  whatever, you know, the designated mediation day to authorize

21  any deal, agreement, should one be reached.  Sega cannot commit

22  to do the same for itself, however.  The other --

23        THE COURT:  Why not?

24        MR. PAUL:  I haven't spoken with her yet.  I'm just

25  relating to you the substance of the e-mail I received from her

1    yesterday.

2              THE COURT:  Yes.  I really don't understand that.

3              MR. PAUL:  She may -- I don't want to comment because

4    I don't -- I don't know.

5              THE COURT:  Okay.

6              MR. PAUL:  She's in San Francisco; so it's a bit early

7    for me to reach her, but I will ask her that, if you like, and

8    report back.

9              THE COURT:  Yes, I'd like you to ask her and just say,

10   you know, respectfully that it makes no sense to me.

11             MR. PAUL:  I'll do that, your Honor.

12             THE COURT:  Is she in this court in another matter?

13             MR. PAUL:  No, your Honor.  Sega has not been sued in

14   another matter in this court.  Sega's been sued in, I believe,

15   the Northern District of California.  So Sega would be

16   participating voluntarily in mediation.

17             THE COURT:  I understand, but they're in Federal Court

18   in San Francisco?

19             MR. PAUL:  I believe so.  I believe the action is

20   either stayed or dismissed, but I think Mr. Daman can speak to

21   that.

22             THE COURT:  Okay.  All right.

23             MR. PAUL:  Your Honor, may I give you the two other

24   points she made?

25             THE COURT:  Sure.

D56PARCC                        TELEPHONE CONFERENCE

1          MR. PAUL:  She says that she has -- her schedule is

2     such that she cannot participate until, at the earliest, the

3     fourth week of May, but thereafter she'll move anything around

4     to participate.

5          And, finally, that she will try to participate in

6     person, to fly to New York, but would like to reserve the right

7     to participate by phone, if need be.

8          THE COURT:  Yes, the latter you can tell her, I

9     reject.  She has to participate in person.

10          MR. PAUL:  Okay.  I'll tell her that.

11          THE COURT:  And you know, you could also pass along to

12     her that each of us has busy schedules, the Court does, and I'm

13     sure you two do, as well, and I don't want to go further than

14     that.  So we appreciate that she's a successful and busy

15     practitioner, but, you know, this is part of practice.

16          So, yeah, we expect her to be there in person, and I

17     do, in any event, and I'm, as I said before, not understanding

18     what she means by no authority to commit or that's the way it

19     sounded to me.

20          MR. PAUL:  I will speak with her as soon as she's

21     available to me today and, if you'd like, can report to you

22     either in writing or with another call, whatever you want.

23          THE COURT:  Yeah, maybe you can call this afternoon.

24     What is her name again?

25          MR. PAUL:  Her name is Jennifer Kelly, K-e-l-l-y, and

D56PARCC                         TELEPHONE CONFERENCE

1    she is at Fenwick and West.  I believe it's in the San

2    Francisco office, but I'll check right now.  It's either that

3    or Palo Alto.

4              THE COURT:  And she's a partner, right?

5              MR. PAUL:  She's a partner, yes.

6              THE COURT:  Well, okay.  Mr. Daman, you're on the

7    phone too, right?

8              MR. DAMAN:  I am, your Honor.

9              THE COURT:  Did you want to comment?

10             MR. DAMAN:  No.  I would say that we got these

11   conditions just before the call, and the end of May does not

12   seem unreasonable to us.  When it's phrased four weeks into

13   May, it sounds worse than the fact that it's two or three weeks

14   out.  I was hoping that the authority thing is a scheduling

15   concern because of the time zones, but I agree with your Honor

16   that, obviously, she would have to have some authority to move

17   this along and it would not make sense for us to have authority

18   but not her.

19             But by and large, I think the end of May or beginning

20   of June we could find dates that would work for everybody, and

21   move that forward.  I think it would be a useful use of time.

22             THE COURT:  I agree with your assessment of the dates.

23   It sounded worse than it turned out to be.  Do you want to call

24   me back this afternoon?  That would be fine, just to see where

25   things stand.

D56PARCC                         TELEPHONE CONFERENCE

1          MR. PAUL:  That's fine.  My only hesitation, your

2    Honor, is -- it's Joshua Paul speaking.  My only hesitation,

3    your Honor, is that I don't know when I will be able to reach

4    her.  I will send her an e-mail immediately.  We could -- If

5    you'd like, we could set a temporary time, and then we could

6    confirm it with your chambers so that in case that I haven't

7    heard from her, we don't have to take your time unnecessarily.

8          THE COURT:  Okay.  Well, it's 10:15 now.  Even if it

9    were, let's say, 2:15 Eastern time, that might give you enough

10   time.

11         MR. PAUL:  Yes.  That would be 11:15 in California.

12   That's fine.  If you'd like us to check back in with you at

13   2:15, we'll do that and that's fine.

14         THE COURT:  Great.

15         MR. PAUL:  Okay.

16         THE COURT:  That's great thanks so much.

17         MR. PAUL:  Thank you.

18         THE COURT:  Bye.

19         (Recess)

20         (Telephone conference resumed; in chambers)

21         THE COURT:  Counsel, it's Judge Berman again.  How did

22   you make out?

23         MR. PAUL:  Your Honor, this is Joshua Paul for the

24   Archie Comics publication.  I was able to touch base by e-mail

25   with everyone concerned, including the Sega lawyer, the

1    mediator and the two attorneys for Mr. Penders; so this is

2    where things are.

3            I reached the Sega lawyer, Ms. Kelly, several times

4    between 7:30 and 8:00 a.m. her time.  What she says is she will

5    come in person to New York for the mediation.  As for the

6    question of whether Sega's principals or a person from the Sega

7    with authority be available to her by phone during whatever

8    date we choose for the mediation, that is somewhat more

9    problematic.  She explains that her principals are in Japan,

10   and even if she were to initiate a call now, in order to find

11   out whether that could be arranged, given the time difference,

12   she said, you know, in the several hours between the time I

13   reached her and the time of this call, she was going to be in

14   court and she just couldn't get -- have a meaningful

15   conversation with them for those -- you know, over the course

16   of those three hours.

17           Finally, as to the date of the mediation, so the

18   mediator, we were looking at the week of June 3.  June 3 and

19   June 7, that Monday and Friday, the mediator informs us are not

20   good for him.  The Sega lawyer says that she has a hearing in

21   San Francisco on June 7 -- excuse me, on June 6th.  She might

22   be able to do a June 5 mediation in New York, but only if she

23   could then get the night flight home.  And she just wasn't sure

24   about that; so I don't really have a commitment from her there.

25           I have asked all parties, including Mr. Burn -- excuse

1    me, the mediator, and Mr. Penders' counsel, how the week of

2    June 10 looks and I haven't yet heard anything back.  That's my

3    report.

4              THE COURT:  Okay.  Okay.  So here's what I think.

5    You'll get a date.  I am, obviously, not going to interfere

6    with a date that is comfortable to everybody.  I am glad that

7    Ms. Kelly is coming.  I think that is important.

8              But second, and I think the best way or an excellent

9    way to communicate to Ms. Kelly my thinking about these issues

10   is certainly through you, counsel.  You've done a great job in

11   reaching her, but I would also request that you all order

12   copies of the transcript of this morning's phone conference and

13   this one we're having right now, this afternoon's phone

14   conference, because then Ms. Kelly can know directly, so to

15   speak, you know, what my thinking is.

16             And although I'm sure you conveyed it very well, I

17   would like her to know also directly that the first point I've

18   already made is that I'm very appreciative that she's coming to

19   the mediation and, actually, I do think she should be at the

20   mediation.

21             But the second point, which is a little up in the air,

22   I'm not quite understanding what you had to say.  There's no

23   sense or no point in having the mediation unless one of two --

24   one of three things.  Either her client has to be there, it's

25   not required but that's one way that we can make sure that

1   someone is there with authority; or, two, that her client or

2   someone from her client is reachable at whatever time the

3   mediation is taking place -- and, by the way, notwithstanding

4   the time change, you know, between New York and Japan, this is

5   done all the time.

6          So it's not like the old days when somebody lived in

7   Europe or the Far East and they were, you know, incommunicado.

8   This is the year 2013.  So if somebody wants to be available,

9   there are clearly ways to make sure that that happens, not the

10  least of which is by scheduling the mediation at a better time

11  during the day than at another time, but I don't have to

12  explain to all of you how that can be done, nor do I have to

13  explain it to Ms. Kelly.

14         I'm sure she is probably very familiar with how she

15  gets to be in contact with her clients.  So that was the second

16  way.  And the third way that we can have an effective mediation

17  is if Ms. Kelly gets full authority herself.  Then she doesn't

18  have to have her client at the mediation and, in fact, they

19  don't even have to be available.

20         In connection with the latter points, I want to be

21  very clear that I don't want somebody like Ms. Kelly at the

22  mediation with partial authority.  So, for example, she might

23  say, well, I only have authority to agree to $75 and anything

24  over $75, I have to find my client, who's not available.

25  That's what I don't want to have happen.  I want to be able to

D56PARCC                        TELEPHONE CONFERENCE

1   have a meaningful mediation, which, in fact, resolves all of

2   the issues in this case.  That's my objective, and I feel very

3   strongly about that.

4         And so that's why I think it might be helpful if you

5   all ordered a copy of the transcript of this proceeding and

6   e-mailed her a copy so she could also e-mail a copy of these

7   transcripts to her clients in Japan so that they also get the

8   understanding of where I'm coming from and what I'm talking

9   about.  Is that a possibility?  It should be.

10        MR. PAUL:  Your Honor, it's Joshua Paul for Archie

11  Comics.  Sure.  That's not a problem.  I agree that that's the

12  most effective way to make sure Miss Kelly and her client

13  understand what you intend, with the understanding that, if

14  it's all right, that we do not order this on a daily basis and

15  just order the transcript whatever the usual turn around is at

16  the usual rate.  I think it's a week time.  We will be happy to

17  take care of it.

18        THE COURT:  It's up to you.  It all depends really

19  on -- it's up to you.  It will have to be done, of course, in

20  time for Ms. Kelly to get the --

21        MR. PAUL:  Of course --

22        THE COURT:  -- drift, so to speak, and also for her

23  client to get it.  So it will depend on when your mediation is,

24  when you need the transcript, so to speak.  In the meantime,

25  you can, if you wouldn't mind, call her again and, you know,

D56PARCC                    TELEPHONE CONFERENCE

1    deliver the sum and substance of what we are saying here this

2    afternoon.

3              MR. PAUL:  Consider it done.

4              THE COURT:  Thanks so much.  So I guess what I'll do

5    is wait to hear from you all either by letter, or if you want

6    to call Noam Greenspan, who's my law clerk, and just to tell

7    him when the date of the mediation is.

8              MR. DAMAN:  Your Honor, it's Phillip Daman for

9    defendant Ken Penders.  I just received, I think, Josh, maybe

10   you received it as well, an e-mail from the mediator who says

11   she's available June 11th, June 12th.  She's also available

12   June 13th.  So perhaps we can calendar that in after we speak.

13   After this phone call we can coordinate something.

14             Secondly, if we're going to go to mediation -- and,

15   Josh, thank you again for reaching out to Sega and getting

16   Kelly to participate -- that's a long time off.  My client

17   is -- he's concerned about the publications.  I understand your

18   client's arguments, but we would like to know from the Court if

19   injunctive relief is possible to keep the status quo, where

20   your client's work is not being published until we can resolve

21   the issues in this case.

22             And the second issue is at the original mediation in

23   November of 2012, we specifically asked ACP if he would like

24   Sega to be involved, if that was necessary, and you were very

25   emphatic that Sega was not part of these conversations and Sega

D56PARCC                    TELEPHONE CONFERENCE

1   was not to be part of the settlement.  And we then proceeded to

2   come to agreement with you, and now a month later, we're

3   bringing Sega back in.

4          Our concern is that, one, we would like to stop any

5   continuing infringement because we'll be publishing a large

6   portion of our client's work.  And, of course, out of the main

7   injunction, we're not sure what else we can do unless you would

8   stipulate to that.  And the second part is, we're still a

9   little bit unclear as to whether or not you are still opposing

10  the fact that we have an agreement from November 29th.  And

11  what's -- now, if we enter into another mediation session with

12  Sega, Sega is not a party to this case.  Other than the fact

13  that we mentioned that, I guess, Sega -- you have, Archie will

14  have to indemnify Sega with regard to Mr. Penders' claim, we're

15  not sure what the time is.

16         THE COURT:  So as to the latter, you know, without

17  prejudice to anybody's arguments, I think that the mediation

18  will enlighten everybody as to what the other side thinks.  It

19  doesn't mean you'll agree, but it should -- The answer to your

20  questions, I don't really think we're going to answer them

21  today on this call, nor do I think it's necessary.

22         So you'll hear whatever those arguments are, I'm sure,

23  at the mediation, and I'm sure you'll be adept at either

24  countering them or whatever.

25         And by the way, as I say, I'm saying this without

1    prejudice to your maybe needing to argue sometime down the road

2    that they weren't necessarily involved, and we did have an

3    agreement in November.  I'm not saying -- So you don't lose

4    that argument is what I really am saying right now.

5            Now, as to the continued infringement, the alleged

6    infringement, for which there are arguments on both sides, in

7    my experience, it's very common for the parties, as you point

8    out, counsel, to stipulate that, you know, we won't take any

9    action until we finish this mediation, which now looks like

10   it's 30 days off or maybe a little more than that.

11           You all ought to be able to work something out between

12   yourselves along those lines, it seems to me.  So it's neither

13   of your fault that the mediation can't occur in May, it doesn't

14   sound like.  It sounds like the mediator, and now that we have

15   this third party in here, Sega, complicates the selection of a

16   date.  I don't think anybody should be prejudiced by the fact

17   that the date is maybe a little longer out than would otherwise

18   be desired.  So maybe between the two of you, after I get off,

19   you can work out some sort of standstill agreement that at

20   least takes you through the mediation and --

21           MR. PAUL:  Your Honor, it's Joshua Paul for Archie

22   Comics.  The events in question took place several weeks ago;

23   so there's really -- I mean, even if -- even if Mr. Daman is

24   correct, that that event changed the status quo, and we don't

25   agree that it did, you know, the horse is out of the barn.

D56PARCC                    TELEPHONE CONFERENCE

1          We, we're not prepared to stipulate to a standstill

2     because it's impractical and, for the other reason that we may

3     get an injunction, a preliminary injunction, is not warranted.

4     So I wanted to clarify that -- not to engage in an extended

5     discussion now --

6          THE COURT:  Right.  But --

7          MR. PAUL:  -- but not to mislead the Court, but

8     it's --

9          THE COURT:  But what you just said confuses me.  So

10    there seems like there's mixed arguments.  So if the horse is

11    already out of the barn, that's one thing, and so that's it.

12    Then you'd have to pay up in damages in the event that the

13    other side were to win, but that you're not prepared to enter a

14    standstill for further horses coming out of the barn?  I'm

15    certainly not --

16         MR. PAUL:  Yes, because -- because we believe that

17    there is no, you know, likelihood of success on the merits.

18         THE COURT:  Yeah, but that's a different story.

19         MR. PAUL:  The immediacy of harm --

20         THE COURT:  That's a different story, counsel, and as

21    to that, that is normally where people do come to a standstill

22    agreement when they're on the verge of a mediation.  I can

23    understand your first argument, you say, well, you already did

24    it; so to the extent that you already did it, if it was

25    something improper, you know, you'll hear about it --

D56PARCC                              TELEPHONE CONFERENCE

1            MR. PAUL:  Of course.

2            THE COURT:  -- down the road, but to the extent that

3     you haven't done it, so you are arguing the merits of a

4     preliminary injunction motion is not really interesting or

5     appealing because you've got a mediation right around the

6     corner.

7            And as to that, and as I say, subsequent horses

8     leaving the barn, I would suggest you keep them in the barn and

9     that you do agree to, in good faith, which is what most parties

10    do, to a standstill agreement through the mediation.

11           MR. PAUL:  I understand the point that you're making,

12    and I --

13           THE COURT:  If you would like --

14           MR. PAUL:  Here is not really the time to argue it,

15    but I take your admonition.  I understand it.

16           THE COURT:  Right.  If you would like, I can always

17    enter a stay and that would -- it would be preferrable if you

18    and counsel agreed on your own, but --

19           MR. PAUL:  When you say a stay, your Honor, I don't

20    understand.  A preliminary injunction?

21           THE COURT:  No, a stay of all proceedings pending

22    mediation or otherwise resolution, keep the status quo,

23    standstill, nothing happens.

24           MR. PAUL:  In a position --

25           THE COURT:  I'm just explaining.  You said you don't

D56PARCC                    TELEPHONE CONFERENCE

1   understand.  I'm explaining.  No more horses out of the barn.

2   Anything unclear about what the stay would provide?  It would

3   mean stay in place, no more horses out of the barn.

4   Preferrable if you do that voluntarily.

5        MR. PAUL:  Your Honor, I don't mean to be difficult,

6   but it sounds to me like you're describing a restraint on

7   Archie's behavior involuntarily.

8        THE COURT:  Then you could go to the Court of Appeals

9   and the Supreme Court, if you don't like what I do.  You could

10  go up there either as appeal or mandamus, whatever you like, if

11  you don't like the actions that I might take.  You know, I'm

12  not trying to curtail any of your options.

13       I am trying to say that, in good faith, nine out of

14  ten people and their clients would say, all right, we won't let

15  any more horses out of the barn because we have a mediation

16  pending.  A mediation, I might add, that your colleague thinks

17  is even unnecessary because he thinks you've already agreed to

18  a settlement, and he has at least a colorable argument that

19  that's true.  So just so you know where I'm coming from, that's

20  all the places I'm coming from.

21       MR. PAUL:  I definitely understand where you're coming

22  from, your Honor.

23       THE COURT:  So if you want to go argue the First

24  Amendment in the Court of Appeals, be my guest.

25       MR. PAUL:  Your Honor, I'm not suggesting for this --

D56PARCC                    TELEPHONE CONFERENCE

1   That's fine.  I understand.

2              THE COURT:  You get it.

3              MR. PAUL:  I understand what you're saying.

4              THE COURT:  You get it.

5              MR. PAUL:  And all I ask is that before -- you know,

6   if we decide that we cannot stipulate, that before you enter a

7   stay or an injunction, you permit us to have an opportunity to

8   submit papers, we can do it very quickly, and to hear the

9   issues about a bond being posted, as well as, you know, all of

10  the issues that you would need to take into account before you

11  issue an injunction.

12             And I'm not suggesting we're going to be there, but I

13  just want to note, as a placeholder, that that's what we would

14  hope and expect, your Honor.

15             THE COURT:  But you confuse me sometimes, counsel.  I

16  tell you why, because we're all talking about resolution and

17  mediation, at least that's what I'm talking.  You're talking

18  all the time about more litigation, papers, bonds, motions,

19  hearing, want to be heard, First Amendment, all this stuff.

20  They're antithetical.

21             If you go into a mediation, you know, with a motion

22  and your brief in your back pocket, then you won't really have

23  a clear head for the mediation.  And, remember, counsel has

24  pointed out, and I think he's got at least a decent argument,

25  that he thinks this case has already been settled, and he

1    thinks that no one ever thought that Sega even needed to be

2    involved back in the day, but we're past that.  So you have to

3    be able to flexibly move to the mode of resolution --

4               MR. PAUL:  We are.

5               THE COURT:  -- in good faith.

6               MR. PAUL:  We are.

7               THE COURT:  And if you do that, you and counsel will

8    obviate the need for me to have to do anything.

9               MR. PAUL:  That's fine.  May I just say one thing

10   before we ring off?

11              THE COURT:  Absolutely.

12              MR. PAUL:  I think that the assumption that everybody,

13   that your Honor may be making, that the results of the

14   mediation will involve putting more consideration onto the

15   table by the Archie, slash, Sega group.  And as I tried to

16   explain the last time we were in court last week, we believe,

17   in light of what your Honor called a new theory, which is just

18   a -- which is not a new theory, it's one that prior counsel did

19   not appreciate, that there really is no liability here.

20              So I don't -- I've expressed this to Mr. Daman, and so

21   we are entering in -- our objective in the mediation is to

22   explain to the mediator and to counsel for Mr. Penders what the

23   applicable law is.  If we can reach a resolution that would

24   involve, you know, some additional points of concession on

25   Archie's part, we're more than happy to explore that.  But I

D56PARCC                    TELEPHONE CONFERENCE

1     just did want to make clear that, you know, what -- the way in

2     which my client is approaching this upcoming mediation.

3             THE COURT:  So my father, who was not a lawyer, he

4     would say, if he was sitting here and heard you, he would say,

5     well, that guy is just bargaining in advance and negotiating in

6     advance of the mediation.  So you save it for the mediation,

7     but here's this caveat.  It's possible -- I mean, anything is

8     possible, but it's possible that you and your client's recourse

9     may have to be, you know, against this prior lawyer who took

10    this case in a totally different direction, according to what

11    you're saying.

12            And if you don't like where it's leading you, it may

13    be that your recourse is against him and not against your

14    colleague on the phone right now.  That's just a theory, while

15    we're all, you know, spitting out some theories.

16            MR. PAUL:  All right, your Honor.

17            THE COURT:  So you just, and I know you will, in good

18    faith, get together and set this date.  This is a strong

19    argument for why this date for mediation should be sooner

20    rather than later, and let's see if we can't get this thing

21    wrapped up.  All right?

22            MR. PAUL:  Thank you very much.

23            THE COURT:  I'm going to get a letter?

24            MR. DAMAN:  I hate to prolong this.  Just two quick

25    points.

D56PARCC                        TELEPHONE CONFERENCE

1          THE COURT:  You know, when lawyers start with "I hate"

2     to do something, I usually say, well, then why do it, if you

3     really hate to do it?

4          MR. DAMAN:  I take pleasure in defending my client's

5     rights in saying the following, if your Honor will allow.

6     Mr. Penders did bring up the issues of injunction before the

7     first mediation, after the mediation was concluded, and for

8     many months with opposing counsel since the conclusion of that

9     first mediation, when we came, arguendo, to an agreement.

10          THE COURT:  Right.  All right.

11          MR. DAMAN:  We're very concerned that if there is not

12     a timetable put on to when to have a possible stay that may be

13     issued or we're able to argue the merits of a preliminary

14     injunction, that, as you said, more horses will leave the barn.

15          Mr. Penders is continuing had bend over backwards to

16     work with ACP, and yet, ACP continues to release his works, of

17     course, which damage is being tabled to later prevail, but to

18     continue to wait with its production schedule, which ACP has

19     shared with us and we discovered online, to contact ACP

20     distributors, which we do, to collect money on behalf of our

21     clients when simply a stay put in place would save us further

22     expense.

23          We've been dealing with this for the best part of

24     seven months.  That's why counsel's previous comments and the

25     comments on this call doesn't seem like it's very likely that

D56PARCC                         TELEPHONE CONFERENCE

1    they're going to stipulate to the agreement that wave been

2    asking for for many, many months.  If we could time block this

3    and put a time limit on this as to when counsel and I can come

4    to such an agreement or ask the Court for a stay order or

5    preliminary injunction, that might be helpful, considering

6    there's another month timeline before we can possibly mediate.

7            THE COURT:  Well, I'll say the same thing to you as I

8    said to counsel.  You're either on the mediation path or you're

9    on the litigation path.  Right now, we're on the mediation

10   path, I think, without anybody waiving any rights that they

11   might otherwise have.  So why don't you and counsel see how far

12   you can get.

13           The best thing you could do is come up with a May date

14   or an early date for this mediation, you know, this week or

15   next week, you know, something like that.  That would be the

16   easiest way to accomplish a lot of objectives, but I'll leave

17   it to you.

18           MR. PAUL:  We will try, as I told everyone this

19   morning.  What the Sega lawyer says, she's just not available

20   until the last --

21           THE COURT:  Yes, this Sega lawyer is the busiest

22   lawyer in California and New York, from what I gather, not

23   available.  So that's -- I'm not saying that's happening here,

24   but sometimes that's a convenient thing to tell a judge, that

25   I'm not available because I have such a busy practice.

1          MR. PAUL:  Which is why it's so important that we

2     order the transcript of these two phone conferences.

3          THE COURT:  It certainly is.

4          MR. PAUL:  And maybe if, since it's important, that we

5     get it there early, maybe the parties will agree to just share

6     the cost of --

7          THE COURT:  Overnight?

8          MR. PAUL:  -- of an overnight?

9          THE COURT:  I would, if I were you.

10         MR. PAUL:  Very well.  So I will ask --

11         MR. DAMAN:  Your Honor?

12         THE COURT:  All right.  That's enough.

13         MR. DAMAN:  Perhaps Sega's counsel can appear

14    telephonically or via Skype --

15         THE COURT:  Whatever.  You --

16         MR. DAMAN:  -- for Sega counsel.  Again, we asked

17    about this in November.  We were clearly told ACP --

18         THE COURT:  I got it.  Now we're just going over the

19    same old story again.

20         MR. DAMAN:  I guess the question is, can she appear

21    telephonically?

22         THE COURT:  Well, I don't know the answer to that,

23    counsel.  That's something that you and counsel can work out

24    together.  Okay?

25         MR. DAMAN:  Okay.

1           THE COURT:  Okay.  Thanks.

2           MR. PAUL:  Thank you, your Honor.

3           THE COURT:  You bet.

4           (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25